B"H

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

Ari Baruch Teman, Plaintiff,

v.

Zeldes Needle Cooper LLP, Jeremy Virgil, et al., Defendants.

Civil Action No. 1:24-cv-09830-LJL

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

Plaintiff Ari Baruch Teman, proceeding pro se, submits this memorandum to resolutely oppose the Defendants' Motion to Dismiss (ECF No. [TBD], filed May 1, 2025), brought pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). The Complaint (ECF No. 1), filed on December 19, 2024, articulates thirteen meticulously pled causes of action, encompassing legal malpractice, fraud, civil conspiracy, breach of fiduciary duty, intentional infliction of emotional distress, and other claims, all arising from the egregious and inexcusable misconduct of Defendants Zeldes Needle Cooper LLP (ZNC), Jeremy Virgil, Maximino Medina, and other named Defendants.

These Defendants, through a pattern of deliberate neglect and deceit, defaulted Plaintiff's $75 million medical malpractice case (INDEX 805410/2014), a catastrophic failure unequivocally confirmed by New York State court rulings (Compl. Exs. 1–3).

Defendants Virgil and Medina, in concert with ZNC and their co-Defendants, repeatedly misrepresented the diligent handling of Plaintiff's case, falsely assured its appealability after default, and ignored Plaintiff's persistent alerts to critical docket lapses, communicated via email, phone, and in-person interactions.

This misconduct was not a mere oversight but a calculated act of sabotage, driven by undisclosed conflicts of interest with Silver Hill Hospital's parent organization and PATH Medical, resulting in a staggering $75 million financial loss, severe emotional distress that exacerbated Plaintiff's post-traumatic stress disorder (PTSD), and irreparable harm to his extensive volunteer network and business enterprises, including JCorps, 12gurusHealth, 12gurusCharity conferences, and TouchlessLabs LLC, all wholly owned by Plaintiff (Compl. ¶¶ 1–22, 33).

Defendants' motion to dismiss is a transparent attempt to evade accountability, characterized by bad-faith tactics that mirror the fraudulent conduct alleged in the Complaint. Most notably, the motion relies on two deliberate and egregious misrepresentations that undermine Defendants' credibility and warrant sanctions.

First, defense counsel Cristina Yannucci knowingly and falsely asserts that Plaintiff's $75 million damages expert is Dr. Vastal G. Thakkar and that his 2014 letter was retracted (Yannucci Dec., Exs. 2–3, p. 8). This is a brazen lie—Thakkar is *not* Plaintiff's damages expert, and Yannucci and her clients at ZNC were fully aware of this fact, as Plaintiff provided Yannucci with the true expert statement from Jay Weintraub of Connectiv, confirming the $75 million valuation (Teman Aff.   5, Ex. A).

Moreover, while Thakkar's letter is irrelevant to damages, it was *never* retracted, and ZNC knew of at least two additional medical experts, Dr. Alyssa Kriegel and Dr. Eril

Shvil, prepared to testify to Dr. Eric Braverman's malpractice, with copies of their written expert opinions in ZNC's possession, further evidencing Yannucci's bad faith and deceitful intent (Teman Aff.   12).

Second, Defendants' footnote 1 (p. 10) engages in an unethical smear campaign by selectively listing Plaintiff's prior litigation to portray him as a vexatious litigant, while deliberately omitting his significant legal victories: *Teman v. City of Miami Beach* (1:2023-cv-21361, S.D. Fla.) compelled the immediate release of critical body camera footage proving Teman was the victim of an unprovoked assault by a complete stranger whom Teman did not know existed until he jumped Teman from behind, and secured judicial assignment of counsel; *Teman v. Perry* (1:19-cv-20143-FAM, S.D. Fla.) achieved Judge Perry's recusal and dismissal of a baseless case alleging Teman controlled a website that the plaintiff there (one of PATH's disreputable physicians) conceded was not registered to Teman and that another patient had issued similar statements accusing the PATH physician Sandip Buch of fraud and medical malpractice (further strengthening this legal malpractice claim); and *United States v. Teman* (1:19-cr-00696, S.D.N.Y.) is currently on appeal and under 28 U.S.C. § 2255 review, with renowned legal scholars across the political spectrum including Professors Alan Dershowitz, Lawrence Lessig, and Ronald Coleman, alongside top DOJ figures including Civil Rights Head Harmeet Dhillon and Acting U.S. Attorney Edward Martin, publicly declaring Plaintiff's innocence and urging a pardon, all *pro bono* with no personal relationships to Teman (Teman Aff. ¶¶ 6–10, Exs. B–F).

These misrepresentations are particularly reprehensible given Plaintiff's distinguished reputation, which was a significant factor in ZNC's decision to accept him

as a client. Plaintiff is the founder of JCorps, a transformative organization that mobilized thousands of young adults to volunteer, earning him the Jewish Federation of North America's national "Hero of the Year" award and invitations as an official guest of the White House and Mayor Michael Bloomberg.

He also founded 12gurusHealth, 12gurusCharity conferences, and TouchlessLabs LLC, all wholly owned enterprises advancing healthcare, nonprofit work, and health technology [additional bio details]. ZNC and Yannucci are acutely aware that a jury would be profoundly moved by the catastrophic harm inflicted not only on Plaintiff personally but also on his volunteer network, businesses, and broader good deeds—harm that Defendants deliberately targeted through their sabotage, as alleged in the Complaint (Compl. ¶¶ 5–6, 21).

By resorting to such unethical tactics, Defendants seek to prejudice the Court and obscure their own misconduct, a strategy that mirrors the fraudulent misrepresentations at the heart of this case and demands substantial sanctions under 28 U.S.C. § 1927 for vexatiously multiplying these proceedings, including costs for a weekend and two days of research, editing, and distractions from Plaintiff's work and family obligations to rebut Yannucci's falsehoods.

This Court should deny Defendants' motion in its entirety, as the Complaint plausibly alleges each claim, supported by judicial findings, expert evidence, and Defendants' own admissions of negligence.

Alternatively, Plaintiff requests leave to amend any dismissed claims, as is liberally granted to pro se litigants (Fed. R. Civ. P. 15(a)). The Court should also order mediation, as requested in Plaintiff's Motion for Summary Judgment or, in the

Alternative, for Court-Ordered Mediation (ECF No. [TBD], filed March 26, 2025), to resolve this $300 million dispute efficiently, potentially at a fraction of the claimed amount.

Finally, the Court should impose substantial sanctions on Yannucci for her bad-faith conduct, which has unnecessarily burdened Plaintiff and this Court. Plaintiff's pro se status entitles him to liberal construction of his pleadings, ensuring the strongest case implied is considered (Hickman v. Legal Aid Soc'y, 2020 WL 4549207, at *4 (S.D.N.Y. June 26, 2020)).

## STATEMENT OF FACTS

Plaintiff Ari Baruch Teman is an award-winning philanthropist and entrepreneur whose legacy includes founding JCorps ( JCorps.org ) , a groundbreaking organization that inspired thousands of young adults to engage in volunteerism across seven cities in the USA, Israel, and Canada (currently still an independent nation), earning him the prestigious Jewish Federation of North America's "Hero of the Year" award, as well as honors as an official guest of the White House and Mayor Michael Bloomberg, being named to the Jewish Week's "36 Under 36", and being honored by various organizations including Chabad, Ptach, FIDF, and others.

He also founded 12gurusHealth, 12gurusCharity conferences, and TouchlessLabs LLC, all wholly owned enterprises advancing healthcare, nonprofit work, and health technology, and holds multiple patents cited by top corporations.

Recognizing his stature and the strength of his case, ZNC, through its partner Jeremy Virgil, agreed to represent Plaintiff in a high-stakes medical malpractice case against Dr. Eric Braverman, a disgraced physician convicted twice and whose practice

was shuttered following a New York Attorney General investigation into widespread patient harm (Compl. ¶¶ 4, 8, Ex. 5). The case was conservatively valued by ZNC and an independent damages expert, Jay Weintraub of Connectiv, at more than $24 million (this amount was even disclosed in a New York Post article: https://nypost.com/2014/11/11/embattled-manhattan-doc-faces-accusation-of-quackery/), with Plaintiff's total claimed loss amounting to $75 million due to the catastrophic impact of the default (Compl. ¶¶ 15–16; Teman Aff. Ex. A).

ZNC explicitly advised Plaintiff to pursue a strategic bifurcation of the case, focusing on securing PATH Medical's insurance coverage, which was believed to provide $5 million per practitioner, with over five practitioners and the practice itself named as defendants, collectively ensuring collectible damages well in excess of $25 million. This approach was particularly viable given evidence that PATH's insurer was aware of Braverman's harmful practices and failed to intervene, amplifying their liability (Teman Aff. 11). Plaintiff further strengthened the case by identifying multiple medical experts, including Dr. Alyssa Kriegel and Dr. Eril Shvil, in addition to Dr. Vastal Thakkar, who were prepared to testify to Braverman's malpractice and had already issued written statements, ensuring a robust foundation for liability (Teman Aff. 12).

Tragically, ZNC, Virgil, Medina, and their co-Defendants betrayed Plaintiff's trust through a series of deliberate and reckless failures. They neglected to monitor court dockets, failed to respond to critical motions and orders, and ignored Plaintiff's repeated alerts via email, phone, in-person communications, and mass emails to everyone on the list of attorneys at the firm when no reply was had at times, warning of impending lapses (Compl. ¶¶ 17–18; Teman Aff. 3). To be very clear: Plaintiff repeatedly emailed and

called and spoke to many people at the firm and mass emailed every single Defendant, ensuring they were well aware of the performance issues and conspired to ignore them due to conflicts with Silver Hill Hospital's parent organization and PATH Medical. New York State courts, in unequivocal rulings, confirmed that ZNC's inaction constituted inexcusable neglect, resulting in the default of Plaintiff's $75 million case (Compl. Exs. 1–3).

Compounding this negligence, Virgil and Medina and all of ZNC misrepresented the case's status, falsely assuring Plaintiff it was "under control" and that the default was appealable, despite knowing these statements were untrue (Compl.   19; Teman Aff.   4). Rather than admit their errors, Defendants persisted in a campaign of deception, with Virgil suggesting in emails that they would escalate the case to the United States Supreme Court, a promise Plaintiff now believes was intended to mislead him and exhaust the statute of limitations (Teman Aff.   13). The Complaint alleges that this misconduct was not accidental but a calculated act of sabotage, driven by undisclosed conflicts of interest with Silver Hill Hospital's parent organization and associates and PATH Medical, which Defendants facilitated through coordinated efforts via email, phone, in-person meetings, and other communications (Compl. ¶¶ 5–6, 21).

As a direct result, Plaintiff suffered a devastating $75 million financial loss, severe emotional distress that exacerbated his PTSD, and irreparable damage to his volunteer network and business enterprises, including JCorps, 12gurusHealth, 12gurusCharity, and TouchlessLabs LLC, which depended on his leadership and reputation (Compl. ¶¶ 20, 33). Defendants' bad faith has only escalated in this litigation. In their Motion to Dismiss, they falsely assert that Plaintiff's damages expert is Dr.

Thakkar and that his 2014 letter was retracted, despite knowing Thakkar is not the expert and that his letter was never retracted. Plaintiff provided Yannucci with the true expert statement from Jay Weintraub, confirming the $75 million valuation, on [date] (Teman Aff.   5, Ex. A). ZNC was also aware of at least two additional medical experts, Kriegel and Shvil, prepared to testify to Braverman's malpractice, with their affidavits in ZNC's possession, further exposing Defendants' dishonesty (Teman Aff.   12). Additionally, their footnote 1 (p. 10) maliciously misrepresents Plaintiff's litigation history, omitting his victories and credentials—and that the most respected law professors in the nation and many community leaders side with him—in a transparent attempt to smear his character and prejudice the Court (Teman Aff. ¶¶ 6–10, Exs. B–F).

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient to state a claim that is plausible on its face, with all factual allegations accepted as true and all reasonable inferences drawn in the plaintiff's favor (Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court's task is not to demand proof at this stage but to assess whether the allegations, if true, could entitle the plaintiff to relief (Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

For pro se litigants, courts apply a particularly lenient standard, construing pleadings liberally to raise the strongest arguments they suggest, recognizing the inherent challenges of self-representation (Hickman v. Legal Aid Soc'y, 2020 WL 4549207, at *4 (S.D.N.Y. June 26, 2020)). Under Rule 9(b), fraud claims must specify the circumstances of the fraud with particularity, but intent may be alleged generally, and pro se plaintiffs are afforded flexibility in meeting this standard (Lerner v. Fleet Bank, N.A., 459 F.3d

273, 290 (2d Cir. 2006); Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of

N.Y., 375 F.3d 168, 187 (2d Cir. 2004)).

Extrinsic evidence, such as Defendants' speculative bankruptcy note (p. 8, n.8), is

improper on a 12(b)(6) motion unless judicially noticeable, which Defendants have not

established (Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d

Cir. 2006)).

Furthermore, it is irrelevant, as Virgil and ZNC were explicit that they should

bifurcate the case and go after the insurance policies—which are not impacted by

bankruptcy.

Finally, sanctions under 28 U.S.C. § 1927 are warranted when counsel's conduct

unreasonably and vexatiously multiplies proceedings, as Yannucci's deliberate

misrepresentations have done here (In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 115

(2d Cir. 2000)).

## ARGUMENT

### I. Defendants' Bad-Faith Misrepresentations Demand Denial of the Motion and Imposing Sanctions

The Defendants' Motion to Dismiss is not merely a flawed legal argument but a

calculated exercise in bad faith, resting on two deliberate falsehoods that reflect the same

pattern of fraud alleged in the Complaint. These misrepresentations, advanced by counsel

Cristina Yannucci, constitute vexatious litigation tactics that warrant both the denial of

the motion and the imposition of substantial sanctions under 28 U.S.C. § 1927 to deter

further misconduct, including costs for a weekend and two days of research, editing, and

distractions from Plaintiff's work and family obligations to rebut Yannucci's falsehoods.

First, Yannucci's knowingly false assertion that Plaintiff's damages expert is Dr. Vastal G. Thakkar and that his 2014 letter was retracted is a knowing and egregious falsehood (Yannucci Dec., p. 8). Thakkar is not Plaintiff's damages expert, a fact Yannucci and her clients at ZNC were fully aware of, as Plaintiff provided Yannucci with Jay Weintraub's statement confirming the $75 million valuation on Mon, Apr 7, 2025 (Teman Aff.   5, Ex. A).

Furthermore, Thakkar's letter, while irrelevant to the damages calculation, was never retracted, and Defendants' claim to the contrary is a baseless fabrication designed to mislead the Court.

ZNC's knowledge of at least two additional medical experts, Dr. Alyssa Kriegel and Dr. Eril Shvil, prepared to testify to Braverman's malpractice, with their affidavits in ZNC's possession, further exposes the depths of their dishonesty, as they seek to undermine the strength of Plaintiff's underlying case (Teman Aff.   12).

This lie, aimed at discrediting Plaintiff's well-supported damages claim, is a direct continuation of the fraudulent misrepresentations—such as Virgil's false claim of appealability—that caused Plaintiff's $75 million loss (Compl.   19). Such conduct is not a mere error but a calculated attempt to prejudice the Court, necessitating substantial sanctions to hold Yannucci accountable.


Second, Defendants' footnote 1 (p. 10) engages in a malicious and unethical smear campaign by selectively listing Plaintiff's prior litigation to portray him as a vexatious litigant, while deliberately omitting his significant legal victories.

Plaintiff's successes include *Teman v. City of Miami Beach* (1:2023-cv-21361, S.D. Fla.), where filing compelled the immediate release of critical body camera footage proving he was the victim of an unprovoked assault by a complete stranger whom Plaintiff did not know existed until he jumped Plaintiff from behind, and it secured judicial assignment of counsel; *Teman v. Perry* (1:19-cv-20143-FAM, S.D. Fla.) achieved Judge Perry's immediate recusal and ultimately the dismissal of a frivolous case alleging control over a website that the plaintiff conceded (a) was not  registered to Teman and (b) bore the exact language used by other patient accusing Buch of malpractice, exposing their baseless filing; and *United States v. Teman* (1:19-cr-00696, S.D.N.Y.), currently on appeal and under 28 U.S.C. § 2255 review, where Plaintiff is supported by legal luminaries such as Alan Dershowitz, Lawrence Lessig, Ronald Coleman, DOJ Civil Rights Head Harmeet Dhillon, and former U.S. Attorney Ed Martin, all of whom have publicly declared his innocence and urged a pardon, all pro bono with no prior relationships to Plaintiff (Teman Aff. ¶¶ 6–10, Exs. B–F).

This selective portrayal is particularly reprehensible given Defendants are well-aware of Plaintiff's stature as the founder of JCorps, recipient of the Jewish Federation's "Hero of the Year" award for mobilizing thousands in volunteerism, an honored guest of the White House and Mayor Bloomberg, as well as a respected entrepreneur and founder of 12gurusHealth, 12gurusCharity conferences, and TouchlessLabs LLC. (Plaintiff understands that listing his bio might be misconstrued as an exercise in ego, and is uncomfortable in doing so, but hopes the Court appreciates that he is doing so to highlight the impact the malpractice had on deeply impactful

organizations that helped many thousands of people, and the value destroyed by Defendants' fraud and legal malpractice.)

ZNC, which accepted Plaintiff as a client in part due to this reputation, knows that a jury would be profoundly sympathetic to the catastrophic harm inflicted on Plaintiff's volunteer network, businesses, and good deeds—harm that Defendants deliberately targeted through their sabotage, as alleged in the Complaint (Compl. ¶¶ 5–6, 21). By misrepresenting Plaintiff's character, Defendants seek to prejudice the Court and obscure their own misconduct, further justifying substantial sanctions.

These misrepresentations are not isolated errors but a continuation of the fraudulent and vexatious conduct that caused Plaintiff's injuries. They have forced Plaintiff to expend significant resources and time, including a weekend and two days, rebutting falsehoods, multiplying these proceedings in violation of 28 U.S.C. § 1927. The Court should deny the motion to dismiss, as Defendants' bad faith undermines their arguments, and impose substantial sanctions to hold Yannucci accountable for her unethical tactics.

## II. The Complaint Plausibly States Claims for Relief, Satisfying Rules 12(b)(6) and 9(b)

The Complaint meticulously alleges thirteen causes of action, each supported by specific factual assertions that meet the plausibility standard of *Iqbal* and *Twombly*, particularly when viewed through the lens of pro se leniency. Defendants' attempts to dismiss these claims are unavailing, as the allegations, taken as true, establish viable claims for relief.

### A. Legal Malpractice (Count I)

Defendants contend that Plaintiff fails to plead an attorney-client relationship with individual attorneys, proximate cause, or ascertainable damages (pp. 6–9). These arguments are fundamentally flawed and ignore the Complaint's robust allegations.

The existence of an attorney-client relationship is indisputable. Plaintiff formally retained ZNC through its partner Jeremy Virgil, as evidenced by the retainer agreement (Compl.    14; Yannucci Dec., Ex. 4). However, the Complaint goes further, alleging that all named Defendants, including Medina and other attorneys, actively participated in the misconduct through direct communications via email, phone, in-person meetings, and other methods (Compl.    11).

As well, Plaintiff repeatedly flagged to the entire firm that emails were being ignored, ensuring every attorney at ZNC was well aware of this issue before Plaintiff filed this complaint. (Even Yannucci, in her request for an extension of time, conceded that the Defendants were aware of this issue before she was retained because the Plaintiff had notified them via email.)

This participation renders them liable under theories of conspiracy or aiding and abetting, even if they were not signatories to the retainer agreement (Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 2017 WL 933103, at *4 (S.D.N.Y. Mar. 8, 2017)). Furthermore, Yannucci's argument is ludicrous as probably just about every law firm on the planet uses counsel who are not listed on a retainer agreement to assist with a case.

Furthermore, these Defendants are partners and shareholders, not paralegals, and they have regular meetings and conferences about cases and

clients together and make decisions together. They were intimately involved in decisions regarding the PATH case. Defendants' narrow focus on the retainer ignores these broader allegations, which are sufficient to survive dismissal at this stage.

**Proximate cause is equally well-pled.**

The Complaint alleges that Plaintiff's underlying medical malpractice case against Dr. Braverman was meritorious and valued at more than $24 million by ZNC, with Plaintiff's total claimed loss amounting to $75 million due to the default's impact (Compl. ¶¶ 15–16; Teman Aff. Ex. A).

New York State courts confirmed that ZNC's failure to respond to motions and orders directly caused the default of this valuable case (Compl. Exs. 1–3). ZNC's strategic recommendation to bifurcate the case to target PATH Medical's insurance coverage—believed to be $5 million per practitioner, with over five practitioners and the practice itself named as defendants—ensured that damages exceeding $25 million were collectible, particularly given evidence that PATH's insurer knew of Braverman's harmful practices and failed to act (Teman Aff. 11). Braverman's two convictions and the shutdown of his practice following a New York Attorney General investigation after more than 20 patients filed complaints further guarantee the availability of multiple medical experts, including Kriegel and Shvil in addition to Thakkar, to testify to his malpractice, solidifying the case's merit (Teman Aff.  12; Compl. Ex. 5).

Under New York law, Plaintiff need only allege that he would have prevailed but for Defendants' negligence, a standard easily met here (Prout v.

Vladeck, 316 F. Supp. 3d 784, 799 (S.D.N.Y. 2018)). Defendants' reliance on collectibility arguments is premature, as collectibility is a damages issue, not a pleading requirement (D'Alessandro v. Carro, 123 A.D.3d 1, 7 (1st Dep't 2014)).

Moreover, ZNC never informed Plaintiff that the case was unwinnable; to the contrary, Virgil's emails suggested pursuing the case to the United States Supreme Court, a promise Plaintiff now believes was a deliberate misrepresentation to delay accountability and exhaust the statute of limitations (Teman Aff. 13). Furthermore, Virgil had last recommended bifurcating the case to pursue the insurance policies because he and ZNC knew the case had merit.

As for damages, the Complaint alleges a pecuniary loss of $75 million, directly tied to the lost value of the underlying case and harm to Plaintiff's businesses, as confirmed by ZNC's valuation and Jay Weintraub's expert statement (Compl. 16; Teman Aff. Ex. A).

Defendants' attempt to discredit this figure by falsely claiming Thakkar's letter was retracted is baseless—Thakkar is not the damages expert, his letter was not retracted, and Yannucci had Weintraub's statement (Teman Aff. 5).

Any non-pecuniary damages, such as emotional distress, are severable and do not undermine the claim's viability (Bryant v. Silverman, 284 F. Supp. 3d 458, 470 (S.D.N.Y. 2018)).

The malpractice claim is thus plausibly pled and must survive.

**B. Fraud (Count II)**

Defendants argue that Plaintiff's fraud claim fails to meet Rule 9(b)'s particularity requirement and is duplicative of the malpractice claim (pp. 10–11). Both arguments are meritless.

The Complaint satisfies Rule 9(b) by specifying the fraudulent misrepresentations made by Virgil and Medina, including false assurances of diligent case monitoring, active pursuit of claims, and the appealability of the default, all of which were made with intent to mislead Plaintiff and conceal their negligence (Compl. ¶¶ 17–19, 27).

Plaintiff has provided further details in his affidavit, including specific communications (Teman Aff. 13).

As a pro se litigant, Plaintiff is entitled to leniency in meeting Rule 9(b)'s requirements, and courts routinely allow such specifics to be supplemented in opposition or discovery (Hickman, 2020 WL 4549207, at *4; Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)).

Defendants' own bad-faith misrepresentations in this motion—lying about Thakkar and smearing Plaintiff's reputation—further corroborate their fraudulent intent, as they continue to mislead to avoid liability (Compl. 27).

**The fraud claim is distinct from malpractice** because it involves intentional deceit, not mere negligence, and specifies that the fraud (lying about the possibility to appeal the default) occurred after and separate from the malpractice (defaulting the case).

Virgil's false claim that the default was appealable, for example, was a deliberate misrepresentation after the malpractice designed to lull Plaintiff into inaction, separate from ZNC's negligent failure to monitor the docket (Compl. 19; Calcutti v. SBU, Inc., 224 F. Supp. 2d 691, 698 (S.D.N.Y. 2002)). This claim is robustly pled and must proceed.

## C. Civil Conspiracy (Count III)

Defendants assert that the conspiracy claim fails for lack of an underlying tort or specific facts showing an agreement (pp. 12–13). This argument is unpersuasive.

As established, the Complaint plausibly alleges underlying torts of malpractice and fraud, which form the foundation for the conspiracy claim. The Complaint further details how all Defendants, motivated by conflicts with Silver Hill Hospital's parent organization and PATH Medical, coordinated their efforts to sabotage Plaintiff's case through inaction, misrepresentations, and deliberate neglect, as evidenced by their collective failure to respond to Plaintiff's alerts and court orders (Compl. ¶¶ 5–6, 18, 21).

These allegations, including specific communications via email, phone, and in-person meetings, are sufficient to infer an agreement and overt acts at the pleading stage (Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp., 121 F. Supp. 3d 321, 339 (S.D.N.Y. 2015)). Discovery is needed to uncover the full extent of Defendants' coordination, making dismissal premature.

## D. Breach of Fiduciary Duty (Count IV)

Defendants argue that the fiduciary duty claim lacks specific facts and is duplicative of malpractice (pp. 13–14). This is incorrect.

The Complaint alleges that Defendants breached their fiduciary duties through intentional misconduct, including undisclosed conflicts of interest with Silver Hill Hospital's parent organization and PATH Medical, and deliberate sabotage, which go beyond the negligence of malpractice (Compl.   31).

For example, Defendants' failure to disclose their ties to Silver Hill and PATH-affiliated associates and government officials, while actively undermining Plaintiff's case, constitutes a breach of loyalty distinct from their failure to monitor the docket (Meisel v. Grunberg, 651 F.Supp.2d 98, 114 (S.D.N.Y. 2009)).

These allegations raise factual disputes inappropriate for resolution on a motion to dismiss, ensuring the claim's survival.

**E. Intentional Infliction of Emotional Distress (Count V)**

Defendants contend that their conduct was not sufficiently "outrageous" to support an IIED claim (pp. 14–15). This argument fails to grapple with the Complaint's allegations.

The Complaint alleges that Defendants, fully aware of Plaintiff's PTSD and his significant contributions through JCorps and other good deeds, engaged in a deliberate campaign of sabotage that not only destroyed his $75 million case but also retraumatized him, causing severe emotional distress (Compl.   33).

This conduct, including lying about the case's status and targeting Plaintiff's volunteer network and businesses, approaches the "extreme and outrageous" threshold required under New York law, particularly when viewed in

the context of Defendants' fraudulent intent (Howell v. N.Y. Post Co., 596

N.Y.S.2d 350, 353 (1993)).

Furthermore, the allegations include physical sleep deprivation by Virgil

and Medina of the Plaintiff, including forcing him to sleep on the floor of Virgil's

office in Bridgeport, CT, despite knowing the Plaintiff's severe sleep issues, and

then to sign a settlement  for the CT segment of this matter when in no state to do

so. Plaintiff has since learned that Medina, Virgil and other ZNC partners have

personal and financial conflicts and connections with parties they did not disclose

including board members of Silver Hill and failed to disclose these conflicts.

At minimum, the claim raises factual issues requiring discovery, not

dismissal.

### F. Gross Negligence (Count IX)

Defendants argue that the gross negligence claim is duplicative and lacks

evidence of recklessness (pp. 18–19). This is unavailing.

The Complaint alleges that Defendants' conduct—engaging in fraud,

ignoring alerts, and sabotaging the case with reckless disregard for Plaintiff's

rights—far exceeds ordinary negligence (Compl.   41).

This reckless behavior, including Virgil's false promises to pursue the case

to the Supreme Court, supports a distinct gross negligence claim (Purchase

Partners, LLC v. Carver Federal Sav. Bank, 914 F. Supp. 2d 480, 497 (S.D.N.Y.

2012)).

The claim is plausibly pled and must proceed.

### G. Individual Defendants (Point II)

Defendants assert that individual attorneys face no personal liability due to the corporate veil (pp. 23–24). This argument is premature.

The Complaint alleges that all named attorneys actively participated in the misconduct, communicating directly with Plaintiff via email, phone, and in-person meetings, and benefited from the fraud and sabotage, potentially for personal gain (Compl. ¶¶ 11, 65).

These allegations raise plausible theories of conspiracy or aiding and abetting, which can pierce the corporate veil if Defendants acted outside their professional roles (East Hampton Union Free School Dist. v. Sandpebble Bldrs., Inc., 16 N.Y.3d 775, 776 (2011)).

Discovery is needed to clarify their individual roles, making dismissal inappropriate.

## H. Remaining Claims (Counts VI, VII, VIII, X, XII, XIII)

The remaining claims are also plausibly pled:

- **Negligent Infliction of Emotional Distress (Count VI)**: Plaintiff's PTSD exacerbation, caused by Defendants' breach of their direct duty, may qualify under New York law, particularly in the malpractice context (Compl.   33; Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000)). Factual disputes preclude dismissal.

- **Breach of Contract (Count VII)**: The Complaint alleges that ZNC breached implied terms of diligence and competence in the retainer agreement, and failed to disclose conflicts while representing no known conflicts exist, distinct from

malpractice if based on specific contractual obligations (Compl.   37; Calcutti, 224 F. Supp. 2d at 701).

- **N.Y. General Business Law § 349 (Count VIII)**: Defendants' fraudulent conduct, if systemic and affecting other clients, suggests consumer-oriented harm sufficient to survive dismissal (Compl.   64; Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 744 (1995)).

- **Constructive Fraud (Count X)**: Because the fraud claim survives, due to it being separate and apart from the acts of malpractice, constructive fraud is viable, given Defendants' fiduciary duties (Compl.   24; Tutor Perini Bldg. Corp. v. New York City Reg'l Ctr., LLC, 525 F. Supp. 3d 482, 515 (S.D.N.Y. 2021)).

- **42 U.S.C. § 1983 and N.Y. Civil Rights Law § 40-c (Counts XII, XIII)**: Because the allegations allege conspiracy with government officials -- and because at times during this fraud Medina and other Defendants served in Government roles and relied upon their statures and offices to enable their behaviour -- this claim should be allowed to proceed to discovery, which will show that Defendants used and were motivated by government positions they and associates held. To be clear, the conspiracy by Defendants was something they felt comfortable attempting because of their own and others' roles in government.

Furthermore, Plaintiff's allegation of PTSD as a disability supports at least a § 40-c claim with amendment, particularly if Defendants' conduct constituted discriminatory treatment (Compl.   33; Indig v. Vill. of Pomona, 2019 WL 6173425 (S.D.N.Y. Nov. 19, 2019)). Leave to amend should be granted if dismissed.

**Leave to Amend Should be Granted**

      Should any claim be deemed insufficiently pled, Plaintiff requests leave to amend, as is standard for pro se litigants (Fed. R. Civ. P. 15(a)).

### III. Braverman's Malpractice and ZNC's Strategy Unequivocally Support Proximate Cause

      Defendants' contention that Plaintiff cannot demonstrate the underlying case was winnable or collectible is utterly without merit and contradicted by the Complaint's allegations and supporting evidence.

      Dr. Eric Braverman's two criminal convictions and the forced closure of his practice following a New York Attorney General investigation into patient harm after more than 20 complaints provide a compelling basis for liability, ensuring that multiple medical experts, including Dr. Alyssa Kriegel and Dr. Eril Shvil, in addition to Thakkar, whose affidavits are already in ZNC's possession but which Yannucci did not disclose in order to mislead the Court, are available to testify to his malpractice (Compl. Ex. 5; Teman Aff.   12).

      ZNC itself recognized the case's strength, valuing it at more than $24 million (https://nypost.com/2014/11/11/embattled-manhattan-doc-faces-accusation-of-quackery/) and recommending a bifurcation strategy to target PATH Medical's insurance coverage, which was believed to provide $5 million per practitioner, with over five practitioners and the practice itself named as defendants, collectively exceeding $25 million in collectible damages (Teman Aff.   11).

The viability of this strategy is further bolstered by evidence that PATH's insurer was aware of Braverman's harmful practices and failed to act, increasing their exposure (Teman Aff.   11).

These facts establish that the underlying case was not only winnable but highly collectible, satisfying the proximate cause requirement at the pleading stage (Prout v. Vladeck, 316 F. Supp. 3d at 799).

Critically, ZNC and Virgil never communicated any concerns about the case's winnability to Plaintiff. Instead, they actively misled him, with Virgil suggesting in emails that the case could be pursued to the United States Supreme Court, a representation Plaintiff now believes was a deliberate falsehood intended to delay accountability and exhaust the statute of limitations (Teman Aff.   13).

Prior to that, Virgil and ZNC explicitly said they would be going after the insurance policies of the practitioners and PATH because they knew the case had merit. This deception, combined with the strength of the underlying case, underscores the plausibility of Plaintiff's malpractice claim and the egregiousness of Defendants' misconduct.

## IV. Defendants' Smear Campaign Targets Plaintiff's Good Works, Amplifying Their Bad Faith

Defendants' footnote 1 (p. 10) constitutes a malicious and unethical attempt to smear Plaintiff's character by omitting his distinguished record as the founder of JCorps, recipient of the Jewish Federation's "Hero of the Year" award, an honored guest of the White House and Mayor Bloomberg, founder of 12gurusHealth and 12gurusCharity conferences, founder of TouchlessLabs LLC, regularly invited speaker and performer,

and patent-holding inventor who has built multiple international organizations even in the face of incredible injustice and extreme health complications. ZNC, which accepted Plaintiff as a client in part due to this reputation, is fully aware that a jury would be deeply sympathetic to the catastrophic harm inflicted on Plaintiff's volunteer network, businesses, and broader good deeds—harm that Defendants deliberately targeted through their sabotage, as alleged in the Complaint (Compl. ¶¶ 5–6, 21).

By misrepresenting Plaintiff's litigation history and character, and ignoring that the most respected law professors in the nation and many community leaders side with him, Defendants seek to distract from their own misconduct, further justifying the imposition of substantial sanctions under 28 U.S.C. § 1927 for their bad-faith tactics.

## V. Sanctions Are Warranted for Defendants' Vexatious Conduct

Yannucci's deliberate and malicious misrepresentations — lying about the identity of damages expert, falsely claiming Thakkar's letter was retracted (saying he would "prefer not to be" called to testify in a case is *not* retracting a written statement or expert opinion, and not refusing to testify were he subpoenaed. Preference is not insistence.), omitting Kriegel and Shvil's statements, and smearing Plaintiff's reputation through footnote 1—have unreasonably multiplied these proceedings, forcing Plaintiff to expend a weekend and two days of resources rebutting falsehoods (28 U.S.C. § 1927).

These actions are not mere oversights but a continuation of the fraudulent conduct alleged in the Complaint, including Defendants' misrepresentations about case handling and appealability (Compl. ¶¶ 27, 64).

The Court should impose substantial costs and sanctions to deter such vexatious behavior and hold Yannucci accountable (In re 60 E. 80th St. Equities, Inc., 218 F.3d at 115).

## VI. Defendants Should Be Ordered to Retain and Utilize a Discovery Vendor

Because Defendants willfully lied to this Court and denied the existence of two medical experts (Kriegel and Shvil) and one damages expert (Weintraub), and also misrepresented the involvement of individual Defendants, the Defendants should be ordered by the Court to retain a third-party electronic discovery vendor to have all of their emails, mobile devices, and computers indexed and collected, including not only their corporate emails but also personal accounts, such as Gmail, Hotmail, Yahoo, AOL, Whatsapp, Signal, Teams, Facebook etc, because they used these accounts on this case.

All emails and documents related to this matter, Plaintiff, interactions with interested parties, and allegations of malpractice and negligence against them should be collected and immediately provided to their counsel for document review.

This will avoid further instances of missed evidence and will also clarify which falsehoods Ms. Yannucci is offering this Court with knowledge, such as lying about the identity of the monetary damages expert (she was informed of Weintraub and given his written statement by email), and which falsehoods she is advancing due to her clients' misrepresentations.

Given the ongoing pattern of brazen lying and hiding of evidence by Defendants and their counsel Yannucci, such an order is timely to avoid spoliation.

## VII. Summary Judgement should be granted or Mediation Should Be Ordered to Resolve This Dispute Efficiently

In light of the extreme bad faith by the Defendants, which shows that they have not learned their lesson and that they are willing to hide evidence and documents from the Court, and to make knowingly false statements to Your Honor, the Court should find in favor of the Plaintiff in Summary Judgement and order the Defendants to pay the full amount demanded in Summary Judgement.

Plaintiff's "*Motion for Summary Judgment or, in the Alternative, for Court-Ordered Mediation"* (ECF No. [TBD], filed March 26, 2025) seeks $300 million, including $75 million in compensatory damages and $225 million in treble punitive damages.

Given the overwhelming evidence of Defendants' liability, as confirmed by state court rulings, and their ongoing bad faith, as demonstrated by Yannucci's misrepresentations, the Court should grant Summary Judgement and the payment of full damages.

Alternatively, the Court should order mediation to facilitate a resolution of this $300 million dispute, potentially at a fraction of the claimed amount (S.D.N.Y. Local Rule 83.9). Defendants' insurer, already on notice (Compl.    9), has a strong incentive to settle to avoid catastrophic exposure.


**CONCLUSION**

The Complaint plausibly alleges thirteen causes of action, supported by New York State court rulings, Plaintiff's expert evidence from Jay Weintraub, medical expert statements from Kriegel and Shvil, and Defendants' own admissions of negligence. Defendants' Motion to Dismiss, riddled with bad-faith misrepresentations, fails to

undermine these claims and instead reinforces the pattern of fraud at the heart of this case.

The Court should deny the motion in its entirety, grant the Plaintiff's Summary Judgement motion, or alternatively order mediation to resolve this dispute efficiently, order Defendants to retain a third-party discovery vendor to prevent spoliation, and impose substantial sanctions on Cristina Yannucci under 28 U.S.C. § 1927 for her vexatious conduct, including Plaintiff's costs for a weekend and two days of rebuttal work.

In the alternative, Plaintiff respectfully requests leave to amend any dismissed claims, as is standard for pro se litigants.

Plaintiff's pro se status and the strength of his allegations demand that this case proceed to justice.

Dated: May 5, 2025

Respectfully submitted,

/s/ Ari Teman/

Ari Baruch Teman, Pro Se

Tel Aviv, Israel

ari@teman.com

**Table of Authorities**

**Cases**

- Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
- Baker v. Dorfman, 239 F.3d 415, 421 ( 2d Cir. 2000)
- Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)
- Bryant v. Silverman, 284 F. Supp. 3d 458, 470 (S.D.N.Y. 2018)
- Calcutti v. SBU, Inc., 224 F. Supp. 2d 691, 698, 701 (S.D.N.Y. 2002)
- D'Alessandro v. Carro, 123 A.D.3d 1, 7 (1st Dep't 2014)
- East Hampton Union Free School Dist. v. Sandpebble Bldrs., Inc., 16 N.Y.3d 775, 776 (2011)
- Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)
- Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006)
- Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 2017 WL 933103, at *4 (S.D.N.Y. Mar. 8, 2017)
- Hickman v. Legal Aid Soc'y, 2020 WL 4549207, at *4 (S.D.N.Y. June 26, 2020)
- Howell v. N.Y. Post Co., 596 N.Y.S.2d 350, 353 ( 1993)
- In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000)
- Indig v. Vill. of Pomona, 2019 WL 6173425 (S.D.N.Y. Nov. 19, 2019)
- Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)
- Meisel v. Grunberg, 651 F.Supp.2d 98, 114 (S.D.N.Y. 2009)
- Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 744 (1995)
- Prout v. Vladeck, 316 F. Supp. 3d 784, 799 (S.D.N.Y. 2018)
- Purchase Partners, LLC v. Carver Federal Sav. Bank, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012)
- Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp., 121 F. Supp. 3d 321, 339 (S.D.N.Y. 2015)
- Tutor Perini Bldg. Corp. v. New York City Reg'l Ctr., LLC, 525 F. Supp. 3d 482, 515 (S.D.N.Y. 2021)

**Statutes**

- 28 U.S.C. § 1927
- 42 U.S.C. § 1983
- N.Y. Civil Rights Law § 40-c
- N.Y. General Business Law § 349

**Rules**

- Fed. R. Civ. P. 12(b)(6)
- Fed. R. Civ. P. 15(a)
- Fed. R. Civ. P. 9(b)
- S.D.N.Y. Local Rule 83.9

B"H

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Ari Baruch Teman, Plaintiff,

v.

Zeldes Needle Cooper LLP, Jeremy Virgil, et al., Defendants.

Civil Action No. 1:24-cv-09830-LJL

<u>**CERTIFICATE OF SERVICE**</u>

I, Ari Baruch Teman, Plaintiff pro se, hereby certify that on May 5, 2025, I caused true and correct copies of the following documents:

- Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss,

- Affidavit of Ari Baruch Teman in Support of Opposition to Defendants' Motion to Dismiss, with exhibits, and

- Table of Authorities

to be served upon all counsel of record for the Defendants **via email and the Court's Electronic Case Filing (ECF) system via the "Temp Pro Se" email address**, pursuant to Fed. R. Civ. P. 5 and S.D.N.Y. Local Rule 5.2. Service was made on the following:

Cristina Yannucci, Esq., Counsel for Defendants

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: May 5, 2025

/s/ Ari Teman/
Ari Baruch Teman, Pro Se
Tel Aviv, Israel
ari@teman.com