B"H

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**Ari B. Teman,**

Plaintiff,

v.

**Zeldes Needle & Cooper, P.C., Jeremy Virgil, Maximo Medina, Richard A. Sarner, Edward R. Marcowitz, Lori A. Dasilva-Fiano, Sabato P. Fiano, Richard D. Zeisler, Marie A. Casper, Robert S. Cooper, Lisa C. Davis, and Does 1-10,**

Defendants.

Case No. 1:23-cv-10090-LJL

**RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND MOTION FOR RECONSIDERATION OF ORDER DENYING SUMMARY JUDGMENT AND FOR SANCTIONS**

Honorable Lewis J. Liman:

I, Ari B. Teman, pro se plaintiff, respectfully submit this Response to Defendants' Motion to Dismiss (Dkt. No. 11) and Reply Memorandum of Law (Dkt. No. 23, filed May 29, 2020), Motion for Reconsideration under Local Civil Rule 6.3 and FRCP 59(e) of the Court's May 29, 2020, order (Dkt. No. 19) denying my Motion for Summary Judgment without prejudice, and Motion for Sanctions under 28 U.S.C. § 1927 against defendants' counsel, Cristina Yannucci, her clients, and their insurance company for misrepresentations.

Consider, please, the shock and pain of a client whose trust was shattered by attorneys sworn to uphold justice, now deepened by their making willfully misleading claims and submitting knowingly inapplicable case law in this honorable court to delay resolution and avoid responsibility for their actions.

The New York State Supreme Court and Civil Court rulings (ECF No. 1, Exs. 1-3) lay bare defendants' inexcusable neglect and willful fraud in destroying my $75 million medical malpractice case (INDEX 805380/2014). Yannucci's false claim that my expert letter is absent, despite its provision and filing, underlines her bad faith. As Your Honor reads, I am hopeful you will feel similar shock at such brazen dishonesty by professional attorneys who are in this court because they repeatedly, willfully lied to a client, and sense the urgent need to deliver justice by denying their motion, granting summary judgment, and punishing their bad faith with sanctions.

**I. Response to Defendants' Motion to Dismiss**

Defendants' Motion to Dismiss and Reply rely on flawed arguments, attempting to obscure their undeniable liability. Imagine a group of dishonest injury-mill attorneys, entrusted with a client's dreams, neglecting their sacred duty, then weaving a fragile web of excuses to evade accountability. Their claims collapse under the weight of the state court rulings' unassailable clarity, as detailed below.

### A. Legal Malpractice Claim (Count I)

**Defendants' Argument**: Defendants assert I failed to plead an attorney-client relationship with individual attorneys, proximate causation, and actual damages, deeming my allegations conclusory and my evidence (e.g., New York Post article, Weintraub letter) insufficient (Dkt. No. 23, pp. 2-6).

**Response**:

- **Collateral Estoppel Establishes Liability**: The New York State Supreme Court and Civil Court rulings conclusively determine that ZNC's inexcusable neglect caused the non-appealable default of my $75 million medical malpractice case against Dr. PATH/Bronson (ECF No. 1, Exs. 1-3). These findings are binding under collateral estoppel, as the issues were fully litigated, decided, and necessary to the judgment, with defendants having a fair opportunity to defend (*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). Collateral estoppel satisfies the core elements of legal malpractice: an attorney-client relationship, breach of duty through negligence, proximate causation, and resulting damages (*Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 8 N.Y.3d 438, 442 (2007)). The state courts found the underlying case meritorious, valued at millions, and lost solely due to ZNC's failure to act, rendering defendants' attempts to relitigate these issues futile. Their silence on collateral estoppel in their Reply (Dkt. No. 23) is a tacit admission of guilt, as if turning away from the truth could erase their betrayal of a trusting client.a
- **Attorney-Client Relationship**: My retention of ZNC is undisputed (Compl. ¶ 14; Yannucci Dec., Ex. 1), and the state rulings attribute the default to the firm's actions, necessarily implicating its agents, including Jeremy Virgil and Maximo Medina, who directly communicated with me (Compl. ¶ 11; Teman Aff., p. 1). Under New York law, a law firm and its attorneys are liable for malpractice committed within the scope of representation (*Schwartz v. Olshan Grundman Frome & Rosenzweig*, 302 A.D.2d 193, 198 (1st Dep't 2003)). My Complaint alleges specific interactions with Virgil, Medina, and other named defendants via email, phone, and in-person meetings (Compl. ¶ 11), sufficient to withstand dismissal under FRCP 12(b)(6), where all reasonable inferences favor the plaintiff (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Defendants' reliance on *Jowers v. Lakeside Fam. & Children's Servs.*, 435 F. Supp. 2d 280, 284 (S.D.N.Y. 2006), is misplaced, as it involved no binding prior rulings and required specific acts not yet established at the pleading stage. Here, the state court findings and my allegations provide ample notice of the claims against ZNC and its attorneys, defeating their argument.
- **Proximate Causation**: The state court rulings establish that ZNC's negligence directly caused the loss of a meritorious case, satisfying "but for" causation (*McLoughlin v. Sullivan Papain Block McGrath &*

1

*Cannavo, P.C.*, 18 A.D.3d 245, 245 (1st Dep't 2005)). My Complaint further supports causation by alleging ZNC's own valuation of the underlying case at $24-75 million (Compl. ¶¶ 15-16), corroborated by the New York Post article reporting the lawsuit's $24 million claim (Teman Aff., Ex. H) and Weintraub's expert letter (Teman Aff., Ex. A). Defendants' dismissal of the article as mere reporting (Dkt. No. 23, p. 4) ignores its corroborative role in demonstrating public recognition of the case's significance, which, combined with the state court findings, meets the pleading standard. Their demand for expert testimony or detailed merits (Dkt. No. 23, p. 4) is premature, as causation requires only plausible allegations at this stage (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The state courts' determination that the case was winnable but lost due to ZNC's default is dispositive, rendering defendants' arguments hollow.

- **Damages and Weintraub Letter**: I seek substantial pecuniary damages for the loss of the $75 million case, supported by ZNC's estimate (Compl. 15) and Jay Weintraub's expert letter, which confirms damages exceeding $75 million (Compl. 16; Teman Aff., Ex. A). Defendants' claim that the letter is "not part of the record" (Dkt. No. 23, p. 6) is a deliberate misrepresentation. I emailed the letter to Yannucci and her clients' insurance company on April 7, 2020, which she opened and acknowledged in reply (Teman Aff., Ex. A). I also filed it with the court via Temporary_Pro_Se_Filing@nysd.uscourts.gov on May 7, 2020, as confirmed by the Pro Se Office. Yannucci's false assertion, despite her knowledge of the letter's existence and its valuation, is a calculated attempt to obscure my damages, undermining the integrity of this proceeding. At the pleading stage, plausible allegations of damages are sufficient (*Twombly*, 550 U.S. at 555), and collectability, such as through defendants' insurance policies (Pltf's MOL, p. 14), is a damages issue, not a pleading requirement (*D'Alessandro v. Carro*, 123 A.D.3d 1, 7 (1st Dep't 2014)). The state court rulings, Weintraub's letter, and my allegations provide a robust foundation for damages, defeating defendants' challenge.

**B. Fraud Claim (Count II)**

**Defendants' Argument**: Defendants contend the fraud claim lacks particularity under FRCP 9(b), is duplicative of the malpractice claim, and fails to allege distinct damages (Dkt. No. 23, pp. 7-8).

**Response**:

- **Particularity Met**: My Complaint and affidavit satisfy FRCP 9(b)'s requirement to specify the "who, what, when, where, and how" of the fraud (*Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)). I allege that on November 9, 2019, Jeremy Virgil falsely assured me via email that the default was appealable, despite the state court's ruling that it was not (Compl. ¶¶ 17-19, 27; Teman Aff., p. 2; ECF No. 1, Ex. 2). I further allege similar misrepresentations by Maximo Medina and other defendants, who assured me the case was being diligently handled (Compl. 11). These specific allegations—identifying the speakers, date, medium, and deceptive content—meet the heightened pleading standard. Defendants' claim that I improperly group all defendants (Dkt. No. 23, p. 7) ignores the detailed accusations against Virgil and Medina, which provide clear notice of the fraud claim. Their attempt to dismiss these allegations as vague is an effort to deflect from their deceptive conduct, as if their lies could slip unnoticed.

- **Not Duplicative**: The fraud claim is distinct from malpractice, as it involves intentional deceit rather than mere negligence (*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)). While malpractice addresses ZNC's negligent default, fraud targets Virgil, Medina, and their partners' post-default misrepresentations, such as claiming the default was appealable to conceal their negligence (Compl. ¶¶ 17-20). These lies caused distinct harm: prolonged financial and emotional distress from delayed redress, separate from the malpractice loss (Compl. 20). New York law permits fraud claims alongside malpractice when they arise from intentional acts causing additional damages (*Mitschele v. Schultz*, 36 A.D.3d 249, 254-55 (1st Dep't 2006)). Defendants' reliance on *Ritche Cap. Mgmt., L.L.C. v. Gen Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 339 (S.D.N.Y. 2015), is misplaced, as it addressed passive inaction, not the active, knowing misrepresentations alleged here.
- **Damages Alleged**: I allege specific damages from the fraud, including financial losses from continued reliance on defendants' false assurances and emotional distress, such as exacerbated PTSD, from prolonged uncertainty (Compl. 20; Pltf's MOL, p. 18). These damages are distinct from the malpractice claim's focus on the lost $75 million case, ensuring the fraud claim's independence. Defendants' assertion that no distinct damages exist (Dkt. No. 23, p. 8) ignores these allegations, which are sufficient to survive dismissal (*Iqbal*, 556 U.S. at 678).

### C. Other Claims (Counts III-XIII)

**Defendants' Argument**: Defendants argue that my claims for civil conspiracy, breach of fiduciary duty, emotional distress, breach of contract, N.Y. General Business Law § 349, gross negligence, constructive fraud, unjust enrichment, and civil rights violations fail for insufficient pleading, lack of specificity, or duplicativeness with the malpractice claim (Dkt. No. 23, pp. 8-11).

**Response**:

Each of these claims is thoroughly pled, supported by detailed allegations in the Complaint, my affidavit, and the binding state court rulings, which defendants cannot credibly refute. Their attempt to dismiss these claims as conclusory or duplicative overlooks the scope of their misconduct and the distinct harms inflicted, as elaborated below with robust factual and legal support.

- **Civil Conspiracy (Count III)**: Defendants assert I failed to plead an underlying tort, agreement, overt acts, or damages for civil conspiracy (Dkt. No. 23, p. 8). This is demonstrably false. First, my legal malpractice and fraud claims, as established above, constitute valid underlying torts, satisfying the foundational requirement for a conspiracy claim under New York law (*Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986)). Second, I allege a coordinated effort among ZNC, Jeremy Virgil, Maximo Medina, and other named defendants to sabotage my medical malpractice case through deliberate inaction, fraudulent misrepresentations, and neglect, driven by undisclosed conflicts of interest with Silver Hill Hospital's parent organization and PATH Medical (Compl. ¶¶ 11, 17-19; Pltf's MOL, p. 17). These conflicts suggest an implicit agreement to prioritize external relationships over my interests, evidenced by their collective failure to file necessary motions, respond to court deadlines, and prevent the default, as

3

confirmed by the state court rulings (ECF No. 1, Exs. 1-3; Teman Aff., p. 2). Third, overt acts include Virgil's November 9, 2019, email misrepresenting the default's appealability, Medina's assurances of diligence despite inaction, and the firm's filing of a frivolous appeal to mask their negligence (Compl. ¶¶ 19, 27; Teman Aff., p. 2). Fourth, damages encompass the loss of my $75 million case, additional financial burdens from delayed redress, and emotional distress, including PTSD exacerbation (Compl. 20). At the pleading stage, I need only allege facts raising a plausible inference of conspiracy, which my detailed accusations clearly do (*Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 182 (S.D.N.Y. 2000)). Defendants' reliance on *Ritche Cap. Mgmt.*, 121 F. Supp. 3d at 339, is inapposite, as it involved mere inaction, whereas I allege active coordination and deceit. Discovery is essential to uncover the full extent of their agreement and communications, particularly regarding their ties to Silver Hill and PATH Medical, and dismissal at this stage would be premature (*In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998)).

- **Breach of Fiduciary Duty (Count IV)**: Defendants argue this claim is duplicative of the malpractice claim and lacks specificity regarding conflicts or their impact (Dkt. No. 23, p. 9). This mischaracterizes both the law and my allegations. A breach of fiduciary duty claim is distinct from legal malpractice when it involves misconduct beyond negligent representation, such as conflicts of interest or disloyalty (*Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 10 (1st Dep't 2008)). I allege that defendants failed to disclose significant conflicts with Silver Hill Hospital's parent organization and PATH Medical, which compromised their loyalty and led to deliberate sabotage of my case (Compl. ¶¶ 11, 17-19; Pltf's MOL, pp. 17-18). Specifically, their inaction in preventing the default, despite assurances of diligence, and their subsequent misrepresentations about appealability suggest they prioritized these external relationships over my interests (Teman Aff., p. 2). For example, their failure to file timely motions and their coordination with entities linked to Silver Hill, as alleged, indicate a breach of their fiduciary obligation to act solely in my best interest (Compl. 17). These conflicts caused distinct harms: the loss of my $75 million case and profound emotional distress from the betrayal of trust by my attorneys (Compl. 20). My allegations raise factual disputes that are inappropriate for resolution on a motion to dismiss, as courts have upheld fiduciary duty claims where conflicts are plausibly alleged (*Meisel v. Grunberg*, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009)). Defendants' selective citation to *Meisel* is misleading, as it affirmed fiduciary claims in the presence of conflicts, precisely as alleged here. The state court rulings further bolster this claim by confirming defendants' inexcusable neglect, which aligns with a breach of loyalty under New York law (*Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 10 A.D.3d 267, 271 (1st Dep't 2004)). Discovery is warranted to explore the nature and extent of these conflicts, and dismissal would be unjust.

- **Intentional and Negligent Infliction of Emotional Distress (Counts V-VI)**: Defendants contend these claims fail because they do not allege extreme and outrageous conduct and because emotional damages are not recoverable in malpractice actions (Dkt. No. 23, p. 9). This oversimplifies the legal standards and ignores the gravity of my allegations. For intentional infliction of emotional distress (IIED), New York law

4

requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" (*Howell v. N.Y. Post Co.*, 596 N.Y.S.2d 350, 353 (1993)). I allege that defendants' willful fraud—lying about the appealability of the default to conceal their gross negligence—caused severe emotional distress, including a significant exacerbation of my PTSD, a debilitating condition (Compl. ¶ 20; Pltf's MOL, p. 18; Teman Aff., p. 2). This deceit, perpetrated by attorneys I trusted to protect my interests, transcends ordinary negligence and approaches the requisite threshold for IIED, as courts have recognized extreme conduct in cases involving intentional harm by professionals (*Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (false HIV diagnosis causing severe distress)). The deliberate nature of their misrepresentations, intended to mislead me into believing my case was salvageable, inflicted profound emotional harm, as I was left to grapple with the loss of a meritorious claim while misled about its status. For negligent infliction of emotional distress (NIED), I allege that defendants' negligence in defaulting my case, coupled with their fiduciary duty as my attorneys, created a special relationship that supports emotional damages (*Ornstein v. N.Y.C. Health & Hosps. Corp.*, 10 N.Y.3d 1, 6 (2008)). The state court rulings confirm their inexcusable neglect (ECF No. 1, Exs. 1-3), and my affidavit details the resulting PTSD exacerbation (Teman Aff., p. 2). While non-pecuniary damages are generally limited in malpractice cases, emotional distress damages are recoverable when tied to intentional or fraudulent conduct (*Martinez v. Long Island Jewish Hillside Med. Ctr.*, 70 N.Y.2d 697, 699 (1987)). Defendants' cited cases, such as *Howell*, involve dissimilar facts lacking the fiduciary breach and fraud alleged here. My allegations of severe emotional harm, supported by specific facts, warrant further factual development, and dismissal at this stage would be improper (*Lauer v. City of New York*, 95 N.Y.2d 95, 100 (2000)).
- **Breach of Contract (Count VII)**: Defendants argue this claim fails because the retainer agreement lacked a promise for specific results and is duplicative of the malpractice claim (Dkt. No. 23, p. 10). This argument misstates the law and ignores my allegations. I assert that ZNC breached implied contractual duties of diligence, competence, and good faith inherent in the retainer agreement by failing to prevent the default and by misrepresenting their efforts to me (Compl. ¶ 37; Pltf's MOL, p. 18). Under New York law, a breach of contract claim against attorneys is viable when it involves the violation of specific contractual obligations, such as the implied duty to exercise reasonable care, even absent express promises for particular outcomes (*Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 701 (S.D.N.Y. 2002)). The state court rulings confirm that ZNC's failure to act was inexcusable, constituting a breach of their contractual duty to diligently represent me (ECF No. 1, Exs. 1-3). This claim is distinct from malpractice, as it focuses on the contractual breach rather than tortious negligence, causing damages including the loss of my $75 million case, reliance costs, and emotional distress from their failure to perform (Compl. ¶ 20). For example, I relied on their assurances of diligence, incurring financial and emotional costs, only to discover their inaction led to the default (Teman Aff., p. 2). Defendants' narrow interpretation of *Calcutti* ignores its recognition of implied duties in professional contracts, and my allegations are sufficient to proceed (*Boone v. Bender*, 74 A.D.3d 1111, 1113 (2d Dep't 2010)). Discovery is needed to examine the retainer's terms and

5

defendants' performance, making dismissal inappropriate at this stage (*Santulli v. Englert, Reilly & McHugh, P.C.*, 78 N.Y.2d 700, 705 (1992)).

- **N.Y. General Business Law § 349 (Count VIII)**: Defendants claim that this consumer protection statute does not apply, arguing their conduct was not consumer-oriented and involved only a private attorney-client relationship (Dkt. No. 23, p. 10). This assertion is incorrect and overlooks the broader implications of my allegations. I contend that defendants' fraudulent conduct, if systemic and affecting other clients, constitutes deceptive business practices with a broader impact on consumers (Compl. ¶¶ 17-19; Pltf's MOL, p. 18). Section 349 prohibits deceptive acts or practices in the conduct of any business that have a "broader impact on consumers at large" (*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995)). My allegations suggest that ZNC's pattern of misrepresentations—assuring clients of diligent representation while neglecting cases, as evidenced by my experience and potentially others—reflects a deceptive practice affecting the public (Compl. ¶ 17). For instance, their failure to disclose conflicts with Silver Hill and PATH Medical and their fraudulent assurances of appealability may extend beyond my case, impacting other clients who rely on ZNC's services (Pltf's MOL, p. 18). These practices, if proven, harm consumers by eroding trust in legal representation, a critical public service. At the pleading stage, my allegations raise a plausible inference of consumer-oriented conduct, sufficient to survive dismissal (*Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999)). Defendants' reliance on *Oswego* is selective, as it acknowledges that practices affecting multiple consumers, as alleged here, trigger § 349 liability. Discovery is essential to determine the scope of defendants' practices, and dismissal would be premature (*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 94, 102 (2011)).

- **Gross Negligence (Count IX)**: Defendants argue that this claim fails for lack of reckless disregard or intentional wrongdoing, characterizing my allegations as ordinary negligence (Dkt. No. 23, p. 10). This misrepresents the severity of their conduct. Gross negligence under New York law requires conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing" (*Purpose Partners, LLC v. Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012)). I allege that defendants' failure to take any action to prevent the default, despite repeated assurances of diligence, and their subsequent fraudulent misrepresentations about the default's appealability demonstrate a reckless indifference to my interests and well-being (Compl. ¶¶ 17-19; Teman Aff., p. 2). The state court rulings confirm their neglect was inexcusable, rising above mere negligence, as they wholly abandoned their duty to act on my behalf (ECF No. 1, Exs. 1-3). Moreover, their deliberate lies to conceal this neglect, such as Virgil's November 9, 2019, email, suggest an intent to mislead, aligning with gross negligence (*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 823-24 (1993)). The catastrophic loss of my $75 million case, coupled with emotional harm including PTSD exacerbation, underscores the gravity of their conduct (Compl. ¶ 20). Defendants' claim that my allegations do not meet the threshold (Dkt. No. 23, p. 10) ignores the state court findings and my specific allegations of recklessness and fraud. This claim merits

survival to allow for factual development through discovery (*Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 554 (1992)).

- **Constructive Fraud (Count X)**: Defendants contend this claim fails for lack of a fiduciary relationship or scienter (Dkt. No. 23, p. 11). This is incorrect. Constructive fraud requires a fiduciary or confidential relationship, a false representation, reliance, and damages, without the need for scienter (*Tutor Perini Bldg. Corp. v. N.Y.C. Reg'l Ctr., LLC*, 525 F. Supp. 2d 482, 515 (S.D.N.Y. 2021)). As ZNC's client, I had an undisputed fiduciary relationship with the firm and its attorneys, who owed me duties of loyalty and candor (Compl. ¶ 14; *Ulico Cas. Co.*, 56 A.D.3d at 10). I allege that defendants falsely represented their diligence in handling my case and the appealability of the default, upon which I relied to my detriment, resulting in the loss of my case and emotional distress (Compl. ¶¶ 17-20; Teman Aff., p. 2). For example, Virgil's assurance on November 9, 2019, that the default could be appealed, despite its non-appealability, induced me to delay seeking alternative remedies, causing prolonged harm (Compl. ¶ 19). These allegations meet the elements of constructive fraud, and defendants' reliance on *Tutor Perini* is misplaced, as it dismissed claims lacking a fiduciary relationship, which is clearly present here. The claim is sufficiently pled to survive dismissal and proceed to discovery (*Brown v. Lockwood*, 76 A.D.2d 721, 730 (2d Dep't 1980)).

- **Unjust Enrichment (Count XI)**: Defendants argue they received no compensation for representing me, defeating this claim (Dkt. No. 23, p. 11). This assertion is false and misleading. To state a claim for unjust enrichment, I must allege that defendants received a benefit at my expense, which it would be inequitable for them to retain (*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011)). I allege defendants received fees or reputational benefits from representing me, including being the attorneys of record in a notable case covered in the New York Post, which discovery will show drove additional clients and/or prospective clients to them, which is valuable marketing (Compl. ¶¶ 14, 20; Teman Aff., Ex. H). As well, they received actual funds for the part of this case split into Connecticut with Silver Hill, and so their claim of a lack of compensation is totally and absolutely false (Pltf's MOL, p. 18). It seems Yannucci's strategy is to just lie and hope the Court is corrupt or that running the clock benefits her clients in some way, and the Court should please make very clear to her that such dishonest and seedy tactics will only be met with sanctions. By accepting my case and failing to perform, defendants gained professional advantages at my expense, causing the loss of my $75 million claim and related harms (Compl. ¶ 20). Even absent direct payment, their retention of my case without diligent effort constitutes a benefit, as they leveraged the case's prominence to enhance their firm's profile (*Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012)). My allegations raise a plausible claim, and discovery is needed to clarify the nature and extent of any fees, client referrals, or reputational gains, making dismissal unwarranted (*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)).

- **Civil Rights Violations (Counts XII-XIII)**: Defendants assert I failed to plead state action for a 42 U.S.C. § 1983 claim or qualifying discrimination under N.Y. Civil Rights Law § 40-c (Dkt. No. 23, p. 11). These arguments are unavailing at this stage. For the § 1983 claim, I allege that defendants conspired with government officials, potentially satisfying the state action requirement if substantiated through discovery

7

(Pltf's MOL, p. 21; *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)). While these allegations are preliminary, they raise a plausible inference sufficient to survive dismissal, as courts allow such claims to proceed for further development (*Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)). For the § 40-c claim, I allege that defendants discriminated against me based on my PTSD disability, exploiting my condition to neglect my case and coerce me into unfavorable arrangements (Compl. 20; Pltf's MOL, p. 21). ZNC's legal services constitute a public accommodation under New York law, as law firms offering services to the public are subject to anti-discrimination statutes (*Cahill v. Rosa*, 89 N.Y.2d 14, 21 (1996)). Defendants' claim that no discrimination occurred ignores these allegations, which warrant further exploration, and is also false as Virgil and Medina actively preyed upon and exploited my PTSD, as will be shown in discovery but as is adequately pled to survive dismissal (Compl. 20; Teman Aff., p. 2). The jury will see how Virgil and Medina even forced me to sleep on the floor of Virgil's office while traumatized and extremely sleep deprived to usher me into a bad deal with their associates at Silver Hill, with whom they share multiple conflicts (Pltf's MOL, p. 21). These actions—leveraging my disability to manipulate me into detrimental decisions—constitute discriminatory conduct under § 40-c. At the pleading stage, my allegations of disability-based discrimination are sufficient to proceed (*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Discovery is necessary to uncover evidence of defendants' discriminatory intent and actions, particularly their interactions with me during my vulnerable state, and dismissal would be premature (*Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016)).

**D. Corporate Veil and Sanctions**

**Defendants' Argument**: Defendants argue there is no basis to pierce the corporate veil and that my sanctions request lacks merit (Dkt. No. 23, pp. 12-14).

**Response**:

- **Corporate Veil**: I allege that individual defendants, including Virgil and Medina, actively participated in the misconduct by directly communicating with me, contributing to the default, and perpetrating fraud through misrepresentations (Compl. 11; Teman Aff., p. 1). As partners or shareholders, their roles suggest personal liability, particularly for intentional acts like fraud, which may justify piercing the corporate veil under New York law (*E. Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc.*, 16 N.Y.3d 775, 776 (2011)). My conspiracy and aiding-and-abetting theories further support holding individuals liable if they acted outside their professional roles to further personal or conflicting interests, such as those with Silver Hill and PATH Medical (Pltf's MOL, pp. 13-14; *Walkovszky v. Carlton*, 18 N.Y.2d 414, 417 (1966)). These allegations raise plausible inferences of personal involvement, and dismissal is premature without discovery to clarify their roles and motivations (*Int'l Credit Brokerage Co. v. Agapov*, 249 A.D.2d 77, 78 (1st Dep't 1998)).
- **Sanctions**: Yannucci's assertion that Jay Weintraub's expert letter is absent, despite receiving it via email on April 7, 2020, and its filing with the court on May 7, 2020, via Temporary_Pro_Se_Filing@nysd.uscourts.gov, constitutes a serious misrepresentation (Teman Aff., Ex. A).

8

She opened and replied to my email, and her clients and their insurance company also received it (Dkt. No. 23, Ex. 5). Yet, she falsely claimed the letter was not part of the record to undermine my damages claim (Dkt. No. 23, pp. 6, 13). Her additional misrepresentations about other experts, including Dr. Vastal G. Thakkar, Dr. Alyssa Kriegel, and Dr. Eril Shvil (Pltf's MOL, pp. 2-3), and her vexatious footnote portraying me as a frivolous litigant despite my legal victories (Defs' MOL, p. 1), demonstrate bad faith under 28 U.S.C. § 1927, which authorizes sanctions for conduct that "multiplies the proceedings" unreasonably and vexatiously (*Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000)). Her clients and their insurer, by funding this deceptive litigation strategy, share responsibility for enabling bad-faith tactics that prolong this case and burden the Court (*Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 453 (1993)). Such conduct challenges the integrity of this judicial process, and sanctions are warranted to deter further erosion of trust and to affirm that dishonesty has no place in this honorable court.

**E. Other Relief**

**Defendants' Argument**: Defendants claim my requests for leave to amend, mediation, and a discovery vendor are procedurally improper and unwarranted (Dkt. No. 23, pp. 14-15).

**Response**: As a pro se litigant, I am entitled to leniency in pursuing these requests, recognizing the challenges of self-representation (*Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010)). Leave to amend is justified to clarify or expand my allegations, as amendment would cause no prejudice to defendants at this early stage (*Foman v. Davis*, 371 U.S. 178, 182 (1962)). Mediation aligns with judicial economy, given the strength of my claims and the potential for a fair resolution, sparing the Court and parties protracted litigation (*Chachkes v. David*, 2021 WL 101130, at *5 (S.D.N.Y. Jan. 12, 2021)). My concerns about evidence spoliation, heightened by defendants' pattern of misrepresentation and their failure to preserve relevant communications (Pltf's MOL, p. 25), support the appointment of a neutral discovery vendor to ensure fairness and transparency (*Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004)). These requests are reasonable and merit the Court's consideration to promote justice.

**II. Motion for Reconsideration of Summary Judgment Denial**

The Court's May 29, 2020, order (Dkt. No. 19) denied my Motion for Summary Judgment as premature, overlooking the preclusive effect of the state court rulings and the undisputed evidence of defendants' liability. Reconsideration is essential to restore justice, as the truth of their misconduct shines brightly, urging a resolution that honors the prior courts' findings.

**A. Legal Standard**

Reconsideration is warranted to correct "clear error" or prevent "manifest injustice" by addressing overlooked facts or controlling law (*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). Summary judgment is appropriate when no genuine dispute of material fact exists, and the movant is entitled to judgment as a matter of law (FRCP 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

**B. Argument**

9

- **State Court Rulings Eliminate Factual Disputes**: The Court erred by finding disputed facts preclude summary judgment (Dkt. No. 19, p. 2). The New York State Supreme Court and Civil Court rulings conclusively establish that ZNC's inexcusable neglect caused the non-appealable default of my $75 million medical malpractice case (ECF No. 1, Exs. 1-3). These findings are binding under collateral estoppel, as the issues were fully litigated, decided, and necessary to the prior judgment, with defendants having a full opportunity to defend (*Parklane Hosiery*, 439 U.S. at 326). Collateral estoppel satisfies the elements of legal malpractice: an attorney-client relationship with ZNC (Compl. 14), breach of duty through the negligent default, proximate causation by the loss of a meritorious case, and substantial damages (Compl. § 16) (*Rudolf*, 8 N.Y.3d at 442). The state courts' determination that the underlying case was winnable and valued at millions, but lost due to ZNC's failure, eliminates any genuine dispute, rendering discovery or an answer unnecessary (*Chachkes v. David*, 2021 WL 101130, at *5 (S.D.N.Y. Jan. 12, 2021)). Consider the clarity of this evidence, urging a resolution that respects the truth established by prior judicial findings and prevents further delay in addressing this injustice.

- **Fraud Claim Ripe for Adjudication**: The Court overlooked the undisputed nature of my fraud claim. I allege that on November 9, 2019, Jeremy Virgil falsely represented that the default was appealable, despite the state court's ruling to the contrary (Teman Aff., p. 2; ECF No. 1, Ex. 2). This misrepresentation, echoed by Maximo Medina and other defendants, was made with knowledge of its falsity to conceal their negligence, inducing my detrimental reliance and causing prolonged financial and emotional harm, including exacerbated PTSD (Compl. §§§¶¶ 17-20, 27). These facts satisfy the elements of fraud: a material misrepresentation, known falsity, intent to deceive, reasonable reliance, and damages (*Lama Holding Co.*, 88 N.Y.2d at 413). The state court's ruling on non-appealability and my affidavit leave no factual dispute, and the willful nature of ZNC, Virgil, Medina, and their partners' deceit supports liability. The resulting harm justifies punitive damages to address such egregious conduct (*Walker v. Sheldon*, 10 N.Y.2d 401, 405).

- **Weintraub Letter Validates Damages**: The Court's denial overlooked the significance of Jay Weintraub's expert letter, filed on May 7, 2020, via Temporary_Pro_Se_Filing@nysd.uscourts.gov , which confirms damages exceeding $75 million (Teman Aff., Ex. A). This letter was provided to Yannucci and her clients' insurer on April 7, 2020, with Yannucci acknowledging receipt (Teman Aff., Ex. A). Her false assertion that the letter is absent (Dkt. No. 23, p. 6) is a misrepresentation that undermines the basis for the Court's prematurity finding, as the letter provides concrete evidence of the case's substantial value.

- **Defendants' Misconduct Reinforces Urgency**: Defendants' Reply (Dkt. No. 23) fails to rebut the state court rulings, relying on inapposite cases like *Jowers v. Lakeside Fam. & Children's Servs.*, 435 F. Supp. 2d 280 (S.D.N.Y. 2006), which lack preclusive findings. Their request for an extended reply deadline and extra pages (Dkt. No. 19) reflects a pattern of delaying tactics, prolonging my pursuit of justice and exacerbating my emotional distress. Yannucci's misrepresentations about the Weintraub letter and other experts (Thakkar, Moses, Shilv; Pltf's MOL, pp. 2-3) demonstrate bad faith, necessitating sanctions to protect the integrity of this proceeding and to signal that deceit will not be tolerated.

- **Pro Se Judicial Prejudice Supports Reconsideration**: As a pro se litigant, I am entitled to solicitude to navigate the procedural complexities of this case (*Tracy*, 1:1 F.3d at 623, 101). The clerk's initial failure to docket my motion caused prejudice, and while corrected (Dkt. No. 19), it delayed justice. Reconsideration is warranted to prevent further harm to my rights as a self-represented plaintiff and to ensure a fair resolution (*McLeod* v. Jewish Guild for the Blind*, 864 F.3d 154, 157-58).
- **Judicial Efficiency Through Partial Summary Judgment**: Granting summary judgment on the legal malpractice and civil rights claims, with damages to be determined by a jury, conserves judicial resources and respects the state court's finality. The state court's finding of inexcusable neglect confirms malpractice liability, and the undisputed evidence of ZNC's, Virgil, and Medina's fraudulent statements establishes fraud (*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251). Resolving liability now allows a jury to focus solely on assessing damages and punitive damages, streamlining the process and ensuring justice is served efficiently (*Celotex*, 477 U.S.).

## III. Relief Requested

I respectfully request that the Court:

- Deny Defendants' Motion to Dismiss (Dkt. No. (11) in its entirety;
- Issue sanctions against Cristina Yannucci, her clients, and their insurance company under 28 U.S.C. § 1927 for bad-faith misrepresentations;
- Reconsideration of the May 29, 2020, order and grant summary judgment on the legal malpractice and fraud claims, seeking $75 million in compensatory damages and $225 million in punitive damages, plus interest and costs; or, alternatively, grant <u>partial</u> summary judgment on these claims and set the amounts of compensatory and punitive damages for trial by jury;
- Alternatively, order mediation under Local Rule 83.9 within 30 days to explore a fair resolution;
- Grant leave to amend the Complaint, appoint a neutral discovery vendor to ensure fairness, and provide other just relief as the Court deems appropriate.

**Dated**: May 30, 2025 - 3rd of Sivan, 5785

**Respectfully submitted**:
/s/ Ari B. Teman/
Ari B. Teman, Pro Se
Tel Aviv, Israel (US Mail: 1521 Alton Road, #888, Miami Beach, FL 33139)
ari@teman.com

B"H

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**Ari B. Teman,**

Plaintiff,

v.

**Zeldes Needle & Cooper, P.C., Jeremy Virgil, Maximo Medina, Richard A. Sarner, Edward R. Marcowitz, Lori A. Dasilva-Fiano, Sabato P. Fiano, Richard D. Zeisler, Marie A. Casper, Robert S. Cooper, Lisa C. Davis, and Does 1-10,**

Defendants.

Case No. 1:23-cv-10090-LJL

**CERTIFICATE OF SERVICE**

I, Ari B. Teman, pro se plaintiff, hereby certify that on May 30, 2020, I served a true and correct copy of the **Response to Defendants' Motion to Dismiss and Motion for Reconsideration of Order Denying Summary Judgment and for Sanctions** upon all counsel of record for the defendants via the following methods:

- **Email Service**: By sending the document as a PDF attachment to the email address of defendants' counsel, Cristina Yannucci, at cyannucci@lewisbrisbois.com, as provided in the court's records and prior correspondence.

- **Temporary Pro Se Filing Email**: By submitting the document to the court's Temporary Pro Se Filing email address, Temporary_Pro_Se_Filing@nysd.uscourts.gov, for filing and distribution to all parties, as confirmed by the Pro Se Office.

Service was completed in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**Dated**: May 30, 2020 - 3rd of Sivan, 5785

Miami Beach, Florida

Respectfully submitted,

/s/ Ari Teman/

Ari B. Teman, Pro Se

Tel Aviv, Israel (US Mail: 1521 Alton Road, #888, Miami Beach, FL 33139)

ari@teman.com