UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARI BARUCH TEMAN,
Plaintiff,
-v-
ZELDES NEEDLE COOPER LLP, *et al.*,
Defendants.                                                                 24-cv-09830 (LJL)

**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**

HONORABLE LEWIS J. LIMAN, *United States District Judge*:

Plaintiff Ari Baruch Teman, pro se, respectfully submits this response to the Court's Order dated October 27, 2025 (Dkt. No. 27), directing the parties to show cause by November 10, 2025, why this action should not be stayed pending Mr. Teman's return to the United States.

**I. The Court Should Not Stay This Action**

   **1. The Fugitive Disentitlement Doctrine Is Discretionary and Inapplicable Here**

      The fugitive disentitlement doctrine is not mandatory; it is a discretionary tool that courts apply only where a litigant's absence meaningfully interferes with the judicial process. *See Degen v. United States*, 517 U.S. 820, 825 (1996).

      Mr. Teman is **not a fugitive**. He traveled to and remained in Israel **with explicit permission of the Court** in the criminal matter. His continued presence in Israel is due solely to an **extremely serious, life-threatening medical condition**—not willful flight.

      Objective medical testing (ETF) at Sheba Medical Center confirms complete Eustachian tube dysfunction. Two board-certified ENT specialists have advised against air travel, warning that flying risks permanent deafness or death. The Government has admitted it cannot locate a single expert to contradict these findings, and even had an expert make a statement that he could *not* disagree with Teman's doctor. Engelmayer is practicing medicine without a license by contradicting two board-certified physicians who rely on an *objective medical test that takes zero patient input.*

      Mr. Teman is now pending an **MRI to determine whether masses blocking his Eustachian tubes are benign or malignant**. These masses and associated symptoms are **well-documented on the record** in the criminal case, having required surgery as well as monitoring at Sylvester Cancer Center (U. Miami) and therefore cannot be dismissed as pretextual.

      The order requiring return by commercial vessel remains pending appeal in both SDNY and SDFL; no such vessels exist between Israel and the United States during active conflict. Compliance was and remains impossible -- and Mr. Teman was very proactive in seeking trael by boat regardless, even contacting cargo ship operators.

      **Mr. Teman remains fully active in the federal courts**, filing motions, appeals, and other papers in the Southern District of New York, the Southern District of Florida, and their respective Courts of

Appeals. The fugitive disentitlement doctrine applies **only to those who flee or hide to avoid judicial process**—not to litigants who, like Mr. Teman, **engage vigorously with the courts**. *See Ortega-Rodriguez v. United States*, 507 U.S. 234, 242 (1993) ("[T]he fugitive disentitlement doctrine is grounded in the notion that a fugitive 'flouts the judicial process' by absenting himself from it."); *Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 281 (2d Cir. 1997) (doctrine inapplicable where party "continued to litigate" and "did not attempt to evade the legal process").

**2. No Prejudice to the Court or Defendants Justifies a Stay; Motions Are Long Overdue for Decision**

All substantive motions—including Plaintiff's motion for summary judgment—have been fully briefed since **June 2025**, nearly **six months ago**. No depositions, hearings, or in-person appearances are required to resolve them. The sole remaining judicial act is to rule on the pending motions, which turn entirely on the documentary record.

Federal courts have long held that **undue delay in ruling on ripe motions violates principles of efficient judicial administration and due process.** *See, e.g.*, *United States v. Money*, 221 F.3d 1352 (Table), 2000 WL 977307, at *2 (9th Cir. July 13, 2000) (six-month delay in ruling on post-trial motions "unreasonable" and grounds for mandamus); *In re McBryde*, 117 F.3d 208, 224 (5th Cir. 1997) (judicial delay undermines public confidence and constitutes abuse of discretion when "unjustified and protracted").

The Second Circuit has similarly emphasized that "justice delayed is justice denied" and that courts must act with "reasonable promptness" on fully submitted matters. *See Armstrong v. McAlpin*, 625 F.2d 433, 440 (2d Cir. 1980) (en banc), *vacated on other grounds*, 449 U.S. 1106 (1981). A stay now—after **176 days** of inaction—would compound this delay and reward Defendants' default of a prior action despite repeated warnings from opposing counsel, the court, and their own clients.

## II. The Timing of This Order Is Highly Suspicious and Appears Retaliatory

On about **October 24, 2025**, Plaintiff received an **anonymous tip from an individual who appeared intimately familiar with Judge Paul Engelmayer**, stating:

> "Paul Engelmayer gave a little kid herpes" and that the U.S. Attorney's Office "knows about it" and has been "using it to their advantage."

Plaintiff immediately sought clarification about this accusation from the Government and Engelmayer's chambers, **disclaiming any ability to verify its truth**, and merely requesting clarification. (EXHIBIT 1)

**The very next business day—October 27, 2025**—this Court issued the instant Order raising Plaintiff's purported "fugitive" status for the first time, despite:

- No motion from Defendants;
- No change in Plaintiff's location or medical status;
- Six months of silence on the fully briefed motions.

This **immediate temporal proximity—less than 72 hours after Plaintiff raised a credible allegation of child rape and extortion involving a sitting federal judge—strongly suggests retaliation**. The fact that

this Court acted **sua sponte**, without any prompting from the parties, and **only after Plaintiff asked for verification of a tip that challenged Judge Engelmayer's integrity**, raises a reasonable inference that **Judge Engelmayer may in fact be guilty of the conduct alleged**, and is using judicial resources to silence or punish Plaintiff.

The accusation against Judge Engelmayer does not exist in a vacuum. Judge Engelmayer faces **two Articles of Impeachment** before Congress
1. **H.Res.143** ("Impeaching Paul Engelmayer, judge of the United States District Court for the Southern District of New York, for high crimes and misdemeanors")
2. **H.Res.145** ("Impeaching Paul Adam Engelmayer, United States District Court Judge for the Southern District of New York, for high crimes and misdemeanors").

Additionally, Judge Engelmayer is a defendant in a **civil rights lawsuit** for allegedly covering up, over several years, that his mentee, defense attorney **Noam Biale**, was married to SDNY Assistant U.S. Attorney **Margaret Graham**. Biale's firm has been accused in multiple cases—by multiple defendants—of sabotaging their own clients to benefit Graham's prosecution team. *See, e.g.*, *Walsh v. United States*, where attorney Susan Kellman placed Biale's partner on the stand and proved the firm performed no work and coerced an elderly defendant into a sentence that would likely result in death in prison—despite the defendant having caused **$0 in damages**. Kellman was thankful able to undo the unjust and unfounded 20-year sentence and have it changed to **time served**.  Biale's firm is alleged to function as a corrupt extension of the SDNY, and **Judge Engelmayer routinely appointed the firm to represent defendants without disclosing their marital connection to the prosecution**.

Further, Judge Engelmayer has been in the news media and all over social media for being assigned a **statistically improbable number of cases** involving trafficking and rape of minors, and has consistently ruled **against unsealing client lists**—raising questions about potential conflicts of interest. (EXHIBIT 2)

These facts, taken together, lend substantial weight to concerns about judicial impartiality, potential corruption, and the integrity of case assignments in this District—particularly in matters touching on child exploitation, exploitation of vulnerable adults, and prosecutorial misconduct.

Plaintiff respectfully requests that the Court disclose, in a **sworn written statement**, how it became aware of the disputed claim that Mr. Teman is a "fugitive" and whether **any communication—direct or indirect**—occurred with Judge Engelmayer's chambers or the U.S. Attorney's Office between **October 24 and October 27, 2025**.

### III. Motion for Immediate Ruling on Pending Motions

Plaintiff renews his motion for the Court to issue a written ruling on all pending motions **this week**. The legal malpractice claims are straightforward, fully documented, and ripe for decision. Further delay—now approaching **half a year**—is presumptively prejudicial and unjustified.

Respectfully submitted,
/s/ Ari Baruch Teman
Ari Baruch Teman, Pro Se
ari@teman.com
October 28, 2025