UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                      :

ARI BARUCH TEMAN,                          :

                    Plaintiff,          :

                                          :                 24-cv-09830 (LJL)

         -v-                               :

                                        :               OPINION AND ORDER

ZELDES NEEDLE COOPER LLP, et al.,      :

                                        :

                   Defendants.      :

                                        :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/31/2025_

LEWIS J. LIMAN, United States District Judge:

Defendants Zeldes Needle Cooper P.C. (i/s/h/a LLP) ("ZNC"), and Jeremy Virgil

("Virgil"), as well as Maximo Medina, Richard Sarner, Edward R. Scofield, Lori A.

Dailva-Fiano, Sabato P. Fiano, Richard D. Zeisler, Marie A. Casper, Robert S. Cooper, and Lisa

C. Dumond[1] (the "ZNC Attorney Defendants," and collectively with ZNC and Virgil,

"Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b), to dismiss

the Complaint brought against them by Plaintiff Ari Baruch Teman ("Plaintiff" or "Teman") for

failure to state a claim on which relief can be granted. Dkt. No. 11. In the alternative,

Defendants move to dismiss the Complaint as against the ZNC Attorney Defendants.

For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

For the purposes of this motion, the Court accepts the allegations of the Complaint as

true.

---

[1] Plaintiff also identifies Dumond in a parenthetical as Drummond. *Id.* The Court uses the
spelling in the text of the Complaint and not in the parenthetical.

Plaintiff is an individual residing in Miami Beach, Florida. Dkt. No. 1 ¶ 8. ZNC is a law firm with offices in New York, New York, and Bridgeport, Connecticut. *Id.* ¶ 9. Virgil and the ZNC Attorney Defendants are all attorneys with ZNC. *Id.* ¶ 11.

In November 2014, Plaintiff filed a lawsuit (the "Underlying Action") against Eric Braverman, M.D., Richard Smayda, D.O., Sandip Buch, M.D., Anupama Reddy, M.D., Path Medical, P.C., Darya Braverman, and Total Heath Nutrients in New York State Supreme Court, New York County. *Teman v. Braverman*, Index No. 805410/2014 (N.Y. Sup. Ct. Nov. 11, 2014) ("MedMal Dkt."). The complaint in the Underlying Action contained causes of action for medical malpractice, fraud, negligent infliction of emotional distress, and a violation of the New York General Consumer Law, N.Y. Gen. Bus. Law § 349, in connection with those defendants' alleged failure to diagnose Plaintiff with obstructive sleep apnea syndrome and their wrongful and/or intentional misdiagnosis of him with borderline personality disorder and other psychiatric disorders. *Id.* The lawsuit was filed on behalf of Plaintiff by the Davidoff Law Firm, PLLC. *Id.* It was accompanied by a Certificate of Merit submitted by a member of the Davidoff Law Firm, PLLC and signed by Dr. Vatsal G. Thakkar, M.D. ("Dr. Thakkar") of Solstice Psychiatric Consulting, P.C. Dkt. No. 11-3. The Certificate of Merit contained the statement of counsel that he had undertaken "a reasonable inquiry which gave rise to a good faith belief that grounds exist for an action against Eric Braverman, M.D., Richard Smayda, D.O., Sandip Buch, M.D., Anupama Reddy, M.D., and Path Medical, P.C. [] for negligence of a health-care provider." *Id.* ¶ 3. The attached letter from Dr. Thakkar, dated September 5, 2014, included the opinion: "Those providing medical treatment to Mr. Teman should have been able to diagnose and treat Mr. Teman's obvious case of OSAS [obstructive sleep apnea syndrome]." Dkt. No. 11-3 at 6.[2]

---

[2] Citations to this docket entry use ECF pagination.

On May 4, 2015, Plaintiff retained ZNC, through Virgil, to represent him in the Underlying Action.  Dkt. No. 1 ¶ 14; Dkt. No. 11-5 at 3.  The representation is evidenced by an engagement letter (the "Engagement Letter") dated May 4, 2015, and signed by Plaintiff and by Virgil on behalf of ZNC.  Dkt. No. 11-5.  The Engagement Letter contains ZNC's agreement to represent Plaintiff in the litigation in New York State Supreme Court against the defendants named in that case, as well as in a separate lawsuit in Connecticut Superior Court against Silver Hill Hospital.  *Id.*  In exchange, Plaintiff agreed to pay ZNC a contingent fee equal to one-third of the total amount of money recovered in his case.  *Id.*  Plaintiff reserved his right to terminate the representation of ZNC "at any time for any reason," and ZNC had the right to withdraw its services "for good cause only."  *Id.*

At the time, ZNC and Virgil assured Plaintiff that the medical malpractice case was meritorious and estimated damages at $25 million, which after trebling would be $75 million.  Dkt. No. 1 ¶ 15.

Plaintiff alleges that Defendants provided grossly negligent representation.  According to Plaintiff, "Defendants' actions include[d] willfully ignoring critical docket entries, failing to respond to letters and emails from opposing counsel and Plaintiff, allowing the case to default, and filing a knowingly frivolous appeal despite their willful default being a non-appealable issue."  Dkt. No. 1 ¶ 3.  Plaintiff also alleges that ZNC and Virgil had "improper personal and financial relationships and/or conflicts with opposing parties in the medical malpractice case, including Silver Hill Hospital in New Canaan, CT, PATH Medical in NYC, and their respective counsel," which motivated counsel "to sabotage his own client's case."  *Id.* ¶ 5.

On April 12, 2023, the New York Supreme Court granted the motion of Drs. Braverman and Buch and PATH Medical, P.C., for an order dismissing the Underlying Action with

prejudice for failure to prosecute.  Dkt. No. 1 at 19; *Teman v. Braverman*, 2023 WL 3010303, at *1 (N.Y. Sup. Ct. Apr. 12, 2023).[3]  The court found that, while the case bore a 2014 index number, there had been "no meaningful activity since 2020."  Dkt. No. 1 at 20; *Teman*, 2023 WL 3010303, at *1.  It also found that the defendants in the Underlying Action had served a 90-day notice of dismissal on Plaintiff in February 2022, and that Plaintiff "neither complied with the defendants' demand nor moved to vacate the 90-day notice."  *Id.*  Plaintiff also failed to respond to the defendants' motion, which had been filed on May 17, 2022.  On September 19, 2022, after the deadline had passed, Plaintiff submitted a cross-motion entitled "Objection to Motion," but that motion was untimely and was not considered.  *Id.*  Because Plaintiff failed to demonstrate "excuse and merit," the court held that the complaint was subject to dismissal.  *Id.*

 ZNC unsuccessfully appealed the decision to the First Department.  In November 2023, the Appellate Division, First Department, dismissed the appeal.  Dkt. No. 1 at 18.  On December 12, 2024, the New York Court of Appeals dismissed Teman's motion for leave to appeal finding that no appeal lies from an Appellate Division order dismissing an appeal from an order entered upon default.  Dkt. No. 1 at 18; *Teman v. Braverman*, 249 N.E.3d 35, 35 (N.Y. 2024).  ZNC withdrew as counsel in September 2025.  MedMal Dkt. No. 216, 217.

Plaintiff alleges that despite ZNC's "repeated assurances" and Teman's repeated emails and letters "alert[ing] Virgil to these lapses," ZNC and Virgil "failed to monitor critical docket entries and failed to respond to communications from opposing counsel."  Dkt. No. 1 ¶¶ 17–18.

## PROCEDURAL HISTORY

Plaintiff initiated this action by a Complaint filed on December 19, 2024.  *See* Dkt. No. 1. Plaintiff pleads thirteen different causes of action, including legal malpractice, fraud, civil

---

[3] Citations to Docket No. 1 will refer to ECF pagination.

conspiracy, breach of fiduciary duty, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, violation of New York General Business Law ("NYGBL") § 349, gross negligence, constructive fraud, unjust enrichment, and two civil rights violations under the Civil Rights Act, 42 U.S.C. § 1983, and the New York Civil Rights Law ("NYSCRL") § 40-c. *Id.* at ¶¶ 23–63. Plaintiff seeks (1) compensatory damages for "financial losses, emotional distress, and harm caused by Defendants' actions, including violations of Plaintiff's civil rights"; (2) treble and punitive damages "to punish Defendants for intentional misconduct and to deter future violations of civil rights"; (3) declaratory relief that Defendants violated Plaintiff's civil rights, committed fraud, legal malpractice, and breach of fiduciary duty and "violated professional ethical standards and engaged in conduct that constitutes civil conspiracy"; (4) injunctive relief suspending or disbarring Defendants from the practice of law and mandating "training and policy reforms at ZNC to prevent future violations of civil rights"; (5) restitution ordering Defendants to disgorge and return all legal fees and expenses paid by Plaintiff to ZNC and its attorneys in the underlying matter and any related matters; (6) attorneys'' fees and costs including expert fees and other costs incurred by bringing this action, including those under 42 U.S.C. § 1988; and (7) pre- and post-judgment interest. *Id.* at 15–16.

Defendants filed this motion to dismiss on May 1, 2025, along with a supporting memorandum and declarations. Dkt. No. 11. On May 5, 2025, Plaintiff filed a memorandum in opposition to the motion to dismiss with a supporting declaration. Dkt. Nos. 13, 14. On May 8, 2025, Plaintiff filed a motion for summary judgment. Dkt. No. 18. The Court denied Plaintiff's motion for summary judgment without prejudice as premature by order of May 9, 2025. Dkt. No. 19 at 1–2. Defendants filed a reply memorandum of law in further support of the motion to dismiss on May 29, 2025. Dkt. No. 23. Plaintiff filed a sur-reply entitled "Response to

defendant's motion to dismiss and motion for reconsideration of order denying summary

judgment and for sanctions" on June 4, 2025.  Dkt. No. 24.  On June 5, 2025, Defendants

submitted a letter asking the Court to reject Plaintiff's sur-reply, to which Plaintiff responded by

letter to the Court.  Dkt. Nos. 25, 26.[4]

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a

complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and

conclusions," "a formulaic recitation of the elements of a cause of action," or "naked

assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*,

550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,]

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.  Put another

---

[4] The Court takes judicial notice that Plaintiff has failed to return to the United States in
connection with a criminal case pending in this District and is considered a fugitive.  *See Teman
v. United States*, 2025 WL 1883841 (S.D.N.Y. July 8, 2025); *Teman v. United States*, 2025 WL
1883920 (S.D.N.Y. July 8, 2025).  On October 27, 2025, the Court ordered the parties to show
cause whether the Court should stay this action pending Plaintiff's reappearance in this District.
Dkt. No. 27.  Plaintiff submitted a response to the order to show cause on October 28, 2025,
arguing that the action should not be stayed.  Dkt. No. 28.  Defendants take no position on the
question.  Dkt. No. 29 at 1.  The Court will not stay the action.  Under the fugitive-disentitlement
doctrine, the Court may exercise its discretion to bar "fugitives" from judicial relief.  *See Hanson
v. Phillips*, 442 F.3d 789, 795 (2d Cir. 2006).  However, the instant case lacks the "expressly
require[ed] nexus between fugitivity and the course of the [] proceedings."  *Empire Blue Cross&
Blue Shield v. Finkelstein*, 111 F.3d 278, 280 (2d Cir. 1997).  For this reason, the Court will
continue proceedings in this case.

way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *accord Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

When adjudicating a motion to dismiss under Rule 12(b)(6), the court considers not only the well-pleaded allegations of the complaint, but documents incorporated by reference and "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002); *see Gray v. Wesco Aircraft Holdings, Inc.,* 454 F. Supp. 3d 366, 382–83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order). Specifically, the Court takes judicial notice of documents filed in New York State court "not for the truth of the matters asserted in the other litigation, but rather to establish the facts of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006).

The Court construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abrams v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d. Cir. 2000). However, while the Court construes *pro se* pleadings liberally, *pro se* plaintiffs are not relieved of the requirement that they plead enough facts so that their claims are plausible. *See Wee Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007) ("[P]ro se status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure."). And, in this case, Plaintiff is entitled to somewhat lesser solicitude because of his extensive experience with and schooling in the law.[5] *See Sledge v. Kooi,* 564 F.3d 105, 109–10– (2d Cir. 2009) (discussing

---

[5] In his own words, Plaintiff "remains fully active in the federal courts, filing motions, appeals, and other papers in the Southern District of New York, the Southern District of Florida, and their respective Courts of Appeals." Dkt. No. 28 at 1–2; *see also Teman v. Soleimani*, No. 25-cv-8823 (S.D.N.Y. Oct. 25, 2025); *Teman v. Marmur*, No. 25-cv-8220 (S.D.N.Y. Oct. 3, 2025); *Teman v.*

circumstances where frequent *pro se* litigant may be charged with knowledge of particular legal requirements); *Tracy v. Freshwater*, 623 F.3d 90, 92–93 (2d Cir. 2010) (noting that a limited withdrawal of solicitude may have been warranted where plaintiff had "participated in at least ten previous federal and state actions").

## DISCUSSION

Defendants argue that the Complaint should be dismissed in its entirety for failure to state a claim for which relief can be granted.  Dkt. No. 11-6.  In the alternative, Defendants argue that the Complaint should be dismissed against each of the ZNC Attorney Defendants.  *Id.* at 23–24. The Court considers each of Plaintiff's claims in turn.

### I.  Legal Malpractice

The gravamen of Plaintiff's Complaint is his claim for legal malpractice.  He claims that Defendants "owed Plaintiff a duty of care to competently handle the medical malpractice lawsuit and comply with professional standards," and that they "breached this duty by failing to monitor the case docket, respond to communications, and allowing the case to default," resulting in legal malpractice.  Dkt. No. 1 ¶¶ 24–25.

"To state a claim for legal malpractice under the law of New York, a plaintiff must allege: (1) attorney negligence; (2) which is the proximate cause of a loss, *and* (3) actual damages."  *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (emphasis in original).  In other words, plaintiff must allege that an attorney-client relationship

---

*U.S. Prob. Serv.*, No. 25-1895 (2d Cir. Aug. 5, 2025); *Teman v. United States*, No. 25-12659 (11th Cir. Aug. 4, 2025); *Teman v. United States*, No. 25-cv-5424 (S.D.N.Y. June 30, 2025); *Teman v. Biale*, No. 25-cv-5454 (S.D.N.Y. June 28, 2025); *Teman v. United States,* No. 25-cv-22543 (S.D. Fla. June 5, 2025); *Teman v. U.S. Prob. Serv*, No. 25-cv-4699 (S.D.N.Y. June 1, 2025); *Teman v. United States*, No. 24-cv-8278 (S.D.N.Y. Oct. 31, 2024); *Teman v. City of Miami Beach*, No. 23-cv-21361 (S.D. Fla. Apr. 11, 2023); *Teman v. Does 1-10*, No. 23-cv-1296 (S.D.N.Y. Feb. 13, 2023).

existed, "that the attorney was negligent, that the negligence was the proximate cause of the injury, and that she suffered actual and ascertainable damages." *Henkel v. Wagner*, 553 F. App'x 106, 107 (2d Cir. 2014) (summary order) (quoting *Rubens v. Mason*, 527 F.3d 252, 254–55 (2d Cir. 2008)). To establish negligence in a malpractice case, "a plaintiff must show that an attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession." *McCoy v. Feinman*, 785 N.E.2d 714, 718–19 (N.Y. 2002) (citation and internal quotation marks omitted).

To establish the second element, "a lawyer must proximately have caused the client's claimed harm." *Diamond v. Sokol*, 468 F. Supp. 2d 626, 642 (S.D.N.Y. 2006). "[A] plaintiff must show that but for the defendant's negligence, he or she would have prevailed in the underlying action or would not have sustained any damages." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 118 (2d Cir. 2005) (citation omitted). A legal malpractice claim thus includes a "case within a case requirement" under which a plaintiff "must demonstrate that a reasonable fact-finder [in the present case] could conclude that a 'reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence.'" *Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP*, 2013 WL 3357921, at *6 (S.D.N.Y. July 2, 2013) (quoting *Rubens*, 527 F.3d at 255), *aff'd*, 552 Fed. App'x 79 (2d Cir. 2014) (summary order); *accord EVIP Can., Inc. v. Schander Harrison Segal & Lewis LLP*, 2021 WL 964943, at *21 (S.D.N.Y. Mar. 15, 2021), *aff'd*, 2022 WL 3904541 (2d Cir. 2022) (summary order). "The 'but for' prong requires the trier of fact in effect to decide a lawsuit within a lawsuit, because it demands a hypothetical re-examination of the events at issue absent the alleged malpractice." *Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317, 322 (S.D.N.Y. 2008) (citation, alteration, and internal quotation marks omitted). Plaintiff must show that "but

for the attorney's conduct, [he] would have prevailed in the underlying matter or would not have sustained any ascertainable damages." *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (1st Dep't 2004).

Defendants do not dispute that Plaintiff enjoyed an attorney-client relationship with ZNC and that the Complaint adequately alleges attorney negligence. Dkt. No. 11-6 at 6. "[N]eglect to prosecute or defend an action" is a common example of attorney negligence. *Buxbaum v. Robert C. Gottlieb & Assocs., PLLC*, 2025 WL 2161654, at *4 (S.D.N.Y. July 30, 2025) (quoting *Hatfield v. Herz*, 109 F. Supp. 2d 174, 180 (S.D.N.Y. 2000)). ZNC ignored court notices and questions by Plaintiff and negligently (and allegedly willfully) allowed Plaintiff to default. Dkt. No. 1 ¶¶ 3, 17, 25. Defendants instead rest their argument for dismissal on the contentions that Plaintiff has failed to plead proximate cause and has failed to plead actual and ascertainable damages. Dkt. No. 11-6 at 6–10. In addition, Defendants argue that Plaintiff has not stated a claim against the ZNC Attorney Defendants. *Id.* at 23–24. Defendants' arguments are without merit as to ZNC and Virgil. Plaintiff's claims against the ZNC Attorney Defendants will be addressed separately.

At the motion to dismiss stage, a plaintiff "need only allege, not prove, the proximate cause element of the legal malpractice claim." *Gottlieb, Rackman & Resiman, P.C. v. ZenColor Corp.* 2015 WL 4206982, at *5 (S.D.N.Y. July 10, 2015) (quoting *Even St. Prods*, 643 F. Supp. 2d at 322). In other words, at this "pre-discovery stage," a plaintiff "need only plead 'allegations from which damages attributable to [defendant's] conduct might be inferred.'" *Mercantile Cap. Partners Fund, LP v. Morrison Cohen LLP*, 2008 WL 1777431, at *5 (N.Y. Sup. Ct. Mar. 4, 2008) (citations omitted).

Plaintiff has pleaded proximate cause.  Plaintiff does not just plead in conclusory form that he had a meritorious lawsuit that was dismissed for failure to prosecute due to Defendants' professional negligence.  He alleges facts to support the allegation that the claims in the Underlying Action were meritorious.  Plaintiff avers that at the time ZNC assumed the representation, ZNC provided him its opinion that his malpractice case was meritorious and estimated damages at $25 million, which, after trebling, would be $75 million.  Dkt. No. 1 ¶ 15. In addition, at the time the complaint in the Underlying Action was filed, counsel included a certificate of merit.  Dkt. No. 11-1 at 2; Dkt. No. 11-3 at 2.  The certificate of merit included letters from two doctors, including one from Dr. Thakkar, stating that he had examined Plaintiff's legal and medical records and determined that Plaintiff's claim had merit.  Dkt. No. 11-3 at 5–8.  Plaintiff need not prove his underlying claim.  *See DePalma v. Maya Murphy, P.C.*, 2017 WL 5991783, at *5 (S.D.N.Y. Dec. 1, 2017) (noting that plaintiff "need only allege, not prove, the proximate cause element of the legal malpractice claim," and defendant's claim "that it is unknowable" whether defendant's actions negatively affected plaintiff did not render allegations of legal malpractice insufficient).  The allegations support the plausible inference that, had Defendants not allowed Plaintiff to default on his claim, he would have obtained a successful result either by a judgment or by settlement.  *See Reid v. Sack*, 2021 WL 100490, at *5 (S.D.N.Y. Jan. 12, 2021) (finding plausible allegation of legal malpractice where plaintiff detailed the now time-barred claims that she may have prevailed on absent attorneys' actions); *Henkel v. Wagner*, 2013 WL 12084503, at *6 (S.D.N.Y. Mar. 18, 2013) (where plaintiff's attorneys, now defendants, had advised that claim would be meritorious and represented that claims were meritorious in the underlying action, the allegations were sufficient to raise plausible inference of proximate cause), *aff'd*, 553 F. App'x 106 (2d Cir. 2014) (summary order); *cf. Long*

11

*v. De Feis O'Connell & Rose, P.C.*, 2021 WL 257135, at *3 (S.D.N.Y. Jan. 26, 2021) (finding pleadings insufficient where plaintiff did not "explain what effect [defendant's actions] would have had on the Underlying Action," "identify the lost 'cause of action,'" or "explain how losing independent claims against [additional party] would have altered the outcome of her defense"); *see also Tooma v. Grossbarth*, 995 N.Y.S.2d 593, 595 (2d Dep't 2014) (denying motion to dismiss legal malpractice claim related to an underlying medical malpractice lawsuit under state pleading standard where plaintiff alleged that but for defendants' negligence, "Plaintiff's medical malpractice claim would have succeeded and resulted in a different, better and/or more positive outcome").[6]

Defendants also argue that the legal malpractice claim should be dismissed because Plaintiff has failed to allege "actual and ascertainable damages" as required by New York law. Dkt. No. 11-6 at 9.  But that argument also is not meritorious.

"Damages in a legal malpractice case are designed 'to make the injured client whole.'" *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 867 N.E.2d 385, 388 (N.Y. 2007) (quoting *Campagnola v. Mulholand, Minion & Roe*, 555 N.E.2d 611, 613 (N.Y. 1990)).  The damages must be "actual and ascertainable."  *Id.* at 387 (quoting *McCoy v. Feinman*, 785 N.E.2d 714, 718–19 (N.Y. 2002)).  However, recovery in legal malpractice claims is limited to "pecuniary damages."  *Dombrowski v. Bulson*, 971 N.E.2d 338, 340 (N.Y. 2012); *see Buxbaum* 2025 WL

---

[6] Plaintiff further alleges that "an expert witness retained by Plaintiff has confirmed the value of the damages at over $75 million, based on the severity of the malpractice and its long-term financial and personal impact on Plaintiff."  Dkt. No. 1 ¶ 16.  Defendants dispute the allegation, claiming that "Dr. Thakkar . . . confirmed to Defendants in writing that he did not and would not participate in the Underlying Litigation beyond the preliminary correspondence" and citing 2016 email correspondence between Dr. Thakkar and ZNC.  Dkt. No. 11-6 at 8; *see* Dkt. No. 11-4.  The email correspondence is not incorporated by reference in the Complaint and is not a document of which the Court may take judicial notice.  Accordingly, it is not cognizable on this motion.

2161654, at *5; *Wilson v. City of New York*, 743 N.Y.S.2d 30, 33 (1st Dep't 2002); *Wolkstein v. Morgenstern*, 713 N.Y.S.2d 171, 173 (1st Dep't 2000). A plaintiff in a legal malpractice case may not recover damages for injury to reputation, *McPhillips v. Bauman*, 19 N.Y.S.3d 367, 369 (3d Dep't 2015), or damages for "emotional or psychological injury," *Wolkstein*, 713 N.Y.S.2d at 173; *sees also Dirito v Stanley*, 611 N.Y.S.2d 65, 65 (4th Dep't 1994) (affirming dismissal of damages claim for emotional pain and suffering). Where the injury suffered in a legal malpractice action is the loss of a cause of action, "the measure of damages is generally the value of the claim lost." *Bobbo Prop. Mgmt., Inc. v. Faulkner*, 227 N.Y.S.3d 369, 370 (2d Dep't 2025) (quoting *Campagnola*, 555 N.E.2d at 616).

According to Plaintiff's Complaint, he was told by both Defendants and an expert witness that his claim in the Underlying Action would warrant damages in an amount upwards of $75 million. Dkt. No. 1 ¶¶ 15–16. Plaintiff alleges that he failed to recover those damages as a result of Defendants' negligence. The Complaint thus plausibly alleges pecuniary damages attributable to counsel's conduct. *See Rubin*, 2021 WL 5281347, at *6 (plaintiff adequately alleged damages where she alleged that she lost opportunity to recover damages in prior lawsuit due to attorney's negligence); *Prout v. Vladeck*, 319 F. Supp. 3d 741, 746 (S.D.N.Y. 2018) (plaintiff adequately alleged damages where he alleged damages based on the approximate value of the lost claim).

Defendants' motion to dismiss Plaintiff's legal malpractice claim against ZNC and Virgil is thus denied.

## II.    Breach of Fiduciary Duty

Plaintiff also asserts a claim for breach of fiduciary duty. Dkt. No. 1 ¶¶ 30–31. Plaintiff alleges that Defendants (i) "failed to respond to critical docket entries and failed to respond to communications from opposing counsel," leading to dismissal of the Underlying Action; and (ii) "breached their fiduciary duty to act in the Plaintiff's best interests by prioritizing personal and

financial conflicts over [Plaintiff's] case." *Id.* ¶¶ 17, 31. Defendants argue that the claim should be dismissed because it is redundant with Plaintiff's claim for legal malpractice and is conclusory. Dkt. No. 11-6 at 13–14. Defendants' argument that the claim is redundant is overbroad, but Defendants' argument that Plaintiff's claim is conclusory is well-founded.

Under New York law, a claim for "[b]reach of fiduciary duty requires (1) the existence of a fiduciary duty owed by the defendant; (2) a breach of that duty; and (3) resulting damages." *Jones v. Voskresenskaya*, 5 N.Y.S.3d 16, 17 (1st Dep't 2015); *accord Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011). In the attorney-client context, a plaintiff must show that the attorney's breach was at least "a substantial factor" in causing the resulting damages. *Noble v. Mt. Olivet Church, Inc.*, 2021 WL 930626, at *4 (S.D.N.Y. Mar. 10, 2021) (citing *Milbank, Tweed, Hadley & McCloy v. Boon*, 13 F.3d 537, 543 (2d Cir. 1994)).[7]

An attorney is a fiduciary who owes a duty of care and loyalty to her client. *Am. E. Grp. LLC v. Livewire Ergogenics Inc.*, 2020 WL 209903, at *3 (S.D.N.Y. Jan. 14, 2020); *accord Graubard Mollen Dannett & Horowitz v. Moskovitz*, 653 N.E.2d 1179, 1182 (N.Y. 1995). Where the essence of the plaintiff's claim is that the attorney has been negligent in the discharge of her responsibilities in an engagement and has violated professional standards of conduct, the claim ordinarily sounds in legal malpractice and must be so pled. *See Chang's Imports, Inc. v.*

---

[7] Courts in the New York Appellate Division have rejected this standard of causation for breach of fiduciary duty in the attorney-client context and instead held that a plaintiff must show "but for" causation. *See Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (1st Dep't 2004); *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 865 N.Y.S.2d 14, 22 (1st Dep't 2008). However, the New York Court of Appeals has not clarified the standard. The Court "is, of course, 'bound to follow the Second Circuit's interpretation of New York law' until such time as it is clarified or overruled" by the Second Circuit or New York Court of Appeals. *Stevens & Co., LLC v. Espat*, 2025 WL 950989, at *5 (S.D.N.Y. Mar. 28, 2025) (quoting *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 94 (S.D.N.Y. 2021)).

*Srader*, 216 F. Supp. 2d 325, 331 (S.D.N.Y. 2002) ("Negligence or legal malpractice exists when an attorney fails to exercise that degree of skill commonly exercised by an ordinary member of the legal community.").  A plaintiff cannot plead the claim as one for breach of fiduciary duty even though the lawyer owes fiduciary duties to the client.  *Nordwind v. Rowland*, 584 F.3d 420, 433 (2d Cir. 2009); *cf. Kurman v. Schnapp*, 73 A.D.3d 435, 435 (1st Dep't 2010) (a claim for breach of fiduciary duty is not duplicative of legal malpractice if premised on "a different theory" of liability).  However, as a fiduciary, a lawyer's duties are not limited to the duties of care imposed by professional standards of conduct.  A lawyer also owes a duty of loyalty and honesty to the client.  A claim of breach of fiduciary duty against the lawyer thus may lie for example, where an attorney has a conflict of interest and without notice and consent appropriates information from one client to benefit another client, *see, e.g.*, *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelmen & Dicker*, 865 N.Y.S. 2d 14, 20 (1st Dep't 2008); *Noble v. Mt. Olivet Church, Inc.*, 2021 WL 930626, at *4 (S.D.N.Y. Mar. 10, 2021); where an attorney has disclosed or misappropriated confidential information, *see, e.g., Napoli v. N.Y. Post*, 107 N.Y.S.3d 279, 282 (1st Dep't 2019); *cf. United States v. O'Hagan*, 521 U.S. 642 (1997); or where an attorney has misrepresented his or her qualifications, *see Scheizer v. Mulvehill*, 93 F. Supp. 2d 376, 405 (S.D.N.Y. 2000) (noting that "an attorney's misrepresentation as to his qualifications may be actionable as a breach of fiduciary duty").  In those instances, and perhaps others, liability does not flow from the failure to adhere to professional standards of conduct applicable uniquely to lawyers but to standards of conduct applicable to fiduciaries generally.

To the extent Plaintiff's claim for breach of fiduciary duty is based on his allegation that Defendants willfully ignored critical docket entries, failed to respond to opposing counsel and to Plaintiff, and allowed the case to default, Dkt. No. 1 ¶ 3, it is redundant of his legal malpractice

claim.  Those allegations sound in legal malpractice.  They cannot be pled as a breach of fiduciary duty.

Plaintiff also bases his claim of breach of fiduciary duty, however, on allegedly improper personal and financial relationships Virgil and ZNC maintained with the opposing parties in the Underlying Action, including Silver Hill Hospital and Path Medical and their respective counsel. Dkt. No. 1 ¶ 5.  A claim that an attorney violated the duty of loyalty may state a claim for breach of fiduciary duty if, for example, the attorney sacrificed the interests of one client for the benefit of another client.  *See Milbank, Tweed, Hadley & McCloy*, 13 F.3d at 543.  However, Plaintiff's allegations that ZNC and Virgil had a conflict of interest and violated a duty of loyalty are conclusory and fail to state a claim.  Plaintiff alleges that ZNC and Virgil had "improper personal and financial conflicts with opposing parties . . . and their respective counsel," Dkt. No. 1 ¶ 21, and that they "prioritized" those "conflicts over their client's case," *id.* ¶ 31.  Plaintiff does not identify what interests ZNC or Virgil had in Silver Hill Hospital or Path Medical or how he benefitted those entities at Plaintiff's expense.  Without facts to support his allegations, Plaintiff's fourth claim for relief must be dismissed.  *See Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 598 (S.D.N.Y. 2015); *Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 337 (S.D.N.Y. 2024).  However, it will be dismissed without prejudice. *See Long v. Griffin*, 2022 WL 875865, at *4 (S.D.N.Y. Mar. 24, 2022) ("[P]ro se plaintiffs are allowed an opportunity to amend their complaint" where "a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Breer v. Maranville*, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012))).

## III.    Breach of Contract

In his seventh claim for relief, Plaintiff alleges that Defendants breached the engagement letter with him because they "failed to fulfill their contractual obligations to competently

represent Plaintiff in this case." Dkt. No. 1 ¶ 37. The Complaint fails to state a claim for breach of contract.

Under New York law, "a breach of contract claim against an attorney based on a retainer agreement may be sustained only where the attorney makes an express promise in the agreement to obtain a specific result and fails to do so." *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 701 (S.D.N.Y. 2002) (quoting *Pacesetter Commc'ns v. Solin & Breindel*, 541 N.Y.S.2d 404, 406 (1st Dep't' 1989)). If the Plaintiff does not allege facts to support that Defendants breached a specific promise in the contract, the breach of contract claim is a "redundant pleading of a malpractice claim and should be dismissed." *Senise v. Mackasek*, 642 N.Y.S. 2d 241, 242 (1st Dep't 1996).

Plaintiff's breach of contract claim is redundant of his legal malpractice claim. He does not allege breach of a specific promise in the engagement letter. Rather, he alleges that Defendants had a duty to represent him competently and failed to do so. But those duties are not promises of a specific result but rather expectations under general professional standards and redundant of his legal malpractice claim. *Id.* Accordingly, Plaintiff's breach of contract claim is dismissed with prejudice as duplicative. *Aramony v. United Way of Am.*, 949 F. Supp. 1080, 1087–88 (S.D.N.Y. 1996) (where claims are duplicative, "they may not be cured by amendment . . . [and] are therefore dismissed with prejudice").

## IV.    Fraud and Constructive Fraud

Plaintiff's second claim for relief is for fraud and his tenth claim for relief is for constructive fraud. Dkt. No. 1 ¶¶ 26–27, 42–43. Plaintiff alleges that Defendants "knowingly made false representations" to him, "including assurances that the case was being handled properly and the frivolous appeal had merit," *id.* ¶ 27, and that Defendants "breached their duty of trust," *id.* ¶ 43. Plaintiff fails to state a claim for either fraud or constructive fraud.

17

The elements of fraud under New York law are: (1) material misrepresentation of fact; (2) knowledge of its falsity; (3) an intent to induce reliance; (4) justifiable reliance by the plaintiff; and (5) damages. *Eurycleia Partners, LP v. Seward & Kissel, LLP,* 910 N.E.2d 976, 979 (N.Y. 2009). To establish constructive fraud under New York law, a plaintiff must establish the "same elements as actual fraud, 'except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties.'" *E\*TRADE Fin. Corp. v. Deutsche Bank AG,* 631 F. Supp. 2d 313, 387 (S.D.N.Y. 2009) (quoting *Apace Commc'ns, Ltd. v. Burke,* 522 F. Supp. 2d 509, 519 (W.D.N.Y. 2007)). Under Federal Rule of Civil Procedure 9(b), allegations of fraud must be pled "with particularity." Fed. R. Civ. P. 9(b). "[T]he complaint must (1) specify the statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation and internal quotation marks omitted).

Plaintiff's fraud and constructive fraud claims fail for numerous reasons. First, both claims are duplicative of his legal malpractice claim. The claims arise out of the attorney-client relationship as set forth in the engagement letter between Plaintiff and ZNC and the alleged failure to perform that engagement. Under New York law, to state a claim of fraud arising out of a contractual relationship, however, the plaintiff must allege: "(1) a legal duty separate and apart from the contractual duty to perform; (2) a fraudulent representation collateral or extraneous to the contract; or (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages." *Calcutti,* 224 F. Supp. 2d at 698 (quoting *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir. 1996)). A party cannot convert a claim that the attorney failed to perform an engagement into a claim for

fraud by the mere expedient of claiming that the attorney never intended to perform. *See Bridgestone/Firestone*, 98 F.3d at 19–20. Accordingly "[a] fraud claim that is premised on the same acts of nondisclosure and misrepresentations as is a legal malpractice claim may be dismissed as duplicative." *Calcutti*, 224 F. Supp.2d at 698.

Plaintiff's fraud and constructive fraud claims do not allege a duty independent of Virgil and ZNC's duty to perform under the engagement letter. The crux of Plaintiff's claim is that ZNC and its attorneys promised to provide competent representation and failed to do so, causing him damages. The promise to handle a case properly is not collateral to an attorney engagement; it is central to it. And the duty to provide competent representation is not apart from the engagement; it is the engagement. Any damage proximately caused by counsel's failure to provide such competent representation is recoverable in the claim for legal malpractice. Accordingly, the claims for fraud and constructive fraud are redundant and fail to state a claim for relief. *See Bridgestone/Firestone*, 98 F.3d at 20.

Even if Plaintiff's fraud and constructive fraud claims were not redundant of his legal malpractice claim, they would fail to state a claim for relief. Plaintiff alleges Defendants assured him that "the case was being handled properly and the frivolous appeal had merit," Dkt. No. 1 ¶ 3, but he does not provide the "specific statements," the "identity of the speaker," nor the details of "when and where the statements were made" as required by Rule 9(b). Fed. R. Civ. P. 9(b). With respect to Plaintiff's fraud claim, Plaintiff has pled only general allegations of intent and does not allege the "strong inference of fraudulent intent" required under Rule 9(b). *Lerner*, 459 F.3d at 290 (internal quotations omitted). In particular, he alleges no facts to support the contention that if Defendants told him that his case was being handled properly, Defendants did not believe at the time that the case was being handled properly.

Accordingly, Plaintiff's fraud and constructive fraud claims are dismissed with prejudice.

## V.    Gross Negligence

In his ninth claim for relief, Plaintiff alleges that Defendants exhibited gross negligence "act[ing] with reckless disregard for their professional obligations" when failing to act or otherwise prevent the default judgment in the underlying action.  Dkt. 1 ¶ 41.  Defendants assert that Plaintiff fails to allege recklessness, Dkt. No. 11-6 at 19, and, in the alternative, that Plaintiff's gross negligence claim "solely concerns [d]efendants' professional obligations in representing [p]laintiff," and should be dismissed as duplicative and redundant of the legal malpractice claim.  *Id.* at 19.

Under New York law, "[t]o prevail on a claim for gross negligence, [a] plaintiff must establish" the elements necessary to prevail on a claim for negligence—(1) duty; (2) breach; and (3) injury as a result of breach—plus a fourth element, namely, that the defendant's conduct "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Farash v. Cont'l' Airlines, Inc.*, 574 F. Supp. 2d 356, 367–68 (S.D.N.Y. 2008) (Sullivan, J.) (quoting *AT&T v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996)), *aff'd*, 337 F. App'x 7 (2d Cir. 2009) (summary order).  "[W]here a claim for negligence . . . [is] premised on the same facts and seek[s] identical relief as a claim for legal malpractice, [that] claim [is] 'redundant and should be dismissed.'" *England v. Feldman*, 2011 WL 1239775, at *5 (S.D.N.Y. Mar. 28, 2011) (citing *Norwind v. Rowland*, 584 F.3d 420, 432–33 (2d. Cir. 2009)).  "[L]egal malpractice, as opposed to ordinary negligence, is the appropriate cause of action to bring against an attorney who allegedly performed his/her duties negligently. . . .  [A] claim for gross negligence is also redundant of [a] legal malpractice claim."  *Amadasu v. Ngati*, 2006 WL 842456, at *9 (E.D.N.Y. Mar. 27, 2006) (Bianco, J.) (citations omitted).

The allegations of negligence that Plaintiff makes are identical to those that support his claim for legal malpractice.  Accordingly, the claim for gross negligence fails to state an independent claim for relief and is dismissed with prejudice.

## VI.    Unjust Enrichment

Plaintiff's eleventh claim for relief is for unjust enrichment.  Plaintiff alleges that "Defendants retained fees despite failing to competently represent Plaintiff."  Dkt. No. 1 ¶ 45.  Under New York law, a plaintiff alleging unjust enrichment must demonstrate that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *accord Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012).  Defendants assert that the first and second elements of unjust enrichment are not met because they were not enriched and received no benefit from Plaintiff.  Dkt. No. 11-6 at 20.  Defendants contest Plaintiff's allegation that they retained legal fees because their representation was governed by a contingency fee agreement, under which Plaintiff paid no legal fees absent recovery from the lawsuit.  *Id.*  Defendants alternatively argue that Plaintiff's claim is duplicative of legal malpractice.  *Id.* at 20–21.

Even accepting as true the allegation that Defendants were enriched by receiving and retaining legal fees from Plaintiff, Plaintiff's claim is duplicative of his malpractice claim.  "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).  Thus, a claim of unjust enrichment cannot stand and must be dismissed as duplicative of a legal malpractice claim where "it is premised on the same facts underlying Plaintiff's legal malpractice claim and seeks the same damages."  *Rhee-Karn v. Lask*, 2018 WL 11459415, at *13 (S.D.N.Y. Sept. 30, 2018).  Plaintiff alleges no distinct facts in support of his claim for unjust

enrichment and instead relies on Defendants' "fail[ure] to competently represent Plaintiff,"

which forms the basis of his legal malpractice claim.  Dkt. No. 1 ¶ 45.  If Defendants failed to

perform and such failure to perform constitutes legal malpractice, he may recover the legal fees

he paid to ZNC on a theory of legal malpractice.  *Id.* at 16; *see Rhee-Karn v. Lask*, 797 F. Supp.

3d 343, 352 (S.D.N.Y. 2025) (discussing damages in the form of reimbursement of legal fees

following a finding of legal malpractice).  Plaintiff's claim therefore must be dismissed with

prejudice as duplicative.  *See Rhee-Karn*, 2018 WL 11459415, at *13–14 (dismissing unjust

enrichment claim with prejudice as duplicative where the claim is premised on the same

underlying facts and seeks the same damages); *Town of Wallkill v. Rosenstein*, 837 N.Y.S.2d

212, 215 (2d Dep't 2007) (dismissing claim for unjust enrichment as duplicative of claim for

legal malpractice because "they arose from the same facts and did not allege distinct and

different damages").

Plaintiff's claim for unjust enrichment is dismissed with prejudice as duplicative.

## VII.    Civil Conspiracy

Plaintiff's third claim is for civil conspiracy.  Plaintiff alleges that "Defendants

knowingly and intentionally conspired with opposing parties and their counsel to sabotage

Plaintiff's case."  Dkt. No. 1 ¶ 29.  This claim too must be dismissed.

To support a claim of civil conspiracy under New York law, a "plaintiff must

demonstrate the underlying tort, plus the following four elements: (1) an agreement between two

or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional

participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Fisk v.

Letterman,* 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006).  "New York does not recognize civil

conspiracy as an independent cause of action." *Reich v. Lopez*, 38 F. Supp. 3d 436, 460

(S.D.N.Y. 2014).  "Allegations of conspiracy are permitted only to connect the actions of

separate defendants with an otherwise actionable tort." *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 503 N.E.2d 102, 102 (N.Y. 1986).

Moreover, New York "law is clear, [] that while a fraud may serve as the underlying tort for a civil conspiracy claim, negligence may not." *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 257 (S.D.N.Y. 2011) (citations omitted). "Since a civil conspiracy action requires a showing of intentional conduct, negligence cannot serve as the underlying tort." *Rosen v. Brown & Williamson Tobacco Corp.*, 782 N.Y.S. 2d 795, 795 (2d Dep't 2004).

Plaintiff has failed to state a claim for civil conspiracy because he has not alleged an underlying intentional tort. Plaintiff has failed to state a claim for fraud. It follows therefore that he has not stated a claim for a civil conspiracy to commit fraud. *Boone v. Codispoti & Assocs. P.C.*, 2015 WL 5853843, at *4 (S.D.N.Y. Oct. 7, 2015) ("As the Complaint does not allege an actionable claim for fraud, the claim for conspiracy to commit fraud also fails." (citing *Wilson v. Dantas*, 746 F.3d 530, 537 n.4 (2d Cir. 2014))). "A conspiracy claim must be dismissed if the complaint alleges no facts suggesting the existence of an agreement to commit an underlying tort." *Sadigh v. City of New York*, 2025 WL 1092842, at *2 (E.D.N.Y. Apr. 11, 2025) (citation and internal quotation marks omitted). And, while he has stated a claim for legal malpractice, that claim sounds in negligence and not in intentional conduct.

Plaintiff's claim for fraud is dismissed with prejudice and Plaintiff alleges no other underlying intentional tort. There is thus no possibility that amendment could cure the deficiency and Plaintiff's claim for civil conspiracy is dismissed with prejudice. *See Dowd v. DeMarco*, 314 F. Supp. 3d 576, 588 (S.D.N.Y. 2018) ("[W]hen 'there is no indication that plaintiff[] could replead the complaint so as to establish' all elements necessary to support his

claims, dismissal is properly granted with prejudice." (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 272 (2d Cir. 1996))).

## VIII.    Intentional and Negligent Infliction of Emotional Distress

Plaintiff's fifth claim purports to state a claim for intentional infliction of emotional distress ("IIED") and his sixth claim purports to state a claim for negligent inflectional of emotional distress ("NIED").  Defendants argue that Plaintiff has failed to state a claim for either IIED or NIED and that the claims should be dismissed.  Dkt. No. 11-6 at 14–16.

Under New York law, to state a claim of IIED, a plaintiff must plead: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999); *see also Biswas v. City of New York,* 973 F. Supp. 2d 504, 535 (S.D.N.Y. 2012).  "These requirements, especially that of extreme and outrageous conduct, 'are rigorous and difficult to satisfy.'"  *Moraes v. White,* 571 F. Supp. 2d 77, 104 (S.D.N.Y. 2021) (quoting *Howell v. N.Y. Post Co.,* 612 N.E.2d 699, 702 (N.Y. 1993)).  IIED is a "highly disfavored [tort] under New York law."  *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014); *see also Sesto v. Slaine*, 171 F. Supp. 3d 194, 202 (S.D.N.Y. 2016) (Nathan, J.) (noting that IIED claims are frequently dismissed on pre-answer motion).  The conduct alleged must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.  *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985); *accord Chanko v. Am. Broad. Cos. Inc.,* 49 N.E.3d 1171, 1179 (N.Y. 2016); *Murphy v. Am. Home Prods. Corp.,* 448 N.E.2d 86, 90 (N.Y. 1983).

Under New York law, a plaintiff alleging NIED must show: "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Truman v. Brown*, 434 F. Supp. 3d 100, 122 (S.D.N.Y. 2020) (quoting *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015)). "New York courts use the same standard in evaluating extreme and outrageous conduct in both IIED and NIED claims." *Id.* Thus, for NIED as well, "a plaintiff must allege conduct that is 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Goldstein v. Mass. Mut. Life. Ins. Co.*, 875 N.Y.S.2d 53, 55 (1st Dep't 2009)).

A plaintiff may recover for NIED under one of two theories: (1) the "bystander theory" or (2) the "direct duty theory." *Wahlstrom v. Metro-N. Commuter R. Co.,* 89 F. Supp. 2d 506, 531 (S.D.N.Y. 2000) (citation omitted); *see also Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). A plaintiff may recover for a purely emotional injury under the "bystander" theory when he is threatened with physical harm as a result of defendant's negligence and consequently suffers emotional injury from witnessing the death or serious bodily injury of a member of his immediate family. *Mortise*, 102 F.3d at 696; *see also Greene v. Esplanade Venture P'ship*, 168 N.E.3d 827, 828 (N.Y. 2021). A plaintiff may recover under the "direct duty theory for an emotional injury from the defendant's breach of a duty that unreasonably endangered plaintiff's own physical safety." *Id.* Physical injury is not a necessary element of a NIED claim, but an NIED claim "generally must be premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety." *Johnson v. N.Y.C. Bd. of Educ.*, 704 N.Y.S.2d 281, 283 (2d Dep't 2000); *see also Ross v. Correct Care Sols. LLC*, 2013 WL 5018838, at *5 (S.D.N.Y. Sept. 13, 2013) (to recover under a claim of NIED "in the

absence of physical injury [the plaintiff] must prove not only negligence, but also that he suffered psychological trauma resulting in substantial emotional harm" (citing *Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp.*,, 425 F.3d 126, 137 (2d Cir. 2005))).

A claim for IIED "'may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not.'" *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quoting *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015)). "[T]he New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct 'falls well within the ambit of other traditional tort liability,'" and "[a]ll four Appellate Division courts have answered the question and held that it cannot." *Salmon*, 802 F.3d at 256 (quoting *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978)). "Federal courts in the Second Circuit agree that no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." *Costin v. Glens Falls Hosp.*, 2024 WL 4979175, at *10 (N.D.N.Y. Dec. 4, 2024) (quoting *Pateman v. City of White Plains*, 2020 WL 1497054, at *25 (S.D.N.Y. Mar. 25, 2020)).

The same principles apply to claims for negligent infliction of emotional distress. "A NIED claim cannot be asserted if it is 'essentially duplicative of tort or contract causes of action.'" *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 364–65 (S.D.N.Y. 2021) (quoting *Djangmah v. Falcione*, 2013 WL 208914, at *9 (S.D.N.Y. Jan. 18, 2013)); *see also Goldrich v. Masco Corp.*, 2023 WL 2649049, at *10 (S.D.N.Y. Mar. 27, 2023) (same); *Moore v. City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) ("The New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available."). New York has "never recognized a cause of action [for NIED] . . . which would

indeed encompass the ordinary case of legal malpractice." *Green v. Liebowitz*, 500 N.Y.S.2d 146, 148 (2d Dep't 1986).

Under New York law, a plaintiff injured by conduct that constitutes legal malpractice may recover for the pecuniary damage she has suffered. A plaintiff may not recover damages for emotional distress. *See Wolkstein*, 713 N.Y.S.2d at 173 ("A cause of action for legal malpractice does not afford recovery for any item of damages other than pecuniary loss so there can be no recovery for emotional or psychological injury."); *Dirito v Stanley*, 611 N.Y.S.2d 65, 65 (4th Dep't 1994) (affirming dismissal of damages claim for emotional pain and suffering in legal malpractice action). The rule applies even for alleged legal malpractice in a criminal case. *Dombrowski*, 971 N.E.2d at 340 ("[T]he First Department acknowledged the argument that limiting recovery to pecuniary damages in cases of legal malpractice arising from criminal matters would likely deny the claimant any meaningful relief, but found that such limitation was a policy decision that applied equally whether the actions arose in the civil or criminal context."). It follows necessarily that a plaintiff cannot plead the same conduct that constitutes only legal malpractice as intentional or negligent infliction of emotional distress. Were it otherwise, the limitation on damages for legal malpractice would be illusory. Any plaintiff injured by malpractice would simply replead his claim as one for emotional distress.

The role of IIED and NIED claims as a "last resort" for providing otherwise unavailable relief, *Rich*, 939 F.3d at 122, does not include providing relief in the form of damages that, for policy reasons, have been deemed unrecoverable. Thus, the fact that damages for emotional or psychological injury are not available under a legal malpractice claim is not alone sufficient for a plaintiff to assert an IIED or NIED claim as the proper "last resort" for recovering these damages. The relevant question is whether the *conduct* underlying the NIED or IIED claim, not

the particular relief sought, may be addressed through traditional tort remedies. *See Berrio v. City of New York*, 2017 WL 118024, at *7 (S.D.N.Y. Jan. 10, 2017) ("New York does not recognize NIED or IIED causes of action where the conduct underlying them may be addressed through traditional tort remedies . . . ."); *Salmon*, 802 F.3d at 256 (An IIED claim cannot be brought "where the challenged conduct falls well within the ambit of other traditional tort liability" (internal quotation marks omitted)).  Where the conduct underlying the NIED and IIED claim may be addressed through a traditional tort remedy, a claim of NIED or IIED cannot be brought.

Plaintiff asserts that ZNC and Virgil improperly "prolong[ed]" the Underlying Action and "hand[ed] the abusive doctor and his coworkers a default win."  Dkt. No. 1 ¶ 33.  He adds that Defendants knew that "Plaintiff had PTSD from this subject" and that the loss of the case "would be re-traumatizing" and was "intentional," causing him "severe emotional harm."  *Id.*  As to his NIED claim, Plaintiff relies on his prior allegations and claims that "Defendants' gross negligence caused Plaintiff emotional harm."  *Id.* ¶¶ 34–35.  Plaintiff's allegations of "intent" are conclusory and his IIED claim is dismissible for that reason alone.  Likewise, Plaintiff does not allege that Defendants' conduct endangered his own physical safety or caused him to fear for his physical safety.

More fundamentally, however, Plaintiff's IIED and NIED claims are founded on the same alleged misconduct as his legal malpractice claim—Defendants' failure to monitor the docket and to respond to the state court or the defendants in the Underlying Action, leading to the entry of the default.  Such conduct was wrongful only because it violated the duties a lawyer owes to a client under New York law and under the engagement letter.  It may be remedied, if at all, only by an award of pecuniary damages.  Thus, both the IIED and NIED claims must be

dismissed with prejudice as duplicative. *See C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F.

Supp. 3d 307, 328 (E.D.N.Y. 2016) (dismissing NIED claim because plaintiff's arguments

mirrored her claim for negligent supervision); *Poulos v. City of New York*, 2015 WL 5707496, at

*10 (S.D.N.Y. Sept. 29, 2015) (dismissing NIED claim that was "based on the same conduct that

constitutes the basis for Plaintiff's state law claims for harassment, intimidation, assault and

battery, failure to protect, neglect and failure to provide medical treatment, and negligence");

*Richardson v. City of New York*, 2015 WL 7752143, at *19 (S.D.N.Y. Nov. 18, 2015)

(dismissing NIED claim based "on the same conduct giving rise to his state law claims for

negligence and medical malpractice"); *Franco v. Diaz*, 51 F. Supp. 3d 235, 243–44 (E.D.N.Y.

2014) (dismissing IIED claim with prejudice as duplicative because "precisely the same conduct

and the same injury fall within the ambit of defendants' proposed defamation counterclaim");

*Virgil v. Darlak*, 2013 WL 4015368, at *10 (W.D.N.Y. Aug. 6, 2013) (dismissing NIED claim

because the "conduct that provides the basis for [the plaintiff's] claim for negligent infliction of

emotional distress is the same conduct underlying his claim for medical malpractice");

*Naccarato v. Scarselli*, 124 F. Supp. 2d 36 (N.D.N.Y.2000) ("[S]ince the conduct complained of

are encompassed in plaintiff's claims for assault and battery and malicious prosecution,

plaintiff's claim for intentional infliction of emotional distress must be dismissed."); *Moore v.

City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (dismissing IIED claim because

plaintiffs' allegations did not meet the standard of outrageous behavior and the claim overlapped

with traditional tort claims).

## IX.    Violation of New York General Business Law § 349

Plaintiff alleges violation of NYGBL Section 349 based on the assertion that "Defendants

engaged in deceptive practices that harmed Plaintiff." Dkt. No. 1 ¶ 39.  Defendants argue that

the claim should be dismissed because it does not allege conduct that is consumer oriented or

constitute anything other than a dispute between private parties.  Dkt. No. 11-6 at 17–18.

Defendants are correct.

Section 349 of the NYGBL "makes unlawful '[d]eceptive acts or practices in the conduct

of any business, trade or commerce or in the furnishing of any service in [New York] state,'"

*Pleman ex rel. Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir. 2005) quoting N.Y.

Gen. Bus. L. § 349), and "provides a private right of action to 'any person who has been injured

by reason of any violation of th[e] section,'" *Kacocha v. Nestle Purina Petcare Co.,* 2016 WL

4267991, at *13 (S.D.N.Y. Aug. 12, 2016) (quoting N.Y. Gen. Bus. L. §349(h)).  "To state a

claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the

act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."

*Spangola v. Chubb Corp.* 574 F.3d 64, 74 (2d Cir. 2009); *see also Goshen v. Mut. Life. Ins. Co.*

*of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002) ("Under General Business Law § 349(h) '[a] prima

facie case requires . . . a showing that defendant is engaging in an act or practice that is deceptive

or misleading in a material way and that plaintiff has been injured by reason thereof.'" (citation

omitted)).  Section 349 "applies solely to matters affecting the consumer public at large[,]" and

"[p]rivate contract disputes, unique to the parties, are not covered by the statute."  *Kirk v. Heppt*,

532 F. Supp. 2d 586, 591 (S.D.N.Y. 2008) (citing *Vitolo v. Mentor H/S. Inc.*, 213 Fed. App'x 16,

17 (2d Cir. 2007) (summary order)); *accord Oswego Laborers' Loc. 214 Pension Fund v.*

*Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995)).

In support of his Section 349 claim, Plaintiff makes only the barebones allegation that

"Defendants engaged in deceptive practices that harmed Plaintiff."  Dkt. No. 1 ¶ 39.  But if

Defendants' conduct was directed only at Plaintiff and harmed only Plaintiff, it was not

consumer oriented.  "'Private contract disputes unique to the parties . . . [do] not fall within the

ambit' of N.Y. G.B.L. §§ 349 or 350." *Rhee-Karn*, 2018 WL 11459415, at *13 (quoting *N.Y. Univ. v. Continental Ins. Co.*, 639 N.Y.S.2d 283, 290 (N.Y. 1995)); *see also Coppelson v. Serhant*, 2021 WL 148088, at *5 (S.D.N.Y. Jan. 15, 2021) (dismissing Section 349 claim where allegations were based on "paradigmatic private dispute" unique to the parties).

"Although self-represented plaintiffs are generally allowed an opportunity to amend their complaint before the Court will dismiss it with prejudice, that rule does not hold where not even a liberal reading of the complaint gives any indication that a valid claim might be stated." *Evans v. Bronxworks, Inc.*, 2025 WL 3469952, at *5 (S.D.N.Y. Dec. 3, 2025) (citations and internal quotation marks omitted). Plaintiff has given no indication that Defendants' allegedly deceptive practices extended beyond their private dispute. Plaintiff's claim under Section 349 is thus dismissed with prejudice.

## X.    Violation of Civil Rights Under 42 U.S.C. § 1983

Plaintiff alleges as an "additional caus[e] of action" that Defendants violated his civil rights. Plaintiff alleges that "Defendants, acting under the color of law or in collusion with opposing counsel," deprived Plaintiff of these rights, and that "Defendants' intentional misconduct, discrimination, and collusion with opposing parties and counsel resulted in the denial of Plaintiff's ability to pursue a valid legal claim and access justice on equal footing with others." Dkt. No. 1 ¶¶ 57–58.

Section 1983 provides that an action may be maintained against a "person" who has deprived another of rights independently secured by the "Constitution and laws." 42 U.S.C. § 1983. To successfully plead a § 1983 claim, a plaintiff must allege two elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of

the United States." *Id*. "[T]]he actions of nominally private entities are attributable to the state when those actions meet one of three tests:

> (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined'with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test').

*Abadi v. Am. Airlines, Inc.*, 2024 WL 1346437, at *18–19 (S.D.N.Y. Mar. 29, 2024) (alterations in original) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014).

Plaintiff's Section 1983 claim falters for failure to allege state action. Plaintiff alleges that "Defendants acted under color of law . . . by leveraging their positions as licensed attorneys in a regulated profession." Dkt. No. 1 ¶ 53. "[A]lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk County v. Dodson*, 454 U.S. 312, 319 (1981); *see also Russell v. Freedman*, 2025 WL 638548, at *2 (E.D.N.Y. Feb. 27, 2025) ("It is well-settled that private attorneys and law firms . . . do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law." (quoting *Manko v. Steinhardt*, 2012 WL 213715, at *4 (E.D.N.Y. Jan. 24, 2012))). Even with leave to amend, Plaintiff cannot allege that his attorneys were state actors. Plaintiff's § 1983 claim is therefore dismissed with prejudice.

## XI.    Violation of New York State Civil Rights Law § 40-c

Plaintiff further claims that Defendants violated NYSCRL § 40-c through their alleged "discriminatory treatment of Plaintiff, compounded by their intentional and reckless disregard for his legal rights." Dkt. No. 1 ¶ 61.

Section 40-c ensures equal protection of the laws of New York State, and provides, in relevant part, that "[n]o person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation, gender identity or expression, or disability . . . be subjected to any discrimination in his or her civil rights . . . by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state."  N.Y. Civ. Rights Law § 40-c.

Defendants move to dismiss Plaintiff's Section 40-c claim on the basis that Plaintiff only alleges discriminatory treatment in a "conclusory fashion" and "sets forth no fact upon which to find that he was discriminated on the basis of race, creed, national origin, sex, marital status, sexual orientation, gender identity or expression, or disability."  Dkt. No. 11-6 at 21–22.

Section 40-c claims require "probative evidence capable of sustaining a claim that [a plaintiff] was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  *Beckles v. Bennet*, 2008 WL 821827, at *18 (S.D.N.Y. Mar. 26, 2008) (citing *Daniel v. Safir*, 175 F. Supp. 2d 474, 481—82 (E.D.N.Y. 2001)); *see also Brown v. St. John's Univ.*, 2010 WL 11627391, at *7 (E.D.N.Y. June 29, 2010).  Here, the Complaint does not articulate discrimination based on one of the protected characteristics listed in Section 40-c, nor does it allege any intentional or purposeful discriminatory actions by Defendants.  Plaintiff also fails to plead disparate treatment compared to others similarly situated.  Accordingly, Plaintiff's NYSCRL claim is dismissed.

Moreover, NYSCRL § 40-d, the enforcement provision of Section 40-c, provides in relevant part that "[a]t or before the commencement of any action under this section, notice thereof shall be served upon the attorney general." N.Y. Civ. Rights Law § 40-d. "[C]laims for violations of section 40-c of the [NYSCRL] must be dismissed' when a plaintiff 'fail[s] to give necessary notice to the Attorney General . . . before making those claims." *Bebry v. ALJAC LLC*, 954 F. Supp. 2d 173, 180 (E.D.N.Y. 2013) (alterations in original) (quoting *Sundaram v. Brookhaven Nat'l Labs.,* 424 F. Supp. 2d 545, 571 (E.D.N.Y. 2006)). Plaintiff has made no indication that he served notice on the New York State Attorney General before commencing this action. "Thus . . . the Plaintiff is barred from proceeding on a claim under section 40-c." *Id.* As Plaintiff is unable to proceed under this claim, his claim is dismissed with prejudice.

## XII. Individually Named Defendants

Finally, the Complaint must be dismissed against all Defendants other than ZNC and Virgil. As to those Defendants, all that Plaintiff alleges is that "[a]ll ZNC Attorneys were made aware of the failure and default, and had a legal, ethical, and moral responsibility to be truthful and upfront with Plaintiff," but "instead allowed and provided resources and cover" for Virgil "to perpetrate a fraud on behalf of them and their firm." Dkt. No. 1 ¶ 64. Plaintiff alleges that "[a]ll ZNC Attorneys" benefited by the alleged fraud "by avoiding increased insurance premiums, liabilities, reputational harm, lost business, regulatory intervention, and personal losses from lawsuits resulting from public knowledge of their fraud and incompetence." *Id.* ¶ 65. By those allegations, Plaintiff implicitly argues for a broad rule of law that would hold all members of a firm liable when any one of them commits an act that constitutes malpractice. The law does not so provide.

ZNC is organized as a professional service corporation. Dkt. No. 11-6 at 1, 23. Under New York's Business Corporation Law § 1505(a), an employee or agent of a professional

service corporation is "personally liable and fully accountable for any negligent or wrongful act or misconduct committed by him or any person under his supervision and control while rendering professional services on behalf of such corporation."  N.Y. Bus. Corp. Law § 1505(a). However, members of professional service corporations are not personally liable for acts of other members of the corporation if they did not supervise those individuals or personally participate in the questioned actions.  *See Krouner v. Koplovitz*, 572 N.Y.S.2d 959, 962 (3d Dep't 1991). Indeed, New York courts instruct that § 1505(a)1505(a) should be "strictly construed," and that § 1505(a) "does not replace the general rule that corporate shareholders are not personally liable for corporate actions."  *Gianoukas v. Campitiello*, 2009 WL 3270808, at *6 (S.D.N.Y. Oct. 13, 2009) (citations omitted).

Except for Virgil and ZNC as a professional corporation, Plaintiff has failed to allege facts to support his claims against the other nine members of ZNC and ten unnamed "Does," and only makes conclusory allegations that these attorneys "actively assisted or facilitated the misconduct and fraud."  Dkt. No. 1 ¶ 6; *see Beltrone v. Gen. Schuyler & Co.*, 636 N.Y.S. 2d 917, 939 (3d Dep't 1996) (holding that "[i]n the absence of any basis for a plaintiff's speculative belief that members of a professional corporation supervised others or personally participated in the questioned actions with them, dismissal of a malpractice claim at the pleadings stage is appropriate").  Accordingly, the Complaint is dismissed against those parties.  As a liberal reading of the complaint gives an indication that other attorneys at ZNC may have participated in the alleged legal malpractice, the Court will grant Plaintiff leave to amend the Complaint.

## CONCLUSION

The Motion to Dismiss is GRANTED IN PART and DENIED IN PART.  Virgil and ZNC's motion to dismiss Plaintiff's claim for legal malpractice is DENIED.

Defendants' motion to dismiss Plaintiff's claims for breach of contract, fraud, constructive fraud, gross negligence, unjust enrichment, civil conspiracy, intentional and negligent infliction of emotional distress, violations of NYGBL, NYSCRL, and 42 U.S.C. § 1983 is GRANTED, and those claims are dismissed with prejudice.

Defendants' motion to dismiss Plaintiff's claim for breach of fiduciary duty is GRANTED and that claim is dismissed without prejudice. Plaintiff's claim against the ZNC Attorney Defendants for legal malpractice is dismissed without prejudice; all other claims against the ZNC Attorney Defendants are dismissed with prejudice. Plaintiff shall file an Amended Complaint, consistent with this Order, on or before January 21, 2026.

The Clerk of Court is respectfully directed to close Dkt. No. 11.

SO ORDERED.

Dated: December 31, 2025
    New York, New York

_____
              LEWIS J. LIMAN
          United States District Judge