Case 1:24-cv-09830-LJL    Document 74-2    Filed 04/27/26    Page 1 of 24

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

ARI TEMAN,

             Plaintiff,

        vs.

ERIC BRAVERMAN, M.D.,
RICHARD SMAYDA, D.O..,
SANDIP BUCH, M.D.,
ANUPAMA REDDY, M.D.,
 PATH MEDICAL, P.C., DARYA BRAVERMAN,
and TOTAL HEATH NUTRIENTS.

             Defendants.

-------------------------------------------------------------------X

Index No.: _____/2014

**COMPLAINT**

Plaintiff Ari Teman ("Mr. Teman" and/or "Plaintiff"), by and through his undersigned

counsel, as and for his Complaint against Defendants Eric Braverman, M.D. ("Dr. Braverman"),

Richard Smayda, D.O.., ("Dr. Smayda"), Sandip Buch, M.D., ("Dr. Buch"), Anupama Reddy,

M.D., ("Dr. Reddy"), PATH Medical, P.C. ("PATH Medical"), Darya Braverman ("Darya

Braverman"), and Total Health Nutrients ("Total Health Nutrients") (collectively hereinafter

"Defendants") (Plaintiff and Defendants collectively the "Parties"), allege the following facts:

## SUMMARY OF ALLEGATIONS

1.     This is an action by Mr. Teman to recover damages against Defendants for

negligence, fraud, and negligent infliction of emotion distress.

2.     In short, Mr. Teman, an award-winning comedian and philanthropist who founded

a renowned international conference series and an international volunteer network recognized by

the White House and the New York City Mayor's Office, hereby alleges that Dr. Braverman, Dr.

Smayda, Dr. Buch, Dr. Reddy and PATH Medical breached their duty of care to Mr. Teman

during the course of his medical treatment and caused him damages by wrongfully and/or

intentionally diagnosing with him borderline personality disorder and other psychiatric disorders

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

and treating him for such disorders, when in fact they knew he was suffering from the effects of a sleep disorder known as obstructive sleep apnea syndrome. Dr. Braverman and PATH Medical then knowingly and intentionally defrauded Mr. Teman by withholding the results of his October 2011 sleep study, by wrongfully and/or intentionally diagnosing him with borderline personality disorder and other psychiatric disorders, by continuing to render unnecessary medical services in an effort to profit off of Mr. Teman's debilitated mental and physical state, and by fraudulently ordering him into a intensive psychiatric behavior therapy program without the proper diagnosis warranting the program. In addition, Dr. Braverman's wife, Darya Braverman, and an entity owned by and/or affiliated with PATH Medical called Total Health Nutrients further perpetuated Dr. Braverman's and PATH Medical's fraud upon Mr. Teman by taking advantage of his debilitated state and falsely representing to Mr. Teman that their vitamins and supplements would alleviate Mr. Teman's physical and mental symptoms. Lastly, Defendants acts of negligence and fraud as alleged herein have caused Mr. Teman severe emotional distress.

3.     Plaintiff therefore seeks to recover compensatory damages against Defendants including noneconomic damages for suffered pain, and economic damages for lost wages and earning capacity as well as reasonable medical bills incurred. Plaintiff also seeks punitive damages against Dr. Braverman because his wrongdoing is not simply intentional but evinces a high degree of moral turpitude.

**PARTIES**

4.     Mr. Teman is a natural person and a resident of the State of New York. Mr. Teman maintains a principal place of residence at 140 7th Avenue, New York, New York.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

4.      At all times mentioned herein, upon information and belief, Dr. Braverman is a natural person and licensed physician who maintains a principal office at 304 Park Avenue South, Floor 6, New York, New York.

5.      At all times mentioned herein, upon information and belief, Dr. Smayda is a natural person and a doctor of osteopathic medicine licensed to practice medicine in the State of New York who maintains a principal place of business at 304 Park Avenue South, Floor 6, New York, New York.

6.      At all times mentioned herein, upon information and belief, Dr. Buch is a natural person and a physician licensed to practice medicine in the State of New York who maintains a principal place of business at 304 Park Avenue South, Floor 6, New York, New York.

7.      At all times mentioned herein, upon information and belief, Dr. Reddy is a natural person and a physician licensed to practice medicine in the State of New York who maintains a principal place of business at 304 Park Avenue South, Floor 6, New York, New York.

8.      At all times mentioned herein, upon information and belief, PATH Medical is a professional corporation duly formed under and by virtue of the laws of the State of New York and maintains a principal office at 304 Park Avenue South, Floor 6, New York, New York. Upon information and belief, Dr. Braverman is the owner of PATH Medical.

9.      At all times mentioned herein, upon information and belief, Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy were conducting their business as PATH Medical.

10.     At all times mentioned herein, upon information and belief, Darya Braverman is a natural person who resides in New York, New York.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

11. At all times mentioned herein, upon information and belief, Total Health Nutrients is a trade name or unregistered business owned by PATH Medical and operated by Darya Braverman.

**JURISDICTION AND VENUE**

12. Plaintiff has fully complied with all prerequisites to obtain jurisdiction of this Court in the instant matter.

13. This Court has personal jurisdiction over the parties pursuant to CPLR §301 in that at all relevant times, the Parties were domiciliaries of, and/or resided in, and/or maintained primary places of business in the State of New York, and because the causes of actions asserted herein arise from acts that occurred in the State of New York.

14. Venue is proper in New York County pursuant to CPLR §503(a), (c), and (d) as it is where all Parties reside or maintain principal places of business or where the conduct for the basis of this cases arises.

**FACTUAL BACKGROUND**

15. Mr. Teman is an award-winning comedian and television personality, as well as a philanthropist. He is founder of the 12gurus:Charity and 12gurus:Health conferences, and founder of an award-winning international volunteer organization, JCorps. Mr. Teman is the 2009 Jewish Community Hero of the Year, as named by the Jewish Federation of North America and one of Jewish Week's "36 Under 36".

16. Upon information and belief, Dr. Braverman is a physician, researcher, author, and the medical director of PATH (Place for Achieving Total Health) Medical as well as coordinator of clinical research for PATH Foundation NY, both located in New York City.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

Upon information and belief, Dr. Braverman has published journal articles and popular books on the topics of neurology, psychiatry, internal medicine, bariatrics, and preventative medicine.

17.     Between September 15, 2011 through June 2012, Mr. Teman was a patient of Dr. Braverman, Dr. Smayda, and PATH Medical.  During the course of his treatment with PATH Medical, Mr. Teman also met with Dr. Buch and Dr. Reddy, who each are employed by PATH Medical, upon information and belief.

18.     At all times mentioned herein, Mr. Teman had a health insurance policy through Horizon Blue Cross Blue Shield of New Jersey.

19.     On or about September 15, 2011, Mr. Teman underwent an initial consultation with Dr. Braverman and Dr. Smayda at the offices of PATH Medical complaining of constant fatigue, difficulty breathing, insomnia, poor sleep, and snoring.

20.     Dr. Braverman presents himself as a leading figure in the practice of "brain-body healthcare", including the treatment of sleep disorders.

21.     Dr. Braverman and PATH Medical charged Mr. Teman $375.00 for this initial consultation, which Mr. Teman paid.

22.     Dr. Braverman and PATH Medical immediately instructed Mr. Teman to undergo the "Executive Health Program".  On the PATH Medical website (www.PATHmed.com), the Executive Health Program was described as a comprehensive, head-to-toe examination conducted in one day, in which a patient undergoes a series of tests including a fully body x-ray scan, full body ultrasound scan, bone density scan, multiple blood tests, and psychological tests.

23.     Dr. Braverman and PATH Medical represented to Mr. Teman that the Executive Health Program could identify the causes of Mr. Teman's constant fatigue and his other symptoms he was suffering.

24. In or about September 2011, Mr. Teman underwent the Executive Health Program over the course of two days. Dr. Braverman and the staff of PATH Medical administered a series of tests upon Mr. Teman including the aforementioned fully body x-ray scan, full body ultrasound scan, bone density scan, multiple blood tests, and psychological tests.

25. Dr. Braverman and PATH Medical subsequently advised Mr. Teman that he suffered from aluminum poisoning, low bone density, and low testosterone. Upon information and belief, none of these diagnoses cause sleep disorders.

26. Despite Mr. Teman's complaints, Dr. Braverman and PATH Medical did not advise Mr. Teman of a diagnoses with any form of sleep disorder derived from Mr. Teman's breathing difficulties or snoring, in particular obstructive sleep apnea syndrome ("OSAS"), which is an obstruction in the nasal passage that causes breathing to sputter and stop repeatedly through the night.

27. Nevertheless, Dr. Braverman and PATH Medical charged Mr. Teman $10,000.00 for the Executive Health Program.

28. Dr. Braverman and PATH Medical further instructed Mr. Teman to take a multitude of vitamin supplements and pills that he could conveniently buy at their vitamin store, Total Health Nutrients, located within the PATH Medical office at 304 Park Avenue South, Floor 6, New York, New York. Upon information and belief, Total Health Nutrients is owned by PATH Medical and operated by Dr. Braverman's wife, Darya Braverman.

29. Dr. Braverman and PATH Medical further instructed Mr. Teman to undergo chelation therapy to remove aluminum poisoning.

30. Upon information and belief, chelation therapy is a medical procedure that involves the administration of chelating agents to remove heavy metals from the body through a

series of intravenous infusions. In respected medical circles, chelation therapy is considered quackery with no medical benefits.

31.    For instance, in October 2013 the Oregon Medical Board issued a issued a "Statement of Philosophy" which concluded that there is no scientific evidence that chelation therapy is effective for any medical condition other than heavy metal toxicity.[1]

32.    Several years ago, in October 2002, the National Council Against Health Fraud concluded that chelation therapy is unethical and should be banned.[2]

33.    In or about September 2011, Dr. Braverman and PATH Medical administered chelation treatments to Mr. Teman.

34.    Upon information and belief, Mr. Teman never suffered from symptoms of heavy metal toxicity.  No other doctor or other medical facility ever diagnosed Mr. Teman with such condition.

35.    Dr. Braverman and PATH Medical's treatment of Mr. Teman with chelation therapy had no medical benefit to Mr. Teman and was medically unnecessary, but caused him harm, pain and distress, as well as financial hardship.

36.    In or about October 2011, within the first month following the initial consultation and administration of the Executive Health Plan, Mr. Teman complained to Dr. Braverman that he felt that something was physically wrong and repeatedly asked for x-rays of his nose, and for a sleep study to be conducted.

37.    Dr. Braverman instructed Mr. Teman to undergo an at-home sleep study administered through a medical device that was provided by PATH Medical.

---

[1] *See* http://www.oregon.gov/omb/board/philosophy/Pages/Chelation-Therapy.aspx
[2] *See* http://www.ncahf.org/policy/chelation.html

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

38.     Mr. Teman administered the sleep study at his home over the course of one night and provided Dr. Braverman and PATH Medical with the medical device containing the results of the sleep study.

39.     Dr. Braverman and PATH Medical, however, did not disclose the results to Mr. Teman, but instead represented to Mr. Teman that the symptoms he complained of were unrelated to sleep.

40.     Dr. Braverman then stated to Mr. Teman that he could possibly be suffering from a cascade of psychiatric disorders including depression and anxiety.

41.     Dr. Braverman intentionally, fraudulently, and wrongfully withheld the results of Mr. Teman's sleep study and misrepresented to Mr. Teman that his symptoms were unrelated to sleep.   Rather, the sleep study report explicitly found that Mr. Teman's symptoms was caused by obstructive sleep apnea and recommended referral to an Ear Nose and Throat surgeon for modification to the nasal passage as a treatment.

42.     Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy failed to diagnose Mr. Teman with OSAS, which creates psychiatric dysfunctions through sleep deprivation, including deterioration of memory and mood stability.   Rather, Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy intentionally hid from Mr. Teman the diagnosis of OSAS as the cause of Mr. Teman's sleep problems, despite Mr. Teman's belief that his constant fatigue was a manifestation of a physical problem rather than a mental problem.

43.     In or about November 2011 through March 2012, Dr. Braverman and PATH Medical prescribed and ordered Mr. Teman to take powerful, controlled psychiatric and antipsychotic medications, as well as weigh-control medications.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

44.    Dr. Braverman also injected Mr. Teman with a drug that treats schizophrenia and different types of behavioral problems.

45.    Dr. Braverman improperly medicated Mr. Teman as he never suffered from schizophrenia (or symptoms of it), which is a chronic, severe and disabling brain disorder that only occurs in one (1) percent of the population according to the National Institute of Mental Health, and was not suffering from such at that time.[3]

46.    The drugs prescribed by Dr. Braverman and PATH Medical caused Mr. Teman to suffer from numerous side effects.  In or about January 2012 through March 2012, while still suffering from constant fatigue, Mr. Teman experienced episodes of shaking, mood swings, debilitating headaches, and very painful, torturous sensations course through his body -- the equivalent feeling of electric shock.  Mr. Teman began to collapse, often face down, in bed and at work.

47.    In or about March 2012, Mr. Teman complained to Dr. Braverman about his symptoms, particularly the debilitating headaches, and insisted that PATH Medical perform an MRI.  Yet, instead of referring Mr. Teman to an MRI technician and radiologist covered under his health insurance plan, Dr. Braverman refused to give Mr. Teman an MRI unless Mr. Teman was evaluated by  a "specialist" at the radiology department of Lenox Hill Hospital on East 77th Street, New York, NY.  PATH Medical charged Mr. Teman approximately $2,500.00, and Mr. Teman was not reimbursed by his insurance.

48.    The MRI report produced by Lenox Hill Hospital evidenced *gliosis* in Mr. Teman, which is a swelling of brain cells (called *gilal cells*), which is another known indication of a sleep disorder.

---

[3] http://www.nimh.nih.gov/health/topics/schizophrenia/index.shtml

49.    Dr. Braverman told Mr. Teman that his "brain was swollen" and that he should just take "baby aspirin" to reduce the swelling.

50.    In fact, Mr. Teman suffered from gliosis from a result of the lack of rapid eye movement ("REM ") sleep, a stage of sleep characterized by the rapid and random movement of the eyes that is crucial to normal human functioning.  REM sleep is when the brain essentially "cleans" the glial cells, thus an abnormality in gilal cells is a strong indication that one is not getting enough REM sleep.

51.    At the point at which Mr. Braverman suggested that Mr. Teman take baby aspirin, Mr. Teman became suspicious that he was not receiving correct treatments from Dr. Braverman and PATH Medical.

52.    Nevertheless, Mr. Teman was very debilitated from the powerful, controlled psychiatric and antipsychotic medications that were prescribed to him by Dr. Braverman and PATH Medical as well as the vitamin supplements peddled by Darya Braverman and Total Health Nutrients.  In fact, around March and April 2012, long-time friends of Mr. Teman began expressing concern and described his condition as "being tranquilized like a horse" and would witness Mr. Teman collapse in exhaustion onto the floor and in tears, which was very unusual behavior for Mr. Teman.

53.    Further, Mr. Teman's personal relationships began to suffer as a result of his debilitating condition.

54.    During this time Mr. Teman managed two very successful and profitable conferences he founded called "12gurus:Health" and "12gurus:Charity," which were sponsored by several Fortune 500 companies and hosted in New York City on March 28 to 29, 2012 and in Vancouver on April 1 to 3, 2012.  These conferences brought together renowned speakers

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

(including chief executives of prominent businesses, bestselling authors, founders of notable charities, and Ivy League professors) sharing ideas on, respectively, health and nonprofit and philanthropy work.  Mr. Teman's debilitating condition caused by the numerous medications he was prescribed made running the conferences incredibly difficult as he was extremely lethargic and the severity of the headaches only increased.  Mr. Teman needed the assistance of a friend to work and conduct business at the respective conferences.

55.     After these events, in or about April 2012, Mr. Teman grew even further suspicious that he was not receiving proper treatment and demanded that Dr. Braverman and PATH Medical refund his money so he could afford to obtain medical treatment from another doctor.

56.     Dr. Braverman responded by threatening Mr. Teman with a restraining order when he demanded a refund and he and the PATH Medical staff began making inappropriate phone calls to Mr. Teman's girlfriend's family from their office phone and even Mr. Teman's cell while he was too ill to object. Dr. Braverman further responded by stating that Mr. Teman required additional mood stabilizers because of his complaints, and told Dr. Buch to further medicate Mr. Teman.

57.     Nevertheless, Mr. Teman continued seeking treatment from Dr. Braverman and PATH Medical because his fatigue only worsened.

58.     In April 2012, Mr. Teman ceased taking the numerous prescription medications prescribed to him by PATH Medical and Dr. Braverman in order to detox.

59.     Mr. Teman noticed his condition improving after detoxing, and Mr. Teman demanded that Dr. Braverman and PATH Medical return his monies.

60.     Consequently, Dr. Braverman contacted Mr. Teman's parents, who resided in Israel, and falsely informed them that Mr. Teman was suffering from borderline personality disorder, which is a mental health condition in which a person has long-term patterns of unstable or turbulent emotions.[4]

61.     Dr. Braverman advised Mr. Teman's parents that PATH Medical would refuse to treat Mr. Teman unless he went to receive treatment at Silver Hill Hospital of New Canaan, Connecticut.

62.     Mr. Teman never exhibited long-term patterns of emotional instability so as to be diagnosed with borderline personality disorder.

63.     In fact, Mr. Teman objected that he did not suffer from borderline personality disorder to Dr. Braverman, the other doctors and staff at PATH Medical, and his parents, who were mislead by Dr. Braverman and PATH Medical.

64.     As per the instructions of Dr. Braverman, on June 5, 2011, Mr. Teman was brought to Silver Hill Hospital by Rabbi Levi Shmotkin and his sister.  Mr. Teman's father paid for Mr. Teman to receive treatment at Silver Hill Hospital and undergo a dialectical behavior therapy program ("DBT program"), which, according to the National Alliance on Mental Illness, is a therapy program created for the treatment of chronically suicidal and self-injurious individuals with borderline personality disorder.[5]

65.     PATH Medical, Dr. Braverman, and the medical staff at Silver Hill Hospital fraudulently stated that the DBT program would help to alleviate Mr. Teman's medical problems.

---

[4] http://www.mayoclinic.org/diseases-conditions/borderline-personality-disorder/basics/definition/con-20023204
[5] http://www.nami.org/Content/NavigationMenu/Inform_Yourself/About_Mental_Illness/About_Treatments_and_Supports/Dialectical_Behavior_Therapy_(DBT).htm

Mr. Teman was simply induced to undertake the DBT program which was not proper for his medical condition.

66.     Upon information and belief, Silver Hill Hospital did not conduct its own evaluation of Mr. Teman and simply relied upon Dr. Braverman's recommendations and findings.

67.     Silver Hill Hospital represented to Mr. Teman that he would be in-patient for one night, and then in the DBT program for 30 days. Instead, Silver Hill Hospital kept Mr. Teman as an in-patient for almost a week. Thus, the initial intake procedure of the Silver Hill Hospital mislead Mr. Teman as to the nature of the services.

68.     Silver Hill Hospital further misrepresented to Mr. Teman that his health insurance would pay for the inpatient program, when it would not.

69.     During the proposed sleep observation by the staff of Silver Hill Hospital, Mr. Teman was ill and was gasping for air, an obvious symptom of OSAS.

70.     While Mr. Teman was admitted into Silver Hill Hospital as an in-patient, Silver Hill Hospital failed to observe that Mr. Teman was obviously gasping for air every 2 minutes during REM sleep which occurs for about 20 minutes, 3-4 times every night. Simply put, Silver Hill Hospital failed to observe that Mr. Teman was suffocating approximately 27 times per hour during REM sleep as was later established by an NYU Medical Center Sleep Center study of Mr. Teman's sleep patterns.

71.     Yet, the medical staff of Silver Hill Hospital did not do anything about this incident which occurred repeatedly during the night, and nightly during the course of the Mr. Teman's stay.

72.    Neither Dr. Braverman nor the staff of Silver Hill Hospital did the proper diagnosis of Mr. Teman as he was being treated for borderline personality disorder, anxiety, and depression instead of his obvious case of OSAS.

73.    Dr. Braverman, PATH Medical, and Silver Hill failed to diagnose Mr. Teman with a sleep disorder in which another medical professional was able to diagnose within 15 minutes of evaluating Mr. Teman following his stay at Silver Hill Hospital (at the Emergency Room of Weill Cornell Medical Center on East 68th Street).

74.    Further, Mr. Teman continued to receive multiple improperly prescribed medications from Silver Hill Hospital, causing severe pain and long term damaging effects similar to those medications prescribed by Dr. Braverman and PATH Medical.

75.    In fact, Silver Hill prescribed medications to Mr. Teman known to sedate individuals.  Thus, Mr. Teman was given medication by the staff of Silver Hill Hospital in order to keep him sedated.

76.    Silver Hill Hospital also coerced and attempted to further coerce Mr. Teman into attending group sessions on addiction management despite him never having had or having any issues with addiction.

77.    Upon information and belief, Silver Hill Hospital acted at the direction of Dr. Braverman and PATH Medical.

78.    Consequently, Mr. Teman attempted to leave Silver Hill Hospital, but the staff of Silver Hill Hospital put Mr. Teman on lockdown which prevented him from leaving.

79.    Mr. Teman was further assaulted and threatened by the staff of Silver Hill Hospital.

80.      Silver Hill Hospital allowed one of its staff members to enter into Mr. Teman's room while another staff member blocked the ability of any one to pass by and any of the cameras to see as a staff member struck Mr. Teman in the genitals in a slow stroking motion and the staff member stated in a harsh tone that "Nobody will believe you. Now shut up and do what you are told when I tell you."

81.      Shortly thereafter, while still on lockdown, Mr. Teman demanded that Silver Hill Hospital's staff members allow him to communicate with his family members and friends.  Silver Hill Hospital acquiesced to Mr. Teman's demand, and upon Mr. Teman communicating with his family and friends, they immediately demanded his release from Silver Hill Hospital.

82.      Silver Hill Hospital released Mr. Teman to his family on the condition that he go into the care of a doctor in New York City.

83.      In or about July 2012, Mr. Teman thus met with Dr. Samuel Sharmat ("Dr. Sharmat"), a board-certified psychiatrist, Dr. Alisa Kriegel ("Dr. Kriegel"), a clinical psychologist, and Dr. Jordan Wright ("Dr. Wright"), a psychotherapist, at the Centerpoint Mental Health Center in New York City ("Centerpoint").

84.      When meeting with the staff of Centerpoint, Mr. Teman was experiencing pure torture, akin to how sleep deprivation is used by interrogators to torture suspected terrorists into providing information.

85.      For instance, Mr. Teman spent almost all of his time in bed, unable to work, and could not walk more than a block without tremendous pain. His body shook constantly. He felt as if his body was being electrocuted constantly.

86.      In fact, it would take Mr. Teman ten minutes to walk down the block, and he would often need to stop to rest or go back and crawl into bed. Mr. Teman had to take cabs to his

treatments at Centerpoint because walking or taking the subway was too painful and he lacked the energy.

87.    This tortured state made it impossible for Mr. Teman to work, maintain his business, and to maintain his relationships, personal, family, friends, and professional. Mr. Teman's comedy career suffered as a result, as did Mr. Teman's ability to run the conferences and his volunteer organization, JCorps, which was, for all intensive purposes, completely diminished.

88.    Mr. Teman went to Dr. Kriegel because he was under the wrongful impression from Dr. Braverman that he needed the DBT program to alleviate his physical and mental symptoms.   Upon information and belief, Dr. Kriegel is an expert on DBT programs and borderline personality disorder.

89.    Dr. Kriegel evaluated Mr. Teman and found that he did not have borderline personality disorder and that Silver Hill Hospital's DBT program was an unwarranted treatment. Dr. Kriegel quickly found that Dr. Braverman's diagnosis of Mr. Teman with borderline personality disorder was completely erroneous.

90.    Further, Mr. Teman met with Dr. Sharmat, who found that Mr. Teman's gliosis diagnosis was also erroneous and suspected that he was suffering from a sleep disorder, but Mr. Teman replied that Dr. Braverman tested for one and said he did not have one.  Dr. Sharmat further relied on the information and medical records provided by Dr. Braverman and PATH Medical in believing that a sleep disorder had been ruled-out via testing and therefore treated Mr. Teman's symptoms, however ineffectively.

91.    Mr. Teman spent the rest of summer 2012 detoxing from the medicines prescribed by Dr. Braverman and PATH Medical and continued to suffer tremendously.

92.     In or about October 2012, Mr. Teman walked into the emergency room of Weill Cornell Medical Center on East 68th Street New York City and informed the intake nurse that he had not slept in eleven (11) nights, could not stop shaking, and was in incredible pain.

93.     Mr. Teman was admitted into Weill Cornell Medical Center and within fifteen minutes of speaking with a doctor, Mr. Teman was diagnosed with a sleep disorder and was prescribed a sleeping medication.

94.     Mr. Teman woke up the next morning without shaking and pain.  Yet, as Hurricane Sandy was about to strike New York City, the doctor released Mr. Teman stating to the effect "The hurricane is expected to be bad. You can stay but you'll be locked in for a week. I think you're OK."

95.     After his visit to the emergency room of Cornell Hospital, Mr. Teman was sent for a sleep disorder testing at New York University ("NYU")'s Sleep Center by Dr. Sharmat. NYU's test showed that Mr. Teman was suffocating 27 times per hour during REM sleep and therefore getting almost no REM sleep.  NYU recommended Mr. Teman see an ear nose and throat ("ENT") specialist and he saw Dr. Zvi Osterweil ("Dr. Osterweil") located on East 86th Street in New York City.

96.     Dr. Osterweil found that Mr. Teman had a blockage of the nasal passage causing him to suffocate 27 times per hour during REM sleep.  Dr. Osterweil stated that the obstruction was obvious. In fact, it was so obvious that Dr. Osterweil could not get his narrow fiber optic scope up Mr. Teman's left nostril.

97.     Dr. Osterweil insisted that Mr. Teman go to Dr. Glenn Waldman ("Dr. Waldman") in Thousand Oaks, California who specialized in repairing badly damaged nasal passages (from botched surgeries, etc.).

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

98.     Mr. Teman agreed and went to California, where on or about April 16, 2013, Dr. Waldman successfully performed an eleven (11) hour nasal passage reconstruction surgery at the Simi Valley Surgery Center.

99.     A day after the surgery, Mr. Teman no longer required medication to sleep, although over the next three (3) months Mr. Teman had to detox from the medications he had been poisoned with by Dr. Braverman and PATH Medical, which caused Mr. Teman to suffer painful withdrawals.

100.    Six months following surgery, 80% of Mr. Teman's facial swelling had subsided.

101.    In or about October 2013, Mr. Teman was able to sleep through the night for the first time in years. The swelling had gone down enough that mild congestion or movement didn't block air enough to wake Mr. Teman. Thereafter, his energy returned to the point where he was able to work out at the gym regularly, run, bike, and work.

102.    Nearly two years from his initial consultation with Dr. Braverman and PATH Medical, Mr. Teman started to rebuild his life and his comedy career and was able to  slowly return to the stage in New York City to perform a regular spot at a comedy club.

103.    However, Mr. Teman  has been unable to fully recover to where he was before being treated by the Defendants.  The Defendants cased incredible damage to Mr. Teman's reputation and network within the comedy community, with many of his compatriots thinking he quit the comedy business or left town, and many younger comedians not knowing he ever existed. Mr. Teman has also suffered financially, as the respected international brands of the conferences and JCorps remained stagnant and became forgotten or assumed to be dissolved. Thus, Mr. Teman lost earning capacity for the remainder of his life as a comedian and from running the conferences.

104.    Mr. Teman seeks to recover compensatory damages against Defendants including noneconomic damages for suffered pain, and economic damages for lost wages and earning capacity, and the medical expenses he incurred.  Mr. Teman also seeks punitive damages against Dr. Braverman because his wrongdoing is not simply intentional but evinces a high degree of moral turpitude.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSES OF ACTION
### AGAINST DR. BRAVERMAN, DR. SMAYDA, DR. BUCH, DR. REDDY
### AND PATH MEDICAL
### (NEGLIGENCE)

106.    Plaintiff repeats and realleges Paragraphs 1 through 104 as though fully incorporated herein.

107.    Defendants Dr. Braverman, Dr. Smayda, Dr. Buch, Dr. Reddy, and PATH Medical had a duty to make sure that Mr. Teman had the proper medical treatment for his medical condition.

108.    Defendants Dr. Braverman, Dr. Smayda, Dr. Buch, Dr. Reddy, and PATH Medical by virtue of their "healthcare provider/patient relationship" with the Mr. Teman owed a duty of care to the Plaintiff.

109.    Defendants Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy wrongfully, willfully and maliciously misdiagnosed the Plaintiff and repeatedly performed improper treatments.

110.    Plaintiff has been examined by other competent medical professionals who stated that the Plaintiff does not have the condition that was diagnosed by Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy.

111.    Defendants Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy were negligent because they failed to render professional services to the Plaintiff with the exercise of the degree of skill and learning commonly applied under all circumstance in the community by the average, prudent, reputable member of this medical profession which in fact caused an injury to the Plaintiff.

112.    Defendant PATH Medical was negligent through its agents, employees, and staff in failing to discover and notify Plaintiff of the true condition of his sleep disorder.

113.    As a proximate results of Dr. Braverman, Dr. Smayda, Dr. Buch, Dr. Reddy and PATH Medical's conduct alleged herein, Plaintiff has been damaged in an amount to be determined at trial.

**AS AND FOR A SECOND CAUSES OF ACTION**
**AGAINST DR. BRAVERMAN AND PATH MEDICAL**
**(FRAUD)**

114.    Plaintiff repeats and realleges Paragraphs 1 through 104 as though fully incorporated herein.

115.    Dr. Braverman and PATH Medical knowingly and intentionally defrauded Mr. Teman by withholding from the results of his October 2011 sleep study.

116.    Dr. Braverman and PATH Medical knowingly and intentionally defrauded Mr. Teman by diagnosing him with borderline personality disorder when Mr. Teman demanded a refund from Dr. Braverman PATH Medical.

117.    Dr. Braverman and PATH Medical knowingly and intentionally defrauded Mr. Teman by inducing him into the DBT program without the proper diagnosis warranting the program.

118. Dr. Braverman and PATH Medical intentionally and knowingly made a false misrepresentation of the DBT programs.

119. Dr. Braverman and PATH Medical intentionally defrauded Mr. Teman by inducing him to expend $29,000.00 for the DBT program when the program did not apply to his specific medical condition. A DBT program does not treat OSAS or other sleep disorders and is not intended as such.

120. As proximate results of Dr. Braverman's and PATH Medical's conduct alleged herein, Plaintiff has been damaged in an amount Plaintiff will prove at trial.

## AS AND FOR A THIRD CAUSES OF ACTION
## AGAINST DARYA BRAVERMAN AND TOTAL HEALTH NUTRIENTS
### (FRAUD)

121. Plaintiff repeats and realleges Paragraphs 1 through 104 as though fully incorporated herein.

122. Darya Braverman and Total Health Nutrients knowingly and intentionally perpetuated Dr. Braverman's and PATH Medical's fraud upon Mr. Teman by taking advantage of his debilitated physical and mental state that was exacerbated by Dr. Braverman's prescriptions, and falsely representing to Mr. Teman that their vitamins and supplements would alleviate Mr. Teman's physical and mental symptoms.

123. As proximate results of Darya Braverman's and Total Health Nutrient's conduct alleged herein, Plaintiff has been damaged in an amount Plaintiff will prove at trial.

## AS AND FOR A FOURTH CAUSES OF ACTION
## AGAINST ALL DEFENDANTS
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

124. Plaintiff repeats and realleges Paragraphs 1 through 104 as though fully incorporated herein.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

125.    Defendants knew or should have known that the failure to exercise due care in the performance of their medical duties and outright fraud would cause the Plaintiff severe emotional distress.

126.    Defendants acts of negligence and fraud as alleged above have caused Mr. Teman severe emotional distress.

127.    As a direct and proximate results of Defendants conduct alleged herein, Mr. Teman has been damaged in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSES OF ACTION
### AGAINST PATH MEDICAL
### (VIOLATION OF N.Y. Gen. Bus. L. §349)

128.    Plaintiff repeats and realleges Paragraphs 1 through 104 as though fully incorporated herein.

129.    New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

130.    PATH Medical conducts "business" and provides a "service" within the meaning of New York General Business Law § 349.

131.    PATH Medical deceptively misrepresents to the public the medical benefit of certain treatments that are promoted by PATH Medical, including but not limited to chelation therapy.

132.    Mr. Teman has been damaged by this deceptive conduct.

133.    As a direct and proximate results of PATH Medical's conduct alleged herein, Mr. Teman has been damaged in an amount to be determined at trial.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

a.      on the first cause of action, granting Plaintiff judgment for negligence against Dr. Braverman, Dr. Smayda, Dr. Buch, Dr. Reddy, and PATH Medical in an amount to be determined at trial,  including compensatory and punitive damages;

b.      on the second cause of action, granting Plaintiff judgment for fraud against Dr. Braverman and PATH Medical in an amount to be determined at trial,  including compensatory and punitive damages;

c.      on the third cause of action, granting Plaintiff judgment for fraud against Darya Braverman and Total Health Nutrients in an amount to be determined at trial, including compensatory and punitive damages;

d.       on the fourth cause of action, granting Plaintiff judgment for negligent infliction of emotional distress against all Defendants in an amount to be determined at trial,  including compensatory and punitive damages; and

e.      on the fifth cause of action, granting Plaintiff judgment for violation of New York General Business Law §349 against PATH Medical in an amount to be determined at trial, including compensatory and punitive damages; and

f.      For any such different and further relief as this Court may deem just and proper.

## RESERVATION OF RIGHT TO AMEND PLEADINGS

Plaintiff reserves the right to amend these pleadings to add any and all claims that it determines are just and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury pursuant to CPLR §4101.

Dated: New York, NY
          November 7, 2014

                              Respectfully submitted,

                              DAVIDOFF LAW FIRM, PLLC

          By:                    /**GAK**/
                              Glen A. Kendall, Esq.
                              *Attorneys for Plaintiff*
                              228 East 45th Street
                              Suite 1700
                              New York, New York 10017
                              Tel:  212-587-5971
                              Fax:  212-658-9852
                              Email:  glen@davidofflawfirm.com