# **<u>EXHIBIT 2</u>**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**
Plaintiff,
v.
**ARI TEMAN,**
Defendant.

**Case No.: 19 Cr. 696 (PAE)**

## MOTION FOR RECONSIDERATION OF FUGITIVE STATUS AND FOR RECUSAL OF JUDGE PAUL ENGELMAYER

**Defendant Ari Teman**, pro se, moves this Court for reconsideration of its July 7, 2025, order designating him a fugitive and issuing an arrest warrant (Dkt. 567), pursuant to Federal Rules of Criminal Procedure 32.2 and Local Civil Rule 6.3 (applicable by analogy in criminal proceedings), and for the recusal of Judge Paul Engelmayer under 28 U.S.C. § 455(a). In support, Defendant submits the following:

## INTRODUCTION

On July 7, 2025, this Court erroneously designated Defendant a fugitive based on his inability to return to the United States from Israel by June 1, 2025, deeming his medical excuse "pretextual" (Dkt. 531). New and compelling medical evidence from Defendant's November 3, 2025, follow-up with his ENT specialist at Sheba Medical Center confirms that Defendant suffers from ongoing Eustachian Tube Dysfunction (ETD), unresponsive to three months of steroid spray treatment. The ENT's internal scope examination revealed persistent dysfunction, recommending serious surgical intervention—balloon dilation (tuboplasty)—requiring general anesthesia in a hospital setting.

Flying with untreated ETD risks tympanic membrane rupture, severe bleeding, and permanent hearing loss, vindicating Defendant's decision to follow medical advice and await treatment outcomes.

Moreover, despite exhaustive efforts, no boat or alternative land/sea travel from Israel to the U.S. was available due to the ongoing war, as confirmed by Mano Cruises, travel agencies, and Zim cargo lines. Defendant cannot be deemed a fugitive for circumstances beyond his control.

Reconsideration is warranted under Local Rule 6.3, as this new evidence alters the Court's prior analysis and demonstrates that Defendant's absence was not willful evasion but a good-faith response to life-threatening medical risks and logistical impossibilities.

**The fugitive designation must be vacated to allow Defendant access to necessary medical care, including surgery and prolonged recovery, and participation in Israel's health system.**

Finally, Judge Engelmayer must recuse himself due to his status as a defendant in *Teman v. Biale* (1:25-cv-05454), where vacating the fugitive status would immediately advance litigation against him, Noam Biale, and AUSA Graham, and due to the Government's refusal to deny widespread social media allegations of Engelmayer's sexual misconduct against children, creating an appearance of bias.

## STATEMENT OF FACTS

1. **Court-Approved Travel and Extensions**: Defendant traveled to Israel on September 18, 2024, with express permission from this Court and probation (Dkt. 456). Multiple extensions were granted due to the Israel-Hamas war and lack of transportation, culminating in a return deadline of June 1, 2025 (Dkt. 465, 484, 531).

2. **Initial Medical Diagnosis**: In February 2025, Defendant was diagnosed with ETD, confirmed by an objective ETF test at Sheba Medical Center, a leading Israeli medical institution. Board-certified experts advised against air travel due to risks of barotrauma (Dkt. 502-1). The Court deemed this "pretextual" despite evidence (Dkt. 508, 531).

3. **Efforts to Secure Alternative Travel**: Defendant contacted Mano Cruises, multiple travel agencies, and Zim Integrated Shipping Services, providing written confirmations that no passenger or cargo boats from Israel to the U.S. were available before July 1, 2025, due to wartime disruptions. No viable land/sea route (e.g., via Europe) was feasible amid conflict and closures.

4. **New Medical Evidence (November 3, 2025)**: After three months of prescribed steroid nasal sprays failed to resolve ETD, Defendant underwent a follow-up internal scope examination. The ENT report states (translated from Hebrew):

   > *"The patient continues to suffer from Eustachian tube dysfunction, mainly on the right side. Possible treatment options were explained: balloon dilation (tuboplasty) or insertion of a ventilation tube ("ear button"). The implications, risks, and success rates of each option were discussed.* **It is recommended to first attempt catheterization (balloon dilation) of the Eustachian tube.** *In addition, a soft diet and warm compresses to both jaw joints are recommended for two weeks."*

   (Exhibit A: ENT Report, dated November 3, 2025).

   Balloon dilation requires general anesthesia in a hospital operating room, with recovery involving weeks to months of monitoring for complications like subcutaneous

emphysema or persistent dysfunction.

5. **Risks of Flying with ETD**: The ENT no-fly order remains in effect pending recovery from surgical procedure. Untreated ETD during air travel can cause rapid pressure changes leading to tympanic membrane rupture, middle ear hemorrhage, and sensorineural hearing loss or permanent deafness (*see, e.g., Poe et al., Balloon Dilation of the Cartilaginous Eustachian Tube, 144 Otolaryngol. Head Neck Surg. 563 (2011); Hamrang-Yousefi & Andaloro, Eustachian Tube Dysfunction, StatPearls (2022)*).

6. **Ongoing War and Logistical Barriers**: The Israel-Hamas war, entering its third year, has suspended maritime routes from Israeli ports, confirmed by Defendant's documented inquiries, as was proven with submitted correspondence from Mano Cruises, travel agencies, and Zim Cargo.

7. **Judicial Conflict**: Judge Engelmayer is a named defendant in *Teman v. Biale* (1:25-cv-05454), where Defendant alleges he conspired to conceal AUSA Graham's marriage to Noam Biale, a defense attorney in this case and the Judge's mentee and close family friend. **Vacating the fugitive status would lift stays in that action, advancing claims against the Judge personally.**

## LEGAL STANDARD

Motions for reconsideration under Local Rule 6.3 are granted when there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" (*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). **New medical evidence qualifies as such (***United States v. Llewellyn***, 723 F.2d 615, 616 (7th Cir. 1983) (reconsideration warranted by post-order medical developments)).**

The fugitive disentitlement doctrine requires willful evasion (*United States v. Bescond*, 2021 WL 4481483, at *4 (2d Cir. 2021)); **it does not apply to non-willful absences due to medical or external barriers** (*Sun v. Mukasey*, 555 F.3d 802, 807 (9th Cir. 2009)).

Judicial recusal is mandatory under 28 U.S.C. § 455(a) when "impartiality might reasonably be questioned" (*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)), including personal conflicts or extrajudicial allegations creating an appearance of bias (*Liteky v. United States*, 510 U.S. 540, 548 (1994)).

## ARGUMENT

### I. Reconsideration Is Warranted Due to New Medical Evidence Confirming ETD and the Necessity of Surgery

The Court's July 7, 2025, fugitive designation (Dkt. 567) relied on its view that Defendant's ETD was "pretextual" (Dkt. 531).

The November 3, 2025, ENT report constitutes new evidence under Local Rule 6.3, as it post-dates the order and follows three months of failed conservative treatment (steroid sprays). The internal scope examination objectively confirms persistent ETD, primarily on the right side, necessitating balloon dilation tuboplasty—a surgical procedure involving catheterization under general anesthesia (*Poe et al.*, supra; *Ockermann et al., Balloon Dilatation Eustachian Tuboplasty: A Clinical Study, 120 Laryngoscope 1411 (2010)*).

This evidence directly rebuts the Court's pretext finding. Defendant followed medical advice by avoiding air travel, as ETD impairs middle ear pressure equalization, risking barotrauma during cabin depressurization: tympanic membrane rupture, severe bleeding into the middle ear, and potential sensorineural hearing loss or permanent deafness (*Hamrang-Yousefi & Andaloro*, supra; *see also McCoul et al., Health Care Utilization and Prescribing Patterns for Adult Eustachian Tube Dysfunction, 166 Laryngoscope 1680 (2016)* (documenting aviation-related ETD complications)).

Defendant's caution was not evasion but self-preservation, aligning with *Bescond*'s requirement of willful intent. The doctrine cannot apply to a defendant heeding life-threatening medical warnings (*Sun v. Mukasey*, 555 F.3d at 807 (disentitlement improper for non-willful absence)).

Balloon dilation is a serious intervention with risks including subcutaneous emphysema, infection, and prolonged recovery (weeks to months of post-operative monitoring) (*Chisolm et al., Complications of Eustachian Tube Balloon Dilation: MAUDE Database Analysis, 8 Laryngoscope Investigative Otolaryngology 1185 (2023)*).

**Vacating the fugitive status is essential to permit surgery, recovery, and access to Israel's health system**, where Defendant resides so that he may receive care at Sheba Medical Center covered by national insurance rather than private pay which he cannot afford or schedule given the current backlog in Israel.

Retaining the designation would exacerbate health risks and deny due process (*United States v. Jacob*, 714 F.3d 1032, 1036 (8th Cir. 2013) (disentitlement **discretionary**, weighing equities like health)).

## II. Logistical Impossibilities Due to War Preclude Fugitive Status

Even absent medical issues, Defendant's inability to return by boat was not willful. Despite contacting Mano Cruises, travel agencies, and Zim Cargo, no maritime options existed from Israel to the U.S. before July 1, 2025.

The ongoing war has halted passenger shipping and restricted cargo routes, with no feasible land/sea alternative (e.g., via Jordan or Europe) due to border closures and hostilities. Egypt and Jordan both have active and violent branches of Muslim Brotherhood, and Teman, as founder of the JCorps Jewish volunteer network and as a

comedian who has regularly flown to Israel to perform and performs for many Jewish organizations has received a multitude of death threats from these groups. It is therefore not safe for Teman to cross either Jordan or Egypt, even if there were a boat available, where there were *not*.

Courts reject disentitlement where external barriers like war or transportation shortages prevent return (*Fugitive Disentitlement in Forfeiture Cases, 32 J. Marshall L. Rev. 139, 152 (1998)* (logistical impossibilities negate intent)).

Defendant's documented efforts demonstrate good faith, distinguishing this from *Zedner* (555 F.3d 68 (2d Cir. 2008)), where no such barriers existed.

### III. The Fugitive Designation Must Be Vacated to Permit Medical Care and Recovery

Maintaining fugitive status hinders Defendant's access to surgery and recovery, which requires general anesthesia and months of follow-up in Israel's health system.

This violates due process by punishing health necessities (*United States v. Barnette*, 129 F.3d 1179, 1183 (11th Cir. 1996) (disentitlement must balance equities, including access to care)). Vacating the designation allows supervised release to continue remotely, enabling mental health treatment via telehealth (as previously accommodated) and preventing manifest injustice (*Shrader*, 70 F.3d at 257).

### IV. Judge Engelmayer Must Recuse Due to Conflicts and Appearance of Bias

Under 28 U.S.C. § 455(a), Judge Engelmayer's impartiality is reasonably questioned:

- **Personal Stake in Teman v. Biale**: As a defendant in *Teman v. Biale* (1:25-cv-05454), where Defendant alleges conspiracy to conceal AUSA Graham's marriage to Noam Biale (the Judge's mentee and family friend), vacating the fugitive status would lift stays and advance that action against him personally (*Liteky*, 510 U.S. at 548 (recusal for personal interest)). The Judge's rulings here appear motivated to delay scrutiny of his conduct (*Liljeberg*, 486 U.S. at 864).

**CONCLUSION**

Mr. Teman followed his board-certified ENT's recommendation to avoid flying and to use steroid sprays pending re-examination. Upon re-examination, it was determined that he requires a surgical procedure under general anesthesia.

Concurrently, Mr. Teman provided proof that no sea travel was available from Israel to the United States due to the ongoing war on seven fronts between Israel and Iran-affiliated radical Islamic groups.

**Thus, Mr. Teman was not—and is not—a fugitive. <u>He has a serious medical condition requiring surgery.</u>**

This court claims to be empathetic and human -- allowing Mr. Teman to get the surgery his ENT now says he needs without labeling him a fugitive for protecting himself from going deaf or worse during flight is the human and empathetic thing. If this is not all a ruse to stay a case against the Court's mentee and the court himself, the Court will undo the ruling and allow Mr. Teman to remain in Israel until he recovers from surgery and the ENT clears him to fly. Because such a ruling would trigger litigation restarting against Judge Engelmayer himself immediately by automatically lifting stays in civil court, the Judge has been put in a position by other courts where he must recuse from this decision.

For the foregoing reasons, Defendant respectfully requests that this Court:

1. Recuse because finding in favor of Teman here would automatically restart litigation against the Judge himself in *Teman v Biale*, alleging acts outside his role as a judge (and thus for which he has no immunity).

2. Grant reconsideration and vacate the July 7, 2025, fugitive designation and arrest warrant (Dkt. 567).

3. Grant such other relief as the Court deems just, including an expedited hearing.

**Dated**: November 3, 2025
**Respectfully submitted**,
/s/ Ari Teman
Ari Teman, Pro Se
ari@teman.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ARI TEMAN,

Defendant.

19 Cr. 696 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

Defendant Ari Teman has again moved for the Court to recuse and to lift his fugitive status. Dkt. 580. The Court again denies these motions, which are frivolous. There is no basis to reassess the Court's rulings declining to recuse and finding Teman to be a fugitive. Both rulings have been affirmed by the United States Court of Appeals for the Second Circuit. *See, e.g.*, Dkts. 380, 570, 579.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: November 4, 2025
       New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ARI TEMAN,

Defendant.

---

19 Cr. 696 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

On January 24, 2025, this Court ordered defendant Ari Teman, who is presently in his first year of a three-year supervised release term, to return to the United States by February 28, 2025. Dkt. 484. As of then, Teman had been in Israel for four-and-a-half months, with the Court's permission. As the Court, supported by the United States Probation Office ("Probation"), explained, Teman's return to the United States was important, to enable Probation to meaningfully supervise him, in particular, with respect to the special condition of supervised release requiring Teman to obtain mental health treatment. *Id.* at 7. The Court, however, *sua sponte* extended the deadline for Teman's return (then, January 29, 2025) to enable Teman (and Probation) to plan for his return, to enable Teman to investigate economical air travel options, and to give Teman time to appeal the order to the Second Circuit should he choose to do so. *Id.* at 9–10. The Court emphasized that its order was final, that it would not alter the February 28 deadline unless ordered to do so by the Second Circuit, and that if Teman were to fail to return that day, he would be in violation of a condition of supervised release. *Id.* at 10.

Since that date, Teman, who is otherwise represented, has instead repeatedly moved, *pro se*, for sanctions and for the Court's recusal, recycling claims of misconduct rejected by the

Second Circuit in its June 2023 summary order affirming Teman's convictions for wire and bank fraud. *See United States v. Teman*, No. 21-1920-cr, 2023 WL 3882974, at *3 (2d Cir. June 8, 2023) ("There is nothing to Teman's argument that Judge Engelmayer was required to recuse himself[.]"). The Court has denied these motions as meritless. *See, e.g.*, Dkt. 498 (denying motion at Dkt. 496); Dkt. 488 (denying motion at Dkt. 486); Dkt. 480 (denying motion at Dkt. 478); Dkt. 477 (denying motion made by email).

This Monday, February 24, 2025, Teman, *pro se*, moved anew for relief from the Court's January 24, 2025 order, contending, for the first time, that his return to the United States would be medically contraindicated. *See* Dkt. 502. In support of this late argument, Teman attached a brief doctor's note from a Maurice Budow, MD, dated February 24, 2025, stating that, although Teman was "well," the change in air pressure caused by air travel could trigger his chronic sinusitis and cause acute sinusitis, and stating that his guidance is that Teman not fly for eight weeks. Dkt. 502-1. In an order the same day, the Court noted that Teman, with the Court's permission, had repeatedly engaged in air travel since his conviction in January 2020, including having flown to and from Australia to perform comedy while his appeal was pending and to Israel while on supervised release. *See* Dkt. 503. The Court directed the Government to investigate Teman's claim, including by determining, through inquiry of the doctor, the extent to which the doctor had been aware, prior to signing the note, of Teman's prior plane travel and the impact, if any, it had had on his sinusitis. *Id.* The Court also directed Teman, by the following day, to file records documenting the plane ticket, if any, that he had purchased to enable him to return to the United States by February 28. *Id.*

In a letter response filed on February 26, 2025, the Government explained that it had determined from public records that Dr. Budow is a doctor based in Israel. *See* Dkt. 506.

2

However, the Government stated, it was unable to obtain the information requested by the Court or confirm Teman's representations about Dr. Budow's diagnosis, given limitations on evidence-gathering abroad. *Id.* The Government confirmed with Teman's Probation Officer that Teman had not provided him with any such documentation. *Id.* The Government urged the Court either to adhere to its order that Teman return to the United States by February 28, 2025, or direct Teman to produce supplemental medical records corroborating his claim. *Id.* Early on February 27, 2025, Teman, *pro se*, replied, demanding that sanctions be imposed on the Assistant United States Attorney who authored the letter. Dkt. 507.

This Court's firm view, with the Government, is that Teman's proffered medical excuse for not complying with the Court's order to return to the United States tomorrow is a pretext. Every indication is that Teman is advancing this rationale for not traveling to the United States in a last-ditch effort to avoid return, which he has repeatedly stated he does not wish to do.

That is evident from the fact that, as of February 25, 2025, Teman had not purchased a plane ticket for a trip he had been ordered to take by February 28, 2025.[1] It is evident from the fact that, alongside the medical excuse, Teman articulated a series of frivolous alternative bases

---

[1] In a letter filed February 25, 2025 in response to the Court's order, Teman did not attach a plane ticket. He stated instead that plane travel from Israel to the United States is expensive, that flying would expose him to rocket attacks from Hamas, and that public transport in Israel is also unsafe. Dkt. 505 at 4–5. Teman attached a screen shot from that day noting a $4,873 price for a flight two days later from Tel Aviv to Miami, Florida. Dkt. 505 at 7. Teman, tellingly, did not indicate that, at any earlier time since the Court's January 24 order, he had sought to buy a plane ticket to the United States. *See* Dkt. 484 (Court's order of January 24, extending Teman's return deadline out of respect for "Teman's valid desire to avoid, if possible, high-priced air travel," and noting that "the extended return deadline will enable him to explore a wide range of flight options from Israel to the United States, without being limited to flights leaving in the coming week," and "to consider, should he choose to do so, flights from cities other than Tel Aviv and to U.S. cities other than Miami (from which he can then fly to Miami)").

3

why he purportedly cannot travel to the United States.[2]  It is also evident from the fact that

Teman's doctor's note pronounces that he is presently "well" and does not represent that Teman

sought out a medical opinion regarding the compatibility of air travel with his sinusitis condition

until four days before the deadline for his return.  This conclusion is also supported by the

recently filed sworn affidavits submitted by Teman's two trial counsel, Joseph DiRuzzo, Esq.,

and Justin K. Gelfand, Esq., in connection with Teman's pending motion pursuant to 28 U.S.C.

§ 2255.  These refute as factually untrue numerous representations Teman has made to the Court.

*See generally* Dkt. 489 (Gelfand); Dkt. 490 (DiRuzzo).  Gelfand's affidavit further reports an

attempt by Teman—rightly rebuffed by his ethical counsel—to arrange for an anonymous call to

be placed from a burner phone to the Federal Bureau of Investigation falsely claiming that a juror

at his trial engaged in misconduct.  *See* Dkt. 489 ¶ 32.  And, as the Government notes, the overall

record of Teman's conduct in this case—beginning with his offense conduct and continuing

through many of his *pro se* submissions, including his motion this morning for sanctions against

the AUSA, which the Court denies as frivolous—reveals a regrettable but persistent pattern of

Teman's making demonstrably false and self-serving statements and accusations.  *See* Dkt. 506.

Although the Court would be well within its discretion to deny Teman's application as

contrived, the Court's judgment, in the interest of proceeding with due care given Dr. Budow's

letter, is that it is prudent to obtain additional evidence bearing on Teman's claim that, despite

---

[2] In his February 24 motion, and in a *pro se* submission to the same effect on February 25, 2025, Teman declared that his return would violate "religious laws" and "contravene the Establishment Clause," that the Court's confirmation with the Chief Judge of this District that Teman's most recent recusal motion had been meritless was an improper *ex parte* communication that would "undermine any prospect of a fair trial" and "prejudic[e] the jury pool," that venue should be changed to "the Eastern District of Texas, where [he] ha[s] family," and that a recent ruling that the Court issued while sitting in Part I in a civil case, 25 Civ. 1144 (JAV) bears on the Court's ability to fairly preside over this unrelated criminal case.  *See generally* Dkts. 502, 505.

4

his being well, air travel is presently medically contraindicated. **The Court, accordingly, defers Teman's return date until Friday, March 21, 2025, while ordering the parties to provide the Court with the following materials[3] by the following deadlines, which are firm:**

1. By **Tuesday, March 4, 2025**, Teman is to obtain and file a declaration from Dr. Budow, attesting to all dates on which he examined Teman for sinusitis, and attaching complete records of such examination(s).

2. By **Thursday, March 6, 2025**, Teman is to file a sworn declaration on the docket of this case, attesting to the dates, starting point, and destination of every plane flight he has taken since January 1, 2015, and identifying any medical provider he consulted and/or was treated by after that flight for symptoms consistent with sinusitis.

3. By **Tuesday, March 11, 2025**, Teman is to obtain from the medical providers, if any, identified in Teman's response to #2, above, complete records of these consultations and treatments, and to file these with the Court, identifying as to each the air travel to which the consultation or treatment related. Should Teman wish additional medical records to be considered, he, by this date, should also provide the Court with the records of any other medical consultation or treatment he has had for sinusitis.

4. By **Tuesday, March 11, 2025**, Teman is to file with the Court evidence of the plane ticket he has purchased for a return to the United States by March 21, 2025. Insofar as Teman's claim that flying is medically contraindicated until eight

---

[3] To the extent that the materials requested below contain confidential medical records, Teman is at liberty not to file these publicly, but instead to file them either under seal or in redacted form, while furnishing them in full to the Court at the Court's chambers email address.

weeks remains under review, Teman is well-advised to purchase a refundable ticket.

5. By **Tuesday, March 11, 2025**, the Government is to file with the Court any records of the United States Probation Office since the onset of Teman's supervised release referring to, or reflecting upon, symptoms or complaints of, or treatment for, sinusitis or symptoms consistent with sinusitis.

The Court further advises the Government that, upon receipt of the above records, the Court may ask the Government to obtain a prompt assessment of these records by an independent medical professional qualified to opine about sinusitis. The Government should take steps now to identify such a professional.

The Clerk of Court is respectfully directed to terminate all pending motions.

SO ORDERED.

_Paul A. Engelmayer_
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: February 27, 2025
New York, New York

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ARI TEMAN,

Defendant.

---

19 Cr. 696 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

This order addresses the deadline for defendant Ari Teman to return to the United States.

## I. Background

On January 24, 2025, this Court ordered Teman, who is presently in his first year of a three-year supervised release term following service of a 12-months-and-one-day prison sentence on two counts apiece of bank and wire fraud, to return to the United States by February 28, 2025. Dkt. 484. As of then, Teman had been in Israel for four-and-a-half months, with the Court's permission. As the Court, supported by the United States Probation Office ("Probation"), explained, Teman's return to the United States was important, to enable Probation to meaningfully supervise him, in particular, with respect to the special condition of supervised release requiring Teman to obtain mental health treatment. *Id.* at 7. The Court, however, *sua sponte* extended the deadline for Teman's return (then, January 29, 2025) to enable Teman (and Probation) to plan for his return, to enable Teman to investigate economical air travel options, and to give Teman time to appeal the order to the U.S. Court of Appeals for the Second Circuit should he choose to do so. *Id.* at 9–10. The Court emphasized that its order was final, that it would not alter the February 28 deadline unless ordered to do so by the Second Circuit, and that

if Teman were to fail to return that day, he would be in violation of the supervised release condition prohibiting unauthorized international travel. *Id.* at 10.

Following that date, Teman, who is otherwise represented, instead repeatedly moved, *pro se*, for sanctions and for the Court's recusal, recycling claims of misconduct rejected by Second Circuit in its June 2023 summary order affirming Teman's convictions for wire and bank fraud. *See United States v. Teman*, No. 21-1920-cr, 2023 WL 3882974, at *3 (2d Cir. June 8, 2023) ("There is nothing to Teman's argument that Judge Engelmayer was required to recuse himself[.]"). The Court denied these motions as meritless. *See, e.g.*, Dkt. 514 (denying motion at Dkt. 513); Dkt. 498 (denying motion at Dkt. 496); Dkt. 480 (denying motion at Dkt. 478); Dkt. 477 (denying motion made by email).

On February 24, 2025, Teman, *pro se*, moved anew for relief from the Court's January 24, 2025 order, contending, for the first time that his return to the United States would be medically contra-indicated. *See* Dkt. 502. In support of this late argument, Teman attached a brief doctor's note from a Maurice Budow, MD, dated February 24, 2025, stating that, although Teman was "well," the change in air pressure caused by air travel could trigger his chronic sinusitis and cause acute sinusitis, and that his guidance is that Teman not fly for eight weeks. Dkt. 502-1. In an order the same day, the Court noted that Teman, with the Court's permission, had repeatedly engaged in air travel since his conviction in January 2020, including having flown to and from Australia to perform comedy while his appeal was pending and to Israel while on supervised release. *See* Dkt. 503. The Court directed the Government to investigate Teman's claim, including by determining, through inquiry of Dr. Budow, the extent to which the doctor had been aware, prior to signing the note, of Teman's prior plane travel and the impact, if any, it had had on his sinusitis. *Id.* at 1–2. The Court also directed Teman, by the following day, to file

2

records documenting the plane ticket, if any, that he had purchased to enable him to return to the United States by February 28. *Id.* at 2.

In a letter response filed on February 26, 2025, the Government explained that it had determined from public records that Dr. Budow is a doctor based in Israel. *See* Dkt. 506. However, the Government stated, it was unable to obtain the information requested by the Court or confirm Teman's representations about Dr. Budow's diagnosis, given limitations on evidence-gathering abroad. *Id.* at 1. The Government confirmed with Teman's Probation Officer that Teman had not provided him with any such documentation. *Id.* The Government urged the Court either to adhere to its order that Teman return to the United States on February 28, 2025, or direct Teman to produce supplemental medical records corroborating his claim. *Id.* at 2. Early on February 27, 2025, Teman, *pro se*, replied, demanding that sanctions be imposed on the Assistant United States Attorney who authored the letter. Dkt. 507.

In a lengthy order issued February 27, 2025, the Court expressed its firm view, with the Government, that Teman's proffered medical excuse for not complying with the Court's order to return to the United States tomorrow is a pretext. Dkt. 508 (the "February 27 order"). "Every indication," the Court stated, "is that Teman is advancing this rationale for not traveling to the United States in a last-ditch effort to avoid return, which he has repeatedly stated he does not wish to do." *Id.* at 3. Evidence of this, the Court stated, were that (1) as of February 25, 2025, Teman had not purchased a plane ticket for a trip he had been ordered to take by February 28, 2025; (2) alongside the medical excuse, Teman articulated a series of frivolous alternative bases why he purportedly could not travel to the United States; (3) Teman's doctor's note pronounced that, as of February 24, 2025, he was "well" and did not represent that Teman had sought out a medical opinion regarding the compatibility of air travel with his sinusitis condition until four

3

days before the deadline for his return; and (4) then-recently filed sworn affidavits submitted by Teman's two trial counsel, Joseph DiRuzzo, Esq., and Justin K. Gelfand, Esq., in connection with Teman's pending motion pursuant to 28 U.S.C. § 2255, had refuted as factually untrue numerous representations Teman had made to the Court, and had reported an attempt by Teman—rebuffed by his ethical counsel—to arrange for an anonymous call to be placed from a burner phone to the Federal Bureau of Investigation falsely claiming that a juror at his trial engaged in misconduct; and (5) the overall case record "reveal[ed] a regrettable but persistent pattern of Teman's making demonstrably false and self-serving statements and accusations." *See id.* at 3-4 (citations omitted).

The Court's February 27 order stated that, although the Court would be well within its discretion to deny Teman's application as contrived, in the interest of due care, it would seek out additional evidence bearing on Teman's claim to be unable to safely fly due to recent sinusitis. *Id.* at 4–5. The order extended Teman's return date until March 21, 2025, while setting deadlines for Teman to file designated medical records, chronicle his plane flights since 2015 and identify any medical complaints arising from them, and purchase a plane ticket for return to the United States. The order also notified the Government that, on receipt of Teman's medical records, it would likely be asked to obtain an independent assessment by a qualified medical professional, *id.* at 5–6.

Teman partly complied with that order. On March 5, 2025, he filed a letter from Dr. Budow stating that he had examined Teman on February 22, 2025, and had concluded that Teman had injured his ear during hyperbaric oxygen therapy on January 22, 2025. Dkt. 513 at 6. Dr. Budow now opined that Teman should not fly until June 1, 2025. *Id.* However, as the Court noted in an order the next day, Teman had not attached any records of Dr. Budow's examination;

4

the Court directed Teman to file those by the following day. Dkt. 514.  On March 10, 2025,

Teman filed a one-page letter, which he stated, reflected his having had "hyperbaric oxygen

therapy" on January 22, 2025. Dkt. 518-1.  Teman also filed records of his medical care for an

unrelated condition in 2024, while incarcerated.  *Id.* at 518-2–4.  However, notwithstanding

having been ordered to do so, Teman did not file underlying records of his examination by Dr.

Budow; chronicle his prior plane travel, save flights he had taken during his term of supervised

release; or produce evidence of his having purchased a plane ticket to return to the United States

by the deadline the Court had set.  Instead, in what the Court understood to express a refusal to

return, he stated that he "must remain in Israel until . . . Engelmayer is impeached and this case is

dismissed with prejudice." Dkt. 518 at 2.

Since Teman's March 5, 2025 letter, the Court has extended his return date several times,

at the Government's request, to enable it to secure an independent review of the medical records

Teman had provided.  *See* Dkt. 522 (extending return date to April 11, 2025); Dkt. 524

(extending return date to April 25, 2025); Dkt. 529 (extending return date to April 29, 2025).

On April 15, 2025, the Government filed a letter, Dkt. 530, attaching a report from

Dr. Richard Nass, a specialist in otolaryngology and sinus issues, *id.*, Exh. A.  Dr. Nass's

evaluation noted that the medical records Teman has provided did not squarely address his

claimed otolaryngological issues.  *Id.*  Teman, Dr. Nass noted, had seen only an internist (Dr.

Budow).  *Id.*  Dr. Nass further noted that, although hyperbaric oxygen treatment can cause

complications to the middle ear, which increase the risk of injury during air travel, "evaluation

and management by an otolaryngologist can accurately make a diagnosis, assess the risk

involved in the individual case," and "make air travel safe for the affected ear." *Id.*  Teman,

however, had either not seen a doctor with that specialty or produced records of such an

5

evaluation. As a result, Dr. Nass stated, the limited records Teman had supplied do "not allow a definitive answer as to whether Mr. Teman can safely fly at this time." *Id.*

The Government's letter stated that Teman's failure to submit relevant records had left Dr. Nass, and the Government, unable to render an opinion whether air travel was safe for Teman. Dkt. 530 at 2. It stated that it questioned "the motivation and provenance of Teman's claims." *Id.* It noted that Teman had agreed to jointly proposed conditions regarding international travel during his supervised release term but thereafter had repeatedly made motions to stay in Israel well past his original proposed return date of November 6, 2024. The Government stated:

> In view of that timeline and the content of the medical records Teman has submitted that he claims, show that it is unsafe for him to fly, the Government maintains its view that Teman is using claims about his medical conditions as a pretext to stay in the Israel and not serve his remaining term of supervised release. By submitting incomplete and irrelevant records, Teman has managed to create a circumstance where, as Dr. Nass' report concludes, it is not possible to determine whether what Teman claims is true; and indeed, Teman theoretically could continue to make such claims, whether or not based in fact.

*Id.* at 2. Nonetheless, the Government stated, because it was constrained to defer to the inconclusive determination in Dr. Nass's report and did not wish to jeopardize Teman's health, it had chosen "not to object to extending the deadline for Teman's return until June 1, 2025, the date by which Teman claims it will be safe for him to fly." *Id.* The Government, however, urged that no further adjournment of that date be granted. *Id.*

## II.    Order

The Court extends, until June 1, 2025, the date by which Teman is required to return to the United States. That is the date before which Teman's internist, Dr. Maurice Budow, recommended Teman not fly. The Court extends the return date based on the assessment of Dr. Nass, the independent medical expert. As Dr. Nass explained, the limited paperwork

6

submitted by Teman—which did not include any assessment by a relevant specialist, like an otolaryngologist—"does not allow a definitive answer as to whether Mr. Teman can fly safely at this time." Dkt. 530, Exh. A at 2. The Court, like the Government, does not wish to jeopardize Teman's health. The Court therefore will extend by 33 days the deadline for Teman to return to the United States from the present April 29, 2025 deadline. It is undisputed that as of June 1, 2025, Teman can safely return.

That said, the Court's firm conclusion—along with the Government —is that Teman's claim that air travel is medically risky is pretextual. Numerous data points support that Teman invoked this in late February as a last-ditch excuse to avoid returning to the United States. These include those chronicled in detail in the Court's February 27 order; Teman's failure to abide by Court's orders to make a plane reservation for a return trip; Teman's non-compliance with other aspects of this Court's recent orders; Teman's offer of other bogus rationalizations for not traveling; and Teman's well-documented pattern in this case—now confirmed by the affidavits submitted by his trial counsel—of proffering bogus claims and accusations to suit his self-interest.

***Accordingly, the Court orders Teman to return to the United States by June 1, 2025.*** A breach of this order will be a breach of Teman's conditions of supervised release, inasmuch as Teman is authorized to travel and be abroad only to the extent of advance authorization by the Court. *See* Dkt. 453, 454. Teman is reminded that, as with any defendant, an adjudicated violation of a condition of supervised release can have a range of serious consequences. *See* 18 U.S.C. § 3583(e)(2)–(3), (h)–(i).

For avoidance of doubt, the Court does not restrict Teman in his mode of travel home. Teman may choose air travel, which he has often used in the past, as such is faster and less costly

7

than the alternative.  But, provided that Teman has complied with his obligation to obtain advance authorization of international travel set out at Docket 454, Teman is at liberty to arrange return travel to the United States by boat, whether departing from Israel or a port elsewhere.  The Court will therefore not honor, as a basis to further delay return, a claim by Teman that—contrary to Dr. Budow—air travel on or after June 1, 2025 would be medically contra-indicated.

*The Court further orders Teman, by May 9, 2025, to file on the docket of this case documentation sufficient to show reservations he has made for return travel to the United States on a date consistent with this order.*  Teman is at liberty to make refundable reservations, so as to enable him thereafter to secure more favorable price terms for travel within the deadline set above.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated:  April 17, 2025
        New York, New York

8