UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

ARI BARUCH TEMAN,
Plaintiff,

-against-

ZELDES NEEDLE COOPER LLP, et al.,
Defendants.

---------------------------------------------------------------x

Case No. 1:24-cv-09830 (LJL)

**PLAINTIFF'S REPLY IN SUPPORT OF LETTER MOTION TO EXTEND DEADLINES AND FOR RELATED RELIEF**

Plaintiff Ari Baruch Teman respectfully submits this reply in support of his Letter Motion to Extend Deadlines and for Related Relief, and in response to Defendants' May 5, 2026 opposition letter.

Defendants' opposition largely avoids the central issue before the Court: Defendants still have not produced Plaintiff's client file or any meaningful substantive discovery despite months of requests and despite this Court previously recognizing Plaintiff's presumptive entitlement to his file.

***To date, Defendants have not produced a single substantive discovery response, a single responsive document, or any portion of Plaintiff's client file***. Despite this complete absence of production, Defendants accuse Plaintiff of delay while simultaneously burdening the Court and Plaintiff with motion practice directed at avoiding production altogether.

**Instead of producing discovery, Defendants continue to engage in procedural gamesmanship, mischaracterize Plaintiff's circumstances, and attempt to exploit Plaintiff's pro se status while forcing Plaintiff to litigate without access to materials central to his claims.**

For example, Defendants refused to produce the applicable insurance policy despite previously agreeing in writing to do so, producing it only after Plaintiff was forced to file a motion to compel. Defendants also suggested that Plaintiff was required to identify specific documents within his own client file before production would occur, despite this Court previously recognizing Plaintiff's presumptive entitlement to that file.

Defendants further asserted that Plaintiff would be required to pay for production of electronically stored client materials even though the documents have long existed in digital format and necessarily must already be maintained and exchanged electronically among Defendants and their counsel.

Viewed together, these actions reflect a continuing pattern of delay and obstruction that has materially impaired Plaintiff's ability to prosecute this action efficiently and on a fair footing.

**First**, Defendants' argument that Plaintiff failed to identify operative deadlines elevates form over substance. Plaintiff specifically requested that current deadlines be extended by 60 days, or 30 days after production of the client file, whichever is later, due to extraordinary circumstances materially impairing Plaintiff's ability to litigate. The relief requested and basis for such relief were plainly stated. Courts routinely construe pro se submissions liberally, particularly where no prejudice results from doing so.

**Second**, Defendants' argument that Plaintiff cannot demonstrate prejudice is meritless. The prejudice is obvious. Plaintiff is being forced to litigate complex malpractice and related claims while deprived of his own client file, while facing ongoing medical limitations affecting international travel, and while operating under wartime emergency conditions in Israel that materially disrupted hospital operations, governmental functions, scheduling, transportation, and ordinary daily life.

Defendants' assertion that Plaintiff's medical condition and treatment delays are "pretextual" is demonstrably false and could have been disproven by even minimal diligence.

Public reporting confirms that Sheba Medical Center — Israel's largest hospital — was forced to relocate substantial operations underground during the war due to missile threats. These reports further confirm that hospitals were operating under emergency conditions and prioritizing only critical and ongoing care. See:

https://sheba-global.com/deploying-an-emergency-field-hospital-underground/

https://www.wsj.com/livecoverage/iran-strikes-2026/card/israeli-hospitals-moving-underground-AyREy89sZjgvlDOaRyCJ

https://www.timesofisrael.com/liveblog_entry/sheba-hospital-moves-patients-services-underground/

These underground garage-based emergency facilities were not operating under normal hospital conditions. Because such facilities had materially reduced ventilation, lighting, staffing, and capacity, hospitals prioritized only critical and ongoing treatments that could not safely be delayed, such as active cancer care and emergency procedures. Hospitals also faced reduced staffing because many personnel were called into military reserve duty or were repeatedly forced into shelters during missile attacks.

Plaintiff's ENT surgery, prescribed less than 6 months ago, November 2025, was therefore materially delayed by wartime emergency conditions affecting both hospital scheduling and associated governmental and administrative operations.

Plaintiff submitted objective medical documentation confirming both the diagnosis (EXHIBIT 1) and the resulting travel limitations . Specifically, Plaintiff submitted a physician directive from Dr. Amit Wolfovitz advising avoidance of commercial air travel for approximately three months due to bilateral Eustachian Tube Dysfunction and recommending surgery and evaluation before approval for travel abroad (EXHIBIT 2). The physician specifically warned Plaintiff to avoid "barometric changes (for example: commercial flights, climbing to high places, HBO chamber, etc.)."

Plaintiff also submitted ETF testing from Sheba Medical Center confirming abnormal bilateral Eustachian tube function.

Defendants nevertheless accused Plaintiff of fabrication or "pretext" without meaningfully investigating any of these facts before filing accusations with the Court. Instead, Defendants continue their broader strategy of delaying production, clogging the docket with unnecessary motion practice, and attempting to exploit Plaintiff's pro se status rather than producing substantive discovery.

Defendants' attempt to characterize Plaintiff's medical limitations as "pretextual" is **also misleading** because even the Government's own retained expert in the criminal matter did not conclude that Plaintiff could safely fly. To the contrary, after review of the available medical records, the Government's independent otolaryngology expert, Dr. Richard Nass, expressly stated that the records provided did "not allow a definitive answer as to whether Mr. Teman can safely fly at this time."

Neither the Government nor its retained specialist ever medically contradicted Plaintiff's treating physicians or concluded that commercial air travel was safe notwithstanding Plaintiff's diagnosed Eustachian Tube Dysfunction. Indeed, the Court extended Plaintiff's return deadline specifically because it "d[id] not wish to jeopardize Teman's health." *Following that, the ENT recommended surgery* after steroids were ineffective. Defendants therefore mischaracterize the underlying record by implying that Plaintiff's medical restrictions were disproven or medically rebutted when no such finding was ever made. The subsequent recommendation for surgical intervention following failed conservative treatment further confirms that Plaintiff's condition is genuine and medically significant.

Further, this is not the only reason or even the primary reason the Plaintiff seeks to extend deadlines, which is the prolonged bombing during the past months that required sheltering 3-to-10 times *per day* -- so the Defendant's tactics are not in good faith regardless.

The cumulative effect of Defendants' conduct has been to delay Plaintiff's access to materials central to prosecution of this action. Plaintiff respectfully requests that the Court not permit continued procedural delay to materially prejudice a pro se litigant's ability to litigate the merits of his claims. Defendants' litigation strategy increasingly appears directed toward procedural attrition rather than resolution of the merits, and the resulting prejudice to Plaintiff is substantial and ongoing.[1]

Defendants' reliance on statements made in unrelated proceedings is similarly misleading. The issue before this Court is not whether Plaintiff managed to continue filing documents under emergency wartime conditions. The issue is whether Plaintiff should be forced to litigate complex malpractice and file-withholding claims while deprived of his own records, suffering ongoing medical limitations affecting travel, and operating under

---

[1]Plaintiff has already produced discovery reflecting that Defendant Virgil internally estimated the available insurance company settlement value of the Underlying Matter for Dr. Eric Braverman alone at more than $1.5 million. Measured against the passage of years, accumulated interest, and the time value of money, the economic value of the lost recovery today is dramatically higher, even before considering additional defendants, additional insurance coverage, assets outside of insurance, and consequential damages arising from the alleged malpractice and subsequent file withholding.

Defendants' litigation strategy increasingly appears directed toward delay and procedural attrition rather than resolution of the merits. Plaintiff respectfully requests that the Court not permit continued tactics that effectively force a pro se litigant to prosecute malpractice claims while deprived of materials central to those claims. The resulting prejudice is substantial and ongoing.

extraordinary external conditions that Defendants could have easily verified before accusing Plaintiff of dishonesty.

**Third**, Defendants' assertion that discovery responses are not yet due entirely ignores the central issue regarding the client file. Judge Liman previously recognized Plaintiff's presumptive right to his client file and specifically noted that such rights exist independently of ordinary discovery obligations. Defendants continue to exploit procedural posture to delay production indefinitely while simultaneously arguing Plaintiff should proceed without the materials necessary to meaningfully litigate.

**Indeed, Defendants' position effectively seeks to force Plaintiff to litigate malpractice claims blindfolded while Defendants continue withholding the very files that form the basis of those claims.**

Defendants also misleadingly argue that "there is no Defendant Prueher" in this action while omitting that attorney Jason Prueher is now a defendant in Teman v. MedPro, et al., filed after Judge Liman expressly indicated Plaintiff would need to pursue separate litigation to recover withheld files. Defendants' opposition attempts to create confusion regarding the status of those proceedings while continuing to withhold Plaintiff's materials.

**Fourth**, Defendants' argument regarding docketing delays similarly mischaracterizes the issue. Plaintiff has repeatedly experienced substantial delays involving filings submitted through the Temporary Pro Se Inbox, including delays occurring near deadlines and in connection with discovery disputes. These delays have at times extended for weeks, materially prejudicing Plaintiff's ability to respond to motions, manage deadlines, and litigate fairly while operating from abroad under emergency conditions.

Finally, Defendants notably do not dispute the existence of ongoing war-related disruptions in Israel. Those disruptions are matters of public record. During portions of this litigation, emergency conditions required frequent sheltering and materially disrupted ordinary business, governmental, transportation, and medical operations.

Plaintiff's request is modest and reasonable. Plaintiff seeks only sufficient time to obtain necessary medical treatment, resolve the ongoing client-file dispute, and litigate this matter on a fair footing. Defendants will suffer no cognizable prejudice from a limited extension. By contrast, absent relief, Plaintiff will continue to face substantial prejudice while deprived of critical files and while operating under extraordinary external circumstances.

Absent the requested extension, Plaintiff will effectively be forced to proceed without the client file, without complete discovery, and under conditions that have materially impaired his ability to litigate, resulting in clear prejudice.

**Plaintiff is not seeking dispositive relief, sanctions, or adjudication of the merits at this stage, but merely sufficient time and access to discovery to litigate the action fairly.**

Accordingly, Plaintiff respectfully requests that the Court:

1. Extend current deadlines by 60 days, or 30 days after production of the complete client file, whichever is later;

2. Order Defendants to substantially complete production of responsive, non-privileged documents relevant to Plaintiff's claims by a date certain;

3. Order that, absent substantial production of the client file by the Court-ordered deadline, the Court may draw appropriate adverse inferences regarding spoliation, withholding, or the existence of materials unfavorable to Defendants' positions; and

4. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted
s/Ari Teman
Ari Teman
Pro se Plaintiff
Tel Aviv, Israel
May 6, 2026

**[PROPOSED] ORDER**

Upon Plaintiff's Letter Motion to Extend Deadlines and for Related Relief, Defendants' opposition thereto, and the entire record herein, and for good cause shown, it is hereby:

ORDERED that Plaintiff's motion is GRANTED;

ORDERED that all current deadlines in this action are extended by sixty (60) days, or thirty (30) days following Defendants' service of discovery responses and production of responsive, non-privileged documents in this action, whichever is later;

ORDERED that the Court finds good cause for such extension based upon Plaintiff's documented medical limitations affecting international travel, ongoing wartime disruptions in Israel, prescribed surgery, substantial delays associated with Temporary Pro Se Inbox docketing, and ongoing disputes regarding materials relevant to prosecution of this action;

ORDERED that the Court finds Plaintiff has submitted objective medical documentation supporting his claimed Eustachian Tube Dysfunction, related travel limitations, and ongoing treatment, including newly provided medical records reflecting that surgical intervention was prescribed on Nov 3, 2025 following unsuccessful conservative treatment;

ORDERED that Defendants shall serve responses and produce responsive, non-privileged documents to Plaintiff's outstanding discovery requests by May 13, 2026;

ORDERED that nothing in this Order shall prejudice Plaintiff's rights regarding disputes over access to materials Plaintiff contends are necessary to prosecute this action;

ORDERED that Plaintiff shall not be deemed to have waived arguments, claims, amendments, objections, or discovery positions dependent upon materials not yet produced to him;

and it is further

ORDERED that the parties shall continue to meet and confer in good faith regarding outstanding discovery disputes -- and jointly submit a proposed revised scheduling order by May 19, 2026.

SO ORDERED.

Dated: New York, New York
 May _____, 2026


HON. LEWIS J. LIMAN
 United States District Judge

**Sheba Medical - ETF Test**





תמונה חלקית של תת-תפקוד חצוצרה מימין עם קושי בהשוואת לחצים אך בבדיקה תקין
סה"כ.
בנוסף, וובר לשמאל ואי-סבילות לרעש בתדר נמוך
מומלץ:
1. המנעות מטיסה ל-3 חודשים  avoid airplanes for the coming three (3) months
2. בדיקת שמיעה בהקדם + טימפנומטריה + ETF - ישלח לי את התוצאות ל-
058-6268313
- 24.4.25

The Eustachian Tube (ET) Function test point at ET Dysfunction Bilaterally
Hence Ari Should avoid barometric changes (for example: commercial flights,
climbing to high places, HBO chamber, etc..)
I would prescribe Steronase nasal spray for 3 months and would schedule visit
for inspection before approving traveling abroad. In case of increasing pain –
come in sooner.

- 3.11.25
עדיין סובל מתת-תפקוד חצוצרה בעיקר מימין. הוסברו אפשרויות הטיפול: כפתור או צנתור
החצוצרה. הוסברו המשמעויות, סיכונים וסיכויים של כל אפשרות. ממליץ על צנתור החצוצרה
תחילה (טובופלסטיקה). בנוסף ממליץ על ריכוך הדיאטה + קומפרסים חמים למפרקי הלסת
לשני הצדדים למשך שבועיים.

ד"ר עמית וולפוביץ
מ.ר 108124
מ.מ 33387

**TRANSLATION OF NOV 3rd NOTES:**

The patient continues to suffer from Eustachian tube dysfunction, mainly on the right side.
Possible treatment options were explained: balloon dilation (tuboplasty) or insertion of a
ventilation tube ("ear button"). The implications, risks, and success rates of each option were
discussed. It is recommended to first attempt catheterization (balloon dilation) of the
Eustachian tube. In addition, a soft diet and warm compresses to both jaw joints are
recommended for two weeks."