# **<u>EXHIBIT 1</u>**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X

ARI TEMAN,

                Plaintiff,

           vs.

ERIC BRAVERMAN, M.D.,
RICHARD SMAYDA, D.O..,
SANDIP BUCH, M.D.,
ANUPAMA REDDY, M.D.,
PATH MEDICAL, P.C., DARYA BRAVERMAN,
and TOTAL HEATH NUTRIENTS.

                Defendants.

------------------------------------------------------------------------X

Index No.: _____/2014

**COMPLAINT**

       Plaintiff Ari Teman ("Mr. Teman" and/or "Plaintiff"), by and through his undersigned counsel, as and for his Complaint against Defendants Eric Braverman, M.D. ("Dr. Braverman"), Richard Smayda, D.O.., ("Dr. Smayda"), Sandip Buch, M.D., ("Dr. Buch"), Anupama Reddy, M.D., ("Dr. Reddy"), PATH Medical, P.C. ("PATH Medical"), Darya Braverman ("Darya Braverman"), and Total Health Nutrients ("Total Health Nutrients") (collectively hereinafter "Defendants") (Plaintiff and Defendants collectively the "Parties"), allege the following facts:

## SUMMARY OF ALLEGATIONS

       1.     This is an action by Mr. Teman to recover damages against Defendants for negligence, fraud, and negligent infliction of emotion distress.

       2.     In short, Mr. Teman, an award-winning comedian and philanthropist who founded a renowned international conference series and an international volunteer network recognized by the White House and the New York City Mayor's Office, hereby alleges that Dr. Braverman, Dr. Smayda, Dr. Buch, Dr. Reddy and PATH Medical breached their duty of care to Mr. Teman during the course of his medical treatment and caused him damages by wrongfully and/or intentionally diagnosing with him borderline personality disorder and other psychiatric disorders

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

and treating him for such disorders, when in fact they knew he was suffering from the effects of a sleep disorder known as obstructive sleep apnea syndrome. Dr. Braverman and PATH Medical then knowingly and intentionally defrauded Mr. Teman by withholding the results of his October 2011 sleep study, by wrongfully and/or intentionally diagnosing him with borderline personality disorder and other psychiatric disorders, by continuing to render unnecessary medical services in an effort to profit off of Mr. Teman's debilitated mental and physical state, and by fraudulently ordering him into a intensive psychiatric behavior therapy program without the proper diagnosis warranting the program.  In addition, Dr. Braverman's wife, Darya Braverman, and an entity owned by and/or affiliated with PATH Medical called Total Health Nutrients further perpetuated Dr. Braverman's and PATH Medical's fraud upon Mr. Teman by taking advantage of his debilitated state and falsely representing to Mr. Teman that their vitamins and supplements would alleviate Mr. Teman's physical and mental symptoms.  Lastly, Defendants acts of negligence and fraud as alleged herein have caused Mr. Teman severe emotional distress.

3.      Plaintiff therefore seeks to recover compensatory damages against Defendants including noneconomic damages for suffered pain, and economic damages for lost wages and earning capacity as well as reasonable medical bills incurred.  Plaintiff also seeks punitive damages against Dr. Braverman because his wrongdoing is not simply intentional but evinces a high degree of moral turpitude.

<u>**PARTIES**</u>

4.      Mr. Teman is a natural person and a resident of the State of New York.  Mr. Teman maintains a principal place of residence at 140 7th Avenue, New York, New York.

4.    At all times mentioned herein, upon information and belief, Dr. Braverman is a natural person and licensed physician who maintains a principal office at 304 Park Avenue South, Floor 6, New York, New York.

5.    At all times mentioned herein, upon information and belief, Dr. Smayda is a natural person and a doctor of osteopathic medicine licensed to practice medicine in the State of New York who maintains a principal place of business at 304 Park Avenue South, Floor 6, New York, New York.

6.    At all times mentioned herein, upon information and belief, Dr. Buch is a natural person and a physician licensed to practice medicine in the State of New York who maintains a principal place of business at 304 Park Avenue South, Floor 6, New York, New York.

7.    At all times mentioned herein, upon information and belief, Dr. Reddy is a natural person and a physician licensed to practice medicine in the State of New York who maintains a principal place of business at 304 Park Avenue South, Floor 6, New York, New York.

8.    At all times mentioned herein, upon information and belief, PATH Medical is a professional corporation duly formed under and by virtue of the laws of the State of New York and maintains a principal office at 304 Park Avenue South, Floor 6, New York, New York. Upon information and belief, Dr. Braverman is the owner of PATH Medical.

9.    At all times mentioned herein, upon information and belief, Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy were conducting their business as PATH Medical.

10.    At all times mentioned herein, upon information and belief, Darya Braverman is a natural person who resides in New York, New York.

11. At all times mentioned herein, upon information and belief, Total Health Nutrients is a trade name or unregistered business owned by PATH Medical and operated by Darya Braverman.

### JURISDICTION AND VENUE

12. Plaintiff has fully complied with all prerequisites to obtain jurisdiction of this Court in the instant matter.

13. This Court has personal jurisdiction over the parties pursuant to CPLR §301 in that at all relevant times, the Parties were domiciliaries of, and/or resided in, and/or maintained primary places of business in the State of New York, and because the causes of actions asserted herein arise from acts that occurred in the State of New York.

14. Venue is proper in New York County pursuant to CPLR §503(a), (c), and (d) as it is where all Parties reside or maintain principal places of business or where the conduct for the basis of this cases arises.

### FACTUAL BACKGROUND

15. Mr. Teman is an award-winning comedian and television personality, as well as a philanthropist. He is founder of the 12gurus:Charity and 12gurus:Health conferences, and founder of an award-winning international volunteer organization, JCorps. Mr. Teman is the 2009 Jewish Community Hero of the Year, as named by the Jewish Federation of North America and one of Jewish Week's "36 Under 36".

16. Upon information and belief, Dr. Braverman is a physician, researcher, author, and the medical director of PATH (Place for Achieving Total Health) Medical as well as coordinator of clinical research for PATH Foundation NY, both located in New York City.

Upon information and belief, Dr. Braverman has published journal articles and popular books on the topics of neurology, psychiatry, internal medicine, bariatrics, and preventative medicine.

17.    Between September 15, 2011 through June 2012, Mr. Teman was a patient of Dr. Braverman, Dr. Smayda, and PATH Medical.  During the course of his treatment with PATH Medical, Mr. Teman also met with Dr. Buch and Dr. Reddy, who each are employed by PATH Medical, upon information and belief.

18.    At all times mentioned herein, Mr. Teman had a health insurance policy through Horizon Blue Cross Blue Shield of New Jersey.

19.    On or about September 15, 2011, Mr. Teman underwent an initial consultation with Dr. Braverman and Dr. Smayda at the offices of PATH Medical complaining of constant fatigue, difficulty breathing, insomnia, poor sleep, and snoring.

20.    Dr. Braverman presents himself as a leading figure in the practice of "brain-body healthcare", including the treatment of sleep disorders.

21.    Dr. Braverman and PATH Medical charged Mr. Teman $375.00 for this initial consultation, which Mr. Teman paid.

22.    Dr. Braverman and PATH Medical immediately instructed Mr. Teman to undergo the "Executive Health Program".  On the PATH Medical website (www.PATHmed.com), the Executive Health Program was described as a comprehensive, head-to-toe examination conducted in one day, in which a patient undergoes a series of tests including a fully body x-ray scan, full body ultrasound scan, bone density scan, multiple blood tests, and psychological tests.

23.    Dr. Braverman and PATH Medical represented to Mr. Teman that the Executive Health Program could identify the causes of Mr. Teman's constant fatigue and his other symptoms he was suffering.

24.     In or about September 2011, Mr. Teman underwent the Executive Health Program over the course of two days. Dr. Braverman and the staff of PATH Medical administered a series of tests upon Mr. Teman including the aforementioned fully body x-ray scan, full body ultrasound scan, bone density scan, multiple blood tests, and psychological tests.

25.     Dr. Braverman and PATH Medical subsequently advised Mr. Teman that he suffered from aluminum poisoning, low bone density, and low testosterone.  Upon information and belief, none of these diagnoses cause sleep disorders.

26.     Despite Mr. Teman's complaints, Dr. Braverman and PATH Medical did not advise Mr. Teman of a diagnoses with any form of sleep disorder derived from Mr. Teman's breathing difficulties or snoring, in particular obstructive sleep apnea syndrome ("OSAS"), which is an obstruction in the nasal passage that causes breathing to sputter and stop repeatedly through the night.

27.     Nevertheless, Dr. Braverman and PATH Medical charged Mr. Teman $10,000.00 for the Executive Health Program.

28.     Dr. Braverman and PATH Medical further instructed Mr. Teman to take a multitude of vitamin supplements and pills that he could conveniently buy at their vitamin store, Total Health Nutrients, located within the PATH Medical office at 304 Park Avenue South, Floor 6, New York, New York.  Upon information and belief, Total Health Nutrients is owned by PATH Medical and operated by Dr. Braverman's wife, Darya Braverman.

29.     Dr. Braverman and PATH Medical further instructed Mr. Teman to undergo chelation therapy to remove aluminum poisoning.

30.     Upon information and belief, chelation therapy is a medical procedure that involves the administration of chelating agents to remove heavy metals from the body through a

series of intravenous infusions. In respected medical circles, chelation therapy is considered quackery with no medical benefits.

31.    For instance, in October 2013 the Oregon Medical Board issued a issued a "Statement of Philosophy" which concluded that there is no scientific evidence that chelation therapy is effective for any medical condition other than heavy metal toxicity.[1]

32.    Several years ago, in October 2002, the National Council Against Health Fraud concluded that chelation therapy is unethical and should be banned.[2]

33.    In or about September 2011, Dr. Braverman and PATH Medical administered chelation treatments to Mr. Teman.

34.    Upon information and belief, Mr. Teman never suffered from symptoms of heavy metal toxicity.  No other doctor or other medical facility ever diagnosed Mr. Teman with such condition.

35.    Dr. Braverman and PATH Medical's treatment of Mr. Teman with chelation therapy had no medical benefit to Mr. Teman and was medically unnecessary, but caused him harm, pain and distress, as well as financial hardship.

36.    In or about October 2011, within the first month following the initial consultation and administration of the Executive Health Plan, Mr. Teman complained to Dr. Braverman that he felt that something was physically wrong and repeatedly asked for x-rays of his nose, and for a sleep study to be conducted.

37.    Dr. Braverman instructed Mr. Teman to undergo an at-home sleep study administered through a medical device that was provided by PATH Medical.

---

[1] *See* http://www.oregon.gov/omb/board/philosophy/Pages/Chelation-Therapy.aspx
[2] *See* http://www.ncahf.org/policy/chelation.html

38.    Mr. Teman administered the sleep study at his home over the course of one night and provided Dr. Braverman and PATH Medical with the medical device containing the results of the sleep study.

39.    Dr. Braverman and PATH Medical, however, did not disclose the results to Mr. Teman, but instead represented to Mr. Teman that the symptoms he complained of were unrelated to sleep.

40.    Dr. Braverman then stated to Mr. Teman that he could possibly be suffering from a cascade of psychiatric disorders including depression and anxiety.

41.    Dr. Braverman intentionally, fraudulently, and wrongfully withheld the results of Mr. Teman's sleep study and misrepresented to Mr. Teman that his symptoms were unrelated to sleep.   Rather, the sleep study report explicitly found that Mr. Teman's symptoms was caused by obstructive sleep apnea and recommended referral to an Ear Nose and Throat surgeon for modification to the nasal passage as a treatment.

42.    Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy failed to diagnose Mr. Teman with OSAS, which creates psychiatric dysfunctions through sleep deprivation, including deterioration of memory and mood stability.  Rather, Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy intentionally hid from Mr. Teman the diagnosis of OSAS as the cause of Mr. Teman's sleep problems, despite Mr. Teman's belief that his constant fatigue was a manifestation of a physical problem rather than a mental problem.

43.    In or about November 2011 through March 2012, Dr. Braverman and PATH Medical prescribed and ordered Mr. Teman to take powerful, controlled psychiatric and antipsychotic medications, as well as weigh-control medications.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

44.     Dr. Braverman also injected Mr. Teman with a drug that treats schizophrenia and different types of behavioral problems.

45.     Dr. Braverman improperly medicated Mr. Teman as he never suffered from schizophrenia (or symptoms of it), which is a chronic, severe and disabling brain disorder that only occurs in one (1) percent of the population according to the National Institute of Mental Health, and was not suffering from such at that time.[3]

46.     The drugs prescribed by Dr. Braverman and PATH Medical caused Mr. Teman to suffer from numerous side effects.  In or about January 2012 through March 2012, while still suffering from constant fatigue, Mr. Teman experienced episodes of shaking, mood swings, debilitating headaches, and very painful, torturous sensations course through his body -- the equivalent feeling of electric shock.  Mr. Teman began to collapse, often face down, in bed and at work.

47.     In or about March 2012, Mr. Teman complained to Dr. Braverman about his symptoms, particularly the debilitating headaches, and insisted that PATH Medical perform an MRI.  Yet, instead of referring Mr. Teman to an MRI technician and radiologist covered under his health insurance plan, Dr. Braverman refused to give Mr. Teman an MRI unless Mr. Teman was evaluated by  a "specialist" at the radiology department of Lenox Hill Hospital on East 77th Street, New York, NY.  PATH Medical charged Mr. Teman approximately $2,500.00, and Mr. Teman was not reimbursed by his insurance.

48.     The MRI report produced by Lenox Hill Hospital evidenced *gliosis* in Mr. Teman, which is a swelling of brain cells (called *gilal cells*), which is another known indication of a sleep disorder.

---

[3] http://www.nimh.nih.gov/health/topics/schizophrenia/index.shtml

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

49.     Dr. Braverman told Mr. Teman that his "brain was swollen" and that he should just take "baby aspirin" to reduce the swelling.

50.     In fact, Mr. Teman suffered from gliosis from a result of the lack of rapid eye movement ("REM ") sleep, a stage of sleep characterized by the rapid and random movement of the eyes that is crucial to normal human functioning.  REM sleep is when the brain essentially "cleans" the glial cells, thus an abnormality in gilal cells is a strong indication that one is not getting enough REM sleep.

51.     At the point at which Mr. Braverman suggested that Mr. Teman take baby aspirin, Mr. Teman became suspicious that he was not receiving correct treatments from Dr. Braverman and PATH Medical.

52.     Nevertheless, Mr. Teman was very debilitated from the powerful, controlled psychiatric and antipsychotic medications that were prescribed to him by Dr. Braverman and PATH Medical as well as the vitamin supplements peddled by Darya Braverman and Total Health Nutrients.  In fact, around March and April 2012, long-time friends of Mr. Teman began expressing concern and described his condition as "being tranquilized like a horse" and would witness Mr. Teman collapse in exhaustion onto the floor and in tears, which was very unusual behavior for Mr. Teman.

53.     Further, Mr. Teman's personal relationships began to suffer as a result of his debilitating condition.

54.     During this time Mr. Teman managed two very successful and profitable conferences he founded called "12gurus:Health" and "12gurus:Charity," which were sponsored by several Fortune 500 companies and hosted in New York City on March 28 to 29, 2012 and in Vancouver on April 1 to 3, 2012.  These conferences brought together renowned speakers

(including chief executives of prominent businesses, bestselling authors, founders of notable charities, and Ivy League professors) sharing ideas on, respectively, health and nonprofit and philanthropy work.  Mr. Teman's debilitating condition caused by the numerous medications he was prescribed made running the conferences incredibly difficult as he was extremely lethargic and the severity of the headaches only increased.  Mr. Teman needed the assistance of a friend to work and conduct business at the respective conferences.

55.    After these events, in or about April 2012, Mr. Teman grew even further suspicious that he was not receiving proper treatment and demanded that Dr. Braverman and PATH Medical refund his money so he could afford to obtain medical treatment from another doctor.

56.    Dr. Braverman responded by threatening Mr. Teman with a restraining order when he demanded a refund and he and the PATH Medical staff began making inappropriate phone calls to Mr. Teman's girlfriend's family from their office phone and even Mr. Teman's cell while he was too ill to object. Dr. Braverman further responded by stating that Mr. Teman required additional mood stabilizers because of his complaints, and told Dr. Buch to further medicate Mr. Teman.

57.    Nevertheless, Mr. Teman continued seeking treatment from Dr. Braverman and PATH Medical because his fatigue only worsened.

58.    In April 2012, Mr. Teman ceased taking the numerous prescription medications prescribed to him by PATH Medical and Dr. Braverman in order to detox.

59.    Mr. Teman noticed his condition improving after detoxing, and Mr. Teman demanded that Dr. Braverman and PATH Medical return his monies.

60.    Consequently, Dr. Braverman contacted Mr. Teman's parents, who resided in Israel, and falsely informed them that Mr. Teman was suffering from borderline personality disorder, which is a mental health condition in which a person has long-term patterns of unstable or turbulent emotions.[4]

61.    Dr. Braverman advised Mr. Teman's parents that PATH Medical would refuse to treat Mr. Teman unless he went to receive treatment at Silver Hill Hospital of New Canaan, Connecticut.

62.    Mr. Teman never exhibited long-term patterns of emotional instability so as to be diagnosed with borderline personality disorder.

63.    In fact, Mr. Teman objected that he did not suffer from borderline personality disorder to Dr. Braverman, the other doctors and staff at PATH Medical, and his parents, who were mislead by Dr. Braverman and PATH Medical.

64.    As per the instructions of Dr. Braverman, on June 5, 2011, Mr. Teman was brought to Silver Hill Hospital by Rabbi Levi Shmotkin and his sister.  Mr. Teman's father paid for Mr. Teman to receive treatment at Silver Hill Hospital and undergo a dialectical behavior therapy program ("DBT program"), which, according to the National Alliance on Mental Illness, is a therapy program created for the treatment of chronically suicidal and self-injurious individuals with borderline personality disorder.[5]

65.    PATH Medical, Dr. Braverman, and the medical staff at Silver Hill Hospital fraudulently stated that the DBT program would help to alleviate Mr. Teman's medical problems.

---

[4] http://www.mayoclinic.org/diseases-conditions/borderline-personality-disorder/basics/definition/con-20023204
[5] http://www.nami.org/Content/NavigationMenu/Inform_Yourself/About_Mental_Illness/About_Treatments_and_Supports/Dialectical_Behavior_Therapy_(DBT).htm

Mr. Teman was simply induced to undertake the DBT program which was not proper for his medical condition.

66.    Upon information and belief, Silver Hill Hospital did not conduct its own evaluation of Mr. Teman and simply relied upon Dr. Braverman's recommendations and findings.

67.    Silver Hill Hospital represented to Mr. Teman that he would be in-patient for one night, and then in the DBT program for 30 days. Instead, Silver Hill Hospital kept Mr. Teman as an in-patient for almost a week. Thus, the initial intake procedure of the Silver Hill Hospital mislead Mr. Teman as to the nature of the services.

68.    Silver Hill Hospital further misrepresented to Mr. Teman that his health insurance would pay for the inpatient program, when it would not.

69.    During the proposed sleep observation by the staff of Silver Hill Hospital, Mr. Teman was ill and was gasping for air, an obvious symptom of OSAS.

70.    While Mr. Teman was admitted into Silver Hill Hospital as an in-patient, Silver Hill Hospital failed to observe that Mr. Teman was obviously gasping for air every 2 minutes during REM sleep which occurs for about 20 minutes, 3-4 times every night. Simply put, Silver Hill Hospital failed to observe that Mr. Teman was suffocating approximately 27 times per hour during REM sleep as was later established by an NYU Medical Center Sleep Center study of Mr. Teman's sleep patterns.

71.    Yet, the medical staff of Silver Hill Hospital did not do anything about this incident which occurred repeatedly during the night, and nightly during the course of the Mr. Teman's stay.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

72.     Neither Dr. Braverman nor the staff of Silver Hill Hospital did the proper diagnosis of Mr. Teman as he was being treated for borderline personality disorder, anxiety, and depression instead of his obvious case of OSAS.

73.     Dr. Braverman, PATH Medical, and Silver Hill failed to diagnose Mr. Teman with a sleep disorder in which another medical professional was able to diagnose within 15 minutes of evaluating Mr. Teman following his stay at Silver Hill Hospital (at the Emergency Room of Weill Cornell Medical Center on East 68th Street).

74.     Further, Mr. Teman continued to receive multiple improperly prescribed medications from Silver Hill Hospital, causing severe pain and long term damaging effects similar to those medications prescribed by Dr. Braverman and PATH Medical.

75.     In fact, Silver Hill prescribed medications to Mr. Teman known to sedate individuals.  Thus, Mr. Teman was given medication by the staff of Silver Hill Hospital in order to keep him sedated.

76.     Silver Hill Hospital also coerced and attempted to further coerce Mr. Teman into attending group sessions on addiction management despite him never having had or having any issues with addiction.

77.     Upon information and belief, Silver Hill Hospital acted at the direction of Dr. Braverman and PATH Medical.

78.     Consequently, Mr. Teman attempted to leave Silver Hill Hospital, but the staff of Silver Hill Hospital put Mr. Teman on lockdown which prevented him from leaving.

79.     Mr. Teman was further assaulted and threatened by the staff of Silver Hill Hospital.

80.      Silver Hill Hospital allowed one of its staff members to enter into Mr. Teman's room while another staff member blocked the ability of any one to pass by and any of the cameras to see as a staff member struck Mr. Teman in the genitals in a slow stroking motion and the staff member stated in a harsh tone that "Nobody will believe you. Now shut up and do what you are told when I tell you."

81.      Shortly thereafter, while still on lockdown, Mr. Teman demanded that Silver Hill Hospital's staff members allow him to communicate with his family members and friends.  Silver Hill Hospital acquiesced to Mr. Teman's demand, and upon Mr. Teman communicating with his family and friends, they immediately demanded his release from Silver Hill Hospital.

82.      Silver Hill Hospital released Mr. Teman to his family on the condition that he go into the care of a doctor in New York City.

83.      In or about July 2012, Mr. Teman thus met with Dr. Samuel Sharmat ("Dr. Sharmat"), a board-certified psychiatrist, Dr. Alisa Kriegel ("Dr. Kriegel"), a clinical psychologist, and Dr. Jordan Wright ("Dr. Wright"), a psychotherapist, at the Centerpoint Mental Health Center in New York City ("Centerpoint").

84.      When meeting with the staff of Centerpoint, Mr. Teman was experiencing pure torture, akin to how sleep deprivation is used by interrogators to torture suspected terrorists into providing information.

85.      For instance, Mr. Teman spent almost all of his time in bed, unable to work, and could not walk more than a block without tremendous pain. His body shook constantly. He felt as if his body was being electrocuted constantly.

86.      In fact, it would take Mr. Teman ten minutes to walk down the block, and he would often need to stop to rest or go back and crawl into bed. Mr. Teman had to take cabs to his

treatments at Centerpoint because walking or taking the subway was too painful and he lacked the energy.

87.     This tortured state made it impossible for Mr. Teman to work, maintain his business, and to maintain his relationships, personal, family, friends, and professional. Mr. Teman's comedy career suffered as a result, as did Mr. Teman's ability to run the conferences and his volunteer organization, JCorps, which was, for all intensive purposes, completely diminished.

88.     Mr. Teman went to Dr. Kriegel because he was under the wrongful impression from Dr. Braverman that he needed the DBT program to alleviate his physical and mental symptoms.   Upon information and belief, Dr. Kriegel is an expert on DBT programs and borderline personality disorder.

89.     Dr. Kriegel evaluated Mr. Teman and found that he did not have borderline personality disorder and that Silver Hill Hospital's DBT program was an unwarranted treatment. Dr. Kriegel quickly found that Dr. Braverman's diagnosis of Mr. Teman with borderline personality disorder was completely erroneous.

90.     Further, Mr. Teman met with Dr. Sharmat, who found that Mr. Teman's gliosis diagnosis was also erroneous and suspected that he was suffering from a sleep disorder, but Mr. Teman replied that Dr. Braverman tested for one and said he did not have one.  Dr. Sharmat further relied on the information and medical records provided by Dr. Braverman and PATH Medical in believing that a sleep disorder had been ruled-out via testing and therefore treated Mr. Teman's symptoms, however ineffectively.

91.     Mr. Teman spent the rest of summer 2012 detoxing from the medicines prescribed by Dr. Braverman and PATH Medical and continued to suffer tremendously.

92.    In or about October 2012, Mr. Teman walked into the emergency room of Weill Cornell Medical Center on East 68th Street New York City and informed the intake nurse that he had not slept in eleven (11) nights, could not stop shaking, and was in incredible pain.

93.    Mr. Teman was admitted into Weill Cornell Medical Center and within fifteen minutes of speaking with a doctor, Mr. Teman was diagnosed with a sleep disorder and was prescribed a sleeping medication.

94.    Mr. Teman woke up the next morning without shaking and pain.  Yet, as Hurricane Sandy was about to strike New York City, the doctor released Mr. Teman stating to the effect "The hurricane is expected to be bad. You can stay but you'll be locked in for a week. I think you're OK."

95.    After his visit to the emergency room of Cornell Hospital, Mr. Teman was sent for a sleep disorder testing at New York University ("NYU")'s Sleep Center by Dr. Sharmat. NYU's test showed that Mr. Teman was suffocating 27 times per hour during REM sleep and therefore getting almost no REM sleep.  NYU recommended Mr. Teman see an ear nose and throat ("ENT") specialist and he saw Dr. Zvi Osterweil ("Dr. Osterweil") located on East 86th Street in New York City.

96.    Dr. Osterweil found that Mr. Teman had a blockage of the nasal passage causing him to suffocate 27 times per hour during REM sleep.  Dr. Osterweil stated that the obstruction was obvious. In fact, it was so obvious that Dr. Osterweil could not get his narrow fiber optic scope up Mr. Teman's left nostril.

97.    Dr. Osterweil insisted that Mr. Teman go to Dr. Glenn Waldman ("Dr. Waldman") in Thousand Oaks, California who specialized in repairing badly damaged nasal passages (from botched surgeries, etc.).

98.    Mr. Teman agreed and went to California, where on or about April 16, 2013, Dr. Waldman successfully performed an eleven (11) hour nasal passage reconstruction surgery at the Simi Valley Surgery Center.

99.    A day after the surgery, Mr. Teman no longer required medication to sleep, although over the next three (3) months Mr. Teman had to detox from the medications he had been poisoned with by Dr. Braverman and PATH Medical, which caused Mr. Teman to suffer painful withdrawals.

100.    Six months following surgery, 80% of Mr. Teman's facial swelling had subsided.

101.    In or about October 2013, Mr. Teman was able to sleep through the night for the first time in years. The swelling had gone down enough that mild congestion or movement didn't block air enough to wake Mr. Teman. Thereafter, his energy returned to the point where he was able to work out at the gym regularly, run, bike, and work.

102.    Nearly two years from his initial consultation with Dr. Braverman and PATH Medical, Mr. Teman started to rebuild his life and his comedy career and was able to  slowly return to the stage in New York City to perform a regular spot at a comedy club.

103.    However, Mr. Teman  has been unable to fully recover to where he was before being treated by the Defendants.  The Defendants cased incredible damage to Mr. Teman's reputation and network within the comedy community, with many of his compatriots thinking he quit the comedy business or left town, and many younger comedians not knowing he ever existed. Mr. Teman has also suffered financially, as the respected international brands of the conferences and JCorps remained stagnant and became forgotten or assumed to be dissolved. Thus, Mr. Teman lost earning capacity for the remainder of his life as a comedian and from running the conferences.

104.    Mr. Teman seeks to recover compensatory damages against Defendants including noneconomic damages for suffered pain, and economic damages for lost wages and earning capacity, and the medical expenses he incurred.  Mr. Teman also seeks punitive damages against Dr. Braverman because his wrongdoing is not simply intentional but evinces a high degree of moral turpitude.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSES OF ACTION
### AGAINST DR. BRAVERMAN, DR. SMAYDA, DR. BUCH, DR. REDDY
### AND PATH MEDICAL
### (NEGLIGENCE)

106.    Plaintiff repeats and realleges Paragraphs 1 through 104 as though fully incorporated herein.

107.    Defendants Dr. Braverman, Dr. Smayda, Dr. Buch, Dr. Reddy, and PATH Medical had a duty to make sure that Mr. Teman had the proper medical treatment for his medical condition.

108.    Defendants Dr. Braverman, Dr. Smayda, Dr. Buch, Dr. Reddy, and PATH Medical by virtue of their "healthcare provider/patient relationship" with the Mr. Teman owed a duty of care to the Plaintiff.

109.    Defendants Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy wrongfully, willfully and maliciously misdiagnosed the Plaintiff and repeatedly performed improper treatments.

110.    Plaintiff has been examined by other competent medical professionals who stated that the Plaintiff does not have the condition that was diagnosed by Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy.

111.    Defendants Dr. Braverman, Dr. Smayda, Dr. Buch, and Dr. Reddy were negligent because they failed to render professional services to the Plaintiff with the exercise of the degree of skill and learning commonly applied under all circumstance in the community by the average, prudent, reputable member of this medical profession which in fact caused an injury to the Plaintiff.

112.    Defendant PATH Medical was negligent through its agents, employees, and staff in failing to discover and notify Plaintiff of the true condition of his sleep disorder.

113.    As a proximate results of Dr. Braverman, Dr. Smayda, Dr. Buch, Dr. Reddy and PATH Medical's conduct alleged herein, Plaintiff has been damaged in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSES OF ACTION
## AGAINST DR. BRAVERMAN AND PATH MEDICAL
### (FRAUD)

114.    Plaintiff repeats and realleges Paragraphs 1 through 104 as though fully incorporated herein.

115.    Dr. Braverman and PATH Medical knowingly and intentionally defrauded Mr. Teman by withholding from the results of his October 2011 sleep study.

116.    Dr. Braverman and PATH Medical knowingly and intentionally defrauded Mr. Teman by diagnosing him with borderline personality disorder when Mr. Teman demanded a refund from Dr. Braverman PATH Medical.

117.    Dr. Braverman and PATH Medical knowingly and intentionally defrauded Mr. Teman by inducing him into the DBT program without the proper diagnosis warranting the program.

118.    Dr. Braverman and PATH Medical intentionally and knowingly made a false misrepresentation of the DBT programs.

119.    Dr. Braverman and PATH Medical intentionally defrauded Mr. Teman by inducing him to expend $29,000.00 for the DBT program when the program did not apply to his specific medical condition. A DBT program does not treat OSAS or other sleep disorders and is not intended as such.

120.    As proximate results of Dr. Braverman's and PATH Medical's conduct alleged herein, Plaintiff has been damaged in an amount Plaintiff will prove at trial.

## AS AND FOR A THIRD CAUSES OF ACTION
## AGAINST DARYA BRAVERMAN AND TOTAL HEALTH NUTRIENTS
### (FRAUD)

121.    Plaintiff repeats and realleges Paragraphs 1 through 104 as though fully incorporated herein.

122.    Darya Braverman and Total Health Nutrients knowingly and intentionally perpetuated Dr. Braverman's and PATH Medical's fraud upon Mr. Teman by taking advantage of his debilitated physical and mental state that was exacerbated by Dr. Braverman's prescriptions, and falsely representing to Mr. Teman that their vitamins and supplements would alleviate Mr. Teman's physical and mental symptoms.

123.    As proximate results of Darya Braverman's and Total Health Nutrient's conduct alleged herein, Plaintiff has been damaged in an amount Plaintiff will prove at trial.

## AS AND FOR A FOURTH CAUSES OF ACTION
## AGAINST ALL DEFENDANTS
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

124.    Plaintiff repeats and realleges Paragraphs 1 through 104 as though fully incorporated herein.

125.    Defendants knew or should have known that the failure to exercise due care in the performance of their medical duties and outright fraud would cause the Plaintiff severe emotional distress.

126.    Defendants acts of negligence and fraud as alleged above have caused Mr. Teman severe emotional distress.

127.    As a direct and proximate results of Defendants conduct alleged herein, Mr. Teman has been damaged in an amount to be determined at trial.

## AS AND FOR A FIFTH CAUSES OF ACTION
## AGAINST PATH MEDICAL
### (VIOLATION OF N.Y. Gen. Bus. L. §349)

128.    Plaintiff repeats and realleges Paragraphs 1 through 104 as though fully incorporated herein.

129.    New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

130.    PATH Medical conducts "business" and provides a "service" within the meaning of New York General Business Law § 349.

131.    PATH Medical deceptively misrepresents to the public the medical benefit of certain treatments that are promoted by PATH Medical, including but not limited to chelation therapy.

132.    Mr. Teman has been damaged by this deceptive conduct.

133.    As a direct and proximate results of PATH Medical's conduct alleged herein, Mr. Teman has been damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

a.      on the first cause of action, granting Plaintiff judgment for negligence against Dr. Braverman, Dr. Smayda, Dr. Buch, Dr. Reddy, and PATH Medical in an amount to be determined at trial,  including compensatory and punitive damages;

b.      on the second cause of action, granting Plaintiff judgment for fraud against Dr. Braverman and PATH Medical in an amount to be determined at trial,  including compensatory and punitive damages;

c.      on the third cause of action, granting Plaintiff judgment for fraud against Darya Braverman and Total Health Nutrients in an amount to be determined at trial, including compensatory and punitive damages;

d.       on the fourth cause of action, granting Plaintiff judgment for negligent infliction of emotional distress against all Defendants in an amount to be determined at trial,  including compensatory and punitive damages; and

e.      on the fifth cause of action, granting Plaintiff judgment for violation of New York General Business Law §349 against PATH Medical in an amount to be determined at trial, including compensatory and punitive damages; and

f.      For any such different and further relief as this Court may deem just and proper.


## RESERVATION OF RIGHT TO AMEND PLEADINGS

Plaintiff reserves the right to amend these pleadings to add any and all claims that it determines are just and appropriate.

**DAVIDOFF LAW FIRM, PLLC**
228 East 45th Street, Suite 1700, New York, New York 10017 ● Tel: (212) 587-5971 ● Fax (212) 658-9852

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury pursuant to CPLR §4101.

Dated: New York, NY
        November 7, 2014

                                        Respectfully submitted,

                                        DAVIDOFF LAW FIRM, PLLC

                        By:                    /*GAK*/

                                        Glen A. Kendall, Esq.
                                        *Attorneys for Plaintiff*
                                        228 East 45th Street
                                        Suite 1700
                                        New York, New York 10017
                                        Tel:  212-587-5971
                                        Fax:  212-658-9852
                                        Email:  glen@davidofflawfirm.com

Case 1:24-cv-09830-LJL    Document 87-1    Filed 05/19/26    Page 26 of 98

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

ARI TEMAN,

                        Plaintiff,

              -against-

ERIC BRAVERMAN, M.D., RICHARD SMAYDA,
D.O., SANDIP BUCH, M.D., ANUPAMA REDDY,
M.D., PATH MEDICAL, P.C., DARYA
BRAVERMAN, and TOTAL HEALTH
NUTRIENTS,

                    Defendants.

-------------------------------------------------------------------X

Index No.: 805410/2014

**PLAINTIFF'S RESPONSE TO DEMAND FOR BILL OF PARTICULARS AS TO ERIC BRAVERMAN, M.D.**

1. Date of birth of plaintiff.

    ■■■■■

2. Social security number of plaintiff.

    **Plaintiff objects to providing this personal identifying information through a Bill of Particulars. This information can be provided, to the extent necessary, under seal. Further, it has already been provided by way of signed authorizations.**

3. Current residence address of plaintiff

    **288 West 86th Street**
    **New York, New York**

4. The address of plaintiff's residence at the time of the alleged malpractice and/or negligence of the defendant **ERIC BRAVERMAN, M.D.**

    **140 7th Avenue #1S**
    **New York, New York 10011**

5. Each date on which the defendant **ERIC BRAVERMAN, M.D.** rendered medical care to the plaintiff.

**Plaintiff relies and refers to the medical records and bills of PATH, P.C. provided by defense counsel. Upon information and belief, plaintiff was treated by ERIC BRAVERMAN, M.D. on: 9.15.11; 10.02.11; 10.09.11; 11.14.11; 11.23.11; 12.07.11; 3.21.12; 3.29.12; and 4.11.12.**

6. The address or addresses where such medical care was rendered to the plaintiff.

   **304 Park Avenue South 6th Floor**
   **New York, New York**

7. The condition or conditions which it will be claimed the defendant **ERIC BRAVERMAN, M.D.** undertook to treat.

   **Extreme fatigue; insomnia; breathing difficulty; and snoring.**

8. Provide a statement of the accepted medical practices, customs, and medical standards, if any, which it are claimed were violated and departed from by the defendant **ERIC BRAVERMAN, M.D.** herein.

   a. **failed to adequately and properly care, treat, monitor, diagnose and supervise ARI TEMAN;**
   b. **failed to adequately and properly care, treat, monitor, diagnose and supervise ARI TEMAN'S extreme fatigue, insomnia, breathing difficulty and snoring;**
   c. **improperly diagnosed ARI TEMAN with aluminum poisoning, low bone density and low testosterone;**
   d. **improperly instructed/ordered ARI TEMAN to take vitamin supplements and pills;**
   e. **improperly instructed/ordered ARI TEMAN to take vitamin supplements and pills, which were to be bought through defendant, TOTAL HEALTH NUTRIENTS;**
   f. **improperly instructed/ordered ARI TEMAN to undergo chelation therapy;**
   g. **failed to timely perform x-rays of the nose;**
   h. **failed to timely perform a sleep-study;**
   i. **improperly instructed/ordered ARI TEMAN to undergo an at-home sleep study;**
   j. **improperly diagnosed ARI TEMAN with psychiatric disorders, including, but not limited to: depression and anxiety;**
   k. **improperly withheld the results of ARI TEMAN's sleep study;**
   l. **improperly interpreted the results of the sleep study as indicating that ARI TEMAN's complaints were unrelated to his sleep;**
   m. **failed to diagnose ARI TEMAN with a sleep disorder;**

2

n. failed to diagnose ARI TEMAN with obstructive sleep apnea syndrome;

o. failed to take the appropriate steps to diagnose ARI TEMAN with obstructive sleep apnea syndrome;

p. failed to arrive at a proper diagnosis of ARI TEMAN'S medical conditions;

q. improperly instructed/ordered ARI TEMAN to take psychiatric and antipsychotic medications;

r. improperly instructed/ordered ARI TEMAN to take weight control medications;

s. improperly treated ARI TEMAN for schizophrenia;

t. failed to timely refer ARI TEMAN to a radiologist;

u. improperly diagnosed ARI TEMAN with gliosis;

v. improperly ordered a "baby aspirin" in light of ARI TEMAN's MRI results, which identified gliosis, a swelling of brain cells;

w. improperly threatened ARI TEMAN with a restraining order;

x. improperly contacted friends and family of ARI TEMAN, regarding ARI TEMAN's medical condition;

y. improperly had ARI TEMAN admitted to Silver Hill Hospital;

z. unnecessary delayed ARI TEMAN from undergoing a nasal reconstruction surgery;

aa. improperly ordered unnecessary medical treatment in an effort to profit off of ARI TEMAN's debilitated mental and physical state;

bb. failed to provide staff, nurses, physicians and other health care professionals, who possess the requisite knowledge, skill and experience to adequately and properly care for, treat, diagnose, monitor and supervise patients such as ARI TEMAN;

cc. failed to follow, promulgate and/or enforce rules, regulations, standard and protocols for the care and treatment of patients such as ARI TEMAN.

**Plaintiff reserves the right to supplement/amend this response.**

9. State whether or not any claim is made as to improper or defective equipment and, if so, identify the equipment and state the defective conditions.

**At this time, plaintiff has no knowledge of defective equipment.**

10. If plaintiff will claim that the defendant **ERIC BRAVERMAN, M.D.** ignored complaints, signs, and/or symptoms, made an erroneous diagnosis, afforded improper treatment, administered improper and/or contraindicated drugs,

3

administered proper drugs in an incorrect dosage, failed to take or administered

tests, or improperly took and administered tests, state:

(a) The complaints, signs, and/or symptoms that the Defendant, **ERIC BRAVERMAN, M.D.**, ignored and the date of each such occurrence;

**Plaintiff relies and refers to the medical records and bills of PATH, P.C. provided by defense counsel. Upon information and belief: Plaintiff complained of fatigue and difficulty breathing at his visits. ERIC BRAVERMAN, M.D. improperly interpreted and/or ignored the results of the Watermark Medical ARES sleep study, dated October 9, 2011. Following this failure to appropriately diagnose the obstructive sleep apnea, ARI TEMAN suffered from sleep deprivation, shakes, headaches, pain, and mood changes.**

(b) In what respect the diagnosis by the defendant, **ERIC BRAVERMAN, M.D.** was erroneous and incorrect, what the claimed correct diagnosis should have been, and the point in time that the Plaintiffs' will claim this Answering Defendant should have made the correct diagnosis;

**Throughout ARI TEMAN's course of treatment, ERIC BRAVERMAN, M.D. failed to timely and correctly diagnosis the obstructive sleep apnea and fatigue. ERIC BRAVERMAN, M.D. improperly diagnosed ARI TEMAN with aluminum poisoning, low bone density and low testosterone. ERIC BRAVERMAN, M.D. improperly diagnosed ARI TEMAN with psychiatric disorders, including, but not limited to: depression and anxiety. ERIC BRAVERMAN, M.D. improperly diagnosed ARI TEMAN with gliosis. ERIC BRAVERMAN, M.D. improperly interpreted and/or ignored the results of the Watermark Medical ARES sleep study, dated October 9, 2011.**

(c) The improper treatment that was afforded and in what manner the said treatment was improperly performed;

***See* Response to Bill of Particular #8. The drugs and treatment prescribed were improper because they were not instructed/ordered to treat Obstructive Sleep Apnea. Rather, they were to instructed/ordered to treat ARI TEMAN'S improperly diagnosed mental conditions.**

4

(d)    The name of each and every improper and/or contraindicated drug, if any, the name of the defendant, **ERIC BRAVERMAN, M.D.** prescribing same and the date of each such prescription;

**All prescription medication, vitamins and supplements. This includes but is not limited to in-office-administered injections of Prolixin and Forteo.**

(e)    The name of each proper drug allegedly administered incorrectly with the dosage that Plaintiffs' will claim was the correct dosage;

**All prescription medication, vitamins and supplements were improper.**

(f)    The name and/or description of each and every test the defendant **ERIC BRAVERMAN, M.D.** allegedly failed to take or administer and the alleged date of such omission; and

**ERIC BRAVERMAN, M.D. failed to timely perform tests to diagnose ARI TEMAN'S obstructive sleep apnea. ERIC BRAVERMAN, M.D. ignored and/or improperly interpreted the results of tests throughout ARI TEMAN's course of treatment, which identified his complaints had a physical cause; and not mental. This includes the Watermark Medical ARES Sleep Study, dated October 9, 2011.**

(g)    The name of each and every test this the defendant **ERIC BRAVERMAN, M.D.** improperly took or administered, and the manner in which each such test was improperly taken or administered and the date(s) thereof.

**Prior to the Watermark Medical ARES Sleep Study, dated October 9, 2011, every test was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. Every test after the Watermark Medical ARES Sleep Study, dated October 9, 2011, was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and**

5

**fatigue. This included all subsequent ultrasounds, bone density testing, blood tests, and psychiatric testing.**

**Plaintiff reserves the right to supplement/amend this response.**

11. If the Plaintiff will claim that the defendant **ERIC BRAVERMAN, M.D.** improperly performed a procedure or procedures (whether surgical or otherwise), or performed a procedure that was contraindicated and/or unnecessary, or failed to perform a required procedure, state:

(a) The name of the improperly performed, contraindicated, or unnecessary procedure and the date when it was performed;

**Prior to the Watermark Medical ARES Sleep Study, dated October 9, 2011, every procedure was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. Every procedure after the Watermark Medical ARES Sleep Study, dated October 9, 2011, was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. This included all subsequent ultrasounds, bone density testing, blood tests, psychiatric testing, chiropractic adjustments and chelation therapy.**

(b) In what manner was the aforesaid procedure improperly performed; and

**These procedures were improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue.**

(c) Describe the procedure that should have been performed.

**There was a delay in referring ARI TEMAN to the appropriate physician/surgeon to: diagnose his obstructive nasal passage; diagnose his**

6

**obstructive   sleep   apnea;   and/or   recommend surgery/modification of the nasal airway.**

**Plaintiff reserves the right to supplement/amend this response.**

12. Set forth each act and/or omission which constitutes the alleged malpractice of the defendant **ERIC BRAVERMAN, M.D.** (other than those set forth in response to items "10" and "11" above) and the date of each act and omission.

**See Response to Bill of Particulars #8.**

**Plaintiff reserves the right to supplement/amend this response.**

13. If it is claimed that the defendant **ERIC BRAVERMAN, M.D.** is responsible vicariously for the acts or omissions of other(s), state the name of each such individual.   If the name if not known, describe the physical appearance with sufficient clarity for ready identification, and state the occupation of each such person and the date and place of the act or omission.

**None at this time.**

**Plaintiff reserves the right to supplement/amend this response.**

14. State the injuries that plaintiff allegedly suffered as a result of the alleged negligence and/or malpractice of the defendant **ERIC BRAVERMAN, M.D.**

    a. **torturous sensation of electrocution throughout the body;**
    b. **inability to move due to pain;**
    c. **loss of cognitive ability;**
    d. **severe depression;**
    e. **mood changes**
    f. **ill effects due to sleep deprivation;**
    g. **ill effects due to improper medication;**
    h. **debilitating headaches;**
    i. **episodes of shaking;**

7

j.  episodes of collapsing from exhaustion;
k.  damage to relationships,
l.  damage to reputation,
m.  damage to business ventures;
n.  psychological trauma;
o.  painful and exhausting 3-month period of withdrawal, from the medications that were inappropriately prescribed and administered;
p.  unnecessarily delayed surgery;
q.  stress;
r.  anxiety;
s.  pain and suffering.

15. Set forth which injuries are claimed to be permanent and in what respect they are claimed to be permanent.

a.  permanent residual effects of psychological trauma;
b.  permanent damage to relationships, my reputation, and my business;
c.  stress;
d.  anxiety;
e.  pain and suffering.

16. State the length of time the plaintiff was confined to:

(a)  Bed;

**April 2011 to March 2013**

(b)  House;

**April 2011 to March 2013, leaving mainly to go to therapy.**

(c)  Hospital;

- **Beth Israel Hospital: approximately 1-week, dates to be provided;**
- **Silver Hill Hospital: dates to be provided;**
- **Weill Cornell Medical Center: October 28, 2012 – October 29, 2012.**

(d)  Nursing home or other rehabilitative institution.

**None.**

8

17. State separately the total amounts claimed by the plaintiff as special damages for each of the following:

(a)  Physicians' services and medical services with names and addresses of all physicians and each chiropractor who treated the plaintiff for said injuries, and the dates of each physicians' treatment;

(b)  Nurses' services;

(c)  Medical supplies, with a description of the supplies;

(d)  Hospital expenses, with the names and addresses of all hospitals and dates of confinement at each hospital;

(e)  Each projected or anticipated item of future expense which plaintiffs' will claim at trail;

(f)  Any other expenses.

**To be provided.**

18. Set forth the following:

(a)  The occupation of the plaintiff at the time of the alleged malpractice by the defendant, together with the name and address of the plaintiff's employers at such time.

- **CEO and Founder of 12gurus:  Health;**
- **CEO and Founder of 12gurus:  Charity conferences;**
- **CEO and Founder of 12gurus:  12gurus consulting;**
- **Standup Comedian.**

**36 West 20th Street**
**New York, New York 10011**

(b)  Plaintiff's present occupation and the name and address of plaintiff's present employer;

- **CEO & Founder of Friend or Fraud INC;**
- **consultant;**
- **comedian at clubs and venues around North America and Israel.**

9

**349 5th Avenue #420**
**New York, New York**

(c)      If self-employed, state the address of the place of employment and the type of business or occupation in which plaintiff was engaged immediately prior to the occurrence;

**See Response to Interrogatory #18(a).**

(d)      The length of time plaintiff was unable to attend to his employment;

**To be provided.**

(e)      The amount of money plaintiff is alleged to have earned during the year prior to the occurrence;

**To be provided.**

(f)      The amount of earnings the plaintiff is alleged to have lost as a result of the defendant's alleged malpractice and/or negligence;

**To be provided.**

(g)      The amount of future income, if any, which plaintiff will lose as a result of defendant's alleged malpractice and/or negligence.

**To be provided.**

19. Set forth the names of any spouse or children of the plaintiff, including current addresses.

**None**

20. If the plaintiff has received reimbursement for any of medical expenses incurred in connection with the treatment of the injuries complained of in the complaint, set forth:

(a)      The source of the reimbursement, including:

10

(i)     The name of the indemnitor (such as Blue
        Cross, GHI, etc.),

**Horizon Blue Cross Blue Shield of New
Jersey**

(ii)    The group or policy number and Plaintiffs'
        identification number for each provider,

**To be provided.**

(iii)   Medicaid and/or Medicare number.

**N/A**

PLAINTIFF, ARI TEMAN

By:_____

Jason T. Prueher

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Bridgeport, CT  06604
Tel:    203-333-9441
Fax:    203-333-1489
Email:  jprueher@znclaw.com

His Attorneys

Dated: Bridgeport, Connecticut
        October 6, 2015

11

TO:

DAVIDOFF LAW FIRM, PLLC
Glen A. Kendall, Esq.
Attorneys for Plaintiff
228 East 45th Street, Suite 1700
New York, NY 10017

GOLDBERG SEGALLA, LLP
Mary R. Phillips, Esq.
Attorneys for Defendant Richard Smayda, M.D.
11 Martin Avenue
White Plains, NY 10606

JAMIE ANDREW SCHRECK, P.C.
Jamie A. Schreck, Esq.
Attorneys for Defendant Darya Braverman
520 8th Avenue
New York, NY 10018

KAUFMAN BORGEEST & RYAN LLP
Nicole M. Varisco, Esq.
Christopher DiGiacinto, Esq.
Attorneys for Defendants, Eric Braverman, M.D.;
Sandip Buch, M.D.; and Path Medical, P.C.
200 Summit Lake Drive
Valhalla, NY 10595

DIANA T. MOYHI, ESQ.
Attorney for Defendant Total Health Nutrients
304 Park Avenue South, 6th Floor
New York, NY 10010


By service of mail, by depositing a true copy of same enclosed in a prepaid, properly
addressed envelope, in a post office official depository under the exclusive care and
custody of the United State Postal Service within the State of Connecticut.

_____
Jason T. Prueher

12

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------X

ARI TEMAN,                                              Index No.: 805410/2014

                                    Plaintiff,          **PLAINTIFF'S**
                                                        **RESPONSE TO**
                    -against-                           **DEMAND FOR BILL OF**
                                                        **PARTICULARS AS TO**
ERIC BRAVERMAN, M.D., RICHARD SMAYDA,                   **SANDIP BUCH, M.D.**
D.O., SANDIP BUCH, M.D., ANUPAMA REDDY,
M.D., PATH MEDICAL, P.C., DARYA
BRAVERMAN, and TOTAL HEALTH
NUTRIENTS,

                                    Defendants.

-----------------------------------------------------------------X

1.  Date of birth of plaintiff.

    ██████████

2.  Social security number of plaintiff.

    **Plaintiff objects to providing this personal identifying information through a Bill of Particulars. This information can be provided, to the extent necessary, under seal. Further, it has already been provided by way of signed authorizations.**

3.  Current residence address of plaintiff

    **288 West 86th Street
    New York, New York**

4.  The address of plaintiff's residence at the time of the alleged malpractice and/or

    negligence of the defendant **SANDIP BUCH, M.D.**

    **140 7th Avenue #1S
    New York, New York**

5.  Each date on which the defendant **SANDIP BUCH, M.D.** rendered medical care

    to the plaintiff.

**Plaintiff relies and refers to the medical records and bills of Place for Achieving Total Health, P.C. provided by defense counsel. Upon information and belief, plaintiff was treated by SANDIP BUCH, M.D. on: 9.15.11; 9.20.11; 9.27.11; 10.09.11; 10.17.11; 11.23.11; 3.21.12; 4.17.12; 4.24.12; 4.26.12; 5.9.12; 5.10.12; and 5.13.12.**

6. The address or addresses where such medical care was rendered to the plaintiff.

   **304 Park Avenue South 6th Floor**
   **New York, New York**

7. The condition or conditions which it will be claimed the defendant **SANDIP BUCH, M.D.** undertook to treat.

   **Extreme fatigue; breathing difficulty; insomnia; snoring**

8. Provide a statement of the accepted medical practices, customs, and medical standards, if any, which it are claimed were violated and departed from by the defendant **SANDIP BUCH, M.D.** herein.

   a. **failed to adequately and properly care, treat, monitor, diagnose and supervise ARI TEMAN;**
   b. **failed to adequately and properly care, treat, monitor, diagnose and supervise ARI TEMAN'S extreme fatigue, insomnia, breathing difficulty and snoring;**
   c. **improperly diagnosed ARI TEMAN with aluminum poisoning, low bone density and low testosterone;**
   d. **improperly instructed/ordered ARI TEMAN to take vitamin supplements and pills;**
   e. **improperly instructed/ordered ARI TEMAN to take vitamin supplements and pills, which were to be bought through defendant, TOTAL HEALTH NUTRIENTS;**
   f. **improperly instructed/ordered ARI TEMAN to undergo chelation therapy;**
   g. **failed to timely perform x-rays of the nose;**
   h. **failed to timely perform a sleep-study;**
   i. **improperly instructed/ordered ARI TEMAN to undergo an at-home sleep study;**
   j. **improperly diagnosed ARI TEMAN with psychiatric disorders, including, but not limited to: depression and anxiety;**
   k. **improperly withheld the results of ARI TEMAN's sleep study;**

2

l. improperly interpreted the results of the sleep study as indicating that ARI TEMAN's complaints were unrelated to his sleep;

m. failed to diagnose ARI TEMAN with a sleep disorder;

n. failed to diagnose ARI TEMAN with obstructive sleep apnea syndrome;

o. failed to take the appropriate steps to diagnose ARI TEMAN with obstructive sleep apnea syndrome;

p. failed to arrive at a proper diagnosis of ARI TEMAN'S medical conditions;

q. improperly instructed/ordered ARI TEMAN to take psychiatric and antipsychotic medications;

r. improperly instructed/ordered ARI TEMAN to take weight control medications;

s. improperly treated ARI TEMAN for schizophrenia;

t. failed to timely refer ARI TEMAN to a radiologist;

u. improperly diagnosed ARI TEMAN with gliosis;

v. improperly ordered a "baby aspirin" in light of ARI TEMAN's MRI results, which identified gliosis, a swelling of brain cells;

w. improperly threatened ARI TEMAN with a restraining order;

x. improperly contacted friends and family of ARI TEMAN, regarding ARI TEMAN's medical condition;

y. improperly had ARI TEMAN admitted to Silver Hill Hospital;

z. unnecessary delayed ARI TEMAN from undergoing a nasal reconstruction surgery;

aa. improperly ordered unnecessary medical treatment in an effort to profit off of ARI TEMAN's debilitated mental and physical state;

bb. failed to provide staff, nurses, physicians and other health care professionals, who possess the requisite knowledge, skill and experience to adequately and properly care for, treat, diagnose, monitor and supervise patients such as ARI TEMAN;

cc. failed to follow, promulgate and/or enforce rules, regulations, standard and protocols for the care and treatment of patients such as ARI TEMAN.

**Plaintiff reserves the right to supplement/amend this response.**

9. State whether or not any claim is made as to improper or defective equipment and, if so, identify the equipment and state the defective conditions.

**Plaintiff has no knowledge of defective equipment.**

10. If plaintiff will claim that the defendant **SANDIP BUCH, M.D.** ignored complaints, signs, and/or symptoms, made an erroneous diagnosis, afforded improper

3

treatment, administered improper and/or contraindicated drugs, administered proper drugs in an incorrect dosage, failed to take or administered tests, or improperly took and administered tests, state:

(a)    The complaints, signs, and/or symptoms that the Defendant, **SANDIP BUCH, M.D.,** ignored and the date of each such occurrence;

**Plaintiff relies and refers to the medical records and bills of PATH, P.C. provided by defense counsel. Upon information and belief: Plaintiff complained of fatigue and difficulty breathing at his visits. SANDIP BUCH, M.D. improperly interpreted and/or ignored the results of the Watermark Medical ARES sleep study, dated October 9, 2011. Following this failure to appropriately diagnose the obstructive sleep apnea, ARI TEMAN suffered from sleep deprivation, shakes, headaches, pain, and mood changes.**

(b)    In what respect the diagnosis by the defendant, **SANDIP BUCH, M.D.** was erroneous and incorrect, what the claimed correct diagnosis should have been, and the point in time that the Plaintiffs' will claim this Answering Defendant should have made the correct diagnosis;

**Throughout ARI TEMAN's course of treatment, SANDIP BUCH, M.D. failed to timely and correctly diagnosis the obstructive sleep apnea and fatigue. SANDIP BUCH, M.D. improperly diagnosed ARI TEMAN with aluminum poisoning, low bone density and low testosterone. SANDIP BUCH, M.D. improperly diagnosed ARI TEMAN with psychiatric disorders, including, but not limited to: depression and anxiety. SANDIP BUCH, M.D. improperly diagnosed ARI TEMAN with gliosis. SANDIP BUCH, M.D. improperly interpreted and/or ignored the results of the Watermark Medical ARES sleep study, dated October 9, 2011.**

(c)    The improper treatment that was afforded and in what manner the said treatment was improperly performed;

**See Response to Bill of Particular #8. The drugs and treatment prescribed were improper because they were not instructed/ordered to treat Obstructive Sleep Apnea. Rather, they were to instructed/ordered to treat ARI TEMAN'S improperly diagnosed mental conditions.**

4

(d)    The name of each and every improper and/or contraindicated drug, if any, the name of the defendant, **SANDIP BUCH, M.D.** prescribing same and the date of each such prescription;

**All prescription medication, vitamins and supplements. This includes but is not limited to in-office-administered injections of Prolixin and Forteo.**

(e)    The name of each proper drug allegedly administered incorrectly with the dosage that Plaintiffs' will claim was the correct dosage;

**All prescription medication, vitamins and supplements were improper.**

(f)    The name and/or description of each and every test the defendant **SANDIP BUCH, M.D.** allegedly failed to take or administer and the alleged date of such omission; and

**SANDIP BUCH, M.D. failed to timely perform tests to diagnose ARI TEMAN'S obstructive sleep apnea. SANDIP BUCH, M.D. ignored and/or improperly interpreted the results of tests throughout ARI TEMAN's course of treatment, which identified his complaints had a physical cause; and not mental. This includes the Watermark Medical ARES Sleep Study, dated October 9, 2011.**

(g)    The name of each and every test this the defendant **SANDIP BUCH, M.D.** improperly took or administered, and the manner in which each such test was improperly taken or administered and the date(s) thereof.

**Prior to the Watermark Medical ARES Sleep Study, dated October 9, 2011, every test was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. Every test after the Watermark Medical ARES Sleep Study, dated October 9, 2011, was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. This included all subsequent ultrasounds,**

5

**bone density testing, blood tests, and psychiatric testing.**

**Plaintiff reserves the right to supplement/amend this response.**

11. If the Plaintiff will claim that the defendant **SANDIP BUCH, M.D.** improperly performed a procedure or procedures (whether surgical or otherwise), or performed a procedure that was contraindicated and/or unnecessary, or failed to perform a required procedure, state:

(a)    The name of the improperly performed, contraindicated, or unnecessary procedure and the date when it was performed;

**Prior to the Watermark Medical ARES Sleep Study, dated October 9, 2011, every procedure was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. Every procedure after the Watermark Medical ARES Sleep Study, dated October 9, 2011, was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. This included all subsequent ultrasounds, bone density testing, blood tests, psychiatric testing, chiropractic adjustments and chelation therapy.**

(b)    In what manner was the aforesaid procedure improperly performed; and

**These procedures were improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue.**

(c)    Describe the procedure that should have been performed.

**There was a delay in referring ARI TEMAN to the appropriate physician/surgeon to: diagnose his obstructive nasal passage; diagnose his**

6

> obstructive sleep apnea; and/or recommend surgery/modification of the nasal airway.

**Plaintiff reserves the right to supplement/amend this response.**

12. Set forth each act and/or omission which constitutes the alleged malpractice of the defendant **SANDIP BUCH, M.D.** (other than those set forth in response to items "10" and "11" above) and the date of each act and omission.

**See Response to Bill of Particulars #8.**

**Plaintiff reserves the right to supplement/amend this response.**

13. If it is claimed that the defendant **SANDIP BUCH, M.D.** is responsible vicariously for the acts or omissions of other(s), state the name of each such individual. If the name if not known, describe the physical appearance with sufficient clarity for ready identification, and state the occupation of each such person and the date and place of the act or omission.

**None at this time.**

**Plaintiff reserves the right to supplement/amend this response.**

14. State the injuries that plaintiff allegedly suffered as a result of the alleged negligence and/or malpractice of the defendant **SANDIP BUCH, M.D.**

   a. **torturous sensation of electrocution throughout the body;**
   b. **inability to move due to pain;**
   c. **loss of cognitive ability;**
   d. **severe depression;**
   e. **mood changes**
   f. **ill effects due to sleep deprivation;**
   g. **ill effects due to improper medication;**
   h. **debilitating headaches;**
   i. **episodes of shaking;**
   j. **episodes of collapsing from exhaustion;**
   k. **damage to relationships,**

7

l.  damage to reputation,
m.  damage to business ventures;
n.  psychological trauma;
o.  painful and exhausting 3-month period of withdrawal, from the medications that were inappropriately prescribed and administered;
p.  unnecessarily delayed surgery;
q.  stress;
r.  anxiety;
s.  pain and suffering.

15. Set forth which injuries are claimed to be permanent and in what respect they are claimed to be permanent.

a.  permanent residual effects of psychological trauma;
b.  permanent damage to relationships, my reputation, and my business;
c.  stress;
d.  anxiety;
e.  pain and suffering.

16. State the length of time the plaintiff was confined to:

(a)    Bed;

**April 2011 to March 2013**

(b)    House;

**April 2011 to March 2013, leaving mainly to go to therapy**

(c)    Hospital;

- **Beth Israel Hospital: approximately 1-week, dates to be provided;**
- **Silver Hill Hospital: dates to be provided;**
- **Weill Cornell Medical Center: October 28, 2012 – October 29, 2012.**

(d)    Nursing home or other rehabilitative institution.

**None**

8

17. State separately the total amounts claimed by the plaintiff as special damages for

each of the following:

      (a)    Physicians' services and medical services with names and addresses of all physicians and each chiropractor who treated the plaintiff for said injuries, and the dates of each physicians' treatment;

      (b)    Nurses' services;

      (c)    Medical supplies, with a description of the supplies;

      (d)    Hospital expenses, with the names and addresses of all hospitals and dates of confinement at each hospital;

      (e)    Each projected or anticipated item of future expense which plaintiffs' will claim at trail;

      (f)    Any other expenses.

      **To be provided.**

18. Set forth the following:

      (a)    The occupation of the plaintiff at the time of the alleged malpractice by the defendant, together with the name and address of the plaintiff's employers at such time.

- **CEO and Founder of 12gurus: Health;**
- **CEO and Founder of 12gurus: Charity conferences;**
- **CEO and Founder of 12gurus: 12gurus consulting;**
- **Standup Comedian.**

**36 West 20th Street**
**New York, New York 10011**

      (b)    Plaintiff's present occupation and the name and address of plaintiff's present employer;

- **CEO & Founder of Friend or Fraud INC;**
- **consultant;**
- **comedian at clubs and venues around North America and Israel.**

9

**349 5th Avenue #420**
**New York, New York**

(c)    If self-employed, state the address of the place of employment and the type of business or occupation in which plaintiff was engaged immediately prior to the occurrence;

**See Response to Interrogatory #18(a).**

(d)    The length of time plaintiff was unable to attend to his employment;

**To be provided.**

(e)    The amount of money plaintiff is alleged to have earned during the year prior to the occurrence;

**To be provided.**

(f)    The amount of earnings the plaintiff is alleged to have lost as a result of the defendant's alleged malpractice and/or negligence;

**To be provided.**

(g)    The amount of future income, if any, which plaintiff will lose as a result of defendant's alleged malpractice and/or negligence.

**To be provided.**

19. Set forth the names of any spouse or children of the plaintiff, including current addresses.

**None**

20. If the plaintiff has received reimbursement for any of medical expenses incurred in connection with the treatment of the injuries complained of in the complaint, set forth:

(a)    The source of the reimbursement, including:

10

(i)      The name of the indemnitor (such as Blue Cross, GHI, etc.),

**Horizon Blue Cross Blue Shield of New Jersey**

(ii)     The group or policy number and Plaintiffs' identification number for each provider,

**Unknown**

(iii)    Medicaid and/or Medicare number.

**N/A**

PLAINTIFF, ARI TEMAN

By: _____

Jason T. Prueher

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Bridgeport, CT  06604
Tel:     203-333-9441
Fax:    203-333-1489
Email:  jprueher@znclaw.com

His Attorneys

Dated: Bridgeport, Connecticut
       October 6, 2015

TO:

DAVIDOFF LAW FIRM, PLLC
Glen A. Kendall, Esq.
Attorneys for Plaintiff
228 East 45th Street, Suite 1700
New York, NY 10017

11

GOLDBERG SEGALLA, LLP
Mary R. Phillips, Esq.
Attorneys for Defendant Richard Smayda, M.D.
11 Martin Avenue
White Plains, NY 10606

JAMIE ANDREW SCHRECK, P.C.
Jamie A. Schreck, Esq.
Attorneys for Defendant Darya Braverman
520 8th Avenue
New York, NY 10018

KAUFMAN BORGEEST & RYAN LLP
Nicole M. Varisco, Esq.
Christopher DiGiacinto, Esq.
Attorneys for Defendants, Eric Braverman, M.D.;
Sandip Buch, M.D.; and Path Medical, P.C.
200 Summit Lake Drive
Valhalla, NY 10595

DIANA T. MOYHI, ESQ.
Attorney for Defendant Total Health Nutrients
304 Park Avenue South, 6th Floor
New York, NY 10010

By service of mail, by depositing a true copy of same enclosed in a prepaid, properly addressed envelope, in a post office official depository under the exclusive care and custody of the United State Postal Service within the State of Connecticut.

Jason T. Prueher

12

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X

ARI TEMAN,

                               Plaintiff,

                -against-

ERIC BRAVERMAN, M.D., RICHARD SMAYDA,
D.O., SANDIP BUCH, M.D., ANUPAMA REDDY,
M.D., PATH MEDICAL, P.C., DARYA
BRAVERMAN, and TOTAL HEALTH
NUTRIENTS,

                              Defendants.
-----------------------------------------------------------------------X

Index No.: 805410/2014

**PLAINTIFF'S RESPONSE TO DEMAND FOR BILL OF PARTICULARS AS TO PATH MEDICAL, P.C.**

1. Date of birth of plaintiff.

   ▮▮▮▮▮

2. Social security number of plaintiff.

   **Plaintiff objects to providing this personal identifying information through a Bill of Particulars. This information can be provided, to the extent necessary, under seal. Further, it has already been provided by way of signed authorizations.**

3. Current residence address of plaintiff

   **288 West 86th Street
   New York, New York**

4. The address of plaintiff's residence at the time of the alleged malpractice and/or

   negligence of the defendant **PATH MEDICAL, P.C.**

   **140 7th Avenue #S1
   New York, New York**

5. Each date on which the defendant **PATH MEDICAL, P.C.** rendered medical care

   to the plaintiff.

Plaintiff relies and refers to the medical records and bills of **PATH MEDICAL, P.C.** provided by defense counsel. Upon information and belief, plaintiff was treated by agents/apparent agents/servants/employees of **PATH MEDICAL, P.C.** from September 15, 2011 through and including June 11, 2012.

6. The address or addresses where such medical care was rendered to the plaintiff.

   **304 Park Avenue South 6th Floor**
   **New York, New York**

7. The condition or conditions which it will be claimed the defendant **PATH MEDICAL, P.C.** undertook to treat.

   **Extreme fatigue; insomnia; breathing difficulty; snoring**

8. Provide a statement of the accepted medical practices, customs, and medical standards, if any, which it are claimed were violated and departed from by the defendant **PATH MEDICAL, P.C.** herein.

   a. failed to adequately and properly care, treat, monitor, diagnose and supervise **ARI TEMAN**;
   b. failed to adequately and properly care, treat, monitor, diagnose and supervise **ARI TEMAN'S** extreme fatigue, insomnia, breathing difficulty and snoring;
   c. improperly diagnosed **ARI TEMAN** with aluminum poisoning, low bone density and low testosterone;
   d. improperly instructed/ordered **ARI TEMAN** to take vitamin supplements and pills;
   e. improperly instructed/ordered **ARI TEMAN** to take vitamin supplements and pills, which were to be bought through defendant, **TOTAL HEALTH NUTRIENTS**;
   f. improperly instructed/ordered **ARI TEMAN** to undergo chelation therapy;
   g. failed to timely perform x-rays of the nose;
   h. failed to timely perform a sleep-study;
   i. improperly instructed/ordered **ARI TEMAN** to undergo an at-home sleep study;
   j. improperly diagnosed **ARI TEMAN** with psychiatric disorders, including, but not limited to: depression and anxiety;
   k. improperly withheld the results of **ARI TEMAN's** sleep study;

2

l. improperly interpreted the results of the sleep study as indicating that ARI TEMAN's complaints were unrelated to his sleep;

m. failed to diagnose ARI TEMAN with a sleep disorder;

n. failed to diagnose ARI TEMAN with obstructive sleep apnea syndrome;

o. failed to take the appropriate steps to diagnose ARI TEMAN with obstructive sleep apnea syndrome;

p. failed to arrive at a proper diagnosis of ARI TEMAN'S medical conditions;

q. improperly instructed/ordered ARI TEMAN to take psychiatric and antipsychotic medications;

r. improperly instructed/ordered ARI TEMAN to take weight control medications;

s. improperly treated ARI TEMAN for schizophrenia;

t. failed to timely refer ARI TEMAN to a radiologist;

u. improperly diagnosed ARI TEMAN with gliosis;

v. improperly ordered a "baby aspirin" in light of ARI TEMAN's MRI results, which identified gliosis, a swelling of brain cells;

w. improperly threatened ARI TEMAN with a restraining order;

x. improperly contacted friends and family of ARI TEMAN, regarding ARI TEMAN's medical condition;

y. improperly had ARI TEMAN admitted to Silver Hill Hospital;

z. unnecessary delayed ARI TEMAN from undergoing a nasal reconstruction surgery;

aa. improperly ordered unnecessary medical treatment in an effort to profit off of ARI TEMAN's debilitated mental and physical state;

bb. failed to provide staff, nurses, physicians and other health care professionals, who possess the requisite knowledge, skill and experience to adequately and properly care for, treat, diagnose, monitor and supervise patients such as ARI TEMAN;

cc. failed to follow, promulgate and/or enforce rules, regulations, standard and protocols for the care and treatment of patients such as ARI TEMAN.

Plaintiff reserves the right to supplement/amend this response.

9. State whether or not any claim is made as to improper or defective equipment and, if so, identify the equipment and state the defective conditions.

At this time, plaintiff has no knowledge of defective equipment.

10. A statement of the accepted medical practices, customs, and standards, if any, which it is claimed were violated and departed from by PATH MEDICAL, P.C.

3

See Response to Bill of Particulars # 8.

11. If plaintiff will claim that the defendant **PATH MEDICAL, P.C.** ignored complaints, signs, and/or symptoms, made an erroneous diagnosis, afforded improper treatment, administered improper and/or contraindicated drugs, administered proper drugs in an incorrect dosage, failed to take or administered tests, or improperly took and administered tests, state:

   (a)  The complaints, signs, and/or symptoms that the Defendant, **PATH MEDICAL , PC,** ignored and the date of each such occurrence;

   **Plaintiff relies and refers to the medical records and bills of PATH, P.C. provided by defense counsel. Upon information and belief: Plaintiff complained of fatigue and difficulty breathing at his visits. Agents/apparent agents/servants/employees of PATH MEDICAL, P.C. improperly interpreted and/or ignored the results of the Watermark Medical ARES sleep study, dated October 9, 2011. Following this failure to appropriately diagnose the obstructive sleep apnea, ARI TEMAN suffered from sleep deprivation, shakes, headaches, pain, and mood changes.**

   (b)  In what respect the diagnosis by the defendant, **PATH MEDICAL, PC** was erroneous and incorrect, what the claimed correct diagnosis should have been, and the point in time that the Plaintiffs' will claim this Answering Defendant should have made the correct diagnosis;

   **Throughout ARI TEMAN's course of treatment, agents/apparent agents/servants/employees of PATH MEDICAL, P.C. failed to timely and correctly diagnosis the obstructive sleep apnea and fatigue. Agents/apparent agents/servants/employees of PATH MEDICAL, P.C. improperly diagnosed ARI TEMAN with aluminum poisoning, low bone density and low testosterone. Agents/apparent agents/servants/employees of PATH MEDICAL, P.C. improperly diagnosed ARI TEMAN with psychiatric disorders, including, but not limited to: depression and anxiety. Agents/apparent agents/servants/employees of PATH MEDICAL, P.C. improperly diagnosed ARI TEMAN with gliosis. Agents/apparent agents/servants/employees of PATH MEDICAL,**

4

P.C. improperly interpreted and/or ignored the results of the Watermark Medical ARES sleep study, dated October 9, 2011.

(c) The improper treatment that was afforded and in what manner the said treatment was improperly performed;

*See* **Response to Bill of Particular #8. The drugs and treatment prescribed were improper because they were not instructed/ordered to treat Obstructive Sleep Apnea. Rather, they were to instructed/ordered to treat ARI TEMAN'S improperly diagnosed mental conditions.**

(d) The name of each and every improper and/or contraindicated drug, if any, the name of the defendant, **PATH MEDICAL, PC** prescribing same and the date of each such prescription;

**All prescription medication, vitamins and supplements. This includes but is not limited to in-office-administered injections of Prolixin and Forteo.**

(e) The name of each proper drug allegedly administered incorrectly with the dosage that Plaintiffs' will claim was the correct dosage;

**All prescription medication, vitamins and supplements were improper.**

(f) The name and/or description of each and every test the defendant **PATH MEDICAL, PC** allegedly failed to take or administer and the alleged date of such omission; and

**Agents/apparent agents/servants/employees of PATH MEDICAL, P.C. failed to timely perform tests to diagnose ARI TEMAN'S obstructive sleep apnea. Agents/apparent agents/servants/employees of PATH MEDICAL, P.C. ignored and/or improperly interpreted the results of tests throughout ARI TEMAN's course of treatment, which identified his complaints had a physical cause; and not mental. This includes the Watermark Medical ARES Sleep Study, dated October 9, 2011.**

(g) The name of each and every test this the defendant **PATH MEDICAL, PC** improperly took or administered,

5

and the manner in which each such test was improperly taken or administered and the date(s) thereof.

**Prior to the Watermark Medical ARES Sleep Study, dated October 9, 2011, every test was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. Every test after the Watermark Medical ARES Sleep Study, dated October 9, 2011, was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. This included all subsequent ultrasounds, bone density testing, blood tests, and psychiatric testing.**

**Plaintiff reserves the right to supplement/amend this response.**

12. If the Plaintiff will claim that the defendant **PATH MEDICAL, P.C.** improperly performed a procedure or procedures (whether surgical or otherwise), or performed a procedure that was contraindicated and/or unnecessary, or failed to perform a required procedure, state:

    (a)    The name of the improperly performed, contraindicated, or unnecessary procedure and the date when it was performed;

        **Prior to the Watermark Medical ARES Sleep Study, dated October 9, 2011, every procedure was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. Every procedure after the Watermark Medical ARES Sleep Study, dated October 9, 2011, was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. This included all subsequent ultrasounds, bone density testing, blood tests, psychiatric testing, chiropractic adjustments and chelation therapy.**

    (b)    In what manner was the aforesaid procedure improperly performed; and

6

**These procedures were improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue.**

(c)   Describe the procedure that should have been performed.

**There was a delay in referring ARI TEMAN to the appropriate physician/surgeon to: diagnose his obstructive nasal passage; diagnose his obstructive sleep apnea; and/or recommend surgery/modification of the nasal airway.**

**Plaintiff reserves the right to supplement/amend this response.**

13. Set forth each act and/or omission which constitutes the alleged malpractice of the defendant **PATH MEDICAL, P.C.** (other than those set forth in response to items "10" and "11" above) and the date of each act and omission.

**See Response to Bill of Particulars #8.**

**Plaintiff reserves the right to supplement/amend this response.**

14. If it is claimed that the defendant **PATH MEDICAL, P.C.** is responsible vicariously for the acts or omissions of other(s), state the name of each such individual. If the name if not known, describe the physical appearance with sufficient clarity for ready identification, and state the occupation of each such person and the date and place of the act or omission.

**PATH MEDICAL, P.C. is vicariously liable for the treatment rendered by its agents/apparent agents/servants/employees to ARI TEMAN. This includes, but is not limited to: ERIC BRAVERMAN, M.D.; RICHARD SMAYDA, D.O.; SANDIP BUCH, M.D.; ANUPAMA REDDY, M.D.; and DARYA BRAVERMAN. PATH MEDICAL, P.C. is vicariously liable for the treatment rendered by agents/apparent agents/servants/employees of TOTAL HEALTH**

7

**NUTRIENTS to ARI TEMAN. This includes but is not limited to: DARYA BRAVERMAN.**

15. State the injuries that plaintiff allegedly suffered as a result of the alleged

negligence and/or malpractice of the defendant **PATH MEDICAL, P.C.**

    a. **torturous sensation of electrocution throughout the body;**
    b. **inability to move due to pain;**
    c. **loss of cognitive ability;**
    d. **severe depression;**
    e. **mood changes**
    f. **ill effects due to sleep deprivation;**
    g. **ill effects due to improper medication;**
    h. **debilitating headaches;**
    i. **episodes of shaking;**
    j. **episodes of collapsing from exhaustion;**
    k. **damage to relationships,**
    l. **damage to reputation,**
    m. **damage to business ventures;**
    n. **psychological trauma;**
    o. **painful and exhausting 3-month period of withdrawal, from the medications that were inappropriately prescribed and administered;**
    p. **unnecessarily delayed surgery;**
    q. **stress;**
    r. **anxiety;**
    s. **pain and suffering.**

16. Set forth which injuries are claimed to be permanent and in what respect they are

claimed to be permanent.

    a. **permanent residual effects of psychological trauma;**
    b. **permanent damage to relationships, my reputation, and my business;**
    c. **stress;**
    d. **anxiety;**
    e. **pain and suffering.**

17. State the length of time the plaintiff was confined to:

    (a)    Bed;

    **April 2011 to March 2013**

     (b)     House;

             **April 2011 to March 2013, leaving mainly to go to therapy**

     (c)     Hospital;

- **Beth Israel Hospital: approximately 1-week, dates to be provided;**
- **Silver Hill Hospital: dates to be provided;**
- **Weill Cornell Medical Center: October 28, 2012 – October 29, 2012.**

     (d)     Nursing home or other rehabilitative institution.

             **None**

18. State separately the total amounts claimed by the plaintiff as special damages for

each of the following:

     (a)     Physicians' services and medical services with names and addresses of all physicians and each chiropractor who treated the plaintiff for said injuries, and the dates of each physicians' treatment;

     (b)     Nurses' services;

     (c)     Medical supplies, with a description of the supplies;

     (d)     Hospital expenses, with the names and addresses of all hospitals and dates of confinement at each hospital;

     (e)     Each projected or anticipated item of future expense which plaintiffs' will claim at trail;

     (f)     Any other expenses.

             **To be provided.**

19. Set forth the following:

     (a)     The occupation of the plaintiff at the time of the alleged malpractice by the defendant, together with the name and address of the plaintiff's employers at such time.

9

- **CEO and Founder of 12gurus: Health;**
- **CEO and Founder of 12gurus: Charity conferences;**
- **CEO and Founder of 12gurus: 12gurus consulting;**
- **Standup Comedian.**

**36 West 20th Street**
**New York, New York 10011**

(b)     Plaintiff's present occupation and the name and address of plaintiff's present employer;

- **CEO & Founder of Friend or Fraud INC;**
- **consultant;**
- **comedian at clubs and venues around North America and Israel.**

**349 5th Avenue #420**
**New York, New York**

(c)     If self-employed, state the address of the place of employment and the type of business or occupation in which plaintiff was engaged immediately prior to the occurrence;

**See Response to Interrogatory #18(a).**

(d)     The length of time plaintiff was unable to attend to his employment;

**To be provided.**

(e)     The amount of money plaintiff is alleged to have earned during the year prior to the occurrence;

**To be provided.**

(f)     The amount of earnings the plaintiff is alleged to have lost as a result of the defendant's alleged malpractice and/or negligence;

**To be provided.**

10

(g)    The amount of future income, if any, which plaintiff will lose as a result of defendant's alleged malpractice and/or negligence.

**To be provided.**

20. Set forth the names of any spouse or children of the plaintiff, including current addresses.

**None**

21. If the plaintiff has received reimbursement for any of medical expenses incurred in connection with the treatment of the injuries complained of in the complaint, set forth:

(a)    The source of the reimbursement, including:

(i)    The name of the indemnitor (such as Blue Cross, GHI, etc.),

**Horizon Blue Cross Blue Shield of New Jersey**

(ii)    The group or policy number and Plaintiffs' identification number for each provider,

**Unknown**

(iii)    Medicaid and/or Medicare number.

**N/A**

11

PLAINTIFF, ARI TEMAN

By:_____

Jason T. Prueher

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Bridgeport, CT  06604
Tel:    203-333-9441
Fax:    203-333-1489
Email:  jprueher@znclaw.com

His Attorneys

Dated: Bridgeport, Connecticut
October 6, 2015

12

TO:

DAVIDOFF LAW FIRM, PLLC
Glen A. Kendall, Esq.
Attorneys for Plaintiff
228 East 45th Street, Suite 1700
New York, NY 10017

GOLDBERG SEGALLA, LLP
Mary R. Phillips, Esq.
Attorneys for Defendant Richard Smayda, M.D.
11 Martin Avenue
White Plains, NY 10606

JAMIE ANDREW SCHRECK, P.C.
Jamie A. Schreck, Esq.
Attorneys for Defendant Darya Braverman
520 8th Avenue
New York, NY 10018

KAUFMAN BORGEEST & RYAN LLP
Nicole M. Varisco, Esq.
Christopher DiGiacinto, Esq.
Attorneys for Defendants, Eric Braverman, M.D.;
Sandip Buch, M.D.; and Path Medical, P.C.
200 Summit Lake Drive
Valhalla, NY 10595

DIANA T. MOYHI, ESQ.
Attorney for Defendant Total Health Nutrients
304 Park Avenue South, 6th Floor
New York, NY 10010

By service of mail, by depositing a true copy of same enclosed in a prepaid, properly addressed envelope, in a post office official depository under the exclusive care and custody of the United State Postal Service within the State of Connecticut.

Jason T. Prueher

13

*BP*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------X

ARI TEMAN,

         Plaintiff,

    -against-

ERIC BRAVERMAN, M.D., RICHARD SMAYDA,
D.O., SANDIP BUCH, M.D., ANUPAMA REDDY,
M.D., PATH MEDICAL, P.C., DARYA
BRAVERMAN, and TOTAL HEALTH
NUTRIENTS,

         Defendants.

---------------------------------------------------------------------X

Index No.: 805410/2014

**PLAINTIFF'S
RESPONSE TO
DEMAND FOR BILL OF
PARTICULARS AS TO
DARYA BRAVERMAN**

  1.  State with particularity the amount of interactions or contact the Plaintiff has had with the Defendant, including but not limited to whether it was in person, on the telephone, by e-mail, letter, text or any other manner, the date, time and location of each interaction.

  **ARI TEMAN was treated at PATH MEDICAL P.C., on various occasions from 9/15/11 to 6/11/12. Throughout ARI TEMAN'S treatment at PATH MEDICAL P.C., the treating agents/servants/employees of PATH MEDICAL P.C. would prescribe medications, supplements and vitamins to ARI TEMAN. The various treaters who would treat ARI TEMAN and would send ARI TEMAN to TOTAL HEALTH NUTRIENTS, operated by DARYA BRAVERMAN. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS would sell medications, supplements and vitamins to ARI TEMAN, at the end of ARI TEMAN'S treatments/visits to PATH MEDICAL P.C. Upon information and belief, the Treatment Sheets and billing records from PATH MEDICAL P.C. reflect the medications, supplements and vitamins that were prescribed and billed to ARI TEMAN.**

  2.  State with particularity the details of the interactions or contact the Plaintiff has had with the Defendant, including but not limited to the subject matter discussed, the length of time of the interaction, and any information exchanged between the two parties.

  **DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS would sell medications, supplements and vitamins to ARI TEMAN, at the end of his treatments/visits to PATH MEDICAL P.C. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH**

**NUTRIENTS represented that the medications, supplements and vitamins would alleviate ARI TEMAN'S physical and mental symptoms.**

3. State with particularity whether Plaintiff is aware of any communications or interactions between the Defendant and any other Defendant in this action regarding Plaintiff's allegations in the Complaint.

**ARI TEMAN was treated at PATH MEDICAL P.C., on various occasions from 9/15/11 to 6/11/12. Throughout ARI TEMAN'S treatment at PATH MEDICAL P.C., ARI TEMAN would be prescribed medications, supplements and vitamins. The various treaters, who would treat ARI TEMAN, would send him to TOTAL HEALTH NUTRIENTS, operated by DARYA BRAVERMAN. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS would, on occasion, interact with the treating physicians from PATH MEDICAL, P.C.**

4. State with particularity how Defendant "perpetuated Dr. Braverman's and Path Medical's fraud" as alleged in the Complaint.

**DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS took advantage of ARI TEMAN'S debilitated physical and mental state by falsely representing that the medications, supplements and vitamins would alleviate ARI TEMAN'S physical and mental symptoms. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS. They continued to sell medications, supplements and vitamins to ARI TEMAN when he had been improperly diagnosed with psychiatric disorders, including, but not limited to: aluminum poisoning, low bone density low testosterone, schizophrenia, gliosis, depression and anxiety.**

5. State with particularity whether Defendant ever offered, described or explained to Plaintiff any of the "vitamins and supplements" that Plaintiff alleges in the Complaint, including but not limited to the date, time, location, manner and substance of such statements.

**ARI TEMAN was treated at PATH MEDICAL P.C., on various occasions from 9/15/11 to 6/11/12. The various treaters who would treat ARI TEMAN and would send ARI TEMAN to TOTAL HEALTH NUTRIENTS, operated by DARYA BRAVERMAN. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS would sell medications, supplements and vitamins at the end of ARI TEMAN'S treatments/visits to PATH MEDICAL P.C. They would also offer/describe/explain the various medications, supplements and vitamins prescribed to ARI TEMAN.**

2

6.      State with particularity whether Defendant ever gave Plaintiff any advice or information on how to "alleviate [his] physical and mental symptoms" as Plaintiff alleges in the Complaint, including but not limited to the date, time, location, manner and substance of these statements.

**DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS represented that the medications, supplements and vitamins would alleviate ARI TEMAN'S physical and mental symptoms.   These conversations would take place at the end of ARI TEMAN'S treatments at PATH MEDICAL, P.C.**

7.      State with particularity what false statements Defendant made to Plaintiff regarding the vitamins and supplements alleviating Plaintiff's physical and mental symptoms as alleged in paragraph 122 in the Complaint, including but not limited to the date, time, location, manner and substance of these statements.

**DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS represented that the medications, supplements and vitamins would alleviate ARI TEMAN'S physical and mental symptoms.   These conversations would take place at the end of ARI TEMAN'S treatments at PATH MEDICAL, P.C.**

8.      State with particularity the instances in which Defendant has sold, "peddled" or in any gave the vitamin supplements to Plaintiff as alleged in the Complaint, including but not limited to the date, time, location, manner and substance of these statements.

**Upon information and belief, the Treatment Sheets and billing records from PATH MEDICAL P.C. reflect the medications, supplements and vitamins that were prescribed and billed to ARI TEMAN.**

9.      State the basis for the allegation that Defendant was aware of Plaintiff's alleged debilitated state.

**ARI TEMAN was treated at PATH MEDICAL P.C., on various occasions from 9/15/11 to 6/11/12.   During this time, he was physically and mentally debilitated, which was apparent to those he came in contact with.**

10.      State the exact date, time, location and manner in which Defendant made false representations to Plaintiff as alleged in paragraph 2 of the Complaint.

**ARI TEMAN was treated at PATH MEDICAL P.C., on various occasions from 9/15/11 to 6/11/12. Throughout ARI TEMAN'S treatment at PATH MEDICAL P.C., the treating agents/servants/employees of PATH MEDICAL P.C. would prescribe medications, supplements and vitamins to ARI TEMAN.   The various treaters who would treat ARI TEMAN and would send ARI TEMAN**

3

to TOTAL HEALTH NUTRIENTS, operated by DARYA BRAVERMAN. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS would sell medications, supplements and vitamins at the end of ARI TEMAN'S treatments/visits to PATH MEDICAL P.C.    Upon information and belief, the Treatment Sheets and billing records from PATH MEDICAL P.C. reflect the medications, supplements and vitamins that were prescribed and billed to ARI TEMAN.    Each time these medications, supplements and vitamins were prescribed and billed to ARI TEMAN DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS took advantage of ARI TEMAN'S debilitated physical and mental state by falsely representing that the medications, supplements and vitamins would alleviate ARI TEMAN'S physical and mental symptoms. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS.

11.    State with specificity which vitamin supplements Plaintiff is referring to in paragraph 52 of the Complaint.

Plaintiff objects to this question as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.    See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).    However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:

Upon information and belief, the Treatment Sheets and billing records from PATH MEDICAL P.C. reflect the medications, supplements and vitamins that were prescribed and billed to ARI TEMAN.

12.    State how Defendant "knowingly and "intentionally" took advantage of Plaintiff as alleged in paragraph 122 of the Complaint.

Plaintiff objects to this question as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.    See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).    However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:

DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS took advantage of ARI TEMAN'S debilitated physical and mental state by falsely representing that the medications, supplements and vitamins would alleviate ARI TEMAN'S physical and mental symptoms. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS.    They continued to sell medications, supplements and vitamins to ARI TEMAN when he had been improperly diagnosed with

4

psychiatric disorders, including, but not limited to:  aluminum poisoning, low bone density low testosterone, schizophrenia, gliosis, depression and anxiety.

13.    State what medical duties Defendant owed to Plaintiff as alleged in paragraph 125 of the Complaint.

Plaintiff objects to this question as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.  See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).  However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:

DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS took advantage of ARI TEMAN'S debilitated physical and mental state by falsely representing that the medications, supplements and vitamins would alleviate ARI TEMAN'S physical and mental symptoms. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS.  They continued to sell medications, supplements and vitamins to ARI TEMAN when he had been improperly diagnosed with psychiatric disorders, including, but not limited to:  aluminum poisoning, low bone density low testosterone, schizophrenia, gliosis, depression and anxiety.

14.    State how Defendant allegedly breach any medical duty to Plaintiff as alleged in paragraph 125 of the Complaint.

Plaintiff objects to this question as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.  See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).  However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:    DARYA BRAVERMAN:

a.  improperly instructed/ordered ARI TEMAN to take vitamin supplements and pills;
b.  improperly instructed/ordered ARI TEMAN to take vitamin supplements and pills, which were to be bought through defendant, TOTAL HEALTH NUTRIENTS;
c.  failed to take the appropriate steps to diagnose ARI TEMAN with obstructive sleep apnea syndrome;
d.  failed to arrive at a proper diagnosis of ARI TEMAN'S medical conditions;

5

e. improperly instructed/ordered ARI TEMAN to take psychiatric and antipsychotic medications;

f. improperly instructed/ordered ARI TEMAN to take weight control medications;

g. unnecessary delayed ARI TEMAN from undergoing a nasal reconstruction surgery;

h. improperly sold unnecessary vitamin supplements and pills in an effort to profit off of ARI TEMAN's debilitated mental and physical state;

i. failed to provide staff, nurses, physicians and other health care professionals, who possess the requisite knowledge, skill and experience to adequately and properly care for, treat, diagnose, monitor and supervise patients such as ARI TEMAN;

j. failed to follow, promulgate and/or enforce rules, regulations, standard and protocols for the care and treatment of patients such as ARI TEMAN.

Plaintiff reserves the right to supplement/amend this response.

15. State with particularity how Defendant unreasonably endangered Plaintiff's physical safety, including but not limited to the date, time, location, manner and substance of such specific acts.

Plaintiff objects to this question as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:

ARI TEMAN was treated at PATH MEDICAL P.C., on various occasions from 9/15/11 to 6/11/12. Throughout ARI TEMAN'S treatment at PATH MEDICAL P.C., the treating agents/servants/employees of PATH MEDICAL P.C. would prescribe medications, supplements and vitamins to ARI TEMAN. The various treaters who would treat ARI TEMAN and would send ARI TEMAN to TOTAL HEALTH NUTRIENTS, operated by DARYA BRAVERMAN. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS would sell medications, supplements and vitamins at the end of ARI TEMAN'S treatments/visits to PATH MEDICAL P.C. Upon information and belief, the Treatment Sheets and billing records from PATH MEDICAL P.C. reflect the medications, supplements and vitamins that were prescribed and billed to ARI TEMAN. Each time these medications, supplements and vitamins were prescribed and billed to ARI TEMAN DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS took advantage of ARI TEMAN'S debilitated physical and mental state by falsely representing that the medications, supplements and

6

vitamins would alleviate ARI TEMAN'S physical and mental symptoms. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS.

16.    State with particularity what specific acts of Defendant towards Plaintiff were considered extreme and outrageous, including but not limited to the date, time, location, manner and substance of such specific acts.

Plaintiff objects to this question as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows: See response to #15.

17.    State with particularity how Defendant's specific acts were the cause of Plaintiff's alleged severe emotional distress as alleged in paragraph 126 of the Complaint.

Plaintiff objects to this question as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows: See response to #14 and #15.

18.    State with particularity the specific symptoms and injuries which Plaintiff suffered due to his severe emotional distress as alleged in paragraph 126 of the Complaint.

     a.  torturous sensation of electrocution throughout the body;
     b.  inability to move due to pain;
     c.  loss of cognitive ability;
     d.  severe depression;
     e.  mood changes
     f.  ill effects due to sleep deprivation;
     g.  ill effects due to improper medication;
     h.  debilitating headaches;
     i.  episodes of shaking;
     j.  episodes of collapsing from exhaustion;
     k.  damage to relationships,
     l.  damage to reputation,
     m.  damage to business ventures;
     n.  psychological trauma;

7

      o. **painful and exhausting 3-month period of withdrawal, from the medications that were inappropriately prescribed and administered;**
      p. **unnecessarily delayed surgery;**
      q. **stress;**
      r. **anxiety;**
      s. **pain and suffering.**

19.    State with particularity the specific acts or specific false statements made by Defendant with the intent to deceive Plaintiff, including but not limited to the date, time, location, manner and substance of such acts or statements.

**See response to #4.**

20.    State with particularity how Plaintiff reasonably relied on Defendant's alleged false statements made with the intent to deceive Plaintiff.

**DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS took advantage of ARI TEMAN'S debilitated physical and mental state by falsely representing that the medications, supplements and vitamins would alleviate ARI TEMAN'S physical and mental symptoms. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS. They continued to sell medications, supplements and vitamins to ARI TEMAN when he had been improperly diagnosed with psychiatric disorders, including, but not limited to: aluminum poisoning, low bone density low testosterone, schizophrenia, gliosis, depression and anxiety. When ARI TEMAN obtained medications, supplements and vitamins from DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS he was mentally debilitated, had no reason to believe that the statements by DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS were false and ARI TEMAN reasonably relied on the statements that the medications, supplements and vitamins would alleviate ARI TEMAN'S physical and mental symptoms.**

21.    State with particularity what injury Plaintiff suffered as a result of Plaintiff's reliance on Defendant's alleged false statements made with the intent to deceive Plaintiff.

**See response to #18.**

22.    State with particularity how Defendant knew or should have known these alleged specific acts and statements would cause Plaintiff emotional distress.

**Plaintiff objects to this question as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106**

8

A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); <u>Wadler v. Stern</u>, 124 A.D.2d 725 (2nd Dept. 1986).  However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:

DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS took advantage of ARI TEMAN'S visibly debilitated physical and mental state by falsely representing that the medications, supplements and vitamins would alleviate ARI TEMAN'S physical and mental symptoms. DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS.   They continued to sell medications, supplements and vitamins to ARI TEMAN when he had been improperly diagnosed with psychiatric disorders, including, but not limited to: aluminum poisoning, low bone density low testosterone, schizophrenia, gliosis, depression and anxiety.   When ARI TEMAN obtained medications, supplements and vitamins from DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS he was mentally debilitated, had no reason to believe that the statements by DARYA BRAVERMAN and agents/servants/employees of TOTAL HEALTH NUTRIENTS were false and ARI TEMAN reasonably relied on the statements that the medications, supplements and vitamins would alleviate ARI TEMAN'S physical and mental symptoms.

PLAINTIFF, ARI TEMAN

By: _____

Jason T. Prueher

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Bridgeport, CT  06604
Tel:    203-333-9441
Fax:    203-333-1489
Email:  jprueher@znclaw.com

His Attorneys

Dated:  Bridgeport, Connecticut
        February 9, 2016

9

TO:

KAUFMAN BORGEEST & RYAN LLP
By:     Nicole M. Varisco, Esq.
        Alyssa M. Schiffhauer, Esq.
        Christopher DiGiacinto, Esq.
*Attorneys for Defendants, Eric Braverman, M.D.; Sandip Buch, M.D.; and Path Medical, P.C.*
200 Summit Lake Drive
Valhalla, NY 10595
*Tel: (914) 449-1000*
*Fax: (914) 449-1100*
*Email: nvarisco@kbrlaw.com*
*aschiffhauer@kbrlaw.com*
*cdigiacinto@kbrlaw.com*

GOLDBERG SEGALLA, LLP
By:     M. Regina Phillips, Esq.
*Attorneys for Defendant Richard Smayda, M.D.*
600 Lexington Avenue, Suite 900
New York, NY 10022
*Tel: (646) 292.8747*
*Fax: (646) 292.8701*
*Email: rphillips@goldbergsegalla.com*

JAMIE ANDREW SCHRECK, P.C.
By:     Jamie A. Schreck, Esq.
        Tempest Alston, Esq.
*Attorneys for Defendant Darya Braverman*
212 West 35th Street, 13th Floor
New York, NY 10001
*Tel: (212) 590-6800 Ext. 333*
*Fax: (212) 643-2843*
*Email: jschreck@schrecklegal.com*
*talston@schrecklegal.com*

DIANA T. MOYHI, ESQ.
*Attorney for Defendant Total Health Nutrients*
By:     Diana T. Moyhi, Esq.
304 Park Avenue South, 6th Floor
New York, NY 10010
*Tel: (646) 367-7347*
*Email: dtmohyi@gmail.com*

FURMAN KORNFELD & BRENNAN, LLP
Tracy S. Katz, Esq.
*Attorney for Defendant Anupama Reddy, M.D.*
61 Broadway, 26th Floor
New York, NY 10006
*Email: tkatz@fkblaw.com*

By service of mail, by depositing a true copy of same enclosed in a prepaid, properly addressed envelope, in a post office official depository under the exclusive care and custody of the United State Postal Service within the State of Connecticut.

Jason T. Prueher

10

## VERIFICATION

STATE OF CONNECTICUT          )
                              )    SS:
COUNTY OF FAIRFIELD           )

I, the undersigned, an attorney admitted to practice in the Courts of New York State, state under penalty of perjury that I am the attorney for the plaintiff in the within action; I have read the foregoing **VERIFIED BILL OF PARTICULARS** and know the contents thereof; the same is true to my own knowledge, except as to the matters I believe to be true. The reason this verification is made by me and not by my client, is that my client is not presently in the County where I maintain my principal offices. The grounds of my belief as to all matters not stated upon my own knowledge are the materials in my file and the investigation conducted by my office.

Dated:        Bridgeport, CT
              February 9, 2016


                                        _____
                                        Jason T. Prueher, Esq.


11

SUPREME COURT OF THE STATE OF
NEW YORK, COUNTY OF NEW YORK

-------------------------------------------------------------x    Court Index No.: 805410/2014

ARI TEMAN,

                   Plaintiff,

    -  against -              **PLAINTIFF'S RESPONSE TO DEMAND**
                                        **FOR VERIFIED BILL OF PARTICULARS**

ERIC BRAVERMAN, M.D.; RICHARD    **AS TO RICHARD SMAYDA, D.O.**
SMAYDA, D.O.; SANDIP BUCH, M.D.;
ANUPAMA REDDY, M.D.; PATH
MEDICAL, P.C.; DARYA BRAVERMAN,
and TOTAL HEALTH NUTRIENTS,       OCTOBER 21, 2015

                 Defendants.

-------------------------------------------------------------x

Plaintiff hereby responds as follows.  Plaintiff expressly reserves the right to supplement, clarify, revise or correct any and all of the responses herein at any time. By making the following responses to defendant's demand, plaintiff does not waive, and hereby expressly reserve, the right to assert any and all objections as to the admissibility of such responses into evidence at the trial of this action, or in any other proceedings, on any and all grounds, including, but not limited to, competency, relevancy, materiality, and privilege.  Further, plaintiff provided the responses herein without in any manner implying or admitting that any response is relevant or material to the subject matter of this action.

    1.    State the first and last date DEFENDANT rendered treatment to the plaintiff.

> **Plaintiff relies and refers to the medical records and bills of PATH, P.C. provided by defense counsel. Upon information and belief, plaintiff was first treated by RICHARD SMAYDA, D.O. on: 9/15/11. Upon information and belief, plaintiff was last treated by RICHARD SMAYDA, D.O. on: 4/22/12.**

2.    State each date of the alleged negligent acts and/or omissions of

DEFENDANT.

> **Plaintiff objects to this question as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.   See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).  However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:  Plaintiff relies and refers to the medical records and bills of PATH, P.C. provided by defense counsel.   Upon information and belief, plaintiff was treated by RICHARD SMAYDA, D.O. on:    9/15/11; 9/27/11; 10/12/11; 3/18/12; 3/19/12; 4/18/12; and 4/22/12.**

3.    State each and every act constituting the negligence claimed to have been

committed by DEFENDANT.

> **Plaintiff objects to this question as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.  See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).  However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows: Defendant, RICHARD SMAYDA, D.O.:**
>
> a. **failed to adequately and properly care, treat, monitor, diagnose and supervise ARI TEMAN;**
> b. **failed to adequately and properly care, treat, monitor, diagnose and supervise ARI TEMAN'S extreme fatigue, insomnia, breathing difficulty and snoring;**
> c. **improperly diagnosed ARI TEMAN with aluminum poisoning, low bone density and low testosterone;**
> d. **improperly instructed/ordered ARI TEMAN to take vitamin supplements and pills;**
> e. **improperly instructed/ordered ARI TEMAN to take vitamin supplements and pills, which were to be bought through defendant, TOTAL HEALTH NUTRIENTS;**
> f. **improperly instructed/ordered ARI TEMAN to undergo chelation therapy;**
> g. **failed to timely perform x-rays of the nose;**
> h. **failed to timely perform a sleep-study;**

2

i.   improperly instructed/ordered ARI TEMAN to undergo an at-home sleep study;
j.   improperly diagnosed ARI TEMAN with psychiatric disorders, including, but not limited to:  depression and anxiety;
k.   improperly withheld the results of ARI TEMAN's sleep study;
l.   improperly interpreted the results of the sleep study as indicating that ARI TEMAN's complaints were unrelated to his sleep;
m.  failed to diagnose ARI TEMAN with a sleep disorder;
n.   failed to diagnose ARI TEMAN with obstructive sleep apnea syndrome;
o.   failed to take the appropriate steps to diagnose ARI TEMAN with obstructive sleep apnea syndrome;
p.   failed to arrive at a proper diagnosis of ARI TEMAN'S medical conditions;
q.   improperly instructed/ordered ARI TEMAN to take psychiatric and antipsychotic medications;
r.   improperly instructed/ordered ARI TEMAN to take weight control medications;
s.   improperly treated ARI TEMAN for schizophrenia;
t.   failed to timely refer ARI TEMAN to a radiologist;
u.   improperly diagnosed ARI TEMAN with gliosis;
v.   improperly ordered a "baby aspirin" in light of ARI TEMAN's MRI results, which identified gliosis, a swelling of brain cells;
w.  improperly threatened ARI TEMAN with a restraining order;
x.   improperly contacted friends and family of ARI TEMAN, regarding ARI TEMAN's medical condition;
y.   improperly had ARI TEMAN admitted to Silver Hill Hospital;
z.   unnecessary delayed ARI TEMAN from undergoing a nasal reconstruction surgery;
aa. improperly ordered unnecessary medical treatment in an effort to profit off of ARI TEMAN's debilitated mental and physical state;
bb. failed to provide staff, nurses, physicians and other health care professionals, who possess the requisite knowledge, skill and experience to adequately and properly care for, treat, diagnose, monitor and supervise patients such as ARI TEMAN;
cc. failed to follow, promulgate and/or enforce rules, regulations, standard and protocols for the care and treatment of patients such as ARI TEMAN.

Plaintiff reserves the right to supplement/amend this response.

4.    State the exact location(s) of the alleged negligent acts and/or omissions

of DEFENDANT.

3

304 Park Avenue South 6th Floor
New York, New York

5.    State the acts and/or omissions constituting the alleged malpractice of: (a)

DEFENDANT; and (b) the co-DEFENDANTS. Instead of responding to item 5(b), the

plaintiff may annex any Bills of Particulars to be served on any co-DEFENDANT+ of

DEFENDANT.

**See Response to #3.**

**Amended Responses to the Verified Bill of Particulars as to ERIC BRAVERMAN, M.D.; SANDIP BUCH, M.D. PATH MEDICAL, P.C. have already been provided via electronic-mail and regular mail on October 9, 2015.**

6.    State the condition of the plaintiff which it is claimed that DEFENDANT

undertook to diagnose and/or treat.

**Extreme fatigue; insomnia; breathing difficulty; and snoring.**

7.    State whether it will be claimed that DEFENDANT failed to heed the

plaintiff's signs, symptoms and/or complaints. If the answer is affirmative, identify each

sign, symptom and/or complaint which it is claimed DEFENDANT ignored and the

date(s) when DEFENDANT allegedly ignored such signs, symptoms and complaints.

**Plaintiff objects to this question as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:**

**Plaintiff relies and refers to the medical records and bills of PATH, P.C. provided by defense counsel. Upon information and belief: Plaintiff complained of fatigue and difficulty breathing at his visits. RICHARD SMAYDA, D.O. improperly interpreted and/or ignored the**

4

results of the Watermark Medical ARES sleep study, dated October 9, 2011. Following this failure to appropriately diagnose the obstructive sleep apnea, ARI TEMAN suffered from sleep deprivation, shakes, headaches, pain, and mood changes.

8. State whether it will be claimed that DEFENDANT failed to perform a proper physical examination on the plaintiff. If the answer is affirmative, state the date when and in what respects the physical examination is claimed to be improper.

Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:

Throughout ARI TEMAN's course of treatment, RICHARD SMAYDA, D.O. failed to perform a proper physical examination, which would have led to the timely and correct diagnosis of: obstructive sleep apnea and fatigue.

9. State whether it will be claimed that DEFENDANT failed to take an adequate medical history of plaintiff. If the answer is affirmative, sate the date when and in what respects it is claimed that the history taken by DEFENDANT was inadequate.

Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:

Throughout ARI TEMAN's course of treatment, RICHARD SMAYDA, D.O. failed to take an adequate medical history, which would have led to the timely and correct diagnosis of: obstructive sleep apnea and fatigue.

5

10.    State whether it will be claimed that DEFENDANT failed to perform necessary tests or other diagnostic procedures on the plaintiff. If the answer is affirmative, state the name and/or description of each test or diagnostic procedure which it is claimed was or was not properly ordered or performed by DEFENDANT and state the date when it will be claimed that such tests, etc., should have been ordered or performed.

>    **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:**
>
>    **RICHARD SMAYDA, D.O. failed to timely perform tests to diagnose ARI TEMAN'S obstructive sleep apnea.**

11.    State whether it will be claimed that DEFENDANT failed to properly interpret tests, and/or diagnostic procedures relative to the plaintiff. If the answer is affirmative, state the name of each test and diagnostic procedure which it is claimed DEFENDANT filed to properly interpret and the date when each such test, and/or diagnostic procedure was performed or interpreted.

>    **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:**
>
>    **RICHARD SMAYDA, D.O. ignored and/or improperly interpreted the results of tests throughout ARI TEMAN's course of treatment, which identified his complaints had a physical cause; and not mental. This**

6

includes the Watermark Medical ARES Sleep Study, dated October 9, 2011.

12.    State whether it will be claimed that DEFENDANT failed to refer the plaintiff. If the answer is affirmative state the type of specialist it will be claimed the said plaintiff should have been referred to, and the date it is claimed that the referral should have been made.

> **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:**
>
> **Prior to the Watermark Medical ARES Sleep Study, dated October 9, 2011, every procedure was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. Every procedure after the Watermark Medical ARES Sleep Study, dated October 9, 2011, was improperly took/administered because they were not instructed/ordered to diagnose ARI TEMAN's obstructive sleep apnea and fatigue. This included all subsequent ultrasounds, bone density testing, blood tests, psychiatric testing, chiropractic adjustments and chelation therapy.**
>
> **There was a delay in referring ARI TEMAN to the appropriate physician/surgeon to: diagnose his obstructive nasal passage; diagnose his obstructive sleep apnea; and/or recommend surgery/modification of the nasal airway.**

13.    State whether it will be claimed DEFENDANT failed to properly medicate the plaintiff. If the answer is in the affirmative, state the date when and in what respects it is claimed DEFENDANT failed to properly medicate said plaintiff.

> **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See**

7

Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:

The drugs and treatment prescribed were improper because they were not instructed/ordered to treat Obstructive Sleep Apnea. Rather, they were to instructed/ordered to treat ARI TEMAN'S improperly diagnosed mental conditions.

All prescription medication, vitamins and supplements. This includes but is not limited to in-office-administered injections of Prolixin and Forteo.

14.    State whether it will be claimed that DEFENDANT prescribed and/or administered contraindicated and/or unnecessary medication to the plaintiff. If the answer is affirmative, state the date and the name of each contraindicated and/or unnecessary medication which it is claimed DEFENDANT prescribed and/or administered.

Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:  See Response to #13.

15.    State whether it will be claimed that DEFENDANT failed to render proper treatment to the plaintiff. If the answer is affirmative, state the date when and in what respects it is claimed that DEFENDANT alleged treatment was improper.

Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel,

8

**Plaintiff responds as follows:  See Response to #3.**

16.    State whether it will be claimed that DEFENDANT failed to timely treat the plaintiff. If the answer is affirmative, state the date and name of each treatment, etc., which it is claimed was not timely ordered or performed by DEFENDANT.

> **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.  See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).  However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:  See Response to #3 and #12.**

17.    State whether it will be claimed that DEFENDANT improperly performed surgery or other procedures upon the plaintiff. If the answer is affirmative, identify the date and name of the surgery or other procedures and state in what respects it is claimed that said surgery or other procedures were improperly performed by DEFENDANT.

> **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.  See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).  However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows: See Response to #3 and 12.**

18.    State whether it will be claimed DEFENDANT failed to make a proper diagnosis regarding the plaintiff. If the answer is affirmative, sate the claimed correct diagnosis and the date when each such diagnosis should have been made.

> **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.  See**

9

Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:

Throughout ARI TEMAN's course of treatment, RICHARD SMAYDA, D.O. failed to timely and correctly diagnose the obstructive sleep apnea and fatigue. RICHARD SMAYDA, D.O. improperly diagnosed ARI TEMAN with aluminum poisoning, low bone density and low testosterone. RICHARD SMAYDA, D.O. improperly diagnosed ARI TEMAN with psychiatric disorders, including, but not limited to: depression and anxiety. RICHARD SMAYDA, D.O. improperly diagnosed ARI TEMAN with gliosis. RICHARD SMAYDA, D.O. improperly interpreted and/or ignored the results of the Watermark Medical ARES sleep study, dated October 9, 2011.

19. State whether it will be claimed that DEFENDANT failed to obtain the plaintiff's informed consent. If the answer is affirmative, state in what respect it is claimed DEFENDANT failed to obtain the plaintiff's informed consent.

Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows: improperly ordered unnecessary medical treatment in an effort to profit off of ARI TEMAN's debilitated mental and physical state. While under such a debilitated mental state, informed consent was not obtained.

20. State whether it will be claimed that DEFENDANT failed to advise the plaintiff of the risks, hazards and alternatives to the course of care and treatment rendered. If the answer is affirmative, state each risk, hazard and alternative which it is claimed DEFENDANT should have disclosed but failed to disclose to the plaintiff.

Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See

10

Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows: improperly ordered unnecessary medical treatment in an effort to profit off of ARI TEMAN's debilitated mental and physical state. While under such a debilitated mental state, informed consent was not obtained. The risks, hazards and alternatives to the course of care and treatment were not explained while ARI TEMAN was under such a debilitated mental state.

21.    As to any claim that DEFENDANT rendered treatment with the plaintiff's

informed consent, state:

  a. Whether the plaintiff signed a written consent(s) authorizing the treatment rendered by DEFENDANT and, if so, the date and place of signing.
  b. What risks of and alternatives to the procedure(s) or treatment(s) were known to the plaintiff before the procedure(s) or treatment(s) was performed.
  c. What information concerning the risks and alternatives was imparted to plaintiff by the DEFENDANT.
  d. What information concerning the risks and alternatives was imparted to the plaintiff by sources other than the DEFENDANT.
  e. Whether any assurances were given by the plaintiff that regardless of the risks, the plaintiff would undergo the treatment(s) or procedure(s).
  f. Whether the plaintiff indicated that he/she did not want to be informed of the risks and/or alternatives.
  g. The circumstances making it reasonably possible for DEFENDANT to obtain consent on behalf of the plaintiff.
  h. What additional information, if any, it is claimed should have been provided to the plaintiff concerning the risk and/or alternatives of the procedure(s) or treatment(s).
  i. Whether DEFENDANT' treatment was rendered in the course of an emergency.

Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows: See Response to #19 and #20.

11

22.    State each and every other act or omission not set forth in responses to 1 through 21 above which the plaintiff will claim constitutes DEFENDANT' alleged malpractice in this lawsuit.

> **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.    See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).  However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:    Plaintiff cannot respond without discovery being completed.**

23.    State the accepted medical practice, customs and medical standards which it is claimed were violated and departed from by DEFENDANT.

> **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.    See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).  However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:  See Responses to Items #1 through and including #21.**

24.    State the manner in which it is claimed DEFENDANT departed from each of the practices, customs and standards, identified in response to Question 23 above.

> **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.    See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).  However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:  See Responses to Items #1 through and including #21.**

25.     If it is claimed that any negligence or malpractice occurred prior to treatment by DEFENDANT set forth the names of the persons responsible therefore and specify what acts or omissions constituted the prior claimed negligence or malpractice.

> **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows: Not applicable.**

26.     If it is claimed that any negligence or malpractice occurred subsequent to the treatment by DEFENDANT set forth the names of the persons responsible therefore and specify what acts or omissions constituted the claimed subsequent negligence or malpractice.

> **Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise. See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986). However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows: ARI TEMAN was improperly treated by agents/apparent agents/servants/employees of PATH MEDICAL , P.C. and TOTAL HEALTH NUTRIENTS from up until June 11, 2012. This includes but is not limited to: defendants, ERIC BRAVERMAN, M.D., SANDIP BUCH, M.D., ANUPAMA REDDY, M.D., and DARYA BRAVERMAN. ARI TEMAN has already provided a Verified bill of Particulars for ERC BRAVERMAN, M.D.; SANDIP BUCH, M.D. and PATH MEDICAL, P.C.**

27.     State whether it will be claimed that any law of the State of New York was violated by DEFENDANT. If the answer is affirmative, sate the statute and provisions thereof which it will be claimed DEFENDANT violated.

13

**Plaintiff objects to this question, as it is not in conformity with the provisions of CPLR § 3043 and, further, seeks evidentiary information and/or medical opinion and/or expertise.    See Rockefeller v. Hwang, 106 A.D.2d 817, 484 N.Y.S.2d 206 (3rd Dept. 1984); Wadler v. Stern, 124 A.D.2d 725 (2nd Dept. 1986).    However, without waiving said objection, and upon the advice of counsel, Plaintiff responds as follows:    Plaintiff cannot respond without the benefit of discovery.    To the extent such a claim is being made, this will be supplemented.**

28.    State whether a claim for vicarious liability will be made against DEFENDANT. If the answer is affirmative, state the name of each person who performed the negligent acts or omissions, and if the names are not known, describe them by physical appearance, occupation and/or relationship to DEFENDANT. Also state each such negligent act or omission of said person(s) for whom is claimed to be vicariously liable.

**At this time, none.**

29.    State whether it will be claimed that improper or defective equipment was used, and, if so, identify the equipment and state the impropriety or defect:

        a.  If notice is a prerequisite, state whether actual or constructive notice is claimed;
        b.  If actual notice is claimed, state the time place and manner such notice was given and the name of the person to whom such notice was given;
        c.  If constructive notice is claimed, state how long the defect existed.

**At this time, none.**

30.    If it is claimed that any negligence or malpractice was committed by any person or entity other than DEFENDANT, state the name(s) of the individual(s) or institution(s) it is claimed is responsible for this negligence and/or malpractice, and state specifically the negligence and/or malpractice.

14

**ARI TEMAN was improperly treated by agents/apparent agents/servants/employees of defendants, PATH MEDICAL , P.C., and TOTAL HEALTH NUTRIENTS. This includes but is not limited to: defendants, ERIC BRAVERMAN, M.D.; SANDIP BUCH, MD: ANUPAMA REDDY, MD; and DARYA BRAVERMAN. ARI TEMAN has already provided a Verified bill of Particulars for ERIC BRAVERMAN, M.D.; SANDIP BUCH, MD and PATH MEDICAL, P.C.**

31.    State separately the damages and injures it is claimed that plaintiff suffered as a result of the alleged negligence and/or malpractice of DEFENDANT. Sate which of these injuries are alleged to be permanent.

a.    **torturous sensation of electrocution throughout the body;**
b.    **inability to move due to pain;**
c.    **loss of cognitive ability;**
d.    **severe depression;**
e.    **mood changes**
f.    **ill effects due to sleep deprivation;**
g.    **ill effects due to improper medication;**
h.    **debilitating headaches;**
i.    **episodes of shaking;**
j.    **episodes of collapsing from exhaustion;**
k.    **damage to relationships,**
l.    **damage to reputation,**
m.    **damage to business ventures;**
n.    **psychological trauma;**
o.    **painful and exhausting 3-month period of withdrawal, from the medications that were inappropriately prescribed and administered;**
p.    **unnecessarily delayed surgery;**
q.    **stress;**
r.    **anxiety;**
s.    **pain and suffering.**

**As to permanency, plaintiff claims the following:**

a.    **permanent residual effects of psychological trauma;**
b.    **permanent damage to relationships, my reputation, and my business;**
c.    **stress;**
d.    **anxiety;**
e.    **pain and suffering.**

15

32.    State whether it is claimed that DEFENDANT aggravated a pre-existing injury or condition of the plaintiff. If the answer is affirmative, specify the pre-existing injury or condition which was aggravated and how it is claimed said injury or condition was aggravated.

**To be provided.**

33.    Set forth the names and addresses of all hospital, clinics, physicians, psychiatrists and/or psychologists, etc. who provided treatment to the plaintiff for any of the injuries, or their sequela, complained of in this suit to present, and provide the date(s) such treatment was provided to plaintiff.

**Authorizations have been provided for the following:**

1. **Zvi Osterweil, MD**
   **68 East 86th Street**
   **New York, New York 10028**

2. **Sam Sharmat, MD**
   **315 5th Avenue  Suite 703B**
   **New York, New York 10016**

3. **Alisa Kriegel, PhD**
   **Clinical Psychologist**
   **24 East 12th Street  Suite 604**
   **New York, New York 10003**

4. **Glenn Waldmann, MD**
   **1920 Los Angeles Avenue**
   **Simi Valley, CA 93065**

5. **Paul Knoepflmacher, MD**
   **108 East 96th Street**
   **New York, New York 10128**

16

6. **NYU School of Medicine**
   **Sleep Disorder Center**
   **462 First Avenue 7N3**
   **New York, New York 10016**

7. **New York Eye & Ear Infirmary of Mount Sinai**
   **218 2nd Avenue**
   **New York, New York 10003**

8. **Walgreen Pharmacy**

9. **Duane Reade Pharmacy**

10. **Centerpoint Mental health Center**
    **270 Lafayette Street #500**
    **New York, NY 10012**

11. **Scott Kelogg, PhD**
    **36 West 44th Street, Suite 1007**
    **New York, NY 10018**

12. **Lenox Hill Hospital**
    **100 East 77th Street**
    **New York, NY 10018**

13. **Mt. Sinai Beth Israel**
    **1st Avenue at 16th Street**
    **New York, NY 10003**

14. **Weil Cornell Medical Center**
    **525 East 68th Street**
    **New York, NY 10065**

15. **Jordan Wright, PhD**
    **19 West 34th Street Penthouse**
    **New York, NY 10001**

16. **Silver Hill Hospital**
    **208 Valley Road**
    **New Canaan, CT 05840**

34.    State the length of time and the dates when the plaintiff was:

    a.  Wholly confined to bed;

17

**April 2011 to March 2013**

b.  Wholly confined to the house;

> **April 2011 to March 2013, leaving mainly to go to therapy.**

c.  Wholly confined to the hospital;

- **Beth Israel Hospital: approximately 1-week, dates to be provided;**
- **Silver Hill Hospital: dates to be provided;**
- **Weill Cornell Medical Center: October 28, 2012 – October 29, 2012.**

d.  Wholly confined to other; and

> **To be provided.**

e.  Wholly incapacitated from his/her normal activities, State each activity from which plaintiff was allegedly wholly incapacitated.
> **To be provided.**

35.  State the total amounts claimed as special damages for each of the following:

a.  Physicians' services, with the name and addresses of each treating physician;

**To be provided.**

b.  Nurses' services with the name and addresses of each nurse;

**To be provided.**

c.  Medical supplies, with a description of each item;

**To be provided.**

d.  Hospital expenses, with the names and addresses of each hospital;

**To be provided.**

18

e. Loss of earnings and/or earning capacity. If loss of earnings or earning capacity is claimed, state the length of time plaintiff was or will be incapacitated from employment; and

**To be provided.**

f. any other item of special damages including funeral expenses.

**To be provided.**

36. State the:

a. Occupation of the plaintiff at the time of occurrence and at present;

- **CEO and Founder of 12gurus: Health;**
- **CEO and Founder of 12gurus: Charity conferences;**
- **CEO and Founder of 12gurus: 12gurus consulting;**
- **Standup Comedian.**

**36 West 20th Street**
**New York, New York 10011**

b. Name and address of plaintiff's employer; if self-employed, state the address of place of employment and the type of business or occupation in which plaintiff was engaged immediately prior to the occurrence; if in school, sate the name, and address of said school(s) attended by the plaintiff and the grade(s) attended at the time of the occurrence at issue.

**See response to #36a.**

c. Plaintiff's average weekly earnings;

**To be provided.**

d. The amount of earnings plaintiff was alleged to have lost as a result of the occurrence.

**To be provided.**

e. The amount of earnings plaintiff was alleged to have lost as a result of the occurrence.

**To be provided.**

19

37.    Set forth the county and state of birth of plaintiff.

**Plaintiff objects to providing this personal identifying information through a Bill of Particulars. This information can be provided, to the extent necessary, under seal.**

38.    State whether plaintiff was ever known by any other names. If so, state such name(s) and the period during which such individual was known by each such name.

**N/A.**

39.    State plaintiff's date of birth and Social Security number.

**Plaintiff objects to providing this personal identifying information through a Bill of Particulars. This information can be provided, to the extent necessary, under seal. Further, it has already been provided by way of signed authorizations.**

40.    State the residence address of plaintiff:

a.    At the time that the cause(s) of action arose;

**140 7th Avenue #1S**
**New York, New York 10011**

b.    At the time of the commencement of the action;

**To be provided.**

c.    At the present time.

**288 West 86th Street**
**New York, New York**

41.    If exceptions to Article 16 of the CPLR are claimed to be applicable to this action, state with particularity each exception indicating the grounds and underlying basis for each exception claimed.

20

**To be provided.**

42.    If there will be any claim for loss of services, specify their services lost by the claimant as a consequence of the alleged malpractice and the period(s) of the time for which the claimant was allegedly deprived of the services.

**To be provided.**

Dated:  Bridgeport, Connecticut
        October 21, 2015

PLAINTIFF, ARI TEMAN

By: _____
     Jason T. Prueher

              Zeldes, Needle & Cooper, P.C.
              1000 Lafayette Boulevard
              Bridgeport, CT  06604
              Tel:    203-333-9441
              Fax:    203-333-1489
              Email:  jprueher@znclaw.com

His Attorneys

21

## VERIFICATION

STATE OF CONNECTICUT          )
                              )      SS:
COUNTY OF FAIRFIELD           )

I, the undersigned, an attorney admitted to practice in the Courts of New York State, state under penalty of perjury that I am the attorney for the plaintiff in the within action; I have read the foregoing **VERIFIED BILL OF PARTICULARS** and know the contents thereof; the same is true to my own knowledge, except as to the matters I believe to be true. The reason this verification is made by me and not by my client, is that my client is not presently in the County where I maintain my principal offices. The grounds of my belief as to all matters not stated upon my own knowledge are the materials in my file and the investigation conducted by my office.

Dated:        Bridgeport, CT
              October 21, 2015


_____
Jason T. Prueher, Esq.

22

TO:

KAUFMAN BORGEEST & RYAN LLP
By: Nicole M. Varisco, Esq.
Alyssa M. Panaro, Esq.
Christopher DiGiacinto, Esq.
*Attorneys for Defendants, Eric
Braverman, M.D.; Sandip Buch, M.D.; and
Path Medical, P.C.*
200 Summit Lake Drive
Valhalla, NY 10595
*Email:  nvarisco@kbrlaw.com*
*apanaro@kbrlaw.com*
*cdigiacinto@kbrlaw.com*

GOLDBERG SEGALLA, LLP
By:  Mary R. Phillips, Esq.
*Attorneys for Defendant Richard Smayda,
M.D.*
11 Martin Avenue
White Plains, NY 10606
Email:  *rphillips@goldbergsegalla.com*

JAMIE ANDREW SCHRECK, P.C.
By:  Jamie A. Schreck, Esq.
Tempest Alston, Esq.
*Attorneys for Defendant Darya Braverman*
212 West 35th Street, 13th Floor
New York, NY 10001
*Email:  jschreck@schrecklegal.com*
*Email:  talston@schrecklegal.com*

DIANA T. MOYHI, ESQ.
*Attorney for Defendant Total Health
Nutrients*
304 Park Avenue South, 6th Floor
New York, NY 10010
*Email:  dtmohyi@gmail.com*

By service of electronic mail and mail, by depositing a true copy of same enclosed in a prepaid, properly addressed envelope, in a post office official depository under the exclusive care and custody of the United State Postal Service within the State of Connecticut.

Jason T. Prueher

23

SUPREME COURT OF THE STATE OF
NEW YORK, COUNTY OF NEW YORK
-------------------------------------------------------------x
ARI TEMAN,

                       Plaintiff,

    -  against -

ERIC BRAVERMAN, M.D.; RICHARD
SMAYDA, D.O.; SANDIP BUCH, M.D.;
ANUPAMA REDDY, M.D.; PATH
MEDICAL, P.C.; DARYA BRAVERMAN,
and TOTAL HEALTH NUTRIENTS,

                      Defendants.
-------------------------------------------------------------x

**AFFIDAVIT OF SERVICE**

Court Index No.:  805410/2014

STATE OF CONNECTICUT    )
                             ) SS.:  City of Bridgeport
COUNTY OF FAIRFIELD      )

    I, Jason T. Prueher, being duly sworn, depose and say:

    I am not a party to this action, am over 18 years of age and reside in Fairfield

County, Connecticut.

    That on October 21, 2015, I served the within:

- PLAINTIFF'S RESPONSE TO DEMAND FOR BILL OF
  PARTICULARS AS TO RICHARD SMAYDA, D.O.; and
- PLAINTIFF'S RESPONSE TO COMBINED DEMANDS AS TO
  RICHARD SMAYDA, D.O..

upon all parties who have appeared in this action at their last known addresses below:

KAUFMAN BORGEEST & RYAN LLP
Nicole M. Varisco, Esq.
Alyssa M. Panaro, Esq.
Christopher DiGiacinto, Esq.
Attorneys for Defendants, Eric
Braverman, M.D.; Sandip Buch, M.D.;
and Path Medical, P.C.
200 Summit Lake Drive
Valhalla, NY 10595
*Email:  nvarisco@kbrlaw.com*
*cdigiacinto@kbrlaw.com*

GOLDBERG SEGALLA, LLP
Mary R. Phillips, Esq.
Attorneys for Defendant Richard Smayda,
M.D.
11 Martin Avenue
White Plains, NY 10606
Email:  *rphillips@goldbergsegalla.com*

JAMIE ANDREW SCHRECK, P.C.
Jamie A. Schreck, Esq.
Tempest Alston, Esq.
Attorneys for Defendant Darya Braverman
Jamie Andrew Schreck, P.C.
212 West 35th Street, 13th Floor
New York, NY 10001
*Email:  jschreck@schrecklegal.com*
*Email:  talston@schrecklegal.com*

DIANA T. MOYHI, ESQ.
Attorney for Defendant Total Health
Nutrients
304 Park Avenue South, 6th Floor
New York, NY 10010
*Email:  dtmohyi@gmail.com*

By service of electronic mail and mail, by depositing a true copy of same enclosed in a prepaid, properly addressed envelope, in a post office official depository under the exclusive care and custody of the United State Postal Service within the State of Connecticut.

Jason T. Prueher

Sworn to before me this
21st day of October 2015

Notary Public

Jeanne Rieger
NOTARY PUBLIC
State of Connecticut
My Commission Expires Oct. 31, 2019

2