# **<u>EXHIBIT 1</u>**

| **From:** | Ari B. Teman <ari@teman.com> |
|---|---|
| **Sent:** | Thursday, April 23, 2026 11:49 AM |
| **To:** | Yannucci, Cristina; Cohen, Sam |
| **Subject:** | Plaintiff's Revised First Discovery Requests (B1) |
| **Attachments:** | Teman v Zeldes – Discovery Requests B1. v11.pdf |

EXTERNAL

Counsel,

Please find attached Plaintiff's Revised First Requests for Production, Interrogatories, and Requests for Admission (B1) directed to Defendants Zeldes Needle Cooper LLP and Jeremy Virgil.

These requests are tailored to comply with the Court's scope limitation and are focused on Defendants' representation of Plaintiff in the Underlying Action.

Pursuant to the Federal Rules, responses are due within thirty (30) days of service.

**Please confirm receipt.**

I remain available to meet and confer in good faith regarding any questions or issues concerning the requests.

Respectfully,
Ari Teman



**Ari Teman | Founder | teman™**
We make Real Estate proactive with Artificial Intelligence
212-203-3714 | teman.com | ari@teman.com

Featured in:
ABC, NBC, PIX, FOX, Pando, Curbed, Observer, The Real Deal, Cooperator, BISNOW,

Visit us for a demo (By Appointment only):

NYC: Herald Square
Miami: Lincoln Road

All conversations are off-the-record. Social Media, too.
Terms apply to each service. Each service is a different entity.
Terms cannot be changed via email or oral agreement.
Statements herein about other companies and individuals
should be taken as opinion and not fact.

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK

**ARI TEMAN**,
Plaintiff,

v.

**ZELDES NEEDLE COOPER LLP, et al.**,
Defendants.

Case No. 1:24-cv-09830

---

## PLAINTIFF'S REVISED FIRST REQUESTS FOR PRODUCTION,

INTERROGATORIES, AND REQUESTS FOR ADMISSION
(TO DEFENDANTS ZELDES NEEDLE COOPER LLP AND JEREMY VIRGIL)

---

## DEFINITIONS

**"Underlying Action"** means *Teman v. Braverman / PATH Medical*, Index No. 805410/2014.

**"Defendants"** means Zeldes Needle Cooper LLP and Jeremy Virgil only.

**"Document"** shall be construed broadly under FRCP 34.

---

## SCOPE LIMITATION (PER COURT ORDER)

All requests are **strictly limited** to documents and information relating to Defendants' representation of Plaintiff in the Underlying Action.

To the extent any request references other persons, entities, or events, such request is limited **only to documents that reflect Defendants' conduct, decision-making, strategy, or omissions in the Underlying Action, including consequences of that representation**.

---

## REQUESTS FOR PRODUCTION

Page 1 of 23

**Representation and Engagement**

**RFP 1**

All engagement letters or agreements relating to Defendants' representation of Plaintiff in the Underlying Action.

**RFP 2**

All documents reflecting internal matter numbers or file designations for the Underlying Action.

---

**Communications**

**RFP 3**

All communications between Plaintiff and Defendants relating to the Underlying Action.

**RFP 4**

All communications between Defendants and opposing counsel relating to the Underlying Action.

**RFP 5**

All communications between Defendants and any outside counsel relating to the Underlying Action.

---

**Docketing / Deadlines (CORE MALPRACTICE)**

**RFP 6**

All docket notifications, calendar alerts, and deadline notices relating to the Underlying Action.

**RFP 7**

All documents reflecting docketing, calendaring, and deadline tracking for the Underlying Action, including:

- calendar entries
- deadline calculations
- reminders or alerts
- internal docket system entries
- communications with docketing staff

---

**Internal Communications**

**RFP 8**

All internal communications within Zeldes Needle Cooper LLP relating to:

- Plaintiff
- the Underlying Action

- deadlines or filings
- the default entered in the Underlying Action

**RFP 9**
All documents reflecting internal discussions of missed deadlines or default.

**RFP 10**
All documents reflecting any internal review or investigation relating to the handling of the Underlying Action.

**RFP 11**
All communications with any insurer relating to the claims in this action
**(limited to communications — not policy production**).

---

**Conflicts / Relationships (NARROWED)**

**RFP 12**
All conflict-check records relating to the Underlying Action.

**RFP 13**
All documents reflecting any relationship between Defendants and Silver Hill Hospital **to the extent such relationship was considered, evaluated, or implicated in Defendants' handling of the Underlying Action**.

---

**Silver Hill / Braverman Link (REWRITTEN B1)**

**RFP 14 (B1)**
Produce all documents and communications relating to Defendants' handling of the Underlying Action that reflect:

(a) Any referral, recommendation, or direction by or on behalf of Eric Braverman or PATH Medical that was known to or considered by Defendants and relates to Plaintiff's treatment or evaluation;

(b) Communications between Defendants and Braverman, PATH, or their counsel relating to Plaintiff's condition, treatment, or credibility;

(c) Communications between Defendants and Silver Hill Hospital that were made or considered in connection with the Underlying Action;

(d) Internal communications reflecting Defendants' consideration of:

- Plaintiff's treatment
- its relevance to the case
- whether such information was used or not used

(e) Communications in which Plaintiff is discussed in connection with both:

- the Underlying Action; and
- any medical evaluation or treatment

(f) Documents reflecting Defendants' knowledge, use, or failure to use such information in:

- pleadings
- motions
- discovery
- settlement
- strategy decisions

**Clarification:** This request is limited to Defendants' conduct in the Underlying Action.

---

**Personnel / Supervision**

**RFP 15**
Documents reflecting supervision of Jeremy Virgil relating to the Underlying Action.

**RFP 16**
Documents reflecting any internal concerns or complaints about Virgil's handling of the Underlying Action.

---

**Jason Prueher**

**RFP 17**
Documents reflecting work performed by Jason Prueher relating to the Underlying Action.

**RFP 18**
Communications between Defendants and Prueher relating to the Underlying Action.

---

**Metadata**

**RFP 19**
Audit logs or metadata showing creation or modification of deadlines in the Underlying Action.

**Non-PATH Medical Sources**

**RFP 20**

Produce all documents and communications received, reviewed, considered, or maintained by Defendants in connection with the Underlying Action that originated from or were provided by any person or entity other than Eric Braverman or PATH Medical, and that relate to:

(a) Plaintiff's medical condition, treatment, diagnosis, or evaluation;

(b) any opinions, findings, or conclusions regarding Plaintiff's condition or credibility;

(c) any evaluation, admission, or treatment of Plaintiff by any third-party provider;

(d) any information concerning Eric Braverman and/or PATH's treatment of Plaintiff; or

(e) any information considered by Defendants in connection with claims, defenses, damages, or strategy in the Underlying Action.

This request is limited to documents in Defendants' possession, custody, or control, or that were reviewed or considered by Defendants in the Underlying Action.

## RFP 21 – Case Valuation and Settlement Strategy

Produce all documents and communications relating to Defendants' evaluation, valuation, or strategic handling of Plaintiff's claims in the Underlying Action, including:

(a) any analysis of potential damages or recovery;

(b) any comparison, prioritization, or allocation of potential sources of recovery;

(c) any communications or documents reflecting advice given to Plaintiff regarding whether to pursue, limit, resolve, or defer claims or recovery opportunities;

(d) any documents reflecting the basis for such advice or recommendations; and

(e) any communications reflecting how Defendants' strategy in the Underlying Action was expected to affect Plaintiff's overall recovery.

This request is limited to Defendants' conduct, advice, and decision-making in connection with the Underlying Action.

## RFP 22 – Advice to Plaintiff

Produce all communications between Defendants and Plaintiff in connection with the Underlying Action relating to:

(a) settlement;

(b) litigation strategy;

(c) valuation of claims;

(d) recommendations to accept or reject any resolution;

(e) any discussion of how pursuing or resolving any claim or recovery would impact Plaintiff's recovery in the Underlying Action.

**RFP 23 – Meeting Notes and Internal Memorialization**

Produce all documents reflecting or memorializing **meetings, calls, or in-person conferences with Plaintiff in connection with the Underlying Action**, including:

(a) internal notes, memoranda, or summaries;
 (b) calendar entries describing the purpose of such meetings;
 (c) follow-up communications referencing advice or recommendations given; and
 (d) any documents reflecting discussions of settlement, valuation, or strategy communicated to Plaintiff.

**RFP 24 – Scheduling and Presence Records**

Produce all non-privileged documents and communications sufficient to show the dates, times, and duration of Plaintiff's presence at Defendants' offices in connection with the Underlying Action, including documents such as calendar entries, visitor logs, building access records, or similar records, to the extent such records reflect meetings, conferences, or communications concerning the Underlying Action.

**RFP 25 – Preuher Departure**

Produce all non-privileged documents and communications **sufficient to show** Jason Preuher's role in, responsibilities for, and involvement with the Underlying Action, including documents that:

(a) identify his responsibilities or role in the Underlying Action;
 (b) relate to deadlines, filings, or the default in the Underlying Action;
 (c) reflect any transition, reassignment, or transfer of responsibilities relating to the Underlying Action;
 (d) reflect any discussions, communications, or decisions concerning his departure to the extent such documents relate to the handling of the Underlying Action; and

(e) reflect the existence, timing, and nature of any connections, communications, or interactions between Jason Preuher and Plaintiff on professional or social networking platforms during the period of representation.

**RFP 26 – Transition of Responsibilities**

Produce all non-privileged documents and communications sufficient to show the reassignment, transfer, or handling of responsibilities in the Underlying Action following any change in personnel, including documents that:

(a) identify any reassignment of docketing, calendaring, or case management responsibilities;
 (b) identify the individuals who assumed such responsibilities;
 (c) reflect communications regarding continuity of representation in the Underlying Action; and
 (d) reflect any discussion of whether such transition affected the monitoring of deadlines, filings, or court notices in the Underlying Action.

**RFP 27 – Staffing and Responsibility Structure**

Produce all non-privileged documents and communications sufficient to show the staffing, supervision, and allocation of responsibilities for the Underlying Action, including documents that:

(a) identify attorneys, partners, or staff assigned to the matter;

(b) describe roles or responsibilities relating to filings, deadlines, or case management; and

(c) reflect supervision or oversight of the matter.

**RFP 28 – Docketing and Calendaring Responsibility**

Produce all non-privileged documents and communications sufficient to show the systems, policies, and personnel responsible for docketing, calendaring, and deadline management for the Underlying Action, including documents that:

(a) identify the individuals or roles responsible for monitoring court notices and deadlines;

(b) describe how docket notifications were received, routed, and assigned;

(c) identify any procedures to ensure deadlines were tracked and met; and

(d) reflect how responsibility was allocated among attorneys and staff for compliance with deadlines.

**RFP 29 – Attorney Availability / Conflicts**

Produce all non-privileged documents and communications sufficient to show how Defendants managed attorney availability and scheduling in connection with the Underlying Action, including documents that:

(a) reflect scheduling, workload, or availability of attorneys assigned to the matter;

(b) identify any conflicts, overlapping obligations, or constraints affecting their ability to meet deadlines; and

(c) reflect any policies or practices intended to ensure deadlines were not missed due to scheduling conflicts.

**RFP 30 – Use of Non-Firm Email/Accounts**

Produce all non-privileged documents and communications **sufficient to show** any use by Jeremy Virgil (or others working on the Underlying Action) of non-firm email accounts or messaging platforms **in connection with the Underlying Action**, including documents that:

(a) identify such accounts or platforms used;
(b) reflect the types of communications conducted through them; and
(c) reflect any policies, approvals, or restrictions concerning such use.

**RFP 31 – Preservation, Routing, and Integration**

Produce all non-privileged documents and communications **sufficient to show** how communications relating to the Underlying Action that were conducted through non-firm accounts were:

(a) preserved;
(b) integrated (or not) into Defendants' document management, docketing, or calendaring systems;

and

(c) made available to other attorneys or staff working on the matter.

---

**RFP 32 – Docket Notice Handling Across Accounts (CORE)**

Produce all non-privileged documents and communications **sufficient to show** how court notices, filings, or deadline-related communications in the Underlying Action were received, routed, and tracked, including where such notices were received through any non-firm account or device.

---

**RFP 33 – Missing / Non-Produced Communications**

Produce all non-privileged documents and communications **sufficient to show** whether any communications relating to the Underlying Action were:

(a) not preserved;
(b) not included in Defendants' systems; or
(c) unavailable due to use of non-firm accounts or devices.

---

**RFP 34 – Access and Visibility**

Produce all non-privileged documents and communications **sufficient to show** which individuals had access to communications relating to the Underlying Action that were maintained outside Defendants' standard systems.

---

**RFP 35 – Billing and Time Records**

Produce all non-privileged documents and communications sufficient to show the time recorded, billed, or tracked by Defendants in connection with the Underlying Action, including:

(a) time entries reflecting work performed;

(b) the identity of the individual performing such work;

(c) the date and duration of such work; and

(d) descriptions of the tasks performed.

(e) any documents reflecting review, approval, or supervision of such time entries;

(f) any write-offs, adjustments, or reductions of time entries relating to the Underlying Action.

This request includes billing records, timekeeping records, and any internal time-tracking systems relating to the Underlying Action.

## INTERROGATORIES (RULE 33.3 COMPLIANT)

**Interrogatory 1**

Identify all attorneys, partners, associates, paralegals, or staff who worked on, supervised, or had responsibility for any aspect of the Underlying Action, including but not limited to docketing, calendaring, or case management.

**Interrogatory 2**

Identify all individuals who supervised Jeremy Virgil in the Underlying Action.

**Interrogatory 3**

Identify all individuals who supervised Jason Preuher in the Underlying Action.

**Interrogatory 4**

Identify all individuals with knowledge of the default in the Underlying Action.

**Interrogatory 5**

Identify the docketing systems used for the Underlying Action.

**Interrogatory 6**

Identify the location and custodians of documents relating to the Underlying Action.

**Interrogatory 7**

Identify all email accounts, messaging platforms, or communication systems used by Jeremy Virgil (or others) in connection with the Underlying Action, and identify the custodians of documents from each.

**Interrogatory 8**

Identify the locations and custodians of communications relating to the Underlying Action that were maintained outside Defendants' primary document or email systems.

**Interrogatory 9**

Identify all individuals who recorded time in connection with the Underlying Action and state the approximate number of hours recorded by each.

---

## REQUESTS FOR ADMISSION

**RFA 1**

Admit Jeremy Virgil was counsel of record in the Underlying Action.

**RFA 2**

Admit a default was entered.

**RFA 3**

Admit Defendants received docket notifications.

**RFA 4**

Admit Plaintiff communicated with Defendants regarding the case.

**RFA 5**

Admit Defendants were responsible for responding to filings.

**RFA 6**

Admit that more than one attorney at Zeldes Needle Cooper LLP worked on the Underlying Action.

**RFA 7**

Admit that one or more partners supervised the handling of the Underlying Action.

**RFA 8**

Admit that docketing, calendaring, or deadline tracking for the Underlying Action involved individuals other than Jeremy Virgil.

**RFA 9**

Admit that Zeldes Needle Cooper LLP maintained systems or procedures for tracking deadlines in the Underlying Action.

**RFA 10**

Admit that communications relating to the Underlying Action were conducted using at least one non-firm email account.

**RFA 11**

Admit that not all communications relating to the Underlying Action were maintained within Defendants' primary document management or email systems.

**RFA 12**

Admit that use of non-firm email accounts can limit visibility of communications to other attorneys or staff working on a matter.

**RFA 13**

Admit that Defendants maintained systems or procedures for tracking deadlines in the Underlying Action that depended on communications being received within firm systems.

**RFA 14**

Admit that, during the period in which Defendants represented Plaintiff in the Underlying Action, Jason Preuher connected with or followed Plaintiff on a social media platform.

**RFA 15**

Admit that Jason Preuher while employed by ZNC connected himself to Teman on LinkedIn.

**RFA 16**

Admit that Jeremy Virgil made statements to Plaintiff concerning Jason Preuher's work on the Underlying Action.

**RFA 17**

Admit that Jeremy Virgil communicated to Plaintiff concerns or criticisms regarding Jason Preuher's work on the Underlying Action.

**RFA 18**

Admit that Jeremy Virgil attributed responsibility for one or more issues in the Underlying Action to Jason Preuher.

**RFA 19**

Admit that Jeremy Virgil discussed Jason Preuher's performance on the Underlying Action with individuals other than Plaintiff.

**RFA 20**

Admit that Jason Preuher made statements to one or more individuals concerning Jeremy Virgil's handling of the Underlying Action.

**RFA 21**

Admit that Jason Preuher expressed concerns or criticisms regarding Jeremy Virgil's handling of the Underlying Action.

**RFA 22**

Admit that Jason Preuher attributed responsibility for one or more issues in the Underlying Action to Jeremy Virgil.

**RFA 23**

Admit that, within Zeldes Needle Cooper LLP, responsibility for issues in the Underlying Action was discussed among more than one individual.

**RFA 24**

Admit that, during the period in which Defendants represented Plaintiff in the Underlying Action, Plaintiff was present at Defendants' offices for one or more meetings or conferences relating to the Underlying Action.

**RFA 25**

Admit that, during the period in which Defendants represented Plaintiff in the Underlying Action, Jason Preuher connected with Plaintiff on LinkedIn.

**RFA 26**

Admit that, following a change in personnel involving Jason Preuher, responsibility for one or more aspects of the Underlying Action was reassigned to another individual.

**RFA 27**

Admit that counsel for the defendants in the Underlying Action requested that the case proceed or that filings be made.

**RFA 28**

Admit that settlement discussions occurred between Defendants and counsel for the defendants in the Underlying Action.

**RFA 29**

Admit that one or more communications were made by opposing counsel in the Underlying Action offering to discuss settlement.

**RFA 30**

Admit that Defendants communicated with Plaintiff regarding settlement discussions in the Underlying Action.

**RFA 31**

Admit that Defendants have communicated with Attorney Protective regarding the claims asserted in this action.

**RFA 32**

 Admit that one or more representatives of Attorney Protective have participated in communications relating to this action.

**RFA 33**

 Admit that Attorney Protective is involved in decisions relating to the defense or potential resolution of this action.

**RFA 34**

 Admit that a default was entered against Plaintiff in the Underlying Action while Defendants were counsel of record.

**RFA 35**

 Admit that Defendants did not obtain reversal or vacatur of the default in the Underlying Action.

**RFA 36**

 Admit that no appellate court reversed the default entered in the Underlying Action.

**RFA 37**

 Admit that the default remained in effect through the conclusion of the Underlying Action.

**RFA 38**

 Admit that Defendants did not obtain appellate relief from the default entered in the Underlying Action.

**RFA 39**

 Admit that Jeremy Virgil communicated with Plaintiff regarding the possibility of combining or coordinating the Underlying Action with another legal matter involving Plaintiff.

**RFA 40**

 Admit that Jeremy Virgil recommended to Plaintiff that combining or coordinating such matters would be beneficial.

**RFA 41**

 Admit that Jeremy Virgil communicated to Plaintiff that pursuing a coordinated or combined litigation strategy would improve Plaintiff's overall position.

**RFA 42**

Admit that responsibility for monitoring deadlines in the Underlying Action was shared among more than one individual.

**RFA 43**

 Admit that Maximino Medina communicated with Plaintiff regarding settlement in the Underlying Action.

**RFA 44**

Admit that Maximino Medina provided advice or recommendations to Plaintiff regarding settlement in the Underlying Action.

**RFA 45**

Admit that Maximino Medina discussed with Plaintiff Plaintiff's potential recovery in connection with the Underlying Action.

**RFA 46**

Admit that Maximino Medina communicated to Plaintiff that a significant portion of Plaintiff's anticipated recovery was expected to come from the Underlying Action.

**RFA 47**

Admit that Maximino Medina discussed with Plaintiff how settlement decisions could affect Plaintiff's overall recovery in the Underlying Action.

**RFA 48**

Admit that Maximino Medina communicated to Plaintiff that decisions regarding whether to pursue or resolve claims could be influenced by anticipated recovery in the Underlying Action.

**RFA 49**

Admit that one or more communications relating to this action included a representative of Attorney Protective as a recipient.

**RFA 50**

Admit that one or more communications relating to this action included a senior executive of Attorney Protective as a recipient.

**RFA 51**

Admit that one or more communications relating to this action included an individual holding the title of Chief Executive Officer of Attorney Protective as a recipient.

**RFA 52**

Admit that one or more communications relating to the Underlying Action or this action were copied to an individual holding a senior executive role at Attorney Protective.

**RFA 53**

Admit that  Scott Patrick, identified as Chief Executive Officer of Attorney Protective, was copied on one or more communications relating to this action.

**RFA 54**

Admit that Scott Patrick received one or more communications relating to this action.

**RFA 55**

Admit that, during the period in which Defendants represented Plaintiff in the Underlying Action, Jeremy Virgil and Maximino Medina were present with Plaintiff at Defendants' offices during evening or overnight hours.

**RFA 56**

Admit that, on at least one occasion during such evening or overnight presence, Plaintiff remained at Defendants' offices overnight.

**RFA 57**

Admit that, during such occasion, Jeremy Virgil and/or Maximino Medina communicated with Plaintiff regarding the potential value or recovery in the Underlying Action.

**RFA 58**

Admit that, during such occasion, Jeremy Virgil and/or Maximino Medina discussed with Plaintiff settlement or anticipated recovery in the Underlying Action.

**RFA 59**

Admit that, on or about the same day as a court appearance involving Plaintiff, Jeremy Virgil and Maximino Medina transported Plaintiff to Defendants' offices.

**RFA 60**

Admit that, on or about the same day as a court appearance involving Plaintiff, Jeremy Virgil transported Plaintiff in Virgil's vehicle.

RFA 61

Admit that no single individual was solely responsible for monitoring all deadlines in the Underlying Action.

RFA 62

Admit that, during their representation of Plaintiff in the Underlying Action, Defendants understood that Plaintiff's claimed damages exceeded $10,000,000.

**RFA 63**

Admit that Defendants communicated to Plaintiff that the potential recovery in the Underlying Action was substantial.

**RFA 64**

Admit that Defendants were aware of public reporting concerning the magnitude of damages sought by Plaintiff in the Underlying Action.

**RFA 65**

Admit that Defendants were aware of at least one media report stating that Plaintiff sought damages in the Underlying Action in an amount of approximately $24,000,000.

**RFA 66**
Admit that Defendants were aware of at least one media report related to the Underlying Action in the NY Post.( https://nypost.com/2014/11/11/embattled-manhattan-doc-faces-accusation-of-quackery/)

**RFA 67**
Admit that Defendants were aware of at least one report related to the Underlying Action in "Quackwatch" ( https://quackwatch.org/11ind/braverman/ )

**RFA 68**
Admit that Defendants communicated with the proprietor of "Quackwatch" relating to the underlying action.

**RFA 69**
 Admit that money received earlier in time has a greater economic value than the same nominal amount received later in time.

**RFA 70**
 Admit that money can be invested to generate returns over time.

**RFA 71**
 Admit that a reasonable person would expect funds received in 2017 to have the potential to increase in value if invested over time.

**RFA 72**
 Admit that Plaintiff did not receive any recovery from the Underlying Action at or around the time the default was entered.

**RFA 73**
 Admit that any recovery Plaintiff might obtain in the future would occur later in time than if the Underlying Action had proceeded without default.

**RFA 74**
 Admit that delay in obtaining a monetary recovery reduces the present economic value of that recovery.

**RFA 75**
Admit that more than one attorney recorded time in connection with the Underlying Action.

**RFA 76**
 Admit that at least one attorney other than Jeremy Virgil or Jason T. Preuher recorded time in connection with the Underlying Action.

**RFA 77**

Admit that, in the ordinary course of business, time entries recorded by attorneys at Zeldes Needle Cooper LLP are subject to review or approval by one or more partners.

**RFA 78**

Admit that one or more partners at Zeldes Needle Cooper LLP had the ability to review time entries recorded in connection with the Underlying Action.

**RFA 79**

Admit that one or more partners at Zeldes Needle Cooper LLP had access to billing or timekeeping records for the Underlying Action.

**RFA 80**

Admit that time entries recorded in connection with the Underlying Action were reviewed, approved, or otherwise visible to one or more partners at Zeldes Needle Cooper LLP.

**RFA 81**

Admit that one or more partners at Zeldes Needle Cooper LLP reviewed time entries relating to the Underlying Action prior to the default.

## INSTRUCTIONS

1. **Governing Rules**

   These Requests for Production, Interrogatories, and Requests for Admission are made pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure and shall be answered in accordance therewith.

2. **Time for Response**

   Defendants shall serve written responses and any objections within thirty (30) days of service. For Requests for Admission, each matter must be admitted, specifically denied, or the responding party must state in detail why it cannot truthfully admit or deny the matter, as required by Rule 36(a).

3. **Separate and Complete Responses**

   Each request and interrogatory shall be answered separately and fully in writing. Any objection must be stated with specificity, including the grounds for the objection. Boilerplate or general objections are insufficient.

4. **Objections**

   If any request is objected to in whole or in part, the response shall:
   - identify the specific portion objected to;
   - state the basis for the objection with particularity; and
   - produce all non-privileged responsive documents to the extent no objection applies.

An objection shall not be made on the ground that the request is overly broad, burdensome, or vague without a detailed explanation of the specific burden or ambiguity.

5. **Production of Documents (FRCP 34(b)(2)(E))**

   Documents shall be produced:
   - as they are kept in the usual course of business; or
   - organized and labeled to correspond to the categories in these requests.

If documents are produced in native or electronic format, they shall be produced in a reasonably usable form.

6. **Electronically Stored Information (ESI)**

   All electronically stored information shall be produced in reasonably usable electronic form, including, where applicable:
   - native files;

- emails with complete metadata fields (including sender, recipients, cc/bcc, date sent, date received, subject line);
- attachments in their original format.

Metadata shall be preserved and produced to the extent reasonably available, including:

- author
- date created
- date modified
- file path or custodian

---

7. **Scope of Search**
   Defendants shall conduct a reasonable and good faith search for responsive documents, including but not limited to:
- firm email systems
- document management systems
- docketing and calendaring systems
- internal messaging platforms
- personal email accounts used for work-related communications
- mobile devices and text messages
- cloud storage or external drives
- backup systems that are reasonably accessible

The search shall include all custodians reasonably likely to possess responsive information, including attorneys, partners, associates, paralegals, and administrative staff involved in the Underlying Action.

---

8. **Documents Outside Firm Systems**
   To the extent responsive documents or communications were created, sent, received, or stored outside Defendants' primary systems (including personal email accounts or messaging platforms), such materials must be searched for and produced if they relate to the Underlying Action.

---

9. **Continuing Obligation to Supplement (FRCP 26(e))**
   Defendants have a continuing obligation to supplement or correct their responses if they learn that any response is incomplete or incorrect in any material respect.

---

10. **Documents No Longer in Possession**
    If any responsive document was at any time in Defendants' possession, custody, or control but is no longer available, Defendants shall:
- identify the document;

- state the date or approximate date it was lost, destroyed, or transferred;
- identify the person(s) responsible; and
- identify any recipient or custodian of the document.

---

11. **Privilege Log (FRCP 26(b)(5))**
    If any document is withheld on the basis of attorney-client privilege, work product doctrine, or any other privilege, Defendants shall provide a privilege log identifying:
- the date of the document
- the author
- all recipients (including cc and bcc)
- the type of document
- a description of the subject matter sufficient to assess the claim of privilege
- the specific privilege asserted

    The log shall be sufficiently detailed to permit evaluation of the claim of privilege without revealing privileged information.

---

12. **Interpretation of Requests**
    Each request shall be construed broadly to require production of all responsive information within Defendants' possession, custody, or control, including information reasonably accessible through agents, employees, attorneys, or third parties acting on Defendants' behalf.

---

13. **Requests for Admission**
    For each Request for Admission:
- If a matter is admitted, the response shall state "Admitted."
- If denied, the response shall fairly respond to the substance of the request.
- If only part of a request is admitted, the response shall specify the part admitted and deny the remainder.
- A lack of information may only be asserted after a reasonable inquiry has been made.

    Failure to properly respond may result in the matter being deemed admitted under Rule 36(a).

---

14. **Form of Interrogatory Responses**
    Each interrogatory shall be answered under oath and signed by the responding party. Any objections shall be signed by counsel as required by Rule 33.

---

15. **Coordination with Scope Limitation**
    All responses shall be interpreted consistent with the Court's limitation of discovery to the Underlying

Action, but Defendants may not withhold documents that relate to their conduct, decision-making, or strategy in the Underlying Action merely because such documents also reference other matters.