# **<u>EXHIBIT 2</u>**

| | |
|---|---|
| **From:** | Ari B. Teman <ari@teman.com> |
| **Sent:** | Monday, April 27, 2026 11:40 PM |
| **To:** | Yannucci, Cristina; Cohen, Sam |
| **Subject:** | Service of Plaintiff's Second Discovery Requests (Set B2) |
| **Attachments:** | Teman v Zeldes PLAINTIFF ARI TEMAN'S SECOND REQUESTS FOR ADMISSION (SET B2) - 2026-04-28 - F.pdf |

EXTERNAL

Counsel,

Please find attached, as a single PDF, Plaintiff Ari Teman's Second Requests for Admission, Second Requests for Production, and Second Interrogatories (Set B2) served on Defendants Zeldes Needle Cooper LLP and Jeremy Virgil.

Kindly confirm receipt of this email and the attached document. Pursuant to Rules 33, 34, and 36, Defendants' responses are due within thirty (30) days of service.

If you believe a brief meet-and-confer would assist in addressing any issues, I am available.

Regards,
Ari Teman
Plaintiff, Pro Se



Please let me know how I can be helpful.

Ari

**Ari Teman | Founder | teman™**
We make Real Estate proactive with Artificial Intelligence
212-203-3714 | teman.com | ari@teman.com

Featured in:
ABC, NBC, PIX, FOX, Pando, Curbed, Observer, The Real Deal, Cooperator, BISNOW,

Visit us for a demo (By Appointment only):

NYC: Herald Square
Miami: Lincoln Road

All conversations are off-the-record. Social Media, too.
Terms apply to each service. Each service is a different entity.
Terms cannot be changed via email or oral agreement.
Statements herein about other companies and individuals
should be taken as opinion and not fact.

**PLAINTIFF ARI TEMAN'S SECOND REQUESTS FOR ADMISSION (SET B2)**

to Defendants Zeldes Needle Cooper LLP and Jeremy Virgil

Pursuant to Rule 36, Plaintiff requests that Defendants admit or deny the following within 30 days.

**DEFINITIONS (brief and surgical)**

- **"Underlying Action"** = the action bearing Index No. 805410/2014 referenced in Defendants' Amended Answer.
- **"You" / "Defendants"** = ZNC and Virgil, including agents, partners, employees.
- **"Document"** = Rule 34 definition.
- **"Client File"** means documents maintained by Defendants in connection with Plaintiff's representation in the Underlying Action.

   **SCOPE LIMITING NOTE:**
   These Requests concern allegations pleaded in *Teman v. Braverman, et al.* (Index No. 805410/2014) (the "Underlying Action"). These Requests seek documents relating to Defendants' investigation, evaluation, handling, or prosecution of those allegations.

   These Requests do not seek documents or information relating to actions or matters other than the Underlying Action, except to the extent such documents relate to allegations asserted in the Underlying Action.

**REQUESTS FOR ADMISSION**

**A. Control, Duty, and Responsibility**

1. Admit that You were counsel of record for Plaintiff in the Underlying Action at the time it was dismissed for failure to prosecute.
2. Admit that You were responsible for prosecuting the Underlying Action during Your representation.
3. Admit that You had authority to act on Plaintiff's behalf in litigation decisions in the Underlying Action.
4. Admit that You were responsible for monitoring deadlines in the Underlying Action.
5. Admit that no court order removed responsibility for prosecuting the Underlying Action from You prior to dismissal.

**B. The Dismissal and Its Cause**

6.  Admit that the Underlying Action was dismissed for failure to prosecute.
7.  Admit that dismissal for failure to prosecute is not a merits determination.
8.  Admit that the dismissal occurred while You were counsel.
9.  Admit that no written instruction from Plaintiff directed You to allow the case to be dismissed.
10. Admit that You did not obtain Plaintiff's informed written consent to any strategy that would foreseeably result in dismissal.

## C. Firm-Wide Knowledge / Supervision

11. Admit that more than one attorney at ZNC was involved in the Underlying Action.
12. Admit that attorneys other than Virgil were copied on communications concerning the Underlying Action.
13. Admit that ZNC maintained internal communications regarding the status of the Underlying Action.
14. Admit that ZNC had supervisory obligations over attorneys handling the Underlying Action.
15. Admit that no written policy permitted allowing a client matter to be dismissed for failure to prosecute.

## D. Documents "Speak for Themselves" (force positions)

16. Admit that You contend certain documents accurately reflect events in the Underlying Action.
17. Admit that You have not identified any document showing Plaintiff instructed You to abandon prosecution.
18. Admit that You have not identified any document showing Plaintiff authorized conduct that led to dismissal.

## E. Affirmative Defenses – Authorization / Fault

19. Admit that You contend Plaintiff authorized at least one act or omission You rely on as a defense.
20. Admit that You cannot identify any such act or omission.
21. Admit that You have no written communication from Plaintiff authorizing dismissal for failure to prosecute.

## F. Affirmative Defenses – Mitigation

22. Admit that You contend Plaintiff failed to mitigate damages.
23. Admit that You have not identified any specific action Plaintiff could have taken to prevent dismissal after You assumed representation.

## G. Affirmative Defenses – Causation

24. Admit that absent dismissal for failure to prosecute, the Underlying Action would have continued.
25. Admit that dismissal for failure to prosecute eliminates the opportunity to obtain a judgment on the merits.

## H. Affirmative Defenses – Collectability

26. Admit that You contend any judgment in the Underlying Action would have been uncollectible in whole or in part.
27. Admit that You have not completed a full financial analysis of all defendants in the Underlying Action.
28. Admit that You have not identified all assets of the defendants in the Underlying Action.

## I. Documentary Evidence Defense

29. Admit that You rely on documents in Your possession to support Your defenses.
30. Admit that those documents are maintained by Defendants in connection with their representation of Plaintiff in the Underlying Action.

## J. Merits of the Underlying Action

31. Admit that the Underlying Action alleged claims for negligence and fraud against medical providers.
32. Admit that the Underlying Action alleged that Defendants therein failed to diagnose a sleep disorder.
33. Admit that the Underlying Action alleged that medical providers withheld diagnostic test results.
34. Admit that the Underlying Action alleged that Plaintiff was subjected to unnecessary or improper treatment.

## K. Damages Alleged

35. Admit that the Underlying Action sought recovery for medical expenses.
36. Admit that the Underlying Action sought recovery for lost earnings and earning capacity.
37. Admit that the Underlying Action sought recovery for emotional distress.
38. Admit that the Underlying Action sought punitive damages.

## L. Case Value / Viability

39. Admit that claims for medical malpractice and fraud can result in substantial monetary recovery.
40. Admit that the Underlying Action, if successful, could have resulted in a monetary award to Plaintiff.
41. Admit that dismissal for failure to prosecute prevented adjudication of the merits of the Underlying Action.

## M. Their Knowledge / Evaluation

42. Admit that You evaluated the merits of the Underlying Action during Your representation.
43. Admit that You believed the Underlying Action had some value at the time You accepted the case on contingency.
44. Admit that You would not accept a contingency case you believed had no potential value.

## N. Causation Lock-In

45. Admit that if the Underlying Action had not been dismissed, Plaintiff would have had the opportunity to pursue recovery.
46. Admit that dismissal for failure to prosecute eliminated Plaintiff's ability to obtain recovery in that action.

## O. Silver Hill – Pleaded Allegations

47. Admit that the complaint in the Underlying Action included allegations concerning Plaintiff's treatment at Silver Hill Hospital, including but not limited to ¶¶61, 64–68, 72–73, and 77.
48. Admit that the Underlying Action alleged that Plaintiff's admission to Silver Hill Hospital resulted from representations made by other medical providers, as set forth at ¶61.
49. Admit that the Underlying Action alleged that Silver Hill Hospital relied on diagnoses or information provided by other medical providers, as set forth at ¶66.
50. Admit that the Underlying Action alleged that treatment at Silver Hill Hospital contributed to Plaintiff's damages, as set forth at ¶¶64–65, 72–73, and 77.

## P. Their Handling

51. Admit that You were responsible for investigating the allegations concerning Silver Hill Hospital set forth at ¶¶61, 64–68, 72–73, and 77 of the Underlying Action.

52. Admit that You did not obtain all discovery necessary to fully develop the allegations concerning Silver Hill Hospital set forth at ¶¶61, 64–68, 72–73, and 77 prior to dismissal.

53. Admit that dismissal for failure to prosecute prevented development of the allegations concerning Silver Hill Hospital set forth at ¶¶61, 64–68, 72–73, and 77.

## Q. Proximate Cause Tie-In

54. Admit that the allegations concerning Silver Hill Hospital set forth at ¶¶61, 64–68, 72–73, and 77 formed part of Plaintiff's theory of damages in the Underlying Action.

55. Admit that dismissal of the Underlying Action prevented Plaintiff from pursuing recovery for damages associated with treatment at Silver Hill Hospital as alleged at ¶¶64–65, 72–73, and 77.

## R. Calendering and Assistant Transition

56. Admit that Defendants did not implement a documented transition of docketing or calendaring responsibilities for the Underlying Action following the departure or retirement of Jeanne S. Rowe.

57. Admit that Jeanne S. Rowe performed docketing, calendaring, or scheduling functions in connection with the Underlying Action.

58. Admit that Defendants relied, at least in part, on Jeanne S. Rowe for docketing or calendaring in the Underlying Action.

59. Admit that following the departure or retirement of Jeanne S. Rowe, Defendants reassigned docketing or calendaring responsibilities for the Underlying Action.

60. Admit that Defendants did not provide written instructions or protocols specific to the Underlying Action in connection with the reassignment of docketing or calendaring responsibilities following the departure or retirement of Jeanne S. Rowe.

61. Admit that at least one deadline in the Underlying Action was missed after the departure or retirement of Jeanne S. Rowe.

62. Admit that Defendants were aware of the departure or retirement of Jeanne S. Rowe at the time it occurred.

**PLAINTIFF ARI TEMAN'S SECOND REQUESTS FOR PRODUCTION (SET B2)**

to Defendants Zeldes Needle Cooper LLP and Jeremy Virgil

Pursuant to Rule 34, produce the following within 30 days.

---

**INSTRUCTIONS (tight)**

- Limited to the **Underlying Action**
- Time period: Your entire representation
- Produce in electronic format with metadata where available
- 

  **SCOPE LIMITING NOTE:**
   These Requests concern allegations pleaded in *Teman v. Braverman, et al.* (Index No. 805410/2014) (the "Underlying Action"). These Requests seek documents relating to Defendants' investigation, evaluation, handling, or prosecution of those allegations.

  These Requests do not seek documents or information relating to actions or matters other than the Underlying Action, except to the extent such documents relate to allegations asserted in the Underlying Action.

---

**REQUESTS FOR PRODUCTION**

**A. Core Case Handling**

1. All non-privileged documents maintained by Defendants relating to their investigation, evaluation, handling, or prosecution of the Underlying Action, including pleadings, correspondence, and internal communications.
2. All documents reflecting case strategy, including decisions relating to prosecution, delay, or abandonment.

---

**B. Deadlines / Failure to Prosecute**

3. All calendars, docketing records, and deadline tracking documents.
4. All documents reflecting missed deadlines or risk of dismissal.
5. All communications discussing dismissal for failure to prosecute.

---

**C. Internal Communications (firm-wide knowledge)**

6. All internal emails, messages, or memoranda among ZNC attorneys concerning the Underlying Action.
7. All communications where attorneys other than Virgil were copied regarding the Underlying Action.
8. All documents reflecting supervision, review, or escalation within ZNC.

---

**D. Client Communications**

9. All communications with Plaintiff regarding case status, deadlines, or risk of dismissal.
10. All documents You contend show Plaintiff authorized any act or omission at issue.

---

**E. Affirmative Defenses – Authorization / Fault**

11. All documents supporting the contention that Plaintiff authorized or caused any act or omission.

---

**F. Affirmative Defenses – Mitigation**

12. All documents supporting the contention that Plaintiff failed to mitigate damages.

---

**G. Affirmative Defenses – Causation**

13. All documents supporting Your contention that Your conduct was not the proximate cause of dismissal.

---

**H. Affirmative Defenses – Collectability**

14. All documents concerning the financial condition, insurance, or assets of defendants in the Underlying Action.

15. All documents You rely on to contend that any judgment would have been uncollectible.

---

## I. Insurance (Narrowed to Comply with Court Order)

16. Any insurance agreement under which any insurer may be liable to satisfy all or part of a judgment in this action, to the extent required by Rule 26(a)(1)(A)(iv).

17. All communications between Defendants and any insurer relating to the claims asserted in this action, including communications that reference Plaintiff's requests for his client file to the extent such communications concern Defendants' potential liability, exposure, or defense in this action.

---

## J. Documentary Evidence Defense

18. All documents You contend support any affirmative defense.

## K. Evaluation of the Underlying Case

19. All documents reflecting Your evaluation of the merits or value of the Underlying Action.
20. All communications discussing potential recovery or settlement value.
21. All documents reflecting analysis of liability of the defendants in the Underlying Action.

## L. Damages Analysis

22. All documents concerning Plaintiff's alleged damages in the Underlying Action.
23. All expert materials, reports, or consultations concerning damages.

## M. Medical Evidence

24. All medical records, reports, or expert opinions obtained or reviewed in connection with the Underlying Action.
25. All documents relating to the sleep study referenced in the Underlying Action.

## N. Settlement / Strategy

26. All documents reflecting settlement discussions or evaluations in the Underlying Action.
27. All communications with opposing counsel regarding liability or damages.

## O. Contingency Decision

28. All documents reflecting the basis upon which You agreed to represent Plaintiff on a contingency basis.

## P. Silver Hill Allegations (as alleged in the Underlying Action)

**Note:** These Requests concern allegations pleaded in *Teman v. Braverman, et al.* (Index No. 805410/2014) (the "Underlying Action"), and do not seek discovery relating to any separate matter involving Silver Hill Hospital.

29. All documents reflecting Your investigation, evaluation, or analysis of the allegations concerning Silver Hill Hospital set forth at ¶¶61, 64–68, 72–73, and 77 of the complaint in the Underlying Action.

30. All documents relating to the allegation that Plaintiff was referred to or admitted to Silver Hill Hospital based on representations made by medical providers, as set forth at ¶61 of the Underlying Action.

31. All documents concerning the allegation that Silver Hill Hospital relied on diagnoses or information provided by other medical providers, as set forth at ¶66 of the Underlying Action.

32. All documents relating to the allegation that Plaintiff was subjected to improper, unnecessary, or misleading treatment at Silver Hill Hospital, including but not limited to the allegations set forth at ¶¶64–68 and 72–73 of the Underlying Action.

33. All documents relating to the allegation that Silver Hill Hospital acted at the direction of, or in coordination with, other medical providers, as set forth at ¶77 of the Underlying Action.

## Q. Prosecution / Case Handling  (as alleged in the Underlying Action)

34. All documents reflecting how You intended to prove the allegations concerning Silver Hill Hospital set forth at ¶¶61, 64–68, 72–73, and 77 of the Underlying Action.

35. All documents identifying witnesses, testimony, or evidence relating to the Silver Hill Hospital allegations set forth at ¶¶61, 64–68, 72–73, and 77 of the Underlying Action.

36. All documents reflecting any decision not to pursue discovery concerning the Silver Hill Hospital allegations set forth at ¶¶61, 64–68, 72–73, and 77 of the Underlying Action.

37. All communications discussing the relevance of Silver Hill Hospital to Plaintiff's claims as alleged at ¶¶61, 64–68, 72–73, and 77 of the Underlying Action.

## R. Causation / Damages  (as alleged in the Underlying Action)

38. All documents reflecting Your evaluation of whether treatment at Silver Hill Hospital increased Plaintiff's damages, as alleged at ¶¶64–65, 72–73, and 77 of the Underlying Action.

39. All documents reflecting Your evaluation of whether conduct involving Silver Hill Hospital formed part of the causal chain alleged at ¶¶61, 66, and 77 of the Underlying Action.

## S. Administrative Handling / Transition

40. All documents reflecting the assignment of responsibility for docketing, calendaring, or scheduling in connection with the Underlying Action.

41. All documents reflecting the role of Jeanne S. Rowe in connection with the Underlying Action.

42. All documents reflecting any transition of responsibilities relating to the Underlying Action following the departure or retirement of Jeanne S. Rowe.

43. All communications concerning the transfer, reassignment, or handling of files, deadlines, or calendaring for the Underlying Action following the departure or retirement of Jeanne S. Rowe.

# PLAINTIFF ARI TEMAN'S SECOND INTERROGATORIES (SET B2)

to Defendants Zeldes Needle Cooper LLP and Jeremy Virgil

Pursuant to Rule 33 and Local Civil Rule 33.3, Plaintiff requests that Defendants answer the following interrogatories within 30 days.

---

## DEFINITIONS (match your other sets)

- **"Underlying Action"** = *Teman v. Braverman, et al*., Index No. 805410/2014.
- **"You" / "Defendants"** = ZNC and Jeremy Virgil.
- **"Document"** = Rule 34 definition.

---

## INSTRUCTIONS

These interrogatories are limited to:

- identification of witnesses with knowledge
- identification of documents
- computation of damages
- contentions directly related to claims and defenses

(as required by Local Civil Rule 33.3)

**SCOPE LIMITING NOTE:**
These Requests concern allegations pleaded in *Teman v. Braverman, et al.* (Index No. 805410/2014) (the "Underlying Action"). These Requests seek documents relating to Defendants' investigation, evaluation, handling, or prosecution of those allegations.

These Requests do not seek documents or information relating to actions or matters other than the Underlying Action, except to the extent such documents relate to allegations asserted in the Underlying Action.

---

## ◆ INTERROGATORIES

## A. Witness Identification (core Rule 33.3 category)

1. Identify all individuals with knowledge of the facts relating to the prosecution, handling, or dismissal of the Underlying Action, including their roles and the subject matter of their knowledge.

2. Identify all individuals within ZNC who were involved in supervising, reviewing, or managing the Underlying Action.
3. Identify all individuals with knowledge of any missed deadlines, risk of dismissal, or dismissal of the Underlying Action.

---

## B. Documents & Custodians

4. Identify the categories of documents relating to the Underlying Action, including their custodians and locations.
5. Identify all documents You contend support any affirmative defense asserted in this action.

---

## C. Authorization Defense (targeted)

6. Identify all facts supporting Your contention that Plaintiff authorized any act or omission that You rely upon as a defense.
7. Identify all documents that support Your contention that Plaintiff authorized any act or omission.

---

## D. Mitigation Defense

8. Identify all facts supporting Your contention that Plaintiff failed to mitigate damages.
9. Identify all actions You contend Plaintiff should have taken to avoid or mitigate the dismissal of the Underlying Action.

---

## E. Causation Defense

10. Identify all facts supporting Your contention that Your conduct was not the proximate cause of the dismissal of the Underlying Action.

---

## F. Collectability Defense

11. Identify all facts supporting Your contention that any judgment in the Underlying Action would have been uncollectible.
12. Identify all documents You rely upon to support Your contention that any judgment would have been uncollectible.

---

## G. Evaluation of the Underlying Action

13. Identify all individuals who evaluated the merits or value of the Underlying Action during Your representation.
14. Identify all documents reflecting any evaluation of the merits or value of the Underlying Action.

## H. Damages (Rule 33.3 category)

15. Identify all categories of damages You contend Plaintiff cannot recover, and state the basis for each such contention.

## I. Insurance (narrowed & compliant)

16. Identify any insurer that has been notified of the claims asserted in this action.
17. Identify the date(s) on which any such notice was provided.

## J. Silver Hill (strictly tied to Underlying Action)

18. Identify all individuals with knowledge of the allegations concerning Silver Hill Hospital as pleaded in the Underlying Action.
19. Identify all documents relating to the allegations concerning Silver Hill Hospital set forth at ¶¶61, 64–68, 72–73, and 77 of the Underlying Action.

## K. Docketing / Calendar / Administrative Handling

20. Identify the individual(s) responsible for docketing, calendaring, or scheduling in connection with the Underlying Action during Defendants' representation, including any legal assistants or administrative personnel.
21. Identify whether Jeanne S. Rowe performed docketing, calendaring, scheduling, or client-communication functions in connection with the Underlying Action, and if so, describe the nature of her responsibilities.
22. Identify the individual(s) who assumed any docketing, calendaring, scheduling, or client-communication responsibilities for the Underlying Action following the departure or retirement of Jeanne S. Rowe.
23. Identify all individuals with knowledge of any transition of responsibilities, files, or information relating to the Underlying Action following the departure or retirement of Jeanne S. Rowe.
24. Identify all documents reflecting the transition of docketing, calendaring, scheduling, or file-management responsibilities relating to the Underlying Action.