**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**ARI BARUCH TEMAN,**
**Plaintiff (Pro Se),**

v.

**ZELDES NEEDLE COOPER LLP and JEREMY VIRGIL,**
**Defendants.**
**Case No. 1:24-cv-09830 (LJL)**

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MAY 20, 2026**

**LETTER MOTION FOR PROTECTIVE ORDER (ECF NO. 90)**

Honorable Lewis J. Liman United States District Court, Southern District of New York 500 Pearl Street, New York, New York 10007

Dear Judge Liman:

Plaintiff Ari Baruch Teman respectfully submits this opposition to Defendants' May 20, 2026 letter motion for a protective order (ECF No. 90).

---

**PRELIMINARY NOTE: RELIGIOUS HOLIDAY AND REQUESTS FOR RELIEF**

Tonight at sundown begins Shavuot, a Jewish religious holiday during which Plaintiff, as an observant Jew, is prohibited from using electronic devices or conducting business. Plaintiff will be offline from approximately 11:00 AM today, May 21, 2026, through Sunday, May 24, 2026. Plaintiff is submitting this opposition now, before going offline, to ensure it is timely on the record.

Plaintiff respectfully requests: (1) that the Court withhold any ruling on ECF No. 90 until Tuesday, May 27, 2026; (2) that Plaintiff be granted until 5:00 PM on May 27 to file any supplemental submission, so that Plaintiff has Monday and Tuesday to review any responsive filings and the Pro Se Clerk has time to process them; and (3) that the Court grant Plaintiff ECF filing access so that Plaintiff may file directly and reliably rather than through the temporary Pro Se email system, which creates uncertainty as to timing of receipt and docketing.

---

**PRELIMINARY STATEMENT**

Defendants seek sweeping relief against discovery requests that were expressly, repeatedly, and carefully narrowed to comply with this Court's April 21, 2026 Order. Their motion rests on a single overarching mischaracterization — that requests touching on Silver Hill Hospital seek discovery about a "separate litigation" or

collateral matter. They do not. As explained below, the only Silver Hill-related materials Plaintiff seeks are communications between and among Braverman and PATH Medical — the primary defendants in the Underlying Action — that concerned Silver Hill. Because the Underlying Action complaint expressly alleges that Silver Hill acted at the direction of Braverman and PATH, those communications are direct evidence of Braverman's conduct that ZNC was retained to prove. They are not Silver Hill discovery. They are Braverman discovery.

This motion should also be understood in context. Defendants are represented by Lewis Brisbois Bisgaard & Smith LLP, a large national law firm with substantial litigation resources. They have had Plaintiff's revised first requests since April 23, 2026 and the second requests since April 27. Despite nearly a month, Defendants have not produced a single document in this case. Not one. Their letter motion is another effort to avoid responding to discovery requests while producing no responsive documents.

---

## I. THE SILVER HILL REQUESTS SEEK BRAVERMAN/PATH COMMUNICATIONS,

## NOT SILVER HILL DISCOVERY

The Court has already ruled that Silver Hill Hospital, as a separate party, is outside the scope of permissible discovery. Plaintiff does not seek to relitigate that ruling.

What Plaintiff seeks is fundamentally different: communications between and among Braverman and PATH Medical — the defendants in the Underlying Action — that concerned Silver Hill Hospital. This distinction is not semantic. It goes to the heart of the malpractice claim.

The Underlying Action complaint expressly alleged that Silver Hill acted at the direction of Dr. Braverman and PATH Medical. Complaint ¶ 77 ("Upon information and belief, Silver Hill Hospital acted at the direction of Dr. Braverman and PATH Medical."). The complaint further alleged:

> "Dr. Braverman advised Mr. Teman's parents that PATH Medical would refuse to treat Mr. Teman unless he went to receive treatment at Silver Hill Hospital of New Canaan, Connecticut." (¶ 61.)

> "As per the instructions of Dr. Braverman, on June 5, 2011, Mr. Teman was brought to Silver Hill Hospital..." (¶ 64.)

> "PATH Medical, Dr. Braverman, and the medical staff at Silver Hill Hospital fraudulently stated that the DBT program would help to alleviate Mr. Teman's medical problems." (¶ 65.)

> "Upon information and belief, Silver Hill Hospital did not conduct its own evaluation of Mr. Teman and simply

> relied upon Dr. Braverman's recommendations and findings." (¶ 66.)
>
> "Dr. Braverman, PATH Medical, and Silver Hill failed to diagnose Mr. Teman with a sleep disorder in which another medical professional was able to diagnose within 15 minutes of evaluating Mr. Teman." (¶ 73.)

If Silver Hill acted at Braverman's direction and relied upon Braverman's recommendations, then communications between Braverman and Silver Hill through which those directions and recommendations would have been conveyed would reasonably be expected to exist. Those communications are not Silver Hill's documents. They are Braverman's and PATH's documents — communications by and from the primary defendants in the Underlying Action — that ZNC was retained to obtain and use to prove those claims.

They are not Silver Hill discovery. They are Braverman discovery.

The question for the malpractice case is what ZNC knew about Braverman's direction of Silver Hill and communications with Silver Hill, whether ZNC sought those communications in discovery in the Underlying Action, and whether ZNC's failure to investigate or pursue them contributed to the dismissal or diminished the value of Plaintiff's claims. That is squarely discovery into ZNC's representation in the Underlying Action.

To be precise: Plaintiff is not seeking Silver Hill's internal records, Silver Hill's treatment notes, or anything from Silver Hill as an institution. Plaintiff seeks only what Braverman and PATH communicated with and about Silver Hill — because those communications are evidence of the Braverman/PATH fraud and negligence that ZNC was hired to prove, and ZNC's handling of that evidence goes directly to the malpractice claim.

Plaintiff's requests reflect this limitation. B1 RFP 14 seeks documents reflecting "Communications between Defendants and Braverman, PATH, or their counsel relating to Plaintiff's condition, treatment, or credibility" and "Communications between Defendants and Silver Hill Hospital that were made or considered in connection with the Underlying Action." It expressly states: "Clarification: This request is limited to Defendants' conduct in the Underlying Action."

The B2 requests likewise state at the outset: "These Requests concern allegations pleaded in Teman v. Braverman, et al. (Index No. 805410/2014) and do not seek documents or information relating to actions or matters other than the Underlying Action." Each B2 Silver Hill request cites specific paragraph numbers from the Underlying Action complaint.

Plaintiff asks only what ZNC knew about Braverman's direction of Silver Hill and communications with Silver Hill, what ZNC did to obtain or investigate those communications, and how ZNC handled those allegations in the matter they were retained to prosecute. Those are malpractice questions. They are not Silver Hill

questions.

_____

## II. DEFENDANTS HAVE NOT PRODUCED A SINGLE DOCUMENT

The Court should be aware that as of this filing, Defendants have not produced a single document in this case.

The Case Management and Scheduling Order (ECF No. 46) was entered March 11, 2026. The April 21, 2026 Order lifted the discovery stay. Defendants received Plaintiff's revised requests on April 23 and April 27. Fact discovery closes June 10, 2026. Despite all of this, Defendants' only response to their discovery obligations has been a succession of letters seeking to eliminate Plaintiff's requests in their entirety.

Many requests are plainly proper and unaffected by any issue raised in Defendants' motion, including:

- Engagement letters (RFP 1)
- Internal matter numbers and file designations (RFP 2)
- All communications between Defendants and Plaintiff (RFP 3)
- Communications with opposing counsel (RFP 4)
- Docket notifications, calendar alerts, and deadline notices (RFP 6)
- Deadline tracking and calendaring records (RFPs 7, 28)
- Internal communications regarding missed deadlines or default (RFPs 8, 9)
- Supervision and staffing records (RFPs 15, 16, 27)
- Billing and time records (RFP 35)
- Documents supporting Defendants' own affirmative defenses

Even if this Court granted every aspect of Defendants' motion, production on these requests would still be required. Defendants have raised no objection that would justify withholding any of them. Yet not a single document has been produced.

This Court's April 21, 2026 Order narrowed the scope of discovery. It did not authorize wholesale nonproduction. Defendants remain obligated to search for, produce, and log responsive materials. The Court should order a date-certain production deadline for all requests not subject to a pending, good-faith objection.

_____

## III. RFP 11 (INSURER COMMUNICATIONS) IS PROPER

RFP 11 seeks communications between Defendants and any insurer relating to the claims in this action. It does not seek production of a policy, and Plaintiff does not seek privileged reserve analyses or litigation strategy unrelated to the handling of Plaintiff's client file or malpractice allegations. To the extent such communications concern the handling, preservation, withholding, or production of Plaintiff's client file or related malpractice allegations, they are relevant to claims and defenses in this action. This Court's March 11, 2026 Order (ECF No. 45) limited the timing of requests for

additional insurance policy production; it did not bar communications discovery. The request is narrowly tailored and proportional.

---

## IV. RFP 12 (CONFLICT CHECKS) IS RELEVANT TO THE REPRESENTATION

RFP 12 is expressly limited to conflict-check records "relating to the Underlying Action." It is not a request for all firm-wide conflicts unrelated to this matter. Whether Defendants had undisclosed relationships with Silver Hill, with the defendants in the Underlying Action, or with opposing counsel is directly relevant to whether the representation was compromised and whether ZNC adequately investigated and pursued Plaintiff's claims. A wholesale objection is not warranted.

---

## V. RFP 25 (PRUEHER / LINKEDIN) CONCERNS THE UNDERLYING ACTION

RFP 25 seeks documents reflecting connections and communications between Jason Prueher and Plaintiff that concern the Underlying Action or Prueher's knowledge of how it was handled, including any communications made after Prueher's departure from ZNC that bear on the conduct of the representation. To the extent such communications exist and are in Defendants' possession, custody, or control, they are directly relevant to supervision, staffing, and the handling of the matter. To the extent they are not in Defendants' possession, no objection is necessary.

---

## VI. INTERROGATORIES 5, 7, 8, AND 9 ARE PROPER UNDER LOCAL RULE 33.3

S.D.N.Y. Local Rule 33.3(a) permits interrogatories seeking "the existence, custodian, location and general description of relevant documents." Each challenged interrogatory falls within that scope:

Interrogatory 5 seeks identification of the docketing systems used for the Underlying Action — a document repository, squarely within Rule 33.3(a).

Interrogatory 7 seeks identification of email accounts and messaging platforms used in connection with the Underlying Action — custodians and repositories. This is particularly important because Plaintiff already possesses documents showing that Mr. Virgil and Mr. Prueher communicated with Plaintiff through Gmail accounts rather than firm systems. Plaintiff reasonably needs to know whether those repositories will be searched and who controls them.

Interrogatory 8 seeks identification of custodians of communications maintained outside Defendants' primary systems — custodians and locations of documents, squarely within Rule 33.3(a).

Interrogatory 9 seeks identification of individuals who recorded time and approximate hours. Timekeepers are witnesses with knowledge of relevant facts. In a legal malpractice case, time records are among the most direct evidence of who was working on the matter, what they were doing, and when activity on the file ceased.

Defendants cannot avoid discovery into repositories they actually used by characterizing those repositories as outside their primary business practices.

---

## VII. REQUESTS FOR ADMISSION

Plaintiff acknowledges this Court's discretion over the number of RFAs and remains willing to streamline and prioritize the requests if directed. However, wholesale elimination of all 143 RFAs is disproportionate.

Many of the requests concern foundational, noncontroversial facts — counsel of record status, that a default was entered, that multiple attorneys worked on the matter, that ZNC had supervision obligations, that no written instruction from Plaintiff authorized dismissal — precisely the facts Rule 36 is designed to narrow and remove from trial without the need for depositions.

Requiring Plaintiff, a pro se litigant without staff or co-counsel, to establish these foundational facts through depositions rather than RFAs does not reduce burden. It dramatically increases it — on the party least able to bear it. That result is contrary to the purpose of Rule 36.

If the Court is inclined to impose a numerical limit, Plaintiff respectfully requests a limit of 25 rather than 15, and requests the opportunity to identify the most critical requests within that limit before the Court rules.

---

## VIII. THE SECOND DISCOVERY REQUESTS SHOULD NOT BE ELIMINATED IN THEIR ENTIRETY

Plaintiff disputes that the B2 requests were untimely. Discovery was stayed while the parties litigated the permissible scope of discovery. Plaintiff served the B2 requests promptly after the April 21, 2026 Order lifted the stay. Defendants themselves responded substantively to individual B2 requests — conduct inconsistent with treating them as categorically void.

Moreover, certain B2 topics — in particular, the transition of docketing and calendaring responsibilities following the departure of Jeanne S. Rowe — could not have been raised in earlier requests. Plaintiff learned of Ms. Rowe's departure only when attempting to obtain his client file and receiving a bounced email from her address. Secretarial and docketing staff are not listed on firm websites and their departures are not publicly announced. A pro se litigant has no means of knowing which support staff worked on his matter, let alone that they had departed, until that fact surfaces through the discovery process itself. These requests were served promptly

upon learning that fact. The Court has equitable discretion to permit targeted late requests on newly-discovered issues where, as here, no prejudice results from the content of the requests.

---

## IX. CONCLUSION

Defendants have had Plaintiff's requests for nearly a month. They have produced nothing. Their motion seeks to eliminate all of Plaintiff's discovery rather than comply with any of it — even as to requests whose propriety they do not seriously dispute.

Plaintiff respectfully requests that the Court:

> 1. DENY the motion as to the Silver Hill-related requests, on the ground that Plaintiff seeks only Braverman/PATH communications that concerned Silver Hill — direct evidence of the conduct ZNC was retained to prove — not discovery from or about Silver Hill as a separate party;

> 2. DENY or narrowly limit relief as to RFPs 11, 12, and 25 and Interrogatories 5, 7, 8, and 9, which are proper under FRCP 26 and Local Rule 33.3(a);

> 3. MODIFY any RFA limit to 25 rather than 15, with leave for Plaintiff to identify priorities before the Court rules;

> 4. TAKE UNDER ADVISEMENT the B2 timeliness issue and permit further briefing as to newly-discovered topics, including the Jeanne S. Rowe transition;

> 5. ORDER Defendants to produce responsive documents on a date certain as to all requests not subject to a pending, good-faith objection — as no documents have been produced in this case despite nearly a month having elapsed since Plaintiff's revised requests were served;

> 6. GRANT Plaintiff an extension through Tuesday, May 27, 2026 at 5:00 PM to file any supplemental submission, in light of Plaintiff's observance of Shavuot beginning today at sundown; and

> 7. GRANT Plaintiff ECF filing access to enable direct, reliable, and timestamped electronic filing.

Plaintiff appears pro se and respectfully requests that his submissions be construed liberally. See Haines v. Kerner, 404 U.S. 519 (1972).

*Wishing all who celebrate a Chag Sameach and Shabbat Shalom.*

Respectfully submitted,

s/ Ari Teman Ari Baruch Teman Plaintiff, Pro Se 1521 Alton Road, #888 Miami Beach, Florida 33139 ari@teman.com | 212-203-3714

Dated: May 21, 2026 Tel Aviv, Israel