Ari B. Teman
ari@teman.com
(212) 203-3714

June 3, 2026

**VIA ECF**
The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

*Re: Teman v. Zeldes Needle Cooper LLP et al.,* No. 1:24-cv-09830 (LJL) — Plaintiff's Reply to
Defendants' June 2, 2026 Letter (ECF No. 100)

Dear Judge Liman:

Plaintiff Ari Baruch Teman respectfully submits this brief reply to Defendants' June 2,
2026 letter (ECF No. 100). Defendants' letter is devoted entirely to procedural objections
and is silent on the substantive issue ECF No. 99 places squarely before the Court:
Defendants told the Court that Silver Hill Hospital was unrelated to the Braverman/PATH
Underlying Action — in order to justify their motion for a protective order, redactions, and
a narrowed custodian search — and their own production cannot be reconciled with that
representation. Notably, Defendants do not dispute the authenticity of any document cited
in ECF No. 99 and do not attempt to explain why their own records repeatedly treat Silver
Hill as part of the Braverman representation.

**I. Defendants Materially Misrepresented to the Court That Silver Hill Was Unrelated to
the Braverman/PATH Underlying Action — Their Own Production Proves It**

The Braverman and Silver Hill matters were a single, integrated representation, divided
between New York and Connecticut courts solely because Braverman practiced in
Manhattan and Silver Hill Hospital is located in New Canaan, Connecticut. The underlying
facts, medical records, expert witnesses, and legal theory were shared. Defendants' own
production establishes this in their own contemporaneous documents:

**ZNC's own caption for the matter treated them as one.** ZNC's transmittal of its own
case chronology is captioned "Legal/medical case involving Dr. Eric Braverman and Silver
Hill Hospital" (DEFTS038188).

**ZNC's case chronology integrates Silver Hill as a central event.** The chronology —
produced and then redacted as "not responsive" — records that Dr. Braverman directed
Plaintiff's placement at Silver Hill and that the Silver Hill psychiatrist never received the
prior sleep-study results that should have informed Plaintiff's care (DEFTS038187).

**Plaintiff's daytime somnolence at Silver Hill was caused by Braverman's over-
medication.** ZNC's expert-screening correspondence — also redacted as "not responsive"
— records a prospective expert's clinical view linking Plaintiff's daytime somnolence at

Silver Hill directly to Braverman's excessive and unwarranted over-medication (DEFTS035404–35405). The medical facts at Silver Hill were a consequence of Braverman's treatment.

**ZNC chose Braverman experts based on willingness to "go against Silver Hill."** The same expert-screening correspondence shows ZNC evaluating Braverman-case experts by whether they would "go against Silver Hill" (DEFTS035404–35405). No party developing a case purely about Braverman would screen experts by their willingness to take on Silver Hill.

**ZNC's operative complaint pleads Silver Hill as a direct consequence of Braverman's conduct.** The complaint ZNC filed alleges Plaintiff was admitted to Silver Hill "[a]s per the instructions of Dr. Braverman" (¶…64, DEFTS051443).

**A single affidavit of service covers both.** The file contains a document titled "AOS — silver hill and braverman.pdf" (DEFTS033530) — one service document for both proceedings.

Each of the above documents is reproduced in Exhibit A, filed herewith. Plaintiff has placed a yellow highlight and arrow next to each relevant passage so the Court may locate the evidence at a glance.

Defendants invoked Silver Hill's purported irrelevance to justify redacting their own case chronology and expert-screening correspondence, to narrow the custodians whose files were searched, to withhold executed HIPAA authorizations relating to Silver Hill providers, and to ground the protective order motion now before the Court. The documents establishing Silver Hill's relevance were among the very documents Defendants redacted as "not responsive." A protective order cannot rest on a factual premise that the movant's own production contradicts.

## II. Defendants' Timeliness Objection Fails on the Facts

Defendants argue that ECF No. 96 should be "wholly disregarded" as one day late. Plaintiff transmitted ECF No. 96 to Pro Se Intake at 11:58 p.m. on May 27, 2026, by his computer's clock — within the deadline. Different computers, mobile devices, and servers routinely differ by a few minutes due to clock synchronization; an 11:58 p.m. transmission is timely, and propagation delay or a faster server clock on one party's end is not non-compliance by Plaintiff. Had Plaintiff possessed direct ECF access — which Plaintiff previously requested and Defendants opposed — the filing would have been timestamped by the Court's own system at transmission. Defendants identify no prejudice. In any event, ECF No. 99, filed timely on June 2, supersedes ECF No. 96.

## III. Plaintiff's Statements Were Accurate When Made

Defendants invoke their May 29 production to attack statements made in Plaintiff's May 28 submission. That production did not exist when Plaintiff transmitted ECF No. 96. The statement that Defendants had produced no substantive discovery documents was accurate when made.

The timing of Defendants' production warrants the Court's attention. Defendants waited until after Plaintiff had already filed ECF No. 96, then produced tens of thousands of pages on May 29 — immediately before a period in which they knew or should have known Plaintiff would be unable to review and respond. Plaintiff resides in Israel and observes the Sabbath, which began shortly after the production arrived. The production required substantial download and processing time due to its volume and format. The timing merits notice: Defendants produced after Plaintiff had already filed, and at a moment when Plaintiff had no practical ability to review the production before the filing window closed. The June 1, 2026 Order does not retroactively cure deficiencies in a production made before it issued.

## IV. The HIPAA Issue Is Resolved — And Defendants Already Hold the Records That Matter Most

Plaintiff served 48 executed HIPAA authorizations with his May 28 production — a fact Defendants' own letter acknowledges. Plaintiff has since re-executed them on New York OCA Official Form No. 960, with handwritten signature, Social Security Number (last four digits, for security), provider addresses, and authorization for mental-health, alcohol/drug, and HIV-related information, for every provider Defendants identified. Plaintiff has also served a corrected IRS Form 4506-T, a hand-signed Kendall/Davidoff release, and a Horizon Blue Cross Blue Shield authorization. There is no HIPAA deficiency remaining.

The deeper point is this: Plaintiff executed HIPAA authorizations for ZNC and Virgil during the representation for purposes of prosecuting the Braverman and Silver Hill matters. Defendants' own production establishes that ZNC prosecuted those matters using medical records obtained pursuant to those authorizations — records concerning Plaintiff's treatment at Silver Hill and his care under Dr. Braverman are woven throughout ZNC's chronology, expert-screening correspondence, and operative complaint. If Defendants contend they do not possess those authorizations or the records obtained under them today, that contention further underscores the concerns raised in ECF No. 99 regarding the completeness of the client file. Defendants' demand that Plaintiff generate new authorizations for records Defendants already obtained is not a good-faith discovery request.

## V. Volume Does Not Equal Compliance: Hundreds of Emails and Files From and Between Zeldes Partners, Associates, and Staff Are Missing

Defendants cite 64,713 pages as evidence of compliance. Nearly half of the 3,477 produced documents are publicly available court filings, assembled appeal records, and FOIA materials, many duplicated across folder paths. All 3,477 files were batch-converted to image-only PDFs in a 47-minute window with no text layer and no authoring metadata — stripping the provenance, custodianship, and authenticity information a proper ESI production must preserve. The production contains 843 substantive emails from 2015–2017 and four emails covering all of 2018–2021, despite the production's own metadata confirming active firm work throughout. Plaintiff previously produced 125 documents to Defendants — substantially all emails copied to Virgil or Prueher — that are absent from Defendants' own production. No text messages were produced from any custodian.

Defendants have not disclosed whether personal devices, Gmail accounts, or archived mailboxes were searched.

## VI. Defendants Answered Zero RFAs

Defendants answered zero of 81 RFAs — not even the twenty-five they conceded were permissible under their own proposed limit. FRCP 36(a)(4) requires admission, denial, or a detailed explanation; objections do not substitute for answers to non-objectionable requests. A blanket objection to every request, including those drawn directly from court records and Defendants' own pleaded defenses, is not compliant. The June 1 stay does not retroactively excuse a failure that predates it.

## Conclusion

Defendants' ECF No. 100 does not respond to the evidence in ECF No. 99, does not dispute the authenticity of any document cited there, and does not attempt to explain why their own records repeatedly treat Silver Hill and Braverman as a single matter. That evidence stands unrebutted. Plaintiff respectfully requests that the Court: (1) deny Defendants' motion for a protective order; (2) lift the June 1, 2026 stay; (3) order production of all Silver Hill-related materials in unredacted form; (4) order identification of all custodians searched and production of the files of the additional individuals identified in ECF No. 99; (5) order substantive RFA responses; and (6) order complete re-production with metadata intact.

Respectfully submitted,

s/ Ari Teman/
Ari Baruch Teman, Plaintiff pro se
1521 Alton Road #888, Miami Beach, FL 33139
ari@teman.com | (212) 203-3714

cc: Cristina Yannucci, Esq.; Sam Cohen, Esq., Lewis Brisbois Bisgaard & Smith LLP
    Max Gershenoff, Esq.; Amanda Drantch, Esq., Rivkin Radler LLP