## Ari B. Teman

ari@teman.com

June 2, 2026

VIA ECF

The Honorable Lewis J. Liman

United States District Judge

Southern District of New York

500 Pearl Street

New York, New York 10007

**Re:** Teman v. Zeldes Needle Cooper LLP et al., No. 1:24-cv-09830 (LJL) — **Plaintiff's Pre-Conference Letter re: (1) Request to Lift Stay and Deny Protective Order; (2) Order to Complete Production; (3) Production Contradicts Prior Representations Regarding Silver Hill and Firm Personnel; (4) Serious Questions Regarding Client File; (5) Anticipated Custodian Discovery and Amendment**

Dear Judge Liman:

Plaintiff Ari Baruch Teman submits this letter in advance of the June 8, 2026 conference. Defendants' own production now contradicts the factual premise of their protective-order motion: ZNC's records show Silver Hill was not collateral, but part of the Braverman/PATH representation, expert development, pleadings, and case chronology. The production also reveals that the representation was substantially broader than Defendants previously acknowledged — involving at least nine additional attorneys, paralegals, and staff whose custodial files were never disclosed or searched — and raises serious questions about whether the client file was lost or reconstructed. Plaintiff respectfully requests that the Court address each of these matters at the June 8 conference and remains willing to discuss global resolution.

### I. The Court Should Lift the Stay and Deny the Protective Order: Defendants' Own Production Has Defeated Its Factual Predicate

By Order dated June 1, 2026 (ECF No. 97), the Court suspended Defendants' obligation to respond to Plaintiff's discovery requests pending the June 8 conference, in the context of Defendants' pending motion for a protective order. That motion rests on the position that Silver Hill Hospital is unrelated to the Braverman/PATH Underlying Action, and that Plaintiff's discovery requests directed to Silver Hill-related materials are therefore disproportionate and beyond the scope of this case. Defendants' own production now contradicts that position.

The production eliminates any plausible factual basis for Defendants' repeated contention that Silver Hill was unrelated to the Underlying Action. Mr. Virgil was identified to Plaintiff and the Court as lead counsel in the Braverman matter. The operative complaint alleged that Plaintiff's admission to Silver Hill occurred at Dr. Braverman's direction. ZNC developed expert testimony concerning Plaintiff's treatment at Silver Hill. ZNC's own chronology incorporated Silver Hill as part of the Braverman case. The medical records and expert opinions concerning Silver Hill were not peripheral materials; they were central components of the case. Nevertheless, Defendants represented to the Court that Silver Hill was a separate and unrelated matter and used that position to justify redactions, delay discovery responses, narrow the scope of custodians searched, and seek a protective order. The production now demonstrates that those representations cannot be reconciled with Defendants' own contemporaneous records.

That position has caused concrete prejudice. Defendants invoked Silver Hill's purported irrelevance to justify redacting their own case chronology and expert screening correspondence, to narrow the custodians whose files were searched, to withhold executed HIPAA authorizations relating to Silver Hill providers, and to ground the protective-order motion now before the Court. Plaintiff has been denied access to documents to which he is entitled, and Defendants have used an incorrect characterization of the scope of the Underlying Action to limit the discovery record in a case about how that action was litigated. Plaintiff received access to the production only days before this conference, with no opportunity to seek supplementation or compel compliance before June 8.

The following are ZNC's own documents, produced by Defendants, that contradict their position:

1. ZNC's transmittal of its own case chronology is captioned "Legal/medical case involving Dr. Eric Braverman and Silver Hill Hospital" (DEFTS038188). ZNC did not treat these as separate matters in its own files.

2. ZNC's case chronology — produced and then redacted as "not responsive" — records Silver Hill as a central event in the Braverman case: Dr. Braverman directed Plaintiff's placement there, and the Silver Hill psychiatrist never received the prior sleep-study results that should have informed Plaintiff's care (DEFTS038187).

3. ZNC's expert-development correspondence — also redacted as "not responsive" — shows ZNC screening Braverman-case experts by whether they would "go against Silver Hill," and recording a prospective expert's clinical view linking Plaintiff's daytime somnolence at Silver Hill to Braverman's excessive and unwarranted overmedication (DEFTS035404–35405).

4.  A single affidavit of service — "AOS - silver hill and braverman.pdf" (DEFTS033530) — names both Silver Hill and Braverman on the face of one document. Silver Hill was part of the Braverman matter and a significant source of evidence concerning Braverman's treatment of Plaintiff.

5.  The operative complaint ZNC filed alleges that Plaintiff was admitted to Silver Hill "[a]s per the instructions of Dr. Braverman" (¶ 64, DEFTS051443). Silver Hill's role is pleaded in ZNC's own operative complaint as a direct consequence of Braverman's conduct.

Defendants sought protection from discovery based upon the asserted irrelevance of Silver Hill. The documents establishing Silver Hill's relevance were among the very documents Defendants redacted as non-responsive.

A protective order cannot rest on a factual premise that the movant's own production contradicts. Plaintiff respectfully requests that the Court, at the June 8 conference:

1.  Lift the June 1, 2026 stay (ECF No. 97) in its entirety;

2.  Deny Defendants' motion for a protective order, or in the alternative vacate any prior order limiting the scope of discovery as to Silver Hill-related materials;

3.  Order Defendants to produce, within fourteen days, all documents relating to Silver Hill in unredacted form, including the case chronology (DEFTS038187), expert screening correspondence (DEFTS035404–35405), and all materials previously withheld or redacted on the ground that Silver Hill was "not responsive"; and

4.  Order Defendants to identify all custodians whose files were searched in connection with the production, and to search and produce the files of the additional individuals identified below, within thirty days; and

5.  Order defense counsel Cristina Yannucci and Lewis Brisbois Bisgaard & Smith LLP to provide a sworn statement addressing: (a) whether they currently possess any portion of the client file; (b) whether they have reviewed any portion of the client file in defending this action; (c) who currently possesses the complete file, if anyone; (d) whether the file was requested from ZNC at the outset of the defense and what was received; and (e) whether any portion of the file is unavailable, missing, or known to have been destroyed.

## II. The Production Contradicts Defendants' Prior Representations Regarding the Scope of the Representation

The production likewise contradicts Defendants' representations regarding who actually performed the work on Plaintiff's matter. Defendants presented the case as principally handled

by the attorneys named in the complaint. The production instead reveals the involvement of at least nine additional attorneys, paralegals, and staff members whose custodial files were never disclosed or searched. The volume of documents authored by these individuals demonstrates that the representation was substantially broader than Defendants previously acknowledged. This information is highly material because it bears directly on who performed the work, who possessed relevant knowledge, who maintained the client file, and whether Mr. Virgil personally performed the legal services for which Plaintiff was billed.

The new-client intake email (DEFTS030505, May 4, 2015) was sent by Mr. Virgil to Diane Barrett, Jeanne Rieger, and Karla M. Jones, and copied Lori A. DaSilva-Fiano — four individuals never identified to Plaintiff or disclosed as custodians. The production confirms each was active on the file, along with others whose involvement is now apparent from document metadata:

1. **Lori A. DaSilva-Fiano (ldasilva-fiano@znclaw.com), current ZNC Partner**: copied on the new-client intake email on May 4, 2015 (DEFTS030505). Attorney DaSilva-Fiano's practice includes medical malpractice litigation. Her custodial files were not searched.

2. **Marisa R. Pulla, née Klein (current ZNC Partner, mpulla@znclaw.com)**: authored 22 documents in connection with the 2020–2023 Notice of Appeal proceedings. She is a current ZNC partner admitted to this Court, represented in this action by Lewis Brisbois.

3. **Gabriele A. Scala (gscala@znclaw.com), associate attorney**: in July–August 2017 — after the 2016 settlement — directed by Prueher to research and compile expert contacts for the Teman v. Braverman matter. Mr. Scala created an Expert Contact List and researched psychiatric and family physician experts (DEFTS035594–035675).

4. **Michael J. Tone (mtone@znclaw.com), attorney**: drafted in June 2015 — and never filed — the Order to Show Cause, supporting affidavit, and affidavit of service to obtain Plaintiff's client file from prior counsel Glen Kendall (DEFTS047485, DEFTS047585, DEFTS048160, all marked "DRAFT NOT FILED"). ZNC took over the representation without formally obtaining the prior file.

5. **Diane Barrett (dbarrett@znclaw.com)**: authored 51 documents, including 48 in the Correspondence folder — letters to opposing counsel, client file updates, and errata. She was the primary correspondence author throughout the representation.

6. **Jeanne Rieger (jrieger@znclaw.com)**: authored 32 documents, coordinating court reporters, authorization transmittals, and discovery logistics throughout 2015–2016. Her departure from the firm and the absence of any record of how file responsibility transferred when she left is a significant gap in the production.

7.  **Nancy Mankulics (nmankulics@znclaw.com), paralegal**: authored 13 documents in connection with the Braverman bankruptcy proceedings in 2018–2019 — a period entirely absent from the email production.

8.  **Jamie L. Kircher (jkircher@znclaw.com), legal staff**: authored 10 documents spanning 2019–2022, including appellate filing notes, extension letters, bankruptcy hearing notices, e-filing confirmations, and a forwarded voicemail from Plaintiff received in April 2022.

9.  **Daphne Williams (dwilliams)**: authored 62 documents — BP Demands for all defendants, authorization demands, opposition to motions, and a letter responding to a March 2016 discovery order — core substantive work product from the earliest period of the representation. She is not in the current ZNC roster and her custodial files were not searched.

Mr. Virgil is listed as author on 40 documents. The nine individuals above collectively authored hundreds more. An unresolved author profile "qraysor" appears on 61 appeal-record documents from 2022–2023; Defendants have not identified that individual.

This disparity is particularly significant because Defendants have repeatedly portrayed Mr. Virgil as the attorney principally responsible for the representation. The production suggests that much of the substantive work was instead performed by individuals whose involvement was never disclosed and whose custodial files were never searched. Those omissions are particularly significant because the missing custodians correspond directly to periods where the production contains little or no substantive email traffic.

Plaintiff requests that the Court order Defendants to provide, within fourteen days: (i) the full identity and contact information for every attorney, paralegal, and staff member who worked on any aspect of the representation — including the Braverman/PATH matter, the Silver Hill matter, the Buch consolidation, the bankruptcy proceedings, and the appellate work — together with their dates of involvement; and (ii) the identity of the individual associated with the "qraysor" author profile. Plaintiff may seek leave to amend the complaint following custodian discovery, and reserves all rights to do so.

### III. The Production Raises a Serious Question Whether the Client File Was Lost or Reconstructed

Of 3,477 produced documents, nearly half are publicly available court filings, assembled appeal records, legal research, and FOIA materials, many duplicated across multiple folder paths. Genuinely internal ZNC work product — emails, memoranda, drafts, and correspondence — accounts for approximately 8–9% of the production. All 3,477 files were batch-converted to image-only PDFs on May 27, 2026 in a 47-minute window, with no text layer and no authoring metadata preserved.

The production contains 843 substantive emails from 2015–2017. From 2018 through 2021 — covering the Braverman bankruptcy, the appellate proceedings, and Plaintiff's consolidation communications — the production contains four emails total, all Canon scanner transmissions. The years 2018, 2020, and 2021 are entirely absent from the email record.

The absence of those communications cannot be reconciled with the production's own metadata, which establishes that firm personnel continued working on the matter during that period. Nor can it be reconciled with Defendants' position that they have produced the client file as maintained in the ordinary course of business.

No fewer than 125 documents that Plaintiff previously produced to Defendants are absent from Defendants' production. The executed HIPAA authorizations Plaintiff signed — which ZNC used to obtain medical records from providers including Silver Hill — are absent, replaced by 106 blank templates. The 2019–2021 consolidation communications Plaintiff provided to Defendants are absent.

The finding that most directly bears on the integrity of the production is Michael Tone's June 2015 draft OTSC to obtain the prior client file from prior counsel Glen Kendall — marked "DRAFT NOT FILED" (DEFTS047485, DEFTS047585, DEFTS048160). ZNC appears to have taken over Plaintiff's representation without formally obtaining the prior file. The production assembled in its place consists overwhelmingly of publicly available court records, duplicated across folder paths, batch-converted in a 47-minute window without metadata. Whether the actual client file exists — and if not, what happened to it and when — is a question this production raises but does not answer. In the related action, Teman v. MedPro Group Inc., No. 1:26-cv-03517, MedPro's coverage counsel at Rivkin Radler filed a letter on June 1, 2026 stating that the MedPro Defendants are not in possession, custody, or control of the client file. That representation, if accurate, does not resolve the question. It sharpens it: after more than a year of active litigation in this action, with the file at the center of the dispute, no party has identified who possesses it.

Defendants have suggested that Plaintiff failed to cooperate in the collection of responsive materials. The record reflects the opposite. Defendants represented at the meet and confer that they would provide a discovery vendor and HIPAA authorizations for execution, but did neither. At that same meeting, Attorney Cohen removed Plaintiff's Otter.AI transcription application notwithstanding the parties' prior written agreement permitting transcription, leaving Plaintiff without a complete recording of the discussion. Plaintiff instead manually located, exported, and produced at least 125 emails, nearly all of which copied Mr. Virgil, Mr. Prueher, or both. Many of those documents are absent from Defendants' production despite having been provided to Defendants directly.

The production is also notable for what it does not contain. During the relevant period, ZNC attorneys communicated with Plaintiff through Gmail accounts as well as by text message. Yet

the production appears to contain neither Gmail account collections nor text-message collections from the attorneys and staff who worked on the matter. No text messages were produced from Virgil, Prueher, Barrett, Rieger, DaSilva-Fiano, or any other identified custodian, despite the production establishing that those individuals actively worked on the matter. Defendants have not disclosed whether any mobile devices, text-message repositories, Gmail accounts, personal email accounts, cloud repositories, archived mailboxes, or former employee accounts were searched. While Plaintiff cannot reasonably be expected to retain complete text-message records from a decade ago, Defendants are sophisticated legal professionals subject to document-preservation obligations and record-retention practices. The absence of these materials further raises questions regarding the completeness of the collection and the custodians searched. Defendants' production therefore appears to omit not merely isolated documents, but entire categories of communications and repositories that would ordinarily be expected to contain responsive information.

Plaintiff requests that the Court direct: (i) identification of all custodians searched, repositories, and search methodology; (ii) identification of the "qraysor" author profile; (iii) reproduction of all produced documents in native format with metadata intact; (iv) production of the complete client file and the no fewer than 125 documents Plaintiff previously produced to Defendants, on a date certain; and (v) a written explanation of why substantive emails are absent after 2017 and what steps were taken to preserve post-2017 communications.

## IV. Anticipated Amendment and Declaratory Relief

### A. Amendment to Add Silver Hill Malpractice Claims

Plaintiff will move for leave to amend the complaint to add claims arising from ZNC's handling of the Silver Hill matter as part of the Underlying Action. As the production establishes, Silver Hill was not a collateral proceeding but an integral component of the Braverman/PATH representation: ZNC developed expert testimony directed to Silver Hill, ZNC's own case chronology incorporates Silver Hill events, and the operative complaint pleads Plaintiff's admission to Silver Hill as a direct consequence of Braverman's conduct. ZNC's failure to adequately litigate and preserve those claims — including its document handling, custodian management, and case supervision failures — is properly before this Court as part of the malpractice case. Plaintiff requests the Court's guidance on timing for that motion.

### B. Custodian Discovery and Amendment to Add Defendants

Plaintiff intends to seek custodian discovery directed to the nine individuals identified in Section II and to the individual associated with the "qraysor" profile. Plaintiff has separately requested that Defendants' counsel confirm document preservation obligations, insurer notification, and service arrangements for each individual. Plaintiff may seek leave to amend

the complaint to add individual defendants following that discovery and reserves all rights to do so.

**V. Settlement**

The production has narrowed, rather than expanded, the factual disputes in this case. Defendants' own records now establish facts that Plaintiff previously could only allege, including Silver Hill's integration into the Underlying Action, the participation of numerous undisclosed firm personnel, and substantial questions regarding the integrity and completeness of the client file. Plaintiff raises the possibility of global resolution because the production increases, rather than reduces, Defendants' exposure. Plaintiff remains willing to discuss resolution of the related matters, including the action at 1:26-cv-03517, before or at the June 8 conference.

Respectfully submitted,

s/Ari Teman/

Ari Baruch Teman, Plaintiff pro se

1521 Alton Road #888, Miami Beach, FL 33139

ari@teman.com | (212) 203-3714

**cc:** Cristina Yannucci, Esq.; Sam Cohen, Esq., Lewis Brisbois Bisgaard & Smith LLP

Max Gershenoff, Esq.; Amanda Drantch, Esq., Rivkin Radler LLP