

Cristina R. Yannucci
140 Broadway, 30th Floor
New York, New York 10005
Cristina.Yannucci@lewisbrisbois.com
Direct: 212.232.1412

June 4, 2026                                                     File No. 47558.92

**<u>VIA ECF</u>**
Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Room 1620, Courtroom 15C
New York, New York 10007

> Re:  *Ari Baruch Teman v. Zeldes Needle Cooper LLP and Jeremy Virgil*
>       <u>United States District Court, Southern District of New York, Civil Case No. 1:24-cv-09830</u>

Dear Judge Liman:

Our firm represents Defendants in the above-referenced matter. Pursuant to this Court's May 21, 2026 Order (ECF Doc. No. 93), Defendants submit the instant motion "itemizing [Plaintiff's] specific responses" and disclosures that remain "deficient," and respectfully request that this action be dismissed in its entirety with prejudice for Plaintiff's continued failure to meaningfully participate in discovery and failure to adhere to Court Ordered discovery directives.

On May 19, 2026, Defendants' filed a motion to compel Plaintiff to produce sufficient discovery, with conditions that non-compliance would result in dismissal of the action with prejudice and/or preclusion of evidence. (ECF Doc. No. 87). By its May 21, 2026 Order, this Court ordered Plaintiff to remedy his deficient discovery and: (1) "respond to Interrogatory No. 1," including identification of "all relevant treating medical providers and individuals with knowledge of Plaintiff's earnings capacity"; (2) "respond to Interrogatory No. 3 with [identification] of document custodians and a description of the documents in their custody"; (3) "serve amended Rule 26(a)(1) disclosures," including identification of "the attorneys involved in the underlying action, the individuals involved in matters related to *United States v. Teman*, and the medical providers who treated Plaintiff," as well as  "a computation of each category of damages"; (4) "respond to Defendants' First Request[s] for Production of Documents […], responding separately to each item, [and] indicating whether documents will be produced"; (5) serve "responsive documents […] contemporaneously" with the discovery responses; and (6) "serve an itemized privilege log." (ECF Doc. No. 93). Notably, this Court directed that "Plaintiff shall comply with [the May 21, 2026 Order] no later than May 28, 2026" and held that "Plaintiff is expressly put on notice that failure to comply with this Order can give rise to sanctions up to and including directing that certain matters be taken as established, prohibiting Plaintiff from supporting designated claims, striking the complaint in whole or in part, dismissing the action, or holding Plaintiff in contempt." (ECF Doc. No. 93 at p. 2).

One day before Plaintiff's May 28, 2026 discovery deadline, Plaintiff emailed Defendants' counsel and requested "the list of professionals" for which Defendants sought record authorizations. (**Exhibit 1**). Despite having no obligation to do so, Defendants, in a good faith attempt to resolve all disputes, identified: (1) all requests which sought records and/or authorizations; (2) 48 medical providers; (3) 12 business entities; and (4) the attorney who preceded Defendants' representation in the Underlying

June 4, 2026
Page 2

Action.[1] (*Id*.). Defendants emphasized that their identification did "not serve as an exhaustive list" or a "limitation of Defendants' requests," as they "d[id] not have an obligation or ability to identify all [requested] individuals and entities […], as such information is within [Plaintiff's] sole possession." (*Id*.). In response, Plaintiff served: (1) amended responses and disclosures; (2) HIPAA authorizations for the 48 medical providers Defendants identified; (3) an authorization for the legal file maintained by Plaintiff's prior counsel; and (4) a Form 4506-T for the release of his tax returns. (**Exhibit 2**). Plaintiff failed to produce additional records, a privilege log, or any records or authorizations for Plaintiff's businesses. (*Id*.).

By way of the May 21, 2026 Order, the Court also directed the parties to "engage in a meet and confer regarding any responses Defendants deem deficient no later than June 2, 2026." (ECF Doc. No. 93). By May 28, 2026 email, Plaintiff requested the meet and confer to be conducted in writing. (**Exhibit 3**). Defendants agreed to this request (*Id*.), and served Plaintiff with a good faith letter identifying Plaintiff's remaining discovery deficiencies by June 2, 2026 email. (**Exhibit 4**).

In response, by June 3, 2026 email, Plaintiff served: (1) a "Response to Defendants' June 2, 2026 Meet-and-Confer Letter"; (2) revised 4506-T Forms; and (3) a revised authorization for his prior counsel's legal file. (**Exhibit 5**). The revised 4506-T Forms remain deficient, as they: (1) do not contain any SSN, TIN, or EIN; (2) contain a single zigzagged line in lieu of a verifiable electronic signature; (3) only pertain to tax years 2010-2017 (which do not permit adequate assessment of Plaintiff's lost earning claims);[2] and (4) only provide releases for three of Plaintiff's business entities (iNextGenHealth LLC, NextGenCharity LLC and OntoTheWebCom LLC dba 12gurus LLC) but not for the other business entities identified by Defendants and disclosed by Plaintiff himself.[3] (*Id*.). Finally, Plaintiff represented that he served revised HIPAA authorizations, including one for his medical insurer, but failed to produce same. (*Id*.).

Beyond correcting his authorization for the legal file maintained by his prior counsel in the Underlying Action, Plaintiff failed to remedy any of the deficiencies itemized in Defendants' June 2, 2026 good faith correspondence. (**Exhibits 4** and **5**). Notably, in Plaintiff's amended responses and disclosures, he references his original 429 page document production, which was exchanged on April 29, 2026, that consists of 125 PDF documents without metadata. (**Exhibit 2** at p. 17). Plaintiff describes these records as: (1) emails between the parties regarding the Underlying Action (pages 1-236); (2) court filings from the Underlying Action (pages 237-371); and (3) miscellaneous documents (pages 372-429). (*Id*.). Upon review, this production consists of: (1) 90 emails without attachments or complete email chains, which are largely unrelated to the Underlying Action;[4] (2) 27 Court filings from the Underlying Action; (3) 1 filing from unrelated litigation; (4) an undated letter from an individual who speculated as to a possible valuation of 12 Gurus Health/Charity, without reference or citation to Plaintiff's medical or financial records; (5) a September 4, 2012 letter prepared by a psychiatrist for litigation; (6) 1 word document; (7) 3 articles about an underlying defendant from the Underlying Action; and (8) 1 redacted email between Plaintiff and Defendants' counsel in this lawsuit. Despite claiming emails were produced "as maintained" in PDF format (**Exhibit 5** at p. 6), Plaintiff disclosed in his May 8, 2026 discovery responses that his "emails originated" and were "export[ed] directly from Gmail." (**Exhibit 6**).

Today, on June 4, 2026 at 12:11 a.m. EST, one week after the May 28, 2026 deadline, Plaintiff produced 63 additional emails in native format that were admittedly obtained from "Plaintiff's mailboxes,"

---

[1] Plaintiff's legal malpractice claim is "limited to the Underlying Action," defined as *Teman v. Braverman*, Index No. 805410/2014 (Sup. Ct. N.Y. Cnty. 2014). (ECF Doc. No. 70 at p. 2).

[2] Plaintiff's initial but deficient 4506-T forms released returns for tax years 2008-2025.

[3] In the 4506-T Forms, Plaintiff is listed as the "Managing Member" for all business entities, but Plaintiff provided no records for such entities. In his amended disclosures, Plaintiff expressly represented his "lost earnings and business damages include those associated with" (1) 12gurus:Health; (2) 12:gurus:Charity; (3) JCorps; (4) GateGuard; (5) Property Pannel; (6) his Comedy career; (7) speaking, consulting, and financial opportunities; and (8) unspecified "technological ventures." (**Exhibit 2** at p. 15).

[4] Without complete email chains or metadata, Defendants must try to discern to what matter each email pertains. For instance, it appears that (1) only 30 of the emails concern the Underlying Action; (2) 26 emails concern *Silver Hill v. Teman*; (3) 15 emails concern *Buch v. Teman*; (4) 3 emails concerning a Florida litigation Teman commenced against Buch and Reddy; (5) 12 emails have no clear case association; and (6) 4 emails regard GateGaurd and SubletSpy, Plaintiff's businesses.

June 4, 2026
Page 3

without correlation to any of Defendants' requests for production. This production includes: (1) only 10 emails concerning the Underlying Action; (2) 13 emails concerning the Silver Hill litigation; (3) 5 emails not associated with litigation; (4) 11 emails that were not delivered; (5) 5 post-suit emails with and/or regarding service of non-party Jaron Prueher; (6) 1 post-suit email to Nancy Mankulics; (7) 14 emails with Defendants' counsel and/or insurers in this litigation; and (8) 1 email with this Court. Accordingly, Plaintiff's document production remains deficient and largely non-responsive to Defendants' requests.

As pertains to non-document responses, Plaintiff: (1) represented he previously disclosed "Joseph Soleimani, Bonnie Soon-Osberger, Gina Hom, Leon Goldenberg, Abi Goldenberg, and Samuel Taub" as "United States v. Teman witnesses," which he did not;[5] (2) admitted he produced discovery pertaining to litigations not placed at issue; (3) represented that an "Ariel Reintz" is his "former counsel with knowledge of the representation and related strategy" but did not produce responsive documents, information, or an authorization for the release of Plaintiff's legal file for this attorney; (4) identified himself as the custodian of responsive ESI that "is or may be maintained" in numerous "repositories," with "certain responsive materials" existing "only in PDF, TIFF, or image-rendered format" (**Exhibit 2** at p.3) that, upon information and belief, have not been produced; (5) justified his refusal to provide metadata by misrepresenting that "Defendants did not specify a form of production"; (6) admitted he did not provide "specific amounts" for his lost earnings claims; (7) indicated that he will continue to produce responsive documents beyond the May 28, 2026 deadline; (8) refused to produce HIPAA authorizations beyond "the temporal scope of the period" asserted in his "April 28, 2026 proposed discovery limitations"; (9) indicated he "will provide business authorizations" beyond the May 28, 2026 deadline; and (10) represents that "[r]ecords of his ownership and compensation […] are, in substantial part, within materials Defendants maintained" but did not identify or produce same in responding to requests for production. (**Exhibit 5**).

Plaintiff's continued refusal to meaningfully participate in discovery and adhere to the directives prescribed by this Court's May 21, 2026 Order has prejudiced Defendants' ability to prepare their defenses, conduct discovery, and adhere with Court prescribed deadlines. Plaintiff has issued dozens of emails, filed numerous motions in this action, and commenced a second lawsuit, forcing Defendants to incur substantial burden and expense, without Plaintiff producing the most basic discovery responses, disclosures, records, and/or authorizations sufficient to permit Defendants to evaluate Plaintiff's claims of lost earnings and medical injuries. "*Pro se litigants* […] are not immune to dismissal as a sanction for non-compliance with discovery orders […] so long as warning has been given that non-compliance can result in dismissal." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). Because this Court expressly notified Plaintiff that his continued non-compliance could result in dismissal of this action, and Plaintiff remains non-complaint, Defendants request that this action be dismissed with prejudice. Should this Court elect not to dismiss this action, it should, in the alternative, preclude Plaintiff from offering evidence at trial or on motion practice for the matters which discovery was sought by Defendants but not sufficiently responded to by Plaintiff, as identified in Defendants' June 2, 2026 letter, including damages allegedly related to his medical condition and lost earnings. (**Exhibit 4**).

Very truly yours,

/s/ Cristina R. Yannucci, Esq.

Cristina R. Yannucci of
LEWIS BRISBOIS BISGAARD & SMITH LLP

CY/
Enclosures

---

[5] Pursuant to the Court's April 21, 2026 Order (ECF Doc. No. 70 at p. 2), Plaintiff's legal malpractice allegations do not pertain to *United States v. Teman* and are limited to the Underlying Action.

June 4, 2026
Page 4


Cc:     **<u>Via PACER</u>**
ARI TEMAN
*Pro se Plaintiff*
1521 Alton Road, #888
Miami Beach, Florida 33139
Email: ari@teman.com