## Ari B. Teman

Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

June 5, 2026
**VIA ECF**

**Re:** *Teman v. Zeldes Needle Cooper LLP and Jeremy Virgil*, No. 1:24-cv-09830 (LJL) —
Plaintiff's Response to Defendants' June 4, 2026 Letter Motion (ECF No. 104)

Dear Judge Liman:

Plaintiff respectfully responds to Defendants' June 4, 2026 letter (ECF No. 104) seeking dismissal with prejudice or, alternatively, preclusion under Rule 37. The motion should be denied. The discovery posture Defendants describe is one of their own making, and dismissal or sanctions would penalize Plaintiff for the consequences of Defendants' own conduct.

At the parties' very first Zoom conference, Ms. Yannucci asked whether Plaintiff would agree to use the discovery vendor she preferred; Plaintiff agreed on the spot. No discovery vendor has ever been provided to Plaintiff — not then, and not in the months since. Defendants likewise represented that they would furnish a list of the providers and custodians for whom they sought authorizations; their own Exhibit 1 shows that list was sent at 3:10 p.m. Eastern on May 28, 2026 — 10:10 p.m. in Plaintiff's time zone — the deadline day itself. (ECF No. 104-1.) Defendants had represented Plaintiff in both the Braverman and Silver Hill matters and already possessed many of the very authorizations and medical records they now claim were missing, which is why Plaintiff requested that they identify the specific providers for whom additional authorizations were actually needed. For months, Defendants made no substantive document production of their own in a case concerning a representation that began more than twelve years ago. Defendants withheld the infrastructure they proposed, the list they promised, and the production they owed — then moved to dismiss a pro se litigant for imperfections in materials he assembled in the hours that remained.

The parties' obligations also run opposite to how Defendants frame them. No client of a medical-malpractice action maintains twelve years of records in anticipation that his own counsel will allow the case to be dismissed for failure to prosecute without notice. It is the law firm that bears the professional obligation to retain, maintain, and back up the client file and to provide it on request — not the client's burden to sue his former lawyers to recover his own property. Plaintiff requested his file repeatedly for over a year; Defendants' own letter concedes months of such requests. Even after this Court observed the file is Plaintiff's property and recovering it would require a separate proceeding, Defendants could simply have turned it over; they did not, and Plaintiff commenced that proceeding to obtain the very file containing the documents and custodian information Defendants now fault him for not producing.

### I. Plaintiff Substantially Complied With Each Directive of the May 21, 2026 Order

Defendants' own exhibits establish compliance. Their Exhibit 6 shows that on May 8, 2026 — two weeks before the Court's Order — Plaintiff served amended and supplemental discovery responses, Rule 26 disclosures, a damages computation, and a supplemental production. (ECF No. 104-6.) Plaintiff then served amended Interrogatory responses, Rule 26(a)(1) disclosures, and item-by-item Rule 34 responses by the May 28 deadline. (ECF No. 104-2.)

**Damages computation.** Defendants' assertion that Plaintiff provided "no specific amounts" is refuted by their own filing. Part IV of Plaintiff's amended disclosures, "Preliminary Computation of Damages," sets forth the lost-recovery computation on a neutral broad-market index ($5,000,000 invested in 2017 exceeding approximately $16.35 million today), the $1,500,000 Braverman-only insurance figure identified by Defendant Virgil himself in an April 3, 2018 email — cited by Bates number, and only one of the multiple policies that email identified — grown to approximately $5.25 million, and itemized out-of-pocket amounts. (ECF No. 104-2 at

1

16–18.) The expert valuation of Jay Weintraub — who has sold five events for over $100 million combined — opining that 12 Gurus Health would likely have reached a $20–30 million enterprise value, was served on Defendants' counsel on April 7, 2025, more than fourteen months ago, via a transmittal noting ZNC itself had approved this expert. (Exhibits D, E.) The index computation was served March 15, 2026. (Exhibit A.) Defendants' motion describes the Weintraub letter (as "an undated letter from an individual") while telling the Court no computation exists; both cannot be true. Plaintiff reserves all rights regarding these representations.

**Authorizations and privilege log.** Plaintiff executed HIPAA authorizations on official New York OCA Form 960 — including mental-health, alcohol/drug, and HIV-related releases — for all forty-eight providers Defendants identified, plus his medical insurer, an authorization for prior counsel's file, and tax authorizations; revised forms with full identifiers were served June 5, 2026 (Exhibit C). No privilege log is required: Plaintiff withholds no document on privilege grounds. Privileged communications from the underlying representation are held by Defendants — Plaintiff's former counsel and parties to those communications — and any privilege as to that representation is waived by Plaintiff's malpractice claims.

## II.  The Items Defendants Identify Are Administrative, Curable, and Largely Cured

Timing frames every item below. Plaintiff asked on May 27 which providers were actually at issue; the list arrived the next day at 3:10 p.m. Eastern — 10:10 p.m. Plaintiff's time, on the deadline day. (ECF No. 104-1.) Plaintiff generated the HIPAA authorizations immediately upon receipt, re-executed them with his signature and identifiers, and served full-identifier versions on June 5 (Exhibit C). The pattern continued: Defendants' June 2 meet-and-confer letter went out at approximately 10:39 p.m. Eastern — 5:39 a.m. Plaintiff's time — demanding he address approximately eighty itemized points across twenty-three pages within twenty-four hours; Plaintiff objected in writing yet responded the next day (Exhibit C). In short: Defendants seek dismissal because forms generated within hours of receiving their provider list needed revision. Those same forms have been revised. The alleged deficiency existed for days, not months — and was cured before the Court ruled. Rule 37 does not authorize dismissal for correctable imperfections produced under such conditions.

**Tax authorizations.** Plaintiff's emailed authorizations bore the last four digits of his Social Security number, a standard security practice for emailed documents. On June 5, 2026 Plaintiff mooted the point, serving revised 4506-T and HIPAA forms with his full Social Security number and EINs where known (Exhibit C); for one long-inactive entity (NextGen Wellbeing a/k/a NextGen Health LLC) no EIN could be located after diligent search, and the IRS can locate it from the name and address provided.

**Signature.** The mark Defendants call a "zigzagged line" is Plaintiff's genuine signature — a stylized "A" flowing into a "T," for Ari Teman — used for years on contracts, on file with his bank, and visible on hundreds of artworks long published on Instagram, Pinterest, and Plaintiff's websites. A signature need not be legible; Plaintiff will re-execute any form on request.

**Business entities.** Plaintiff provided authorizations for entities with records and will supplement as to any entity Defendants specifically identify. JCorps is a dormant volunteer nonprofit with no paid staff, inactive since Plaintiff's illness and below the Form 990-EZ filing threshold; no entity records exist. It figures in damages only as the platform whose loss cost Plaintiff personally paid speaking and performance engagements — income in his personal records and tax returns, which the authorizations reach.

**Format and scope of production.** After Defendants objected to PDF format, Plaintiff investigated native export and on June 3–4, 2026 produced sixty-three emails in native .eml format with original headers, metadata, and attachments intact (Exhibit B). Defendants cite a "12:11 a.m." service time; in fact it was 7:11 a.m. in Plaintiff's time zone, after he worked through the night assembling and indexing the native exports — diligence, not stealth. The production responded directly to Defendants' objection and, per Rule 26(e), included messages located by searching names Defendants disclosed only after Plaintiff's initial production. As to scope: documents

concerning Silver Hill are responsive because Zeldes treated the Braverman and Silver Hill matters as a single engagement — they began as one Connecticut action, divided only because of the New York defendants' locations — and Defendants' own production reflects the matters being handled together. Defendants cannot withhold the file documenting that intertwining and simultaneously rely on its absence to recast related matters as unrelated. Plaintiff has asked Defendants to re-produce their own 3,477 documents — flattened, image-only PDFs without searchable text, metadata, or custodian fields — in native form.

### III.  Dismissal Is Disproportionate: No Willfulness, No Prejudice

Dismissal under Rule 37 is an extreme sanction reserved for willful, bad-faith noncompliance causing genuine prejudice; *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009), permits dismissal of a pro se litigant only after warning and for sustained defiance. Defendants' own exhibits show the opposite: a plaintiff serving responses and a damages computation before the Court's Order (Ex. 6), amended disclosures and authorizations by the deadline (Ex. 2), further cures upon request (Ex. 5), and native-format supplementation (Ex. 7) — responding, producing, revising, and curing at every step. They depict a dispute over formats, identifiers, and date ranges: ordinary discovery issues, not defiance. Nor can Defendants claim prejudice from the burden of the separate file action: had they complied with their obligation to surrender Plaintiff's property at any point over the past year, that proceeding would not exist. A burden entirely of Defendants' own making is not prejudice.

Proportionality is decisive on the one point genuinely outstanding. The underlying litigation began in 2014, on email systems Plaintiff no longer maintains; no litigant can reconstruct from memory every person involved in a twelve-year-old matter. Plaintiff previously advised both Defendants and the Court that identification of custodians and responsive materials would necessarily improve once Defendants produced the client file, which contains the contemporaneous correspondence identifying the participants, attorneys, experts, and providers. A former client's right to that file arises from the attorney-client relationship itself. *See Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP*, 91 N.Y.2d 30 (1997); Conn. R. Prof'l Conduct 1.16(d). Defendants cannot withhold Plaintiff's file and simultaneously move to dismiss him for failing to produce information that resides within it. Sanctions would reward the party whose unkept commitments and withheld file created these conditions, and punish the party who worked to comply despite them.

Plaintiff respectfully requests that the Court deny Defendants' request for dismissal and preclusion. The items Defendants identify are administrative and, where applicable, cured by the authorizations already served (Exhibit C). Should any item require further supplementation, Plaintiff requests a short period to cure, and asks that the parties be directed to continue addressing outstanding discovery, including Defendants' production deficiencies and Plaintiff's long-pending request for his complete client file. Finally, as the record reflects, late-evening Eastern transmissions reach Plaintiff — seven hours ahead — in the middle of the night, leaving him responding at 5:39 a.m. or working overnight. Plaintiff respectfully requests that, going forward, he be afforded at minimum forty-eight hours from receipt to respond to any motion or deadline-bearing demand.

Respectfully submitted,

/s/ Ari Teman

Ari Teman, Plaintiff Pro Se | ari@teman.com

**Enclosures:**

Exhibit A (March 15, 2026 Present-Value of Delayed Recovery Analysis)

Exhibit B (June 3–4, 2026 Native .eml Production Cover Letter and Index)

Exhibit C (June 3 and 5, 2026 Service Emails, Revised 4506-T and HIPAA Authorizations)

Exhibit D (April 7, 2025 Email Transmitting Expert Valuation Letter to Defense Counsel)

Exhibit E (Expert Valuation Letter of Jay Weintraub, Connectiv Holdings)

cc:  Counsel of record, Lewis Brisbois Bisgaard & Smith LLP (via ECF)