# Ari B. Teman

ari@teman.com

June 28, 2026

**VIA ECF**

Hon. Lewis J. Liman

United States District Court
Southern District of New York
500 Pearl Street, New York, NY 10007

**Re:**  *Teman v. Zeldes Needle & Cooper LLP, et al.*, No. 1:24-cv-09830 (LJL)

**Plaintiff's Letter-Motion Concerning Client-File Production and the Integrated Braverman/Silver Hill Representation**

Dear Judge Liman:

Plaintiff respectfully submits this letter-motion pursuant to the Court's June 8, 2026 Order (ECF No. 106), which granted Plaintiff leave to raise issues concerning his client file following Defendants' response. Defendants responded by letter dated June 22, 2026 (Ex. 2), and Plaintiff replied on June 23, 2026 (Ex. 3). Two issues are ripe: (1) Defendants have produced no portion of the client file, and the circumstances of a collection assembled only after Plaintiff's request warrant clarification; and (2) Defendants continue to treat "Silver Hill" materials as outside the representation, a position their own documents contradict.

Plaintiff has complied with the Court's June 8 Order to the best of his ability. He timely served responses to the compelled Requests for Production, produced 158 documents totaling 8,008 pages, and provided the updated authorizations the Court directed—non-date-limited HIPAA authorizations, IRS tax authorizations, and an authorization for the file of prior counsel (Glen Alan Kendall / Davidoff Law Firm). The Underlying Action dates to 2014; for events in the years preceding it, Plaintiff has limited materials and no longer has access to older email accounts, and many such records are in Defendants' possession within the client file. Yet Defendants have produced no part of the client file, instead proposing additional steps and expense—vendor processing, format conversion, and Bates-stamping—that would strip the native-file metadata Plaintiff requested and the Court's Order contemplates. Many of the authorizations and records Defendants pressed Plaintiff to provide concern materials already in Defendants' possession as part of the client file, which bears on the cost and delay now at issue.

## I. No Client File Has Been Produced; A ~21 GB Collection Was Disclosed Only Now.

As of this filing, Defendants have produced no part of Plaintiff's client file. Their June 22 letter states that an eDiscovery vendor ingested approximately 21.1874 GB of data and exported approximately 20.5501 GB for processing into Plaintiff's "entire client file." Defendants previously made representations concerning the completeness of their production. The June 22 letter indicates that the client-file collection was assembled only after Plaintiff requested production. Plaintiff therefore seeks clarification regarding how prior representations concerning the completeness of production were made before that collection was assembled.

Plaintiff respectfully requests that Defendants be directed to explain the timing, sources, custodians, and scope of that collection—including, by custodian and source repository, the approximate volume comprising it; to identify the vendor; to confirm whether the accounts jvirgil.znc@gmail.com and prueher76@gmail.com were collected and searched; and to produce chain-of-custody and collection logs. If Defendants contend that the collection contains no client-file or responsive materials beyond what was previously produced, they should so state and identify the repositories and custodians comprising the collection. If, however, the collection contains client-file or responsive materials not previously searched or produced, Plaintiff is entitled to know when those repositories were identified and why they were not reflected in Defendants' earlier representations concerning completeness. Plaintiff further requests that the Court direct immediate rolling production of native files with metadata, without awaiting resolution of any cost dispute.

## II. Defendants' Own Documents Establish a Single, Integrated Braverman/Silver Hill Representation.

# Ari B. Teman

ari@teman.com

Defendants withhold and redact materials on the theory that they concern only "Silver Hill," a matter assertedly separate from the underlying Braverman/PATH action. Defendants' own production refutes that theory and shows the two were handled as one continuum of facts, causation, damages, expert proof, and strategy. The integrated scope also extends to the Buch matter: on September 11, 2018, Plaintiff emailed Mr. Virgil at his ZNC address, copying jvirgil.znc@gmail.com, to request ZNC's analysis of potential claims involving PATH, Buch, and Reddy (Ex. 1).

First, in screening medical experts, counsel evaluated candidates by their willingness to testify against Silver Hill. In a January 2017 exchange (DEFTS035404–05), Mr. Prueher advised that one expert would not testify against Silver Hill because he referred patients there. When Plaintiff asked whether the other candidates were "willing to go against Silver Hill," Mr. Prueher answered that they were not, but that they "believe that there may be a deviation by the PATH treaters." Had Silver Hill been unrelated, there would have been no reason to screen Braverman/PATH experts on their willingness to testify against Silver Hill.

Second, Mr. Prueher's expert-outreach materials are captioned "Legal/medical case involving Dr. Eric Braverman and Silver Hill Hospital" (DEFTS038188), and the accompanying chronology (DEFTS038187) weaves Braverman's treatment, the Silver Hill admission, the sleep-study evidence, and the resulting injuries into a single narrative. Third, Defendants' own draft complaint alleges that Plaintiff was admitted to Silver Hill "[a]s per the instructions of Dr. Braverman" (DEFTS051443 ¶ 64). Fourth, the affidavit of service for the litigation was titled "AOS – silver hill and braverman.pdf" (DEFTS033530).

These are not stray references; they are consistent instances of Defendants themselves treating Braverman and Silver Hill as one representation. Because Silver Hill treatment was ordered by the Braverman defendants and was integral to the expert and damages proof, client-file materials concerning Silver Hill necessarily overlap with the underlying matter Defendants have called complete. Defendants cannot rely on that integrated approach to conduct the representation while asking the Court to treat Silver Hill materials as categorically unrelated for discovery.

## III. Relief Requested.

Plaintiff respectfully requests that the Court: (a) direct Defendants to produce the native client file with metadata—which, by their own account, their eDiscovery vendor has already collected and exported—by delivering it through a password-protected shared folder, or a shared folder containing a password-protected archive, no later than 12:00 p.m. on Wednesday, July 1, 2026, with production proceeding on a rolling basis to the extent any portion is not yet available, and without awaiting resolution of any cost dispute; (b) direct Defendants to explain the timing, sources, custodians, and scope of the collection described in their June 22 letter, including as to jvirgil.znc@gmail.com and prueher76@gmail.com; and (c) find, for purposes of discovery and client-file production, that materials concerning Silver Hill fall within the scope of the representation and may not be withheld or redacted solely because Defendants characterize them as a separate matter. Once Plaintiff has the file and can review it, he will be able to address which materials should have been produced earlier, narrowing or resolving the remaining questions.

Absent such relief, Defendants will continue withholding or redacting portions of Plaintiff's own client file based upon a distinction their contemporaneous documents repeatedly contradict.

Pursuant to the Court's Individual Practices, Plaintiff certifies that he has in good faith conferred and attempted to confer with Defendants, including by letter dated June 23, 2026, and the parties remain at an impasse.

Respectfully submitted,

/s/ Ari B. Teman
Ari B. Teman
Plaintiff, Pro Se
ari@teman.com

cc:  Cristina R. Yannucci, Esq. (via ECF)

2