# EXHIBIT 1

September 11, 2018 Email from Ari Teman to Jeremy Virgil (ZNC), copied
to jvirgil.znc@gmail.com

*Requesting ZNC's legal analysis regarding potential claims involving PATH, Buch,
and Reddy.*

Teman v. Zeldes Needle & Cooper LLP, No. 1:24-cv-09830 (LJL)

 

# Please look at Buch's Facebook Post

1 message

**Ari Teman** <ari@teman.com>                                                    Tue, Sep 11, 2018 at 3:58 PM
To: Jeremy Virgil <jvirgil@znclaw.com>
Cc: Jeremy Virgil <jvirgil.znc@gmail.com>, Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>

Can you please take a look and see if you feel there's enough for a new claim against PATH / Buch / Reddy / etc ?

The argument would be this: He took private information from PATH sessions with me & Reddy and broadcast it publicly violating HIPAA (using information he'd only have from those sessions). Additionally, I think a shrink bashing their patient publicly, their looks, attitudes, and behaviors likely crosses the line for intentional infliction, etc.

I want to get Reddy back into a suit and Buch defending himself because they will turn on Braverman AND I think they'll turn on the insurance companies and drug companies giving him samples, etc.

The money is in the companies, not Braverman (who's hidden it by now I'm sure), but the best way to max their payments is to get Buch and/or Reddy to say they knew 100% what was going on and enabled it and therefore we claim we discovered their knowledge of it now and sue them (the insurance companies).

Ari

# EXHIBIT 2

Defendants' June 22, 2026 Letter Responding to Plaintiff's Client-File
Request

*Lewis Brisbois Bisgaard & Smith LLP (C. Yannucci).*



Cristina R. Yannucci
140 Broadway, Suite 3100
New York, New York 10005
Cristina.Yannucci@lewisbrisbois.com
Direct: 212.232.1412

June 22, 2026

File No. 47558.92

**VIA EMAIL**
ARI TEMAN
1521 Alton Road, #888
Miami Beach, Florida 33139
Email: ari@teman.com

Re:    *Ari Baruch Teman v. Zeldes Needle Cooper LLP and Jeremy Virgil*
United States District Court, Southern District of New York, Case No. 1:24-cv-09830

Dear Mr. Teman:

Pursuant to the Court's June 9, 2026 Order, please allow this to confirm that we are in receipt of your letter, served by email on June 8, 2026 and June 18, 2026. Therein, you request production of your "full client file [….] for any and all matters relating to [you], [your] entities, and entities related to [you] […] includ[ing] but not limited to, the Silver Hill cases (all), the Braverman/PATH cases (all, in both Connecticut and New York), Buch, and United States v. Teman," and "documents not related to any particular case but concerning [you] or [your] entities." Kindly allow this letter to respond to your request in accordance with the Court's June 9, 2026 Order.

Zeldes, Needle & Cooper, P.C. ("ZNC") only provided you with legal representation in two litigations, namely: (1) *Ari Teman v. Eric Braverman, M.D., Richard Smayda, D.O., Sandip Buch, M.D., Path Medical, P.C., Darya Braverman, and Total Health Nutrients*, Supreme Court of the State of New York, County of New York, Index No. 805410/2014 ("Path/Braverman Action"); and (2) *Silver Hill Hospital, Inc. v. Ari Teman*, Supreme Court of the State of Connecticut, Stamford/Norwalk Judicial District, Case No. FST-CV14-6022274-S ("Silver Hill Action"). The scope of ZNC's retention and legal representation is reflected in the governing May 4, 2025 retainer agreement, a copy of which is annexed as **Exhibit A**. Therein, you "agree[d] to employ [ZNC] to represent [you] in [your] claim for personal injuries […] against Silver Hill Hospital, Inc. in the Superior Court of Connecticut and Eric Braverman, M.D.; Richard Smayda, D.O.; Sandip Buch, M.D.; Anupama Reddy, M.D.; Path Medical, P.C.; Darya Braverman, and Total Health Nutrients in the Supreme Court of the State of New York."

In your letter, you request "the files as maintained in the ordinary course of business" for (1) "related matters" to "Teman v. Braverman/PATH"; (2) "Silver Hill Matters, including […] related proceedings, investigations, and communications"; (3) "Buch v. Teman"; (4) "United States v. Teman"; (5) "[a]ny other matters in which ZNC represented, advised, communicated with,

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA
MARYLAND •MASSACHUSETTS • MINNESOTA • MISSISSIPPI • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA
OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TENNESSEE • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA

178496738.1

June 22, 2026
Page 2

investigated, maintained records concerning, or […] relating to [you]"; and (6) matters "not related to any particular case but concerning [you] or [your] entities." However, ZNC never represented you in any legal matter or proceeding beyond the PATH/Braverman and Silver Hill Actions.

Reference is made to **Exhibit B** relative to the matter styled, *Dr. Sandip Buch v. Arie Teman*, New York State Supreme Court, County of New York, Index No. 157336/2018. ZNC never appeared or made filings on your behalf in said action. Reference is also made to **Exhibit C** relative to the matter styled *United States of America v. Ari Teman*, United States District Court, Southern District of New York, Case No. 1:29-cr-0696-PAE. ZNC never appeared or made filings on your behalf in said action. Accordingly, ZNC will produce records maintained in the ordinary course of business as part of its legal representation of you in the PATH/Braverman and Silver Hill Actions.

In your letter, you acknowledge that your "request [is] for [your] client files and client property" and "is not a discovery request" governed by litigation discovery. Despite this acknowledgement, you assert burdensome and unreasonable demands which go beyond ZNC's obligations to you as your former counsel. Specifically, you request, "without limitation," (1) "documents maintained by "any current or former attorneys, paralegals, assistants, contractors, litigation-support personnel, records custodians, or other firm personnel who worked on, possessed, maintained, received, transmitted, reviewed, or stored materials"; (2) "[c]onflict-check records"; (3) "[c]ommunicaitons with […] insurers, and [unspecified] third parties; (4) all "materials maintained in or transmitted through Gmail, Outlook, Exchange, Microsoft 365, SMS, MMS, iMessage, WhatsApp, Signal, Slack, Microsoft Teams, Zoho, case-management systems, docketing systems, document-management systems, cloud-storage systems, backup systems, and any other repository used in connection with [your] matters"; and (5) documents "in the possession, custody, or control of former employees of any kind, including attorneys, paralegals, and staff, who worked on or had access to materials relating to [your] representation," including "any matter-related communications, notes, records, logs, archives, or other materials created, maintained, accessed, reviewed, or transmitted in connection with [your] representation." In addition, you improperly request that ZNC go beyond producing your client files, and independently identify in writing (1) "each current or former attorney, paralegal, assistant, records custodian, contractor, vendor, consultant, or other individual believed to possess, have possessed, or have had access to any portion of my client files"; (2) "[e]ach repository searched" and "not searched; (3) "[e]ach custodian whose files were searched" and "not searched"; (4) "[a]ny category of material that Defendants contend is not part of the client file" (although this request is directed solely at ZNC outside its capacity as a defendant in litigation); and (5) "[a]ny category of material that has been deleted, lost, destroyed, archived, or is otherwise unavailable."

New York Rule of Professional Conduct 1.15(d)(3) permits client file records to be maintained and furnished as "photocopies, microfilm, optical imaging, and any other medium that preserves an image of the document." Moreover, NYSBA CPE Opinion 1142 (January 5, 2018) provides that "except where original documents have particular evidentiary or similar value, a lawyer is not required to maintain the client file in any particular form. N.Y. State 940 ¶ 12 (2012) (except for 'documents such as wills, deeds, contracts, and promissory notes' or other documents whose legal effect or evidentiary value may be impaired by destroying originals, 'the Rules permit electronic copies to be kept in lieu of paper 1 originals')." Opinion 1142 further provides that "the lawyer must take reasonable measures to deliver the electronic documents in a form in which the client can access

178496738.1

June 22, 2026
Page 3

them." Accordingly, ZNC agrees to produce the records it maintained in the ordinary course of business as part of its legal representation of you in the PATH/Braverman and Silver Hill Actions, with the exception of those that are not required to be produced in accordance with governing rules, as follows: (1) production of your entire client file, with reproduction of all records previously produced in discovery, as requested; (2) production of your entire client file in native format as maintained by ZNC in the ordinary course of business, with the exception of documents that require redaction on the basis of attorney-client privilege (i.e., if certain documents reference other legal clients), as requested; (3) a second production of your entire client file in PDF format with Bates numbering, so that the content of your client file can be tracked and identified; and (4) all documents being produced through a shared repository link reasonably accessible.

Finally, pursuant to this Court's June 9, 2026 Order, "Defendants shall respond [to your letter] by June 22, 2026 indicating the cost for production of the documents" contained within your client file. (ECF Doc No. 106). Opinion 2010-1 provides that "[a] lawyer may charge the client 'customary fee schedules' for gathering and producing records to a client," and that same has been applied "to e-data retrieval and production, finding that the reasonableness of such fees will depend on the circumstances, including the need for engaging third parties to assist in the work and the accessibility of the e-data."

ZNC employed substantial effort in assembling, consolidating, scanning, processing, and transmitting both your physical and electronic files, as you requested all documents be produced in electronic format. ZNC requests payment for incurred and anticipated eDiscovery vendor costs. To date, the following costs have been incurred: (1) ESI processing data ingestion: $529.69 (for 21.1874 GB of data at a rate of $25.00 per GB); (2) ESI processing data export to hosting/production platform: $1,849.51 (for 20.5501 GB at a rate of $90.00 per GB);[1] and (3) preliminary project management billable hours recorded by the eDiscovery vendor: $675 (3 hours for ingestion of native and scanned files produced by ZNC, processing of received documents to upload to hosting/production platform, etc. at a rate of $225 per hour). ZNC will not request hosting charges, and ZNC's eDiscovery vendor has agreed to waive the following costs: (1) $150 per GB outgoing production costs;[2] (2) administration billable hourly production management costs. ZNC's eDiscovery vendor has estimated that producing your entire client file will require an additional 5 to 6 hours of project management time at a rate of $225 per hour, with estimated costs in the range of $1,125 to $1,350.

In light of the aforementioned, ZNC's production costs are estimated to be in the range of **$4,179.20 to $4,404.20**. Kindly advise if you agree to ZNC's proposed production specifications, and if you agree to pay for the production costs incurred by ZNC's retained eDiscovery vendor. As per your request, if you agree to ZNC's proposed production specifications, but dispute or refuse to pay production costs, ZNC will produce your client files prior to resolution of said dispute, which may require judicial intervention, including but not limited to the conditions set by the Court's June 9, 2026

---

[1] No deduplication or removal of files occurred. Rather, the file size reduced due to extracted text and metadata being hosted into a load file format on the hosting/production platform.

[2] For context, ZNC's initial discovery production, including imaged documents, amounted to approximately 16.8GB.

June 22, 2026
Page 4

Order: "The Court reserve[d] judgment on whether  [you] must pay for production of the client file." (EF Doc. No. 106, pp. 2-3).

Very truly yours,

/s/ Cristina R. Yannucci, Esq.

Cristina R. Yannucci of
LEWIS BRISBOIS BISGAARD & SMITH LLP

CRY
/Enclosure

# EXHIBIT 3

Plaintiff's June 23, 2026 Letter Reply Regarding the Client File

*Addressing scope (Buch / United States v. Teman), the ~21.1874 GB collection, and production costs.*

Teman v. Zeldes Needle & Cooper LLP, No. 1:24-cv-09830 (LJL)

# Ari B. Teman

ari@teman.com

June 23, 2026

**VIA EMAIL**

Cristina R. Yannucci, Esq.

Lewis Brisbois Bisgaard & Smith LLP

140 Broadway, Suite 3100

New York, New York 10005

**Re:** *Teman v. Zeldes Needle & Cooper LLP, et al., No. 1:24-cv-09830 (LJL) (S.D.N.Y.)*

Ms. Yannucci:

I am in receipt of your June 22, 2026 letter responding to my client-file request pursuant to the Court's June 9, 2026 Order. I accept ZNC's proposed production specifications, namely production of my entire client file in native format as maintained in the ordinary course of business, with metadata intact, including reproduction of all records previously produced in discovery, delivered through a shared repository. On that basis, production should commence immediately and proceed on a rolling basis. As your letter acknowledges, and consistent with the Court's June 9, 2026 Order, any dispute concerning cost does not delay production, and I ask that production begin without waiting for the cost issue to be resolved.

I write to address three points: (1) the scope of the file, as to the Buch and United States v. Teman matters; (2) the recently disclosed collection of approximately 21.1874 GB of data and its bearing on prior completeness representations; and (3) the proposed production costs.

## I. The Buch and United States v. Teman Materials Are Part of My Client File.

Your letter takes the position that materials relating to Dr. Sandip Buch v. Teman and United States v. Teman fall outside my client file because ZNC "never appeared or made filings" in those actions. Whether ZNC entered an appearance is not the test. The client file consists of the materials ZNC created, received, maintained, or possessed in the course of representing me. ZNC's own conduct, not the caption of a docket, defines that scope.

As to Buch: ZNC attorneys communicated regarding the Buch matter and provided advice concerning the Buch matter. Attached as Exhibit 1 is a September 11, 2018 email I sent to Jeremy Virgil at his ZNC email address (jvirgil@znclaw.com), copied to jvirgil.znc@gmail.com, expressly requesting Mr. Virgil's legal analysis regarding potential claims involving PATH, Buch, and Reddy and discussing litigation strategy as to those claims. ZNC also advised on consolidating the Buch matter with the PATH/Braverman action and on the timing of the Buch matter relative to the criminal proceedings in United States v. Teman. These are representation activities concerning Buch. The resulting communications, notes, drafts, and related materials reside in repositories controlled by ZNC and Mr. Virgil, and they are part of my client file regardless of whether ZNC formally appeared in the Buch action.

The September 11, 2018 email is particularly significant because it was copied to jvirgil.znc@gmail.com. Accordingly, ZNC cannot reasonably contend that Buch-related records were confined to a matter in which it did not appear, nor can it reasonably exclude jvirgil.znc@gmail.com from any collection, search, or production effort concerning my client file. If jvirgil.znc@gmail.com was not collected and searched, please explain why. Similarly, please confirm whether materials maintained in prueher76@gmail.com were collected and searched, and whether ZNC contends that materials maintained in that account fall outside my client file.

As to United States v. Teman: ZNC, as my civil counsel, coordinated with my criminal defense counsel, Justin Gelfand, Esq., and Joseph DiRuzzo, Esq., regarding overlapping facts common to my civil matters and the criminal proceeding, and regarding the sequencing of the civil matters relative to the criminal trial. ZNC's communications with me and with Messrs. Gelfand and DiRuzzo concerning those matters, and any related materials, were generated in the course of ZNC's representation of me and concern me directly. They are part of my client file regardless of whether ZNC appeared in the criminal action.

Accordingly, the client-file production should include all Buch-related and United States v. Teman-related materials within ZNC's possession, custody, or control, including those maintained by Mr. Virgil and any other custodian. To the extent ZNC contends any such category is not part of the file, please identify the category and the specific basis for that position so the issue can be presented to the Court if necessary.

## II. The 21.1874 GB Collection and Prior Completeness Representations.

Your letter states that an eDiscovery vendor has ingested approximately 21.1874 GB of data and exported approximately 20.5501 GB to a production platform, and that ZNC is now processing this data to produce my "entire client file." ZNC previously represented that responsive materials and my client file had been produced. The chronology described in your letter is difficult to reconcile with those prior representations concerning completeness, because the collection and processing of 21.1874 GB of data ordinarily precedes, rather than follows, a determination that a production is complete. The June 22 letter appears to describe the creation of a client-file collection now, rather than the production of a client file that had already been identified, maintained, and produced. To understand how the prior representations relate to a 21 GB collection only now being processed, please provide the following:

1. Identify the eDiscovery vendor, the project manager assigned, every individual who collected, processed, exported, hosted, reviewed, or otherwise handled my data, the date the vendor was retained, and the date it first received data relating to me.

2. Identify each source repository contributing to the collection and the approximate volume drawn from each.

3. Identify every custodian whose data was included in the 21.1874 GB collection and the approximate volume collected from each custodian.

4. Confirm whether each of the following was searched, collected, and included in the collection: jvirgil.znc@gmail.com; prueher76@gmail.com; Jeremy Virgil's firm email accounts; Jason Prueher's firm email accounts; PST/OST archives for each; shared drives; cloud-storage repositories; document-management systems; and archived repositories.

5. Produce the vendor's chain-of-custody logs, collection logs, processing reports, exception reports, export reports, and custodian/source-repository reports relating to my files.

6. State whether, at the time ZNC made prior discovery responses, document productions, certifications, or representations concerning the completeness of production, the 21.1874 GB collection had been identified, collected, processed, searched, and reviewed; and if not, explain how ZNC determined that its prior representations regarding completeness were accurate before this collection was identified and processed.

7. When prior discovery responses, productions, certifications, and completeness representations were made, had the data now comprising the 21.1874 GB collection been collected? If not, identify which representations were made before that data was collected.

8. Identify the date on which each repository listed in Paragraph 4 was first identified as a source of potentially responsive information, and the date on which each such repository was first collected.

I also request immediate production of all native files already collected and maintained in the ordinary course of business, together with associated metadata, through the shared repository, without waiting for completion of additional imaging, hosting, Bates-stamping, or export procedures.

## III. Production Costs.

I dispute the proposed production costs of approximately $4,179.20 to $4,404.20. This is a return of my own client file and client property, not a litigation production. ZNC already possesses these files and, by your own description, maintains them in native form in the ordinary course of business. Returning them requires only that ZNC copy the existing native files, with their metadata, into a secure, password-protected shared folder.

That can be accomplished using a standard corporate Google Drive, Box, SharePoint, or Dropbox folder, at a cost well under $100. It does not require an eDiscovery vendor, per-gigabyte ingestion or export fees, a hosted review or production platform, load files, or Bates-stamping. I did not request a litigation-style production; I requested my native files with metadata. The per-GB vendor charges, hosting/export apparatus, and Bates production reflected in your letter are the product of a method ZNC elected, not a method this request required.

To the extent ZNC nevertheless elected to route a client-file return through an eDiscovery vendor, or to the extent costs arise from ZNC having to assemble or reconstruct materials it should already maintain in the ordinary course, those are costs occasioned by ZNC's own choices and circumstances, not by my request, and they are not properly charged to me. As your letter recognizes, the Court reserved judgment on whether I must pay for production of the client file, and ZNC has committed to produce prior to resolution of any cost dispute. I reserve all rights on the cost question and intend to be heard on it before the Court if it is not resolved.

Please confirm that production will commence immediately on a rolling basis through a secure, password-protected shared folder as described above, and please respond to the scope and collection questions set out in Parts I and II.

Very truly yours,

Ari Teman

Case 1:24-cv-09830-LJL    Document 111-1    Filed 06/28/26    Page 12 of 12