USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/20/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARI TEMAN,

Plaintiff,

-v-

ZELDES NEEDLE COOPER, LLP, et al.,

Defendants.

24-cv-9830 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendants Zeldes Needle Cooper, LLP and Jeremy Virgil ("Defendants") move for an order establishing Defendants' deposition priority and compelling Plaintiff Ari Teman ("Plaintiff" or "Teman") to appear for an in-person deposition in this District or otherwise face dismissal of his case. Dkt. No. 117. Plaintiff opposes Defendants' motion and asks that the Court allow his deposition to be taken remotely. Dkt No. 119. Plaintiff also moves for an order (i) allowing him to take Defendants' depositions remotely; (ii) directing the Clerk of Court to confirm any mailing sent to him and to send signed Rule 45 subpoenas to him by email or tracked mail; and (iii) granting partial judgment in his favor or, alternatively, leave for him to file an early summary judgment motion. *Id.* Defendants replied, and Plaintiff filed an additional response without the authorization of the Court. Dkt. Nos. 122, 123. For the reasons that follow, Defendants' motion is granted in part and denied in part, and Plaintiff's motion is granted in part and denied in part.

## I. Deposition Priority

The Court grants Defendants' motion to depose Plaintiff first. Defendants were the first party to serve notice of a deposition, and Plaintiff consents to being deposed first. Dkt. No. 117 at 1; Dkt No. 119 at 1.

## II. Location of Plaintiff's Deposition

Plaintiff presently resides in Israel. Dkt. No. 119 at 2. He filed this legal malpractice suit in this Court, claiming that Defendants inadequately represented him in a medical malpractice suit. *See generally* Dkt. No. 35. He contends that he is unable to travel by airplane to New York, as he suffers from Eustachian tube dysfunction, and asks that he be allowed to sit for his deposition remotely or in person in Israel. Dkt. No. 119 at 1. He submits medical documentation that he argues demonstrates his inability to travel. *See* Dkt. Nos. 119-1–119-3. For the reasons below, the Court concludes that an in-person deposition of Plaintiff is warranted and that Plaintiff has not demonstrated that any medical condition prevents him from being able to travel. The Court therefore orders Plaintiff to appear for an in-person deposition at a mutually agreed upon location in this District no later than November 20, 2026.

Though "depositions via remote means [have] become much more common in recent years" and the Federal Rules allow them pursuant to Rule 30(b)(4), "district courts have continued to recognize that there is nothing extraordinary or inappropriate about seeking to take a deposition in person, particularly for a key witness." *United States v. M/Y Amadea*, 2024 WL 4799887, at *5 (S.D.N.Y. Nov. 15, 2024) (collecting cases). Courts especially recognize the superiority of an in-person deposition in allowing for the assessment of a witness's credibility. *See, e.g.*, *Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 1950728, at *2 (S.D.N.Y. July 16, 2025), *reconsideration denied*, 2025 WL 2084365 (S.D.N.Y. July 24, 2025); *M/Y*

*Amadea*, 2024 WL 4799887, at *5; *Arora v. Standard Chartered Bank*, 2026 WL 810387, at *1 (S.D.N.Y. Mar. 23, 2026); *Kiss v. Kenny*, 2025 WL 1532744, at *2 (S.D.N.Y. May 29, 2025); *cf. United States v. Ramos-Gonzales*, 857 F.3d 727, 733 (5th Cir. 2017) (Jones, J., concurring) (in the context of criminal sentencing, explaining that videoconferencing "may deprive the judge of the ability to read . . . attitudes and body language" and recognizing that "[a]n in-person proceeding allows the judge to experience those impressions gleaned through any personal confrontation in which one attempts to assess the credibility . . . of another" (internal quotation marks and ellipses omitted)).

An in-person deposition of Plaintiff is warranted. He is a key witness in this legal malpractice case, a case that turns on the underlying merits of his medical malpractice claim that he filed in New York Supreme Court. Dkt. No. 35 ¶ III.A.8; *see also AmBase Corp. v. Davis Polk & Wardwell*, 866 N.E.2d 1033, 1036 (N.Y. 2007) ("In order to sustain a claim for legal malpractice, a plaintiff must establish . . . that [he] would have succeeded on the merits of the underlying action 'but for' the attorney's negligence." (internal citations omitted)). As Plaintiff's medical practice claim involves allegations that his medical providers failed to diagnose him with obstructive sleep apnea syndrome and misdiagnosed him with borderline personality disorder and other psychiatric disorders, *see Teman v. Zeldes Needle Cooper LLP*, 2025 WL 3778680, at *1 (S.D.N.Y. Dec. 31, 2025), the Court can reasonably anticipate that Plaintiff's testimony (and the credibility of that testimony) regarding the nature and extent of his alleged injury will be central to this dispute. That alone warrants conducting Plaintiff's deposition in person.

There is an additional reason why Defendants' scrutiny of Plaintiff's credibility is of paramount importance. Plaintiff was previously convicted of bank and wire fraud. *See United*

*States v. Teman,* No. 19-cr-696 (S.D.N.Y.);[1] *see also United States v. Teman*, 2023 WL 3882974 (2d Cir. June 8, 2023) (summary order) (affirming judgment of criminal conviction). The instant case is unrelated to Plaintiff's criminal prosecution, but a prior conviction for fraud "bear[s] directly on credibility." *United States v. Puco*, 453 F.2d 539, 543 n.12 (2d Cir. 1971); *see also United States v. Davis*, 2014 WL 5305984, at *13 (D. Vt. Oct. 15, 2014) ("The law recognizes that crimes of dishonesty are central to evaluating credibility."). Where credibility is at issue, there is a particular value in a deposition being conducted in person.

Additionally, the Court orders that the deposition be conducted in this District. "Ordinarily, a plaintiff's deposition will be held in the forum district, as plaintiff selected the forum and thus has consented to participating in proceedings there." *City of Almaty v. Ablyazov*, 2017 WL 11699076, at *3 (S.D.N.Y. June 16, 2017). "[T]his Court," therefore, "has long enunciated the policy of requiring a non-resident plaintiff who chooses this district as his forum to appear for deposition in this forum absent compelling circumstances." *Clem v. Allied Van Lines Int'l Corp.*, 102 F.R.D. 938, 939 (S.D.N.Y. 1984) (collecting cases); *see, e.g.*, *Wei Su v. Sotheby's, Inc.*, 2019 WL 4053917, at *1 (S.D.N.Y. Aug. 28, 2019) (relying on *Clem*); *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 2014 WL 1870368, at *3 (S.D.N.Y. Apr. 25, 2014) (same). Plaintiff has not shown that compelling circumstances prohibit him from being deposed in the district.

Plaintiff argues that he is unable to travel to New York, as he suffers from Eustachian tube dysfunction, a condition of the ear,[2] and therefore, in his words, "risks permanent injury to

---

[1] Future citations to the docket from Teman's criminal case will use "Crim. Dkt."

[2] "Eustachian tube dysfunction is the failure of the eustachian tube in maintaining pressure equalization or mucociliary transport and symptoms include aural fullness or popping sounds, reduced hearing, tinnitus, autophony, otalgia, and imbalance." *Lombardozzi v. O'Malley*, 2024 WL 1119987, at *2 n.7 (S.D.N.Y. Mar. 14, 2024) (internal quotation marks omitted).

his ears, including lifelong pain and hearing loss" if he were to travel by airplane. Dkt. No. 119 at 1. He submits three reports from medical professionals related to his diagnosis and treatment that he claims demonstrate his inability to fly.[3] The first document contains the clinical notes of Dr. Amit Wolfovitz, an ear, nose, and throat specialist ("ENT"), who saw Plaintiff on April 24, 2025, and November 3, 2025. Dkt. No. 119-1 at 2. Dr. Wolfovitz documented the "under-function of the Eustachian tube on the right [ear], with difficulty equalizing pressures" but noted that the "examination [was] normal overall." *Id.* at 3. He recommended the "[a]voidance of flying for 3 months" and asked Plaintiff to "schedule [a] visit for inspection before approving traveling abroad." *Id.* The record does not reflect that Plaintiff has seen Dr. Wolfovitz since his November 3, 2025 appointment. The second document contains the notes of Dr. Yisgav Shapira, also an ENT, from a consultation she had with Plaintiff on August 13, 2026. Dkt. No. 119-2 at 2. Dr. Shapira acknowledged Dr. Wolfovitz's prior findings of "under-function[ing]" of his Eustachian tubes and referred Plaintiff to Sheba Medical Center for a dilation procedure to treat the condition. *Id.* at 2–3. Dr. Shapira recommended that "[u]ntil recovery . . . [Plaintiff] avoid[] flying." *Id.* at 3. The third is a July 28, 2026 letter from Dr. Maurice Budow that appears to have been drafted and submitted for another case in which Plaintiff is involved and where he

[3] These documents were drafted in Hebrew (although some contain certain annotations in English) and Plaintiff translated them "using Claude, an artificial-intelligence model developed by Anthropic, PBC." Dkt. No. 119-1 at 4. For present purposes, the Court assumes the accuracy of these translations. The Court also assumes the authenticity of these documents, though Plaintiff has not submitted any affidavits on behalf of the medical professionals attesting to their authenticity. *See* Fed. R. Evid. 803(4), 901; *see also Crucey-Castillo v. United States*, 2009 WL 564287, at *5 (S.D.N.Y. Mar. 5, 2009) (Chin, J.) (Medical records "should not be considered without proper authentication."); *Robinson v. United States*, 2005 WL 747039, at *6 (S.D.N.Y. Mar. 31, 2005) ("It is well established that unsworn medical reports are not a form of admissible evidence.").

similarly seeks to avoid a deposition in this District.[4] Dr. Budow's letter summarizes Dr. Wolfovitz's findings and asserts that "[f]lying presents a significant risk of permanent hearing injury, worsening Eustachian tube damage, severe pain, and potentially permanent hearing loss" for Plaintiff and that Plaintiff therefore should not fly. Dkt. 119-3 at 3. The letter does not reflect that Dr. Budow himself conducted an examination of Plaintiff prior to reaching his conclusion.

Plaintiff's submission fails to demonstrate compelling circumstances that would rebut the presumption that Plaintiff be deposed in this District. For one, the letters are largely conclusory. The documents from Dr. Wolfovitz and Dr. Shapira state only that Plaintiff should "avoid" flying. They do not identify any risk to Plaintiff should he disregard (or be required to disregard) that advice. Moreover, Dr. Wolfovitz recommended only that Plaintiff not fly for three months, and almost a year has passed since Plaintiff last saw Dr. Wolfovitz. Dr. Budow's letter does at least assert that flying would create a risk to Plaintiff, but there is no explanation for that conclusion. He does not identify what in Dr. Wolfovitz's records from April and November 2025 would cause him to conclude that Plaintiff's condition would create a "significant" risk today when a year earlier the most that the examining doctor could say was that flying was not recommended.

For another, there is reason to question the credibility of these reports and whether Plaintiff's report of an ear condition is, at least in part, pretextual. Plaintiff is currently a fugitive from the United States, a status he acquired after he failed to appear for an arraignment on a violation of the terms of his supervised release that were imposed as a result of his fraud conviction. *See Teman v. United States*, 2025 WL 1883920, at *1 (S.D.N.Y. July 8, 2025). In

[4] The document contains an ECF header indicating that it was originally filed in *GateGuard, Inc. v. Amazon.com Inc*, No. 21-cv-9321 (S.D.N.Y.).

September 2024, while on supervised release, Plaintiff sought permission to travel to Israel to visit family. *See United States v. Teman*, 2025 WL 296330, at *1 (S.D.N.Y. Jan. 24, 2025). Judge Engelmayer, who oversees Plaintiff's criminal case, allowed him to do so with a scheduled return date in November 2024. *Id.* at *2. But Plaintiff never returned and, instead, obtained numerous extensions to his return date on a variety of grounds before that court declared him a fugitive in July 2025.[5] Crim. Dkt. No. 567 at 1. At one point, Plaintiff pointed to "missile and drone attacks upon Israel from Houthi rebels and the reduction of air travel to Israel as a result of ongoing wars." *Id.* He claimed that airfare was "prohibitively expensive." *Id.* At other points, he submitted a letter from a rabbi stating that it was a religious "commandment" for him to remain in Israel, Crim. Dkt. No. 502-2 at 1, and invoked the medical advice of spinal surgeons and urologists, Crim. Dkt. No. 471 at 2. He also submitted at least two letters from Dr. Budow. In the first, submitted in February 2025, the doctor acknowledged that Plaintiff was in good health but that flying risked triggering "acute sinusitis" (*i.e.*, a sinus infection). Crim. Dkt. No. 502-1 at 1. And the second, submitted the next month in March 2025, indicated that in January 2025 (prior to Dr. Budow's first letter), Plaintiff suffered an injury to his ear as a result of hyperbaric oxygen therapy, and, accordingly, should not fly until at least June 1, 2025. Crim. Dkt. No. 513 at 6. Tellingly, in his July 2026 letter, Dr. Budow makes no reference to acute sinusitis or hyperbaric oxygen therapy and offers no explanation to account for the changing ailments that he, at various points, has claimed Plaintiff suffers from. Finally, in May 2025, Plaintiff filed Dr. Wolfovitz's clinical notes showing his diagnosis of Eustachian tube dysfunction and his recommendation that he not fly for 90 days. Crim. Dkt. No. 534 at 2–3;

[5] This Court takes judicial notice of the filings Plaintiff made in his criminal case not for the truth of those submissions but for the assertions that Plaintiff made in those submissions. *RatesTech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 167 n.3 (2d Cir. 2012).

Crim. Dkt. No. 534-1. The number and mutability of the justifications Plaintiff attempted to rely on to avoid returning to the United States led Judge Engelmayer to conclude that Plaintiff's "claim that flying was medically contra-indicated [w]as contrived," *Teman*, 2025 WL 1883920, at *2, and the Second Circuit concurred, *United States v. Teman*, 2025 WL 4671324, at *1 (2d Cir. Oct. 6, 2025) (summary order) (agreeing "with the district court that Teman's proffered medical reason for failing to comply with the district court's orders to return to the United States is pretextual").

Assuming, as the Court does, that Plaintiff suffers from Eustachian tube disorder and that Plaintiff will suffer some physical discomfort if required to fly, discomfort alone is not sufficient to avoid Plaintiff's obligation to sit in front of his inquisitors for a deposition in this District and to allow Defendants to test the veracity of the claims that he himself brought before this Court. *See, e.g.*, *Wei Su*, 2019 WL 4053917, at *3 (concluding that plaintiff's "purported health condition" that he claimed limited his ability to travel for deposition did not "outweigh competing considerations of prejudice and litigation efficiency"); *cf. MPD Accessories B.V. v. Target Corp.*, 2013 WL 1200359, at *1 (S.D.N.Y. Mar. 1, 2013) (Sullivan, J.) (holding that plaintiff's "unsupported claims of financial hardship do not amount to the 'compelling circumstances' necessary to override" the presumption that its employees may be deposed in forum district). And, of course, Plaintiff remains free to travel to New York by means other than airplane.[6]

---

[6] In reaching this conclusion, the Court need not and does not consider the declaration of Dr. Darius Kohan ("Kohan Declaration") submitted by Defendants. Dkt. No. 122 at 4–15. That declaration was originally filed in the *GateGuard* case. *See supra* note 4. Plaintiff there similarly seeks to obtain a protective order to prevent his deposition in New York, and the defendant in that case offered the Kohan Declaration as evidence that Plaintiff is able to fly. The motion for a protective order remains pending.

Plaintiff proposes as an alternative that he sit for a deposition in Tel Aviv, "paying one defense attorney's coach airfare and two nights' hotel and providing a conference room and court reporter." Dkt. No. 119 at 1. Defense counsel has no obligation to travel to a forum entirely unrelated to the litigation. Moreover, as Defendants correctly note, the proposal fails to adequately compensate Defendants for, among other things, the legal fees associated with such a trip. Dkt. No. 122 n.1. It is therefore rejected.

The Court previously agreed with Plaintiff that proceedings in this case should not be stayed under the fugitive disentitlement doctrine because there was no nexus between Plaintiff's fugitivity and these proceedings. *See Teman*, 2025 WL 3778680, at *3 n.4. But that does not mean that the Court should lend assistance to Plaintiff in his disregard of the courts and to the prejudice of Defendants who have a right to confront their accuser face to face. The Court has discretion to manage civil litigation to ensure that Plaintiff's "absence entitles him to no advantage." *Degen v. United States*, 517 U.S. 820, 827 (1996). The Court will not enter the anticipatory ruling that Defendants request—that Plaintiff's case be dismissed if he fails to appear for his deposition. Dkt. No. 117 at 2–3. Plaintiff has not yet disobeyed any orders of this Court, and the Court presumes that Plaintiff will follow this Order. Defendants can protect themselves by filing the appropriate motion if Plaintiff fails to honor an order from this Court or a deposition notice. *See* Fed. R. Civ. P. 37(b)(2)(A), 37(d). For now, it is sufficient to note that the Court "has at its disposal an array of means to enforce its orders" and to avoid prejudice to Defendants, *Degen*, 517 U.S. at 827, and will be prepared to consider them if those orders are not honored.

**III. Location of Defendants' Depositions**

The Court grants Plaintiff's motion to take Defendants' depositions via videoconference pursuant to Local Civil Rule 30.2.

**IV. Transmission of Rule 45 Subpoenas**

Plaintiff indicates that he has requested the Clerk of Court to mail signed subpoenas to his Miami Beach address but that he has not received them. Dkt. No. 119 at 3. The Court respectfully asks the Clerk of Court to take appropriate steps to ensure Plaintiff receives the subpoenas.

**V. Leave to File Early Summary Judgment Motion**

Plaintiff asks that the Court either enter judgment in his favor on the issue of "breach and collectability," or alternatively, grant him leave to file an early summary judgment motion on liability. Dkt. No. 119 at 3. In support of his request for a judgment, he attaches a single email from Defendant Virgil describing the coverage of the insurance policies maintained by the defendants in the medical malpractice case. Dkt. No. 119-4 at 2. He contends that this email, alongside the fact that his medical malpractice case was dismissed with prejudice after Defendants failed to timely respond to a motion to dismiss for failure to prosecute, allows for a ruling in his favor. Dkt. No. 119 at 3. Plaintiff, however, has not made a formal motion and has not complied with the procedural requirements under Federal Rule of Civil Procedure 56(c) or Local Rule 56.1. Under Rule 56(c)(1), "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by[] citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the . . . presence of a genuine dispute." And Local Rule 56.1(a) requires that "any motion for summary judgment under Fed. R. Civ. P. 56 . . . be accompanied by a separate, short, and concise statement, in numbered paragraphs, of the

material facts as to which the moving party contends there is no genuine issue to be tried. *Failure to submit such a statement may constitute grounds for denial of the motion.*" L. Civ. R. 56.1 (emphasis added).

The Court, however, will not prohibit Plaintiff from filing a motion for summary judgment. The Federal Rules of Civil Procedure permit a party to "file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). A party who moves for summary judgment before discovery has been conducted, however, does so at his own peril. "[T]he Federal Rules of Civil Procedure frown upon motions for summary judgment that are filed before there is any discovery." *Robbins v. Candy Digital Inc.*, 2024 WL 5056429, at *11 (S.D.N.Y. Dec. 9, 2024). Federal Rule of Civil Procedure 56(d) allows a court to either "defer considering" or "deny" a summary judgment motion where the nonmovant can show that "it cannot present facts essential to justify its opposition" to a motion for summary judgment. Fed. R. Civ. P. 56(d). "Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." *GMA Accessories, Inc. v. Croscill, Inc.*, 2007 WL 766294, at *1 (S.D.N.Y. Mar. 13, 2007) (Lynch, J.) (alteration in original) (quoting *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000)). The Court has not prejudged the merits of any motion that Plaintiff may file. However, were Plaintiff to file a motion before any discovery were taken and were the Court persuaded that the nonmovants needed some discovery to justify their opposition, the Court would maintain considerable discretion either simply to defer a ruling until after discovery was complete or to not to allow Plaintiff to file a second motion. *See Brown v. City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012); *see also Robinson v. Henschel*, 2014 WL 1257287, at *8 (S.D.N.Y. Mar. 26, 2014) ("The Court does not approve in general the piecemeal consideration

of successive motions for summary judgment because parties ought to be held to the requirement that they present their strongest case for summary judgment when the matter is first raised." (alteration incorporated and internal quotation marks omitted)). Finally, the Court denies Plaintiff's request to refer this action to mediation at this time. Dkt. No. 119 at 3.

**CONCLUSION**

Defendants' motion is granted in part and denied in part. Plaintiff's motion is granted in part and denied in part. In particular, Plaintiff shall be deposed first and shall appear for his deposition in this District no later than November 20, 2026. The Clerk of Court is respectfully directed to close the motion at Dkt. No. 117.

SO ORDERED.

Dated: October 20, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge