USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/16/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARI TEMAN,

Plaintiff,

-v-

ZELDES NEEDLE COOPER, LLP, et al.,

Defendants.

24-cv-9830 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Ari Teman ("Plaintiff" or "Teman") moves for a protective order pursuant to Federal Rule of Civil Procedure 26(c) allowing him to be deposed remotely, as well as an order allowing all future conferences in this case to proceed remotely. Dkt. No. 135. Defendants Zeldes Needle Cooper, LLP and Jeremy Virgil ("Defendants") oppose the protective order. Dkt. No. 139. In addition, Defendants move for the Court to stay their deadline to respond to Plaintiff's motion for summary judgment or to deny Plaintiff's summary judgment motion outright. *Id.* Because the Court already denied Plaintiff the protective order he once again seeks and instead issued an order requiring that he appear for an in-person deposition in this District by November 20, 2026, *see Teman v. Zeldes Needle Cooper, LLP*, 2026 WL 3135913 (S.D.N.Y. Oct. 20, 2026), *reconsideration denied*, 2026 WL 3218181 (S.D.N.Y. Oct. 27, 2026), the Court treats that portion of Plaintiff's motion as one for reconsideration. For the reasons that follow, Plaintiff's motion is granted in part and denied in part and Defendants' motion is granted.

**BACKGROUND**

Plaintiff presently resides in Israel. *Id.* at *1. He filed this legal malpractice suit claiming that Defendants inadequately represented him in a medical malpractice suit. *Id.* On

October 9, 2026, Defendants moved to compel Plaintiff to appear for an in-person deposition in this District. Dkt. No. 117. Plaintiff opposed the motion and sought a protective order allowing him to be deposed remotely or, alternatively, to require Defendants to depose him in Israel. Dkt. No. 119. He contended that he was unable to travel by airplane to New York because he suffers from Eustachian tube dysfunction and, as a result, risked permanent ear damage if required to fly. *Id.* at 2–3. Plaintiff submitted reports from three medical professionals (Dr. Amit Wolfovitz, Dr. Yisgav Shapira, and Dr. Maurice Budow) related to his diagnosis. *See* Dkt. Nos. 119-1, 119-2, 119-3. The Court granted Defendants' motion and denied Plaintiff's motion. *Teman*, 2026 WL 3135913, at *1–4. It first concluded that an in-person deposition was justified given that Plaintiff's testimony "regarding the nature and extent of his alleged injury will be central to this dispute." *Id*. at *2. It also recognized that an in-person deposition was warranted given Plaintiff's previous conviction for "bank and wire fraud," which bore directly on his credibility. *Id.* The Court then concluded that Plaintiff had failed to rebut the presumption that Defendants should be permitted to depose him in the district in which he filed his case because the documentation from his medical professionals was "largely conclusory" and failed to explain the basis for and the extent of any risk that flying posed to Plaintiff's health. *Id.* at *3. Additionally, the Court recognized that there was a considerable basis "to question the credibility of these reports and whether Plaintiff's report of an ear condition [was], at least in part, pretextual." *Id.* It noted that Plaintiff is presently a fugitive from the United States after failing to appear for an arraignment on a violation of the terms of his supervised release that were imposed as a result of his fraud conviction. *Id.* (citing *Teman v. United States*, 2025 WL 1883920, at *1 (S.D.N.Y. July 8, 2025)). In his criminal case, Plaintiff had offered numerous and ever-changing justifications, including Eustachian tube dysfunction, for why he could not

return to the United States for his arraignment. *Id.* The "number and mutability of th[ose] justifications" had led Judge Engelmayer (who oversees Plaintiff's criminal case) and the Second Circuit to conclude that Plaintiff's medical excuses were "'contrived'" and "'pretextual.'" *Id.* (first quoting *Teman*, 2025 WL 1883920, at *2; and then quoting *United States v. Teman*, 2025 WL 4671324, at *1 (2d Cir. Oct. 6, 2025) (summary order)). This Court therefore ordered Plaintiff to appear for a deposition in this District by November 20, 2026, and noted that Plaintiff "remain[ed] free to travel to New York by means other than airplane." *Id.* at *4–5.

On October 26, 2026, Plaintiff filed a first motion for reconsideration. Dkt. No. 125. In that motion, he contended that the Court misread his medical evidence and supplied a new declaration from his ENT in Miami, Dr. Ariel Grobman. Dkt. No. 126 at 3–8; Dkt. No. 126-1 (the "Grobman Declaration"). He also argued that he had medical appointments that would preclude him from traveling by sea and that, given his fugitive status, he would be taken into custody upon his return to the United States, preventing Defendants from obtaining his deposition. Dkt. No. 126 at 2, 10. The Court denied the motion because none of what Plaintiff identified constituted "new evidence" as required to prevail on a motion for reconsideration. *Teman v. Zeldes Needle Cooper, LLP*, 2026 WL 3218181, at *1 (S.D.N.Y. Oct. 27, 2026). Plaintiff subsequently filed a motion styled as a "request for specific guidance on medical documentation," Dkt. No. 128, which Defendants opposed, Dkt. No. 129.

On November 4, 2026, Plaintiff filed a motion for partial summary judgment as to the elements of breach and causation and to establish a minimum measure of damages. Dkt. No. 130.

On November 11, 2026, Plaintiff filed the instant motion. Dkt. No. 135. Defendants filed their opposition on November 13, 2026. Dkt. No. 139.

## DISCUSSION

### I. Reconsideration of Protective Order

The centerpieces of Plaintiff's motion for reconsideration are notes from a November 10, 2026 consultation with Dr. Shapira and a declaration Dr. Shapira executed the same day that Plaintiff once again contends demonstrates his inability to fly. Dkt. Nos. 135-1 (the "Shapira Declaration"), 135-2 (the "Shapira Notes"). He also reattaches the Grobman Declaration, Dkt. No. 135-3, and further argues that travel by sea is not possible because "no passenger service operates between Israel and the United States," Dkt. No. 135 at 2. He notes that, in May 2025, an Israeli shipping line refused to provide him with transport to New York and that, last month, a ship operated by the shipping line was attacked in the Black Sea. *Id.*; *see also* Dkt. Nos. 135-4, 135-5. Lastly, Plaintiff attaches a letter from his mother asking for him to be able to stay with her as she recovers from a surgery. *See* Dkt. No. 135 at 2; *see also* Dkt. No. 135-6.

"A motion for reconsideration should be granted only if the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Spin Master Ltd. v. 158*, 2020 WL 5350541, at *1 (S.D.N.Y. Sept. 4, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). "The standard for granting a motion for reconsideration 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court.'" *Justice v. City of New York*, 2015 WL 4523154, at *1 (E.D.N.Y. July 27, 2015) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

As an initial matter, "[a] litigant is entitled to a single motion for reconsideration." *Guang Ju Lin v. United States*, 2015 WL 747115, at *2 (S.D.N.Y. Feb. 18, 2015) (citing

S.D.N.Y. Local Civ. R. 6.3); *see also Wimberly v. Stern*, 2026 WL 2884345, at *6 (S.D.N.Y. Sept. 25, 2026); *Cordero v. Sec'y of Health & Hum. Servs*., 2025 WL 3502318, at *1 (S.D.N.Y. Dec. 5, 2025). Local Civil Rule 6.3 establishes the conditions under which a motion for reconsideration may be submitted. "A [c]ourt must narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues." *Montanile v. Nat'l Broad. Co*., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002). Because Plaintiff has already sought and been denied reconsideration of this Court's order requiring that he appear for a deposition in this District, Plaintiff's motion is denied on that basis alone.

Moreover, Plaintiff has failed to meet the demanding standard to warrant reconsideration. First, the Shapira Notes and Declaration are not "new evidence," and, even if they were, they do not support reconsideration. "When arguing for reconsideration based on new evidence, the moving party 'must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered.'" *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 339 (S.D.N.Y. 2012) (quoting *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 350 (S.D.N.Y. 2004)). Plaintiff asserts that he could not present Dr. Shapira's findings sooner "because this appointment was the first time [Dr. Shapira] could examine me and report on them." Dkt. No. 135 at 1. He conclusorily states that "Sheba [the hospital at which Dr. Shapira would perform Plaintiff's surgery to treat his Eustachian tube dysfunction] is a government hospital" that "schedules patients' appointments," precluding his ability to "obtain an earlier one." *Id.* Plaintiff offers no evidence to support his assertion. The assertion further lacks credibility. In connection with his first motion for reconsideration, Plaintiff previewed his November appointment with Dr. Shapira as a follow up to an October 26, 2026 pre-surgical

appointment. He attested that his October appointment was originally scheduled for "sometime in 2027" but that, for reasons he "do[es] not know," it was "automatically moved" to a date that coincidentally happened to be just shortly after the Court denied his initial request for a protective order based on insufficient medical evidence. Dkt. No. 126-4 ¶ 10. In light of the Court's substantial concerns regarding Plaintiff's credibility, the Court cannot accept Plaintiff's unsubstantiated assertion that he was not able to obtain an appointment with Dr. Shapira prior to filing his initial motion but was conveniently able to obtain one right after his motion was denied.

Consideration of the Shapira Notes and Declaration also would not have changed the Court's original conclusion. As Magistrate Judge Gorenstein recently explained in dealing with an "identical" application in another case involving Plaintiff, when considering a party's medical evidence offered in support of a protective order, a "court may not abdicate its responsibility by unquestionably accepting a doctor's summary opinions" and instead must look for "specific articulated facts about the risks as protective orders are generally not granted where the contentions of a treating physician are conclusory or speculative in nature." *GateGuard Inc. v. Amazon.com, Inc.*, 2026 WL 3459463, at *5 (Nov. 13, 2026) (citation modified); *see also Qube Films Ltd. v. Padell*, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (Nathan, J.) (similar). The Shapira Notes and Declaration provide no "specific articulated facts" explaining why Plaintiff cannot fly at present; they do not even affirmatively make that recommendation. The Shapira Notes confirm Plaintiff's diagnosis with an "insufficiency of the Eustachian tube on [his] right [ear]" and recommend that Plaintiff receive surgery to treat the condition. Dkt. No. 135-2 at 2–3. The Notes further state that Plaintiff is "forbidden to fly" "[u]ntil recovery from the surgery—about 3 weeks after it." *Id.* at 3. The Declaration recommends that Plaintiff "proceed to a full

procedure under anesthesia" and that he "should avoid barometric changes and water activities until he has healed and I have examined him at a follow-up visit three months after the procedure."[1] Dkt. No. 135-1 ¶¶ 4, 6. It might be understandable that Plaintiff not travel *following* surgery, but the Declaration and the Notes are conspicuous for what they do not say. Neither expressly states that Plaintiff should not fly prior to surgery—*i.e.*, before there is a surgery to recover from. Dr. Shapira does state that he "concur[s]" with Dr. Grobman's declaration and that "Dr. Grobman's recommendations to protect Mr. Teman from injury should please be followed." *Id.* ¶¶ 2, 5. But tellingly, Dr. Shapira does not explain how, if at all, his examination would support Dr. Grobman's recommendations. As the Court already explained, the Grobman Declaration is "entitled to little weight" as Dr. Grobman did not base his opinion on anything other than his review of the reports of others, having "not seen Teman for an examination prior to submitting his declaration." *Teman*, 2026 WL 3218181, at *1. Dr. Grobman further asserted that Plaintiff suffered from "years-long chronic conditions" that now prevented him from flying. Dkt. No. 126-1 ¶ 6. But as Judge Engelmayer has pointed out, Plaintiff's health presented no obstacle to his "repeated[] . . . air travel" to Australia and to Israel before he violated the terms of his supervised release. *United States v. Teman*, No. 19-cr-696 ("Criminal Case"), Dkt. No. 531 at 2 (S.D.N.Y. Apr. 17, 2025); *see also* Criminal Case Dkt. Nos. 302 (granting Plaintiff permission to travel to Australia in 2022), 362 (granting Plaintiff

---

[1] The discrepancy between Plaintiff's anticipated recovery time as stated in the Shapira Declaration and in the Notes further undermines the reliability of both documents. *Compare* Dkt. No. 135-1 ¶ 6 (Shapira Declaration stating that Plaintiff should "avoid barometric changes" until "I have examined him at a follow-up visit *three months* after the procedure" (emphasis added)) *with* Dkt. No. 135-2 at 3 (Shapira Notes stating that flying is "forbidden" until "recovery from the surgery—about *3 weeks* after it" (emphasis added)). Relatedly, Defendants appear to raise concerns regarding the accuracy of Plaintiff's translation of the Shapira Notes. *See* Dkt. No. 139 at 2–3. Because the Court denies Plaintiff's motion based on the translation of the Notes he provided, it need not interrogate the accuracy of that translation.

permission to travel to Israel in 2023), 456 (granting Plaintiff permission to travel to Israel in 2024). Plaintiff appears to be able to travel when he wants to. His complaint about inability to travel bears all the hallmarks of a contrivance.

Second, Plaintiff's contention that "[t]ravel by sea is not possible" does not warrant reconsideration. Plaintiff has not previously demonstrated the impossibility of travel by sea nor does he now. The fact that there are "no passenger service[s that] operate[] [directly] between Israel and the United States," Dkt. No. 135 at 2, does not constitute new evidence nor does it preclude Plaintiff from traveling on routes that include connections. The correspondence with the shipping company to which he cites is from May 2025. Dkt. No. 135-4. He could have cited it earlier if it were relevant. And the fact that Plaintiff requested in May 2025 the right to travel as a passenger from Haifa directly to New York City is irrelevant. What is notable is the failure of Plaintiff to even attempt, following the Court's October 20, 2026 Order, to make arrangements to travel from any port in Israel to any other location from which he might be able to get transport to a location in the continental United States. Moreover, Plaintiff fails to establish the relevance of an attack on a shipping vessel in the Black Sea, *see* Dkt. No. 135-5, as any sea journey Plaintiff might take to New York would presumably not be on a shipping vessel or through the Black Sea.

Lastly, Plaintiff misleadingly states that "[t]he Court has already permitted Defendants to be deposed remotely" and that he "ask[s] only for the same accommodation." Dkt. No. 135 at 2. This was not an accommodation to Defendants. The Court allowed Defendants to be deposed remotely *at Plaintiff's request*. *Teman*, 2026 WL 3135913, at *4 ("The Court grants Plaintiff's motion to take Defendants' depositions via videoconference pursuant to Local Civil Rule 30.2.").

Plaintiff's ever-shifting excuses to avoid a duty that he took on himself by filing this lawsuit only confirm the Court's original judgment that he can and should be deposed in this District at a location of Defendants' choosing. The Court therefore denies Plaintiff's motion to reconsider its order requiring Plaintiff to attend a deposition in this District by November 20, 2026. The Court will not entertain any further motions from Plaintiff to reconsider its original decision or any requests from him for an extension to this deadline.

## II. In-Person Conferences

The Court grants in part Plaintiff's request that all future conferences in this case be conducted remotely. *See* Dkt. No. 135 at 3. Defendants do not state any opposition to this request. Accordingly, as is the Court's customary practice in all cases, with the exception of the post-discovery status conference, any oral argument on a dispositive motion, or the final pretrial conference, all future proceedings in this case will be conducted remotely subject to further order of the Court to the contrary.[2]

## III. Defendants' Summary Judgment Opposition

The Court grants Defendants' request to stay the time for them to respond to Plaintiff's motion for partial summary judgment until after Plaintiff is deposed, subject to further order of the Court.

## CONCLUSION

For the reasons explained above, Plaintiff's motion is granted in part and denied in part. In particular, Plaintiff's motion for reconsideration of the Court's order requiring him to attend a deposition in this District by November 20, 2026, is denied. Defendants' motion to stay a

---

[2] The parties appear to be under the impression that there is a conference in this case on November 17, 2026. *See* Dkt. No. 135 at 3. That is a mistake. At one point, the post-discovery status conference was scheduled for that date, *see* Dkt. No. 108, but the conference was subsequently adjourned to February 16, 2027, Dkt. No. 121.

response deadline to Plaintiff's summary judgment motion is granted. The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 128 and 135.

SO ORDERED.

Dated: November 16, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge